1   STANLEY LAW GROUP
    MATTHEW J. ZEVIN, SBN: 170736
2   225 Broadway, Suite 1350
    San Diego, CA  92101
3   Telephone:      (619) 235-5306
    Facsimile:      (815) 377-8419
4   e-mail:  mzevin@aol.com

5
    STANLEY LAW GROUP
6   MARC R. STANLEY, Texas SBN: 19046500
    (*pro hac vice* to be filed)
7   MARTIN WOODWARD, Texas SBN: 00797693
    (*pro hac vice* to be filed)
8   6116 North Central Expressway, Suite 1500
    Dallas, TX  75206
9   Telephone:      (214) 443-4300
    Facsimile:      (214) 443-0358
10  e-mail:  marcstanley@mac.com
     mwoodward@stanleylawgroup.com
11

12  Attorneys for Plaintiffs, Helene Cahen, Kerry J.
13  Tompulis, and Merrill Nisam
    [Additional Counsel Listed on Signature Page]
14

15              IN THE UNITED STATES DISTRICT COURT

16      NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

17  HELENE CAHEN, KERRY J. TOMPULIS,          CASE NO.
    and MERRILL NISAM,
18                                            **COMPLAINT FOR BREACH OF**
19              Plaintiffs,                    **WARRANTY, BREACH OF CONTRACT,**
                                              **AND VIOLATION OF CONSUMER**
20  v.                                        **PROTECTION LAWS**

21  TOYOTA MOTOR CORPORATION,                 **CLASS ACTION**
    TOYOTA MOTOR SALES, U.S.A., INC.,
22  FORD MOTOR COMPANY, GENERAL
    MOTORS LLC, and DOES 1 through 50,        **DEMAND FOR JURY TRIAL**
23              Defendants.
24

25

26

27

28

    COMPLAINT

Plaintiffs Helene Cahen, Kerry J. Tompulis, and Merrill Nisam ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Class"), allege as follows:

**INTRODUCTION**

1.      There are certain basic rules all automobile manufacturers must follow.  This case arises from a breach of these rules by the Defendants: Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. (together, "Toyota"), Ford Motor Company ("Ford"), and General Motors LLC ("GM").

2.      When Defendants sell or lease any vehicle to a customer, they have a duty to ensure the vehicle functions properly and safely, and is free from defects.  When they become aware of a defect in their vehicles, they have an obligation to correct the defect or cease selling the vehicles.  When Defendants introduce a new technology in their vehicles, and tout its benefits, they must test the technology to ensure that it functions properly.  And when Defendants provide a warranty to a customer, Defendants are bound to stand by that warranty.

3.      But Defendants failed consumers in all of these areas when they sold or leased vehicles that are susceptible to computer hacking and are therefore unsafe.  Because Defendants failed to ensure the basic electronic security of their vehicles, anyone can hack into them, take control of the basic functions of the vehicle, and thereby endanger the safety of the driver and others.

4.      This is because Defendants' vehicles contain more than 35 separate electronic control units (ECUs), connected through a controller area network ("CAN" or "CAN bus"). Vehicle functionality and safety depend on the functions of these small computers, the most essential of which is how they communicate with one another.

5.      The ECUs communicate by sending each other "CAN packets," digital messages containing small amounts of data.  But if an outside source, such as a hacker, were able to send CAN packets to ECUs on a vehicle's CAN bus, the hacker could take control of such basic functions of the vehicle as braking, steering, and acceleration – and the driver of the vehicle would not be able to regain control.

1

COMPLAINT

6.     Disturbingly, as Defendants have known, their CAN bus-equipped vehicles for years have been (and currently are) susceptible to hacking, and their ECUs cannot detect and stop hacker attacks on the CAN buses.  For this reason, Defendants' vehicles are not secure, and are therefore not safe.

7.     Yet, Defendants have charged a substantial premium for their CAN bus-equipped vehicles since their rollout.  These defective vehicles are worth far less than are similar non-defective vehicles, and far less than the defect-free vehicles the Plaintiffs and the other Class members bargained for and thought they had received.

8.     As a result of Defendants' unfair, deceptive, and/or fraudulent business practices, and their failure to disclose the highly material fact that their vehicles were susceptible to hacking and neither secure nor safe, owners and/or lessees of Defendants' CAN bus-equipped vehicles have suffered losses in money and/or property.  Had Plaintiffs and the other Class members known of the defects at the time they purchased or leased their vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

9.     Toyota manufactures and sells vehicles under the Toyota, Lexus, and Scion names (the "Toyota Vehicles"); Ford manufactures and sells vehicles under the Ford, Lincoln, and (until 2011) Mercury names (the "Ford Vehicles"); GM manufactures and sells vehicles under the Buick, Cadillac, Chevrolet, and GMC names, and (until 2009) under the Hummer, Pontiac, and Saturn names (the "GM Vehicles").  The CAN buses in all Toyota Vehicles, Ford Vehicles, and GM Vehicles are essentially identical in that they are all susceptible to hacking and thus suffer from the same defect.  For purposes of this Complaint, all CAN bus-equipped vehicles are referred to collectively as the "Class Vehicles" or "Defective Vehicles."

10.     Plaintiffs bring this action individually and on behalf of all other current and former owners or lessees of Toyota Vehicles, Ford Vehicles, and GM Vehicles equipped with CAN buses. Plaintiffs seek damages, injunctive relief, and equitable relief for the conduct of Defendants, as alleged in this complaint.

COMPLAINT

**JURISDICTION**

11.     This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceed $5,000,000, exclusive of costs and interest; and minimal diversity exists.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

**VENUE**

12.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.  Plaintiffs Cahen and Nisam purchased Class Vehicles in this District, and Defendants have marketed, advertised, sold, and leased the Class Vehicles within this District.

**PARTIES**

13.     Plaintiff Helene Cahen is an individual residing in Berkeley, California. In September 2008, Plaintiffs Cahen purchased a new 2008 Lexus RX 400 H from an authorized Lexus dealer in San Rafael, California. Plaintiff Cahen still owns this vehicle.

14.     Plaintiff Kerry J. Tompulis is an individual residing in Beaverton, Oregon. In August 2014, Plaintiffs Tompulis leased a new 2014 Ford Escape from Landmark Ford, an authorized Ford dealer in Tigard, Oregon. Plaintiff Tompulis still leases this vehicle.

15.     Plaintiff Merrill Nisam is an individual residing in Mill Valley, California. In March 2013, Plaintiffs Nisam purchased a new 2013 Chevrolet Volt from Novato Chevrolet, an authorized Chevrolet dealer in Novato, California. Plaintiff Nisam still owns this vehicle.

16.     Defendant Toyota Motor Corporation ("TMC") is a Japanese corporation. TMC is the parent corporation of Toyota Motor Sales, U.S.A., Inc. TMC, through its various entities, designs, manufactures, markets, distributes and sells Toyota, Lexus and Scion automobiles in California and multiple other locations in the United States and worldwide.

17.     Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") is incorporated and headquartered in California.  TMS is Toyota's U.S. sales and marketing arm, which oversees sales and other operations in 49 states.  TMS distributes Toyota, Lexus and Scion vehicles and sells these vehicles through its network of dealers.

COMPLAINT

3

1    18.    Money received from the purchase of a Toyota Vehicle from a dealer flows from
2    the dealer to TMS.  Money received by the dealer from a purchaser can be traced to TMS and
3    TMC.

4    19.    TMS and TMC sell Toyota Vehicles through a network of dealers who are the
5    agents of TMS and TMC.

6    20.    TMS and TMC are collectively referred to in this complaint as "Toyota" or the
7    "Toyota Defendants" unless identified as TMS or TMC.

8    21.    At all times relevant to this action, Toyota manufactured, sold, leased, and
9    warranted the Toyota Vehicles at issue under the Toyota, Lexus, and Scion names throughout the
10   United States.  Toyota and/or its agents designed, manufactured, and installed the defective CAN
11   buses in the Toyota Vehicles.  Toyota also developed and disseminated the owner's manuals and
12   warranty booklets, advertisements, and other promotional materials relating to the Toyota
13   Vehicles.

14   22.    Defendant Ford Motor Company is a corporation doing business in all fifty states
15   (including the District of Columbia) and is organized under the laws of the State of Delaware,
16   with its principal place of business in Dearborn, Michigan.

17   23.    At all times relevant to this action, Ford manufactured, sold, leased, and
18   warranted the Ford Vehicles at issue under the Ford, Lincoln, and (until 2011) Mercury names
19   throughout the United States.  Ford and/or its agents designed, manufactured, and installed the
20   defective CAN buses in the Ford Vehicles.  Ford also developed and disseminated the owner's
21   manuals and warranty booklets, advertisements, and other promotional materials relating to the
22   Ford Vehicles.

23   24.    Defendant General Motors LLC is a limited liability company formed under the
24   laws of the State of Delaware with its principal place of business in Detroit, Michigan.  GM was
25   incorporated in 2009 and on July 10, 2009 acquired substantially all assets and assumed certain
26   liabilities of General Motors Corporation ("Old GM") through a Section 363 sale under Chapter
27   11 of the U.S. Bankruptcy Code.

28

4

25.     Among the liabilities and obligations expressly retained by GM after the bankruptcy are the following:

> From and after the Closing, Purchaser [GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code, and similar laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

26.     GM also expressly assumed:

> All Liabilities arising under express written warranties of [Old GM] that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by [Old GM] or Purchaser prior to or after the Closing and (B) all obligations under Lemon Laws.

27.     Because GM acquired and operated Old GM and ran it as a continuing business enterprise, and because GM was aware from its inception of the CAN bus defects in the GM Vehicles, GM is liable through successor liability for the deceptive and unfair acts and omissions of Old GM, as alleged in this Complaint.

28.     At all times relevant to this action, GM manufactured, sold, leased, and warranted the GM Vehicles at issue under the Buick, Cadillac, Chevrolet, and GMC names, and (until 2009) under the Hummer, Pontiac, and Saturn names throughout the United States. GM and/or its agents designed, manufactured, and installed the defective CAN buses in the GM Vehicles.  GM also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the GM Vehicles.

29.     Plaintiffs do not know the true names and capacities of Defendants sued herein as Does 1 through 50, and will amend this Complaint to set forth the true names and capacities of said defendants, along with the appropriate charging allegations when the same have been ascertained.

## TOLLING OF THE STATUTE OF LIMITATIONS

30.     Any applicable statute(s) of limitations has been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein.  Plaintiffs and the other Class members could not have reasonably discovered the true, latent defective nature of the CAN buses

5

COMPLAINT

1 until shortly before this class action litigation was commenced.

2      31.     Defendants were and remain under a continuing duty to disclose to Plaintiffs and

3 the other Class members the true character, quality, and nature of the Class Vehicles, that this

4 defect is a result of Defendants' design choices, and that it will require costly repairs, and

5 diminishes the resale value of the Class Vehicles. As a result of the active concealment by

6 Defendants, any and all statutes of limitations otherwise applicable to the allegations herein have

7 been tolled.

8 **FACTUAL ALLEGATIONS**

9 **How Defendants' CAN Buses Work**

10      32.     Many modern automobiles, including the Class Vehicles, contain a number of

11 different networked electronic components that together monitor and control the vehicle. Class

12 Vehicles contain upwards of 35 electronic control units ("ECUs") networked together on a

13 controller area network ("CAN" or "CAN bus"). Crucially, the overall safety of the vehicle relies

14 on near real time communication between these various ECUs.[1]

15      33.     As stated by two researchers in a 2013 study funded by the U.S. Defense

16 Advanced Research Projects Agency ("DARPA"): "Drivers and passengers are strictly at the

17 mercy of the code running in their automobiles and, unlike when their web browser crashes or is

18 compromised, the threat to their physical well-being is real."[2]

19      34.     The ECUs are networked together on one or more CAN buses, and they

20 communicate with one another by sending electronic messages comprised of small amounts of

21 data called CAN packets.[3] The CAN packets are broadcast to all components on the CAN bus,

22

23 ――――――――――――――――――

[1] *Tracking & Hacking: Security & Privacy Gaps Out American Drivers at Risk*, A report written

24 by the staff of Senator Edward J. Markey (D-Massachussetts), http://www.markey.senate.

25 gov/imo/media/doc/2015-02-06_MarkeyReport-Tracking_Hacking_CarSecurity%202.pdf (last accessed February 20, 2015) (hereinafter "Markey Report") at 3; Dr. Charlie Miller & Chris

26 Valasek, Technical White Paper: *Adventures in Automotive Networks and Control Units*, http://www.ioactive.com/pdfs/IOActive_Adventures_in_Automotive_Networks_and_Control_

27 units.pdf (least accessed February 20, 2015) (hereinafter "Miller & Valasek") at 5, 7-8.

[2] Miller & Valasek at 4; *see also* Markey Report at 3.

28 [3] Miller & Valasek at 4.

COMPLAINT

and each component decides whether it is the intended recipient of any given CAN packet. Notably, there is no source identifier or authentication built into CAN packets.

**Defendants' CAN Buses Are Susceptible to Dangerous Hacking**

35.     The CAN standard was first developed in the mid-1980s and is a low-level protocol which does not intrinsically support any security features.[4]  Applications are expected to deploy their own security mechanisms; e.g., to authenticate each other.[5]  But if an outside source manages to insert messages onto a CAN bus, the ECUs will not be able to properly authenticate each other.[6]

36.     This capability can be used maliciously. In particular, wireless technologies create vulnerabilities to hacking attacks that could be used to invade a user's privacy or modify the operation of a vehicle.  An attacker with physical access to a CAN bus-equipped vehicle could insert malicious code or CAN packets – and could also remotely and wirelessly access a vehicle's CAN bus through Bluetooth connections.[7]

37.     One journalist described the experience of driving a vehicle whose CAN bus was being hacked remotely (but under controlled circumstances) as follows:

> As I drove to the top of the parking lot ramp, the car's engine suddenly shut off, and I started to roll backward.  I expected this to happen, but it still left me wide-eyed.
>
> I felt as though someone had just performed a magic trick on me.  What ought to have triggered panic actually elicited a dumbfounded surprise in me.  However, as the car slowly began to roll back down the ramp, surprise turned to alarm as the task of steering backwards without power brakes finally sank in.
>
> This wasn't some glitch triggered by a defective ignition switch, but rather an orchestrated attack performed wirelessly, from the other side of the parking lot, by a security researcher.[8]

---

[4]  http://en.wikipedia.org/w/index.php?title=CAN_bus (last accessed February 20, 2015).

[5]  *Id.*

[6]  *See* Xavier Aaronson, *We Drove a Car While It Was Being Hacked*, http://motherboard. vice.com/read/we-drove-a-car-while-it-was-being-hacked (last accessed February 20, 2015).

[7]  Miller & Valasek at 4; *see also* Markey Report at 3.

[8]  Xavier Aaronson, *We Drove a Car While It Was Being Hacked*, http://motherboard.vice. com/read/we-drove-a-car-while-it-was-being-hacked (last accessed February 20, 2015).

7

**Defendants Have Known for Years that Their CAN Bus-Equipped Vehicles Can Be Hacked**

38.     These security vulnerabilities have been known in the automotive industry – and, specifically, by Defendants – for years.  Researchers at the University of California San Diego and University of Washington had discovered in 2011 that modern automobiles can be hacked in a number of different ways – and, crucially, that wireless communications allow a hacker to take control of a vehicle from a long distance.[9]

39.     Building on this research, in a 2013 DARPA-funded study, two researchers demonstrated their ability to connect a laptop to the CAN bus of a 2010 Toyota Prius and a 2010 Ford Escape using a cable, send commands to different ECUs through the CAN, and thereby control the engine, brakes, steering and other critical vehicle components.[10]  In their initial tests with a laptop, the researchers were able to cause the cars to suddenly accelerate, turn, kill the brakes, activate the horn, control the headlights, and modify the speedometer and gas gauge readings.[11]

40.     Before the researchers went public with their 2013 findings, they shared the results with Toyota and Ford in the hopes that the companies would address the identified vulnerabilities.[12]  The companies, however, did not.

**Despite Selling Unsafe CAN-Bus Equipped Vehicles, Defendants Tout Their Safety**

**A.     Toyota**

41.     Toyota has consistently marketed its vehicles as "safe" and portrayed safety as one of its highest priorities.

42.     As Toyota states in one of its promotional materials:

> Toyota believes that the ultimate goal of a society that values mobility is to eliminate traffic fatalities and injuries. Toyota's Integrated Safety Management

---

[9]   Stephen Checkoway et al., *Comprehensive Experimental Analyses of Automotive Attack Surfaces*, http://www.autosec.org/pubs/cars-usenixsec2011.pdf (last accessed February 20, 2015).

[10]  *See generally* Miller & Valasek.

[11]  *See generally* Miller & Valasek. A video of the researchers hacking and taking control of the operation of the cars can be viewed at https://www.youtube.com/watch?v=oqe6S6m73Zw (last accessed February 20, 2015).

[12]  Markey Report at 3.

COMPLAINT

Concept sets the direction for safety technology development and vehicle development, and covers all aspects of driving by integrating individual vehicle safety technologies and systems rather than viewing them as independently functioning units.[13]

43.     In another, Toyota states:

Pursuit for Vehicle Safety

Toyota has been implementing "safety" measures to help create safer vehicles.[14]

44.     And in a third, Toyota states:

Toyota recognizes the importance of the driver being in ultimate control of a vehicle and is therefore aiming to introduce AHDA and other advanced driving support systems where the driver maintains control and the fun-to-drive aspect of controlling a vehicle is not compromised.[15]

**B.     Ford**

45.     Ford similarly markets and promotes its vehicles as "safe." For example, in describing its 2015 Fusion, Ford states:

Safety

When you look over the impressive list of collision avoidance and occupant protection features, you'll know how well-equipped Fusion is when it comes to you and your passengers' safety.[16]

46.     In describing its 2015 Focus, Ford states:

Safety

You don't have to pick and choose when it comes to safety. Focus is well equipped with an impressive list of safety features.[17]

**C.     GM**

47.     GM also heavily promotes the safety of its vehicles. As GM states in one of its

---

[13]     http://www.toyota-global.com/innovation/safety_technology/media-tour/   (last   accessed February 20, 2015).

[14]     http://www.toyota-global.com/innovation/safety_technology/safety_measurements/   (last accessed February 20, 2015).

[15]     http://www.toyota.com/esq/safety/active-safety/advanced-driving-support-system.html   (last accessed February 20, 2015).

[16]   http://www.ford.com/cars/fusion/trim/s/safety/ (last accessed March 5, 2015).

[17]   http://www.ford.com/cars/focus/trim/st/safety/ (last accessed March 5, 2015).

COMPLAINT

promotional materials:

GM's Commitment to Safety

Quality and safety are at the top of the agenda at GM, as we work on technology improvements in crash avoidance and crashworthiness to augment the post-event benefits of OnStar, like advanced automatic crash notification.[18]

48.     And in a recent press release, GM stated:

GM Paves Way for Global Active Safety Development

Thu, Oct 23 2014

MILFORD, Mich. – General Motors today revealed that the development of one of the largest active automotive safety testing areas in North America is nearly complete at its Milford Proving Ground campus.

\* \* \*

The Active Safety Testing Area, or ASTA, will complement the Milford Proving Ground's vast test capabilities and increase GM's ability to bring the best new safety technologies to the customer.[19]

**Defendants Expressly Warrant that They Will Repair or Replace Any Defects**

49.     In connection with the sale (by purchase or lease) of each one of its new vehicles, Defendants provide an express limited warranty on each vehicle. In those warranties, Defendants promise to repair any defect or malfunction that arises in the vehicle during a defined period of time. This warranty is provided by Defendants to the vehicle owner in writing and regardless of what state the customer purchased his or her vehicle in. As further alleged below, the relevant terms of the warranties in this case are essentially identical, regardless of the manufacturer or model year.

50.     Plaintiffs Cahen, Tompulis, and Nisam were each provided with a warranty and it was a basis of the purchase of their vehicles. Plaintiffs and the members of the Class experienced defects within the warranty period. However, despite the existence of the express warranties provided to Plaintiffs and the members of the Class, Defendants have failed to honor the terms of the warranties by failing to correct the CAN bus defects at no charge.

---

[18]     http://www.gm.com/vision/quality_safety/gms_commitment_tosafety.html (last accessed March 5, 2015)

[19]   http://www.gm.com/article.content_pages_news_us_en_2014_oct_1023-active-safety.~content ~gmcom~home~vision~quality_safety.html (last accessed March 5, 2015).

COMPLAINT

**A.  Toyota's warranty**

51.       In its Limited Warranties and in advertisements, brochures, and through other statements in the media, Toyota expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. The following uniform language appears in all Toyota Warranty booklets:

> *When Warranty Begins*
>
> The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.
>
> *Repairs Made at No Charge*
>
> Repairs and adjustments covered by these warranties are made at no charge for parts and labor.
>
> *Basic Warranty*
>
> This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . .  Coverage is for 36 months or 36,000 miles, whichever occurs first. . . .

**B.  Ford's warranty**

52.       In its Limited Warranties and in advertisements, brochures, and through other statements in the media, Ford expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. The following uniform language appears in all Ford Warranty booklets:

> *KNOW WHEN YOUR WARRANTY BEGINS*
>
> Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .
>
> *QUICK REFERRENCE: WARRANTY COVERAGE*
>
> * * *
>
> Your Bumper to Bumper Coverage lasts for three years – unless you drive more than 36,000 miles before three years elapse.
>
> *WHO PAYS FOR WARRANTY REPAIRS?*
>
> You will not be charged for repairs covered by any applicable warranty during the stated coverage periods. . . .

**C.  GM's warranty**

53.       In its Limited Warranties and in advertisements, brochures, and through other

11

COMPLAINT

statements in the media, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. The following uniform language appears in all GM Warranty booklets:

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first. . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

## CLASS ALLEGATIONS

54.     Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following classes:

All persons or entities in the United States who are current or former owners and/or lessees of a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus (the "Nationwide Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of California (the "California Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Alabama (the "Alabama Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Alaska (the "Alaska Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Arizona (the "Arizona Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Arkansas (the "Arkansas Class").

COMPLAINT

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Colorado (the "Colorado Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Connecticut (the "Connecticut Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Delaware (the "Delaware Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the District of Columbia (the "District of Columbia Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Florida (the "Florida Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Georgia (the "Georgia Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Hawaii (the "Hawaii Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Idaho (the "Idaho Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Illinois (the "Illinois Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Indiana (the "Indiana Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Iowa (the "Iowa Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Kansas (the "Kansas Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Kentucky (the "Kentucky Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Louisiana (the "Louisiana Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Maine (the "Maine Class").

13

COMPLAINT

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Maryland (the "Maryland Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Massachusetts (the "Massachusetts Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Michigan (the "Michigan Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Minnesota (the "Minnesota Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Mississippi (the "Mississippi Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Missouri (the "Missouri Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Montana (the "Montana Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Nebraska (the "Nebraska Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Nevada (the "Nevada Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of New Hampshire (the "New Hampshire Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of New Jersey (the "New Jersey Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of New Mexico (the "New Mexico Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of New York (the "New York Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of North Carolina (the "North Carolina Class").

COMPLAINT

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of North Dakota (the "North Dakota Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Ohio (the "Ohio Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Oklahoma (the "Oklahoma Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Oregon (the "Oregon Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Pennsylvania (the "Pennsylvania Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Rhode Island (the "Rhode Island Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of South Carolina (the "South Carolina Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of South Dakota (the "South Dakota Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Tennessee (the "Tennessee Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Texas (the "Texas Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Utah (the "Utah Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Vermont (the "Vermont Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Virginia (the "Virginia Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Washington (the "Washington Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of West Virginia (the "West Virginia Class").

COMPLAINT

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Wisconsin (the "Wisconsin Class").

All persons or entities who purchased or leased a Toyota Vehicle, Ford Vehicle, or GM Vehicle equipped with a CAN bus in the State of Wyoming (the "Wyoming Class").

(Collectively, the "Class," unless otherwise noted).

55.     Excluded from the Class are Defendants and their subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family.

56.     Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

57.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

58.     This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

59.     Numerosity. Federal Rule of Civil Procedure 23(a)(1): The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are not less than tens of thousands of members of the Class, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from Defendants' books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

60.     Commonality and Predominance. Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a)     Whether Defendants engaged in the conduct alleged herein;

b)     Whether Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

16

COMPLAINT

c)      Whether the CAN buses in the Class Vehicles contains a defect;

d)      Whether such defect can cause the Class Vehicles to malfunction;

e)      Whether Defendants knew about the defect and, if so, how long Defendants have known of the defect;

f)      Whether Defendants designed, manufactured, marketed, and distributed Class Vehicles with defective CAN buses;

g)      Whether Defendants' conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

h)      Whether Defendants knew or reasonably should have known of the defects in the Class Vehicles before it sold or leased them to Class members;

i)      Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

j)      Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

61.     <u>Typicality</u>.  Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendants' wrongful conduct as described above.

62.     <u>Adequacy</u>.  Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes each respectively seeks to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously.  The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

63.     <u>Declaratory and Injunctive Relief</u>.  Federal Rule of Civil Procedure 23(b)(2): Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

64.     <u>Superiority</u>.  Federal Rule of Civil Procedure 23(b)(3): A class action is superior

COMPLAINT

1    to any other available means for the fair and efficient adjudication of this controversy, and no

2    unusual difficulties are likely to be encountered in the management of this class action.   The

3    damages or other financial detriment suffered by Plaintiffs and the other Class members are

4    relatively small compared to the burden and expense that would be required to individually

5    litigate their claims against Defendants, so it would be impracticable for Nationwide and

6    California Class members to individually seek redress for Defendants' wrongful conduct.  Even if

7    Class members could afford individual litigation, the court system could not.   Individualized

8    litigation creates a potential for inconsistent or contradictory judgments, and increases the delay

9    and expense to all parties and the court system.  By contrast, the class action device presents far

10   fewer management difficulties, and provides the benefits of single adjudication, economy of

11   scale, and comprehensive supervision by a single court.

12                                    **VIOLATIONS ALLEGED**

13                       **Claims Brought on Behalf of the Nationwide Class**

14                                          **COUNT I**

15                       **Violation of Magnuson-Moss Warranty Act**

16                          **(15 U.S.C. Sections 2301, *et seq.*)**

17        65.      Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

18   forth herein.

19        66.      Plaintiffs bring this Count on behalf of the Nationwide Class.

20        67.      Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty

21   Act, 15 U.S.C. § 2301(3).

22        68.      Defendants are "suppliers" and "warrantors" within the meaning of the

23   Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

24        69.      The Class Vehicles are "consumer products" within the meaning of the

25   Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).  15 U.S.C. § 2301(d)(1) provides a cause of

26   action for any consumer who is damaged by the failure of a warrantor to comply with a written or

27   implied warranty.

28        70.      Defendants' express warranties are written warranties within the meaning of the

                                                                                            18

COMPLAINT

1    Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  The Class Vehicles' implied warranties are

2    covered under 15 U.S.C. § 2301(7).

3        71.      Defendants breached these warranties as described in more detail above.  Without

4    limitation, the Class Vehicles are equipped with CAN buses, a defective electronic unit within the

5    Class Vehicles.  The Class Vehicles share a common design defect in that the CAN buses fail to

6    operate as represented by Defendants.

7        72.      Plaintiffs and the other Nationwide Class members have had sufficient direct

8    dealings with either Defendants or their agents (dealerships and technical support) to establish

9    privity of contract between Defendants, on one hand, and Plaintiffs and each of the other

10   Nationwide Class members on the other hand. Nonetheless, privity is not required here because

11   Plaintiffs and each of the other Nationwide Class members are intended third-party beneficiaries

12   of contracts between Defendants and their dealers, and specifically, of Defendants' implied

13   warranties.  The dealers were not intended to be the ultimate consumers of the Class Vehicles and

14   have no rights under the warranty agreements provided with the Class Vehicles; the warranty

15   agreements were designed for and intended to benefit the consumers only.

16       73.      Affording Defendants a reasonable opportunity to cure their breach of written

17   warranties would be unnecessary and futile here.  Indeed, Plaintiffs have already done so, and

18   Defendants have failed to cure the defects.  At the time of sale or lease of each Class Vehicle,

19   Defendants  knew,  should  have  known,  or  were  reckless  in  not  knowing  of  their

20   misrepresentations and omissions concerning the Class Vehicles' inability to perform as

21   warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.

22   Under the circumstances, the remedies available under any informal settlement procedure would

23   be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution

24   procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is

25   excused and thereby deemed satisfied.

26       74.      Plaintiffs and the other Nationwide Class members would suffer economic

27   hardship if they returned their Class Vehicles but did not receive the return of all payments made

28   by them.  Because Defendants are refusing to acknowledge any revocation of acceptance and

19

COMPLAINT

return immediately any payments made, Plaintiffs and the other Nationwide Class members have not re-accepted their Class Vehicles by retaining them.

75.     The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

76.     Plaintiffs, individually and on behalf of the other Nationwide Class members, seek all damages permitted by law, including diminution in value of the Class Vehicles, in an amount to be proven at trial.

**Claims Brought on Behalf of the California Class**

**COUNT II**

**Violation of California Unfair Competition Law**
**(California Business & Professions Code Sections 17200, *et seq.*)**

77.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

78.     Plaintiffs bring this Count on behalf of the California Class.

79.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

80.     Defendants' conduct, as described herein, was and is in violation of the UCL. Defendants' conduct violates the UCL in at least the following ways:

a)     By knowingly and intentionally concealing from Plaintiffs and the other California Class members that the Class Vehicles suffer from a design defect while obtaining money from Plaintiffs;

b)     By marketing Class Vehicles as possessing functional and defect-free electronic units;

c)     By refusing or otherwise failing to repair and/or replace defective CAN buses in Class Vehicles;

d)     By violating federal laws, including the Magnuson-Moss Warranty Act,

20

COMPLAINT

1    15 U.S.C. § 2301; and

2              e)      By violating other California laws, including Cal. Civ. Code §§ 1709,

3    1710, and 1750, *et seq.*, and Cal. Comm. Code § 2313.

4          81.      Defendants' misrepresentations and omissions alleged herein caused Plaintiffs

5    and the other California Class members to make their purchases or leases of their Class Vehicles.

6    Absent those misrepresentations and omissions, Plaintiffs and the other California Class members

7    would not have purchased or leased these Vehicles, would not have purchased or leased these

8    Class Vehicles at the prices they paid, and/or would have purchased or leased less expensive

9    alternative vehicles that did not contain CAN buses.

10         82.      Accordingly, Plaintiffs and the other California Class members have suffered

11   injury in fact including lost money or property as a result of Defendants' misrepresentations and

12   omissions.

13         83.      Plaintiffs seek to enjoin further unlawful, unfair, and/or fraudulent acts or

14   practices by Defendants under Cal. Bus. & Prof. Code § 17200.

15         84.      Plaintiffs request that this Court enter such orders or judgments as may be

16   necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices

17   and to restore to Plaintiffs and members of the Class any money Defendants acquired by unfair

18   competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. &

19   Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief set forth below.

20                              **COUNT III**

21              **Violation of California Consumers Legal Remedies Act**

22              **(California Civil Code Sections 1750, *et seq*.)**

23         85.      Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

24   forth herein.

25         86.      Plaintiffs bring this Count on behalf of the California Class.

26         87.      California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750,

27   *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices

28   undertaken by any person in a transaction intended to result or which results in the sale or lease of

21

COMPLAINT

1  goods or services to any consumer."

2      88.      The Class Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

3      89.      Plaintiffs and the other California class members are "consumers" as defined in

4  Cal. Civ. Code § 1761(d), and Plaintiffs, the other California class members, and Defendants are

5  "persons" as defined in Cal. Civ. Code § 1761(c).

6      90.      As alleged above, Defendants made numerous representations concerning the

7  benefits and safety features of the Class Vehicles that were misleading.

8      91.      In purchasing or leasing the Class Vehicles, Plaintiffs and the other California

9  Class members were deceived by Defendants' failure to disclose that the Class Vehicles were

10  equipped with defective CAN buses.

11      92.      Defendants' conduct, as described hereinabove, was and is in violation of the

12  CLRA.

13      93.      Defendants' conduct violates at least the following enumerated CLRA provisions:

14          a)      Cal. Civ. Code § 1770(a)(5): Representing that goods have characteristics,

15  uses, and benefits which they do not have;

16          b)      Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular

17  standard, quality, or grade, if they are of another;

18          c)      Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell

19  them as advertised; and

20          d)      Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied

21  in accordance with a previous representation when they have not.

22      94.      Plaintiffs and the other California Class members have suffered injury in fact and

23  actual damages resulting from Defendants' material omissions and misrepresentations because

24  they paid an inflated purchase or lease price for the Class Vehicles.

25      95.      Defendants knew, should have known, or were reckless in not knowing of the

26  defective design and/or manufacture of the CAN buses, and that the CAN buses were not suitable

27  for their intended use.

28      96.      The facts concealed and omitted by Defendants to Plaintiffs and the other

22

COMPLAINT

California Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and the other California Class members known about the defective nature of the Class Vehicles and their CAN buses, they would not have purchased or leased the Class Vehicles or would not have paid the prices they paid in fact.

97.     Concurrently with the filing of this Complaint, Plaintiffs are providing Defendants with notice of their violations of the CLRA pursuant to Cal. Civ. Code § 1782(a).

98.     Plaintiffs' and the other California Class members' injuries were proximately caused by Defendants' fraudulent and deceptive business practices.  Therefore, Plaintiffs and the other California Class members are entitled to equitable and monetary relief under the CLRA.  At this time, until thirty days after the date of the pre-suit demand letter, Plaintiffs seek only equitable relief and not damages under the CLRA.  If Defendants do not comply in full with Plaintiffs' demand letter, Plaintiffs will amend this Complaint to add a claim for damages after thirty days.

## COUNT IV

### Violation of California False Advertising Law
### (California Business & Professions Code Sections 17500, *et seq.*)

99.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

100.     Plaintiffs bring this Count on behalf of the California Class.

101.     California Bus. & Prof. Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

102.     Defendants caused to be made or disseminated through California and the United

23

COMPLAINT

1   States, through advertising, marketing and other publications, statements that were untrue or

2   misleading, and which were known, or which by the exercise of reasonable care should have been

3   known to Defendants, to be untrue and misleading to consumers, including Plaintiffs and the

4   other Class members.

5   103.   Defendants have violated § 17500 because the misrepresentations and omissions

6   regarding the safety, reliability, and functionality of their Class Vehicles as set forth in this

7   Complaint were material and likely to deceive a reasonable consumer.

8   104.   Plaintiffs and the other Class members have suffered an injury in fact, including

9   the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive

10   practices. In purchasing or leasing their Class Vehicles, Plaintiffs and the other Class members

11   relied on the misrepresentations and/or omissions of Defendants with respect to the safety and

12   reliability of the Class Vehicles. Defendants' representations turned out not to be true because the

13   Class Vehicles are distributed with faulty and defective in-car communication and entertainment

14   systems, rendering certain safety, communication, navigational, and entertainment functions

15   inoperative.   Had Plaintiffs and the other Class members known this, they would not have

16   purchased or leased their Class Vehicles and/or paid as much for them.   Accordingly, Plaintiffs

17   and the other Class members overpaid for their Class Vehicles and did not receive the benefit of

18   their bargain.

19   105.   All of the wrongful conduct alleged herein occurred, and continues to occur, in

20   the conduct of Defendants' business.   Defendants' wrongful conduct is part of a pattern or

21   generalized course of conduct that is still perpetuated and repeated, both in the State of California

22   and nationwide.

23   106.   Plaintiffs, individually and on behalf of the other Class members, request that this

24   Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing

25   their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and the other Class

26   members any money Defendants acquired by unfair competition, including restitution and/or

27   restitutionary disgorgement, and for such other relief set forth below.

28

24

COMPLAINT

## COUNT V

### Breach of Implied Warranty of Merchantability
### (California Commercial Code Section 2314)

107.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

108.     Plaintiffs bring this Count on behalf of the California Class.

109.     Defendants are and were at all relevant times merchants with respect to motor vehicles under Cal. Com. Code § 2104.

110.     A warranty that the Class Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

111.     These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that there are defects in the CAN buses; and the CAN buses were not adequately designed, manufactured, and tested.

112.     Defendants were provided notice of these issues by research studies, and by this Complaint, before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

113.     Plaintiffs and the other Class members have had sufficient direct dealings with either Defendants or their agents (dealerships) to establish privity of contract between Plaintiffs and the other Class members.  Notwithstanding this, privity is not required in this case because Plaintiffs and the other Class members are intended third-party beneficiaries of contracts between Defendants and their dealers; specifically, they are the intended beneficiaries of Defendants' implied warranties.  The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

114.     Finally, privity is also not required because Plaintiffs' and the other Class members' Class Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

COMPLAINT

115.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

**COUNT VI**

**Breach of Contract/Common Law Warranty**
**(Based on California Law)**

116.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

117.     Plaintiffs bring this Count on behalf of the California Class.

118.     To the extent Defendants' limited remedies are deemed not to be warranties under California's Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law.  Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

119.     Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles evidencing faulty and defective CAN buses, or to replace them.

120.     As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT VII**

**Fraud by Concealment**
**(Based on California Law)**

121.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

122.     Plaintiffs bring this Count on behalf of the California Class.

26

COMPLAINT

123.     As set forth above, Defendants concealed and/or suppressed material facts concerning the safety, quality, functionality, and reliability of their Class Vehicles.

124.     Defendants had a duty to disclose these safety, quality, functionality, and reliability issues because they consistently marketed their Class Vehicles as safe and proclaimed that safety is one of Defendants' highest corporate priorities.   Once Defendants made representations to the public about safety, quality, functionality, and reliability, Defendants were under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.   One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

125.     In addition, Defendants had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendants which has superior knowledge and access to the facts, and Defendants knew they were not known to or reasonably discoverable by Plaintiffs and the other Class members.   These omitted facts were material because they directly impact the safety, quality, functionality, and reliability of the Class Vehicles.

126.     Whether or not a vehicle is susceptible to hacking as a result of the defect alleged herein is a material safety concern.   Defendants possessed exclusive knowledge of the defect rendering the Class Vehicles inherently more dangerous and unreliable than similar vehicles.

127.     Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs and the other Class members to purchase or lease Class Vehicles at a higher price for the Class Vehicles, which did not match the Class Vehicles' true value.

128.     Defendants still have not made full and adequate disclosure and continues to defraud Plaintiffs and the other Class members.

129.     Plaintiffs and the other Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' and the other Class members' actions were justified.   Defendants were in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Class.

COMPLAINT

130.     As a result of the concealment and/or suppression of the facts, Plaintiffs and the other Class members sustained damage.

131.     Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the other Class members' rights and well-being to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT VIII

**Violation of Song-Beverly Consumer Warranty Act for Breach of Express Warranties
(California Civil Code Sections 1791.2 & 1793.2(d))**

132.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

133.     Plaintiffs bring this Count on behalf of the California Class.

134.     Plaintiffs and the other Class members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

135.     The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

136.     Defendants are "manufacturers" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

137.     Plaintiffs and the other Class members bought/leased new motor vehicles manufactured by Defendants.

138.     Defendants made express warranties to Plaintiffs and the other Class members within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2, as described above.

139.     In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicles' Warranty booklets:

28

COMPLAINT

1.      Toyota's warranty

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. . . .  Coverage is for 36 months or 36,000 miles, whichever occurs first. . . .

2.      Ford's warranty

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service. . . .

*QUICK REFFERENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years – unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods. . . .

3.      GM's warranty

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first. . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

29

COMPLAINT

140.    As set forth above in detail, the Class Vehicles are inherently defective in that there are defects in the Class Vehicles' CAN buses that render the vehicles susceptible to hacking and thus dangerous, defects that were and continue to be covered by Defendants' express warranties, and these defects substantially impair the use, value, and safety of Defendants' Class Vehicles to reasonable consumers like Plaintiffs and the other Class members.

141.    Defendants did not promptly replace or buy back the Class Vehicles of Plaintiffs and the other Class members.

142.    As a result of Defendants' breach of their express warranties, Plaintiffs and the other Class members received goods whose dangerous condition substantially impairs their value to Plaintiffs and the other Class members. Plaintiffs and the other Class members have been damaged as a result of the diminished value of Defendants' products, the products' malfunctioning, and the nonuse of their Class Vehicles.

143.    Pursuant to Cal. Civ. Code §§ 1793.2 & 1794, Plaintiffs and the other Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

144.    Pursuant to Cal. Civ. Code § 1794, Plaintiffs and the other Class members are entitled to costs and attorneys' fees.

## COUNT IX

**Violation of Song-Beverly Consumer Warranty Act for**
**Breach of Implied Warranty of Merchantability**
**(California Civil Code Sections 1791.1 and 1792)**

145.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

146.    Plaintiffs bring this Count on behalf of the California Class.

147.    Plaintiffs and the other Class members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

30

COMPLAINT

148.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

149.    Defendants are "manufacturers" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

150.    Defendants impliedly warranted to Plaintiffs and the other Class members that their Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792, however, the Class Vehicles do not have the quality that a buyer would reasonably expect.

151.    Cal. Civ. Code § 1791.1(a) states:

> "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:
>
> a.   Pass without objection in the trade under the contract description.
>
> b.   Are fit for the ordinary purposes for which such goods are used.
>
> c.   Are adequately contained, packaged, and labeled.
>
> d.   Conform to the promises or affirmations of fact made on the container or label.

152.    The Class Vehicles would not pass without objection in the automotive trade because of the defects in the Class Vehicles' CAN buses that cause crucial functions of the Class Vehicles to be susceptible to hacking.

153.    Because of the defects in the Class Vehicles' CAN buses that cause crucial functions of the Class Vehicles to be susceptible to hacking, they are not safe to drive and thus not fit for ordinary purposes.

154.    The Class Vehicles are not adequately labeled because the labeling fails to disclose the defects in the Class Vehicles' CAN buses that cause crucial functions of the Class Vehicles to be susceptible to hacking.

155.    Defendants breached the implied warranty of merchantability by manufacturing and selling Class Vehicles containing defects associated with the CAN buses. Furthermore, these defects have caused Plaintiffs and the other Class members to not receive the benefit of their bargain and have caused Class Vehicles to depreciate in value.

156.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the other Class members received goods whose dangerous and

COMPLAINT

dysfunctional condition substantially impairs their value to Plaintiffs and the other Class members.

157.    Plaintiffs and the other Class members have been damaged as a result of the diminished value of Defendants' products, the products' malfunctioning, and the nonuse of their Class Vehicles.

158.    Pursuant to Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs and the other Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

159.    Pursuant to Cal. Civ. Code § 1794, Plaintiffs and the other Class members are entitled to costs and attorneys' fees.

## Claims Brought on Behalf of the Alabama Class

## COUNT X

### Breach of Express Warranty
### (Alabama Code Section 7-2-313)

160.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

161.    Plaintiffs bring this Count on behalf of the Alabama Class.

162.    Defendants are and were at all relevant times merchants with respect to motor vehicles under Ala. Code § 7-2-104.

163.    In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicles' Warranty booklets:

1.    Toyota's warranty

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

COMPLAINT

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. . . .  Coverage is for 36 months or 36,000 miles, whichever occurs first. . . .

    2.      <u>Ford's warranty</u>

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service. . . .

*QUICK REFFERENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years – unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods. . . .

    3.      <u>GM's warranty</u>

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first. . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

    164.      Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

33

COMPLAINT

165.     Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

166.     In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

167.     These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websitess, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized' representatives. These affirmations and promises were part of the basis of the bargain between the parties.

168.     These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable (and remained so even after the problems were acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees. Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles conforming to these express warranties.

169.     Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

170.     Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

171.     Also, as alleged in more detail herein, at the time that Defendants warranted and sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and

34

COMPLAINT

were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

172.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Defendants' fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

173.     Finally, due to Defendants' breach of warranties as set forth herein, Plaintiffs and the other Class members assert as an additional and/or alternative remedy, as set forth in Ala. Code § 7-2- 711, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Class members of the purchase price of all Class Vehicles currently owned and for such other incidental and consequential damages as allowed under Ala. Code §§ 7-2-711 and 7-2-608.

174.     Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

175.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT XI

### Breach of the Implied Warranty of Merchantability
### (Alabama Code Section 7-2-314)

176.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

177.     Plaintiffs bring this Count on behalf of the Alabama Class.

178.     Defendants are and were at all relevant times merchants with respect to motor vehicles under Ala. Code § 7-2-104.

35

179.     A warranty that the Class Vehicles were in merchantable condition was implied by law in the instant transactions, pursuant to Ala. Code § 7-2-314. These vehicles and the CAN buses in the Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which they are used. Specifically, the Class Vehicles are inherently defective in that there are defects in the CAN bus which prevent users from enjoying many features of the Class Vehicles they purchased and/or leased and that they paid for; and the CAN bus was not adequately tested.

180.     Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

181.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT XII

### Breach of Contract/Common Law Warranty
### (Based on Alabama Law)

182.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

183.     Plaintiffs bring this Count on behalf of the Alabama Class.

184.     To the extent Defendants' limited remedies are deemed not to be warranties under Alabama's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the Class to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs. Defendants breached this warranty or contract obligation by failing to repair the defective Class Vehicles, or to replace them.

185.     As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

36

COMPLAINT

## COUNT XIII

### Fraudulent Concealment
### (Based On Alabama Law)

186.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

187.     Plaintiffs bring this Count on behalf of the Alabama Class.

188.     Defendants intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

189.     Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

190.     Defendants knew these representations were false when made.

191.     The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective CAN buses, as alleged herein.

192.     Defendants had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other Class members relied on Defendants' material representations that the Class Vehicles they were purchasing were safe and free from defects.

193.     The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

194.     The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants knew or recklessly disregarded that their representations were false because it knew that the CAN

37

buses were susceptible to hacking. Defendants intentionally made the false statements in order to sell Class Vehicles.

195.    Plaintiffs and the other Class members relied on Defendants' reputation – along with Defendants' failure to disclose the faulty and defective nature of the CAN buses and Defendants' affirmative assurance that their Class Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Defendants' Class Vehicles.

196.    As a result of their reliance, Plaintiffs and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Class Vehicles.

197.    Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members.

198.    Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

## COUNT XIV

### Violation of Alabama Deceptive Trade Practices Act
### (Alabama Code Sections 8-19-1, *et seq.*)

199.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

200.    The conduct of Defendants, as set forth herein, constitutes unfair or deceptive acts or practices, including but not limited to, Defendants' manufacture and sale of vehicles with CAN buses susceptible to hacking, which Defendants failed to adequately investigate, disclose and remedy, and their misrepresentations and omissions regarding the safety and reliability of their vehicles.

201.    Defendants' actions, as set forth above, occurred in the conduct of trade or commerce.

COMPLAINT

202.     Defendants' actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Defendants vehicles as a result of Defendants' generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business.

203.     Plaintiffs and the Class were injured as a result of Defendants' conduct. Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

204.     Defendants' conduct proximately caused the injuries to Plaintiffs and the Class.

205.     Defendants are liable to Plaintiffs and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

206.     Pursuant to Ala. Code § 8-19-8, Plaintiffs will serve the Alabama Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

**Claims Brought on Behalf of the Alaska Class**

**<u>COUNT XV</u>**

**Violation of the Alaska Unfair Trade Practices and Consumer Protection Act
<u>(Alaska Statutes Sections 45.50.471, *et seq*.)</u>**

207.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

208.     The Alaska Unfair Trade Practices And Consumer Protection Act ("AUTPCPA") declares unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful, including: "(4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have"; "(6) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; "(8) advertising goods or services with intent not to sell them as advertised"; "(12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission

39

COMPLAINT

in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged"; and "(14) representing that an agreement confers or involves rights, remedies, or obligations which it does not confer or involve, or which are prohibited by law." Alaska Stat. § 45.50.471.

209.     In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risk of hacking as described above. Accordingly, Defendants engaged in unlawful trade practices, including representing that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Defective Vehicles are of a particular standard and quality when they are not; advertising the Defective Vehicles with the intent not to sell them as advertised; omitting material facts in describing the Defective Vehicles; and representing that their warranties confers or involves rights, remedies, or obligations which it does not confer or involve, or which are prohibited by law.

210.     Defendants' misrepresentations and omissions described herein have the capacity or tendency to deceive. As a result of these unlawful trade practices, Plaintiffs have suffered ascertainable loss.

211.     Plaintiffs and the Class suffered ascertainable loss caused by Defendants' failure to disclose material information. Plaintiffs and the Class overpaid for their vehicles and did not receive the benefit of their bargain. The value of their vehicles has diminished now that the safety issues have come to light, and Plaintiffs and the Class own vehicles that are not safe.

212.     Plaintiffs are entitled to recover the greater of three times the actual damages or $500, pursuant to § 45.50.531(a). Attorneys' fees may also be awarded to the prevailing party pursuant to § 45.50.531(g).

## COUNT XVI

### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Alaska Statutes Section 45.02.314)

213.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

40

COMPLAINT

214.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

215.     A warranty that the Defective Vehicles were in merchantable condition is implied by law in the instant transactions.

216.     These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. As set forth above in detail, the Defective Vehicles are inherently defective in that the CAN buses are susceptible to hacking.

217.     Defendants were provided notice of these issues by numerous means, including the instant complaint, and by numerous communications before or within a reasonable amount of time after the allegations of vehicle defects became public.

218.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

Claims Brought on Behalf of the Arizona Class

## COUNT XVII

**Violations of the Consumer Fraud Act**
**(Arizona Revised Statutes Sections 44-1521, e*t seq*.)**

219.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

220.     Plaintiffs bring this Count on behalf of the Arizona Class.

221.     Plaintiffs and Defendants are each "persons" as defined by Ariz. Rev. Stat. § 44-1521(6). The Class Vehicles are "merchandise" as defined by Ariz. Rev. Stat. § 44-1521(5).

222.     The Arizona Consumer Fraud Act proscribes "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby." Ariz. Rev. Stat. § 44-1522(A).

41

COMPLAINT

223.     By failing to disclose and actively concealing the defects in the Class Vehicles, Defendants engaged in deceptive business practices prohibited by the Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522(A), including (1) representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Class Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Class Vehicles with the intent not to sell them as advertised, and (4) engaging in acts or practices which are otherwise unfair, misleading, false, or deceptive to the consumer.

224.     As alleged above, Defendants made numerous material statements about the benefits and characteristics of the CAN bus that were either false or misleading. Each of these statements contributed to the deceptive context of Defendants' unlawful advertising and representations as a whole.

225.     Defendants knew that the CAN buses in the Class Vehicles were defectively designed or manufactured, would fail without warning, and were not suitable for their intended use. Defendants nevertheless failed to warn Plaintiffs about these defects despite having a duty to do so.

226.     Defendants owed Plaintiffs a duty to disclose the defective nature of the CAN buses in the Class Vehicles, because Defendants:

a)     Possessed exclusive knowledge of the defects rendering the Class Vehicles more unreliable than similar vehicles;

b)     Intentionally concealed the defects through their deceptive marketing campaign that it designed to hide the defects in the CAN bus; and/or

c)     Made incomplete representations about the characteristics and performance of the CAN bus generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

227.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true performance and characteristics of the CAN bus.

COMPLAINT

228.     As a result of their violations of the Arizona Consumer Fraud Act detailed above, Defendants caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs. Plaintiffs currently own or lease, or within the class period has owned or leased, a Class Vehicle that is defective. Defects associated with the CAN bus have caused the value of Class Vehicles to decrease.

229.     Plaintiffs and the Class sustained damages as a result of the Defendants' unlawful acts and are, therefore, entitled to damages and other relief as provided under the Arizona Consumer Fraud Act.

230.     Plaintiffs also seeks court costs and attorneys' fees as a result of Defendants' violation of the Arizona Consumer Fraud Act as provided in Ariz. Rev. Stat. § 12-341.01.

<div align="center">

**COUNT XVIII**

**Breach of Express Warranty**
**(Arizona Revised Statutes Section 47-2313)**

</div>

231.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

232.     Plaintiffs bring this Count on behalf of the Arizona Class.

233.     Defendants are and were at all relevant times merchants with respect to motor vehicles under Ariz. Rev. Stat. § 47-2104(A).

234.     In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

1.     Toyota's warranty

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

43

COMPLAINT

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first. . . .

    2.    <u>Ford's warranty</u>

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service. . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years – unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods. . . .

    3.    <u>GM's warranty</u>

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first. . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

    235.    Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

    236.    Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and

44

workmanship defects.

237.     In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

238.     These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives. These affirmations and promises were part of the basis of the bargain between the parties.

239.     These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable (and remained so even after the problems were acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees. Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles conforming to these express warranties.

240.     Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

241.     Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class  members, seek all remedies as allowed by law.

242.     Also, as alleged in more detail herein, at the time that Defendants warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent

45

1    pretenses.

2    243.    Moreover, many of the injuries flowing from the Class Vehicles cannot be

3    resolved through the limited remedy of "replacement or adjustments," as many incidental and

4    consequential damages have already been suffered due to Defendants' fraudulent conduct as

5    alleged herein, and due to their failure and/or continued failure to provide such limited remedy

6    within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies

7    would be insufficient to make Plaintiffs and the other Class members whole.

8    244.    Finally, due to Defendants' breach of warranties as set forth herein, Plaintiffs and

9    the other Class members assert as an additional and/or alternative remedy, as set forth in Ariz.

10   Rev. Stat. § 47-2711, for a revocation of acceptance of the goods, and for a return to Plaintiffs and

11   to the other Class members of the purchase price of all Class Vehicles currently owned and for

12   such other incidental and consequential damages as allowed under Ariz. Rev. Stat. §§ 47-2711

13   and 47-2608.

14   245.    Defendants were provided notice of these issues by the instant Complaint, and by

15   other means before or within a reasonable amount of time after the allegations of Class Vehicle

16   defects became public.

17   246.    As a direct and proximate result of Defendants' breach of express warranties,

18   Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

19                          **COUNT XIX**

20              **Breach of the Implied Warranty of Merchantability**
                **(Arizona Revised Statutes Section 47-2314)**
21

22   247.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

23   forth herein.

24   248.    Plaintiffs bring this Count on behalf of the Arizona Class.

25   249.    Defendants are and were at all relevant times merchants with respect to motor

26   vehicles under Ariz. Rev. Stat. § 47-2014.

27   250.    A warranty that the Class Vehicles were in merchantable condition was implied

28   by law in the instant transactions, pursuant to Ariz. Rev. Stat. § 47-2314. These vehicles and the

                                                                                          46

COMPLAINT

CAN buses in the Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which they are used. Specifically, the Class Vehicles are inherently defective in that there are defects in the CAN buses which prevent users from enjoying many features of the Class Vehicles they purchased and/or leased and that they paid for; and the CAN bus was not adequately tested.

251.     Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

252.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

<div align="center">

**COUNT XX**

**Breach of Contract/Common Law Warranty**
**(Based on Arizona Law)**

</div>

253.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

254.     Plaintiffs bring this Count on behalf of the Arizona Class.

255.     To the extent Defendants' limited remedies are deemed not to be warranties under the Uniform Commercial Code as adopted in Arizona, Plaintiffs plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the Class to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs. Defendants breached this warranty or contract obligation by failing to repair the defective Class Vehicles, or to replace them.

256.     As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

COMPLAINT

## COUNT XXI

### Fraudulent Concealment
### (Based on Arizona Law)

257.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

258.     Plaintiffs bring this Count on behalf of the Arizona Class.

259.     Defendants intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

260.     Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

261.     Defendants knew these representations were false when made.

262.     The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective CAN buss, as alleged herein.

263.     Defendants had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other Class members relied on Defendants' material representations that the Class Vehicles they were purchasing were safe and free from defects.

264.     The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

265.     The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants knew or recklessly disregarded that their representations were false because they knew that the

48

COMPLAINT

CAN buses were susceptible to hacking. Defendants intentionally made the false statements in order to sell Class Vehicles.

266.    Plaintiffs and the other Class members relied on Defendants' reputation – along with Defendants' failure to disclose the faulty and defective nature of the CAN buses and Defendants' affirmative assurance that their Class Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Defendants' Class Vehicles.

267.    As a result of their reliance, Plaintiffs and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Class Vehicles.

268.    Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members.

269.    Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

### Claims Brought on Behalf of the Arkansas Class

### COUNT XXII

### Breach of Implied Warranty of Merchantability
### (Arkansas Code Annotated Section 4-2-314)

270.    Plaintiffs incorporate the allegations set forth above as is fully set forth herein.

271.    In their manufacture and sale of the Defective Vehicles, Defendants impliedly warranted to Plaintiffs and the Class that their vehicles were in merchantable condition and fit for their ordinary purpose.

272.    These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. As set forth above in detail, the Defective Vehicles are inherently defective in that the CAN buses are susceptible to hacking.

49

COMPLAINT

273.     Under the Uniform Commercial Code there exists an implied warranty of merchantability.

274.     Defendants have breached the warranty of merchantability by having sold their automobiles with defects such that the vehicles were not fit for their ordinary purpose and Plaintiffs and the Class suffered damages as a result.

## COUNT XXIII

### Negligent Misrepresentation/Fraud
### (Arkansas Code Annotated Section 4-2-721)

275.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

276.     As set forth above, Defendants concealed and/or suppressed material facts concerning the safety of their vehicles.

277.     Defendants had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Defendants' highest corporate priorities. Once Defendants made representations to the public about safety, Defendants were under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

278.     In addition, Defendants had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendants who have superior knowledge and access to the facts, and Defendants knew they were not known to or reasonably discoverable by Plaintiffs and the Class. These omitted facts were material because they directly impact the safety of the Defective Vehicles. Whether or not a vehicle accelerates only at the driver's command, and whether a vehicle will stop or not upon application of the brake by the driver, are material safety concerns. Defendants possessed exclusive knowledge of the defects rendering the Defective Vehicles inherently more dangerous and unreliable than similar vehicles.

279.     Defendants actively concealed and/or suppressed these material facts, in whole or

50

COMPLAINT

in part, with the intent to induce Plaintiffs and the Class to purchase the Defective Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

280.     Defendants still have not made full and adequate disclosure and continue to defraud Plaintiffs and the Class.

281.     Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' and the Class' actions were justified. Defendants were in exclusive control of the material facts and such facts were not known to the public or the Class.

282.     As a result of the misrepresentation concealment and/or suppression of the facts, Plaintiffs and the Class sustained damage. For those Plaintiffs and the Class who elect to affirm the sale, these damages, pursuant to A.C.A. § 4-2-72, include the difference between the actual value of that which Plaintiffs and the Class paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits. For those Plaintiffs and the Class who want to rescind the purchase, then those Plaintiffs and the Class are entitled to restitution and consequential damages pursuant to A.C.A. § 4-2-72.

283.     Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class' rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### Claims Brought on Behalf of the Colorado Class

### COUNT XXIV

### Violations of the Colorado Consumer Protection Act
### (Colorado Revised Statutes Sections 6-1-101, *et seq.*)

284.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

285.     Plaintiffs bring this Count on behalf of the Colorado Class.

51

COMPLAINT

286.     Colorado's Consumer Protection Act (the "CCPA") prohibits a person from engaging in a "deceptive trade practice," which includes knowingly making "a false representation as to the source, sponsorship, approval, or certification of goods," or "a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods." Colo. Rev. Stat. § 6-1-105(1)(b), (e). The CCPA further prohibits "represent[ing] that goods … are of a particular standard, quality, or grade … if he knows or should know that they are of another," and "advertis[ing] goods . . . with intent not to sell them as advertised." Colo. Rev. Stat. § 6-1-105(1)(g),(i).

287.     Defendants are "persons" within the meaning of Colo. Rev. Stat. § 6-1-102(6).

288.     In the course of Defendants' business, they willfully misrepresented and failed to disclose, and actively concealed, the dangerous risk of CAN bus hacking in Class Vehicles as described above. Accordingly, Defendants engaged in unlawful trade practices, including representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard and quality when they are not; advertising Class Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

289.     Defendants' actions as set forth above occurred in the conduct of trade or commerce.

290.     Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

291.     Plaintiffs and the other Class members were injured as a result of Defendants' conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

52

COMPLAINT

## COUNT XXV

### Strict Product Liability
### (Based on Colorado Law)

292.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

293.     Plaintiffs bring this Count on behalf of the Colorado Class.

294.     Colorado law recognizes an action for product defects that complements Colorado's Product Liability Statute, Colo. Rev. Stat. Title 13, Article 21, Part 4.

295.     Defendants are "manufacturers" and "sellers" of the Class Vehicles within the meaning of Colo. Rev. Stat. § 13-21-401(1).

296.     Defendants manufactured and sold the Class Vehicles in a defective condition and in a condition that was unreasonably dangerous to drivers, other motorists, pedestrians, and others or to their property, including persons who may reasonably be expected to use, consume, or be affected by them, in at least the following respects: (i) the Class Vehicles were defectively designed, assembled, fabricated, produced, and constructed in that they were susceptible to hacking and dysfunction of crucial safety functions; and (ii) the Class Vehicles were not accompanied by adequate warnings about their defective nature.

297.     The Class Vehicles were defective and unreasonably dangerous at the time they were sold by Defendants and were intended to and did reach Plaintiffs and the other Class Members in substantially the same condition as they were in when they were manufactured, sold, and left the control of Defendants.

298.     Plaintiffs and the other Class members are persons who were reasonably expected to use, consume, or be affected by the Class Vehicles.

299.     As a direct and proximate result of the defective and unreasonably dangerous conditions of the Class Vehicles, Plaintiffs and the other Class members have suffered damages.

COMPLAINT

## COUNT XXVI

### Breach of Express Warranty
### (Colorado Revised Statutes Sections 4-2-313)

300.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

301.     Plaintiffs bring this Count on behalf of the Colorado Class.

302.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

303.     In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicles' Warranty booklets:

1.     Toyota's warranty

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

2.     Ford's warranty

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

54

COMPLAINT

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

3.      GM's warranty

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

304.     Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

305.     Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

306.     In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

307.     These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives.

55

COMPLAINT

1    These affirmations and promises were part of the basis of the bargain between the parties.

2        308.    These additional warranties were also breached because the Class Vehicles were

3    not fully operational, safe, or reliable (and remained so even after the problems were

4    acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees.

5    Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles

6    conforming to these express warranties.

7        309.    Furthermore, the limited warranty of repair and/or adjustments to defective parts,

8    fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and

9    the other Class members whole and because Defendants have failed and/or have refused to

10   adequately provide the promised remedies within a reasonable time.

11       310.    Accordingly, recovery by Plaintiffs and the other Class members is not limited to

12   the limited warranty of repair or adjustments to parts defective in materials or workmanship, and

13   Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by

14   law.

15       311.    Also, as alleged in more detail herein, at the time that Defendants warranted and

16   sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and

17   were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or

18   concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members

19   were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent

20   pretenses.

21       312.    Moreover, many of the injuries flowing from the Class Vehicles cannot be

22   resolved through the limited remedy of "replacement or adjustments," as many incidental and

23   consequential damages have already been suffered due to Defendants' fraudulent conduct as

24   alleged herein, and due to their failure and/or continued failure to provide such limited remedy

25   within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies

26   would be insufficient to make Plaintiffs and the other Class members whole.

27       313.    Finally, due to Defendants' breach of warranties as set forth herein, Plaintiffs and

28   the other Class members assert as an additional and/or alternative remedy, as set forth in Colo.

56

Rev. Stat. § 4-2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed under Colo. Rev. Stat. §§ 4-2-711 and 4-2-608.

314.     Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

315.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT XXVII

### Breach of Implied Warranty of Merchantability
### (Colorado Revised Statutes Sections 4-2-314)

316.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

317.     Plaintiffs bring this Count on behalf of the Colorado Class.

318.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

319.     A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

320.     These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

321.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

COMPLAINT

## COUNT XXVIII

### Breach of Contract/Common Law Warranty
### (Based on Colorado Law)

322.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

323.     Plaintiffs bring this Count on behalf of the Colorado Class.

324.     To the extent Defendants' limited remedies are deemed not to be warranties under Colorado's Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

325.     Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles evidencing a faulty and defective CAN bus, or to replace them.

326.     As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT XXIX

### Fraudulent Concealment
### (Based on Colorado Law)

327.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

328.     Plaintiffs bring this Count on behalf of the Colorado Class.

329.     Defendants intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

330.     Defendants further affirmatively misrepresented to Plaintiffs in advertising and

58

COMPLAINT

other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

331.     Defendants knew these representations were false when made.

332.     The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective CAN buses, as alleged herein.

333.     Defendants had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other Class members relied on Defendants' material representations that the Class Vehicles they were purchasing were safe and free from defects.

334.     The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

335.     The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants knew or recklessly disregarded that their representations were false because they knew the CAN buses were susceptible to hacking. Defendants intentionally made the false statements in order to sell Class Vehicles.

336.     Plaintiffs and the other Class members relied on Defendants' reputations – along with Defendants' failure to disclose the faulty and defective nature of the CAN bus and Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Defendants' Class Vehicles.

337.     As a result of their reliance, Plaintiffs and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Class Vehicles.

59

COMPLAINT

338.     Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members.

339.     Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

## Claims Brought on Behalf of the Connecticut Class

## COUNT XXX

### Violations of the Unfair Trade Practices Act
### (Connecticut General Statutes Annotated Sections 42-110A, *et seq.*)

340.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

341.     Plaintiffs bring this Count on behalf of the Connecticut Class.

342.     Plaintiffs and Defendants are each "persons" as defined by Conn. Gen. Stat. Ann. § 42-110a(3).

343.     The Connecticut Unfair Trade Practices Act ("CUTPA") provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. § 42-110b(a). The CUTPA further provides a private right of action under Conn. Gen. Stat. Ann. § 42-110g(a).

344.     By failing to disclose and actively concealing the defects in the Class Vehicles, Defendants engaged in deceptive business practices prohibited by the CUTPA, including (1) representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Class Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Class Vehicles with the intent not to sell them as advertised, and (4) engaging in acts or practices which are otherwise unfair, misleading, false, or deceptive to the consumer.

345.     As alleged above, Defendants made numerous material statements about the benefits and characteristics of the Class Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Defendants' unlawful advertising and

60

1   representations as a whole.

2       346.    Defendants knew that the CAN buses in the Class Vehicles were defectively

3   designed or manufactured, were susceptible to hacking, and were not suitable for their intended

4   use. Defendants nevertheless failed to warn Plaintiffs about these defects despite having a duty to

5   do so.

6       347.    Defendants owed Plaintiffs a duty to disclose the defective nature of the CAN

7   buses in the Class Vehicles, because Defendants:

8               a)    Possessed exclusive knowledge of the defects rendering the Class

9   Vehicles more unreliable than similar vehicles;

10              b)    Intentionally concealed the defects associated with the CAN buses through

11  their deceptive marketing campaign that they designed to hide the defects; and/or

12              c)    Made incomplete representations about the characteristics and

13  performance of the Class Vehicles generally, while purposefully withholding material facts from

14  Plaintiffs that contradicted these representations.

15      348.    Defendants' unfair or deceptive acts or practices were likely to and did in fact

16  deceive reasonable consumers, including Plaintiffs, about the true performance and characteristics

17  of the Class Vehicles.

18      349.    As a result of their violations of the CUTPA detailed above, Defendants caused

19  actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs.  Plaintiffs

20  currently own or lease, or within the class period have owned or leased, a Class Vehicle that is

21  defective. Defects associated with the CAN bus have caused the value of Class Vehicles to

22  decrease.

23      350.    Plaintiffs and the Class sustained damages as a result of the Defendants' unlawful

24  acts and are, therefore, entitled to damages and other relief as provided under the CUTPA.

25      351.    Plaintiffs also seeks court costs and attorneys' fees as a result of Defendants'

26  violation of the CUTPA as provided in Conn. Gen. Stat. Ann. § 42-110g(d). A copy of this

27  Complaint has been mailed to the Attorney General and the Commissioner of Consumer

28  Protection of the State of Connecticut in accordance with Conn. Gen. Stat. Ann. § 42-110g(c).

COMPLAINT

## COUNT XXXI

### Breach of Express Warranty
### (Connecticut General Statutes Annotated Section 42A-2-313)

352.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

353.     Plaintiffs bring this Count on behalf of the Connecticut Class.

354.     Defendants are and were at all relevant times merchants with respect to motor vehicles under Conn. Gen. Stat. Ann. § 42a-2-104(1).

355.     In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

1.     Toyota's warranty

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

2.     Ford's warranty

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

62

COMPLAINT

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

3.       GM's warranty

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

356.       Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

357.       Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

358.       In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

359.       These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives.

63

COMPLAINT

1    These affirmations and promises were part of the basis of the bargain between the parties.

2        360.     These additional warranties were also breached because the Class Vehicles were

3    not fully operational, safe, or reliable (and remained so even after the problems were

4    acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees.

5    Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles

6    conforming to these express warranties.

7        361.     Furthermore, the limited warranty of repair and/or adjustments to defective parts,

8    fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and

9    the other Class members whole and because Defendants have failed and/or have refused to

10   adequately provide the promised remedies within a reasonable time.

11       362.     Accordingly, recovery by Plaintiffs and the other Class members is not limited to

12   the limited warranty of repair or adjustments to parts defective in materials or workmanship, and

13   Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by

14   law.

15       363.     Also, as alleged in more detail herein, at the time that Defendants warranted and

16   sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and

17   were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or

18   concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members

19   were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent

20   pretenses.

21       364.     Moreover, many of the injuries flowing from the Class Vehicles cannot be

22   resolved through the limited remedy of "replacement or adjustments," as many incidental and

23   consequential damages have already been suffered due to Defendants' fraudulent conduct as

24   alleged herein, and due to their failure and/or continued failure to provide such limited remedy

25   within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies

26   would be insufficient to make Plaintiffs and the other Class members whole.

27       365.     Finally, due to Defendants' breach of warranties as set forth herein, Plaintiffs and

28   the other Class members assert as an additional and/or alternative remedy, as set forth in Conn.

64

COMPLAINT

Gen. Stat. Ann. § 42a-2-711, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Class members of the purchase price of all Class Vehicles currently owned and for such other incidental and consequential damages as allowed under Conn. Gen. Stat. Ann. §§ 42a-2-711 and 42a-2-608.

366.     Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

367.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT XXXII

### Breach of the Implied Warranty of Merchantability
### (Connecticut General Statutes Annotated Section 42A-2-314)

368.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

369.     Plaintiffs bring this Count on behalf of the Connecticut Class.

370.     Defendants are and were at all relevant times merchants with respect to motor vehicles under Conn. Gen. Stat. Ann. § 42a-2-104(1).

371.     A warranty that the Class Vehicles were in merchantable condition was implied by law in the instant transactions, pursuant to Conn. Gen. Stat. Ann. § 42a-2-314. These vehicles and the CAN buses in the Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which they are used. Specifically, the Class Vehicles are inherently defective in that there are defects in the CAN buses which prevent users from enjoying many features of the Class Vehicles they purchased and/or leased and that they paid for; and the CAN bus was not adequately tested.

372.     Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

373.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

65

COMPLAINT

**COUNT XXXIII**

**Breach of Contract/Common Law Warranty**
**(Based on Connecticut Law)**

374.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

375.     Plaintiffs bring this Count on behalf of the Connecticut Class.

376.     To the extent Defendants' limited remedies are deemed not to be warranties under the Uniform Commercial Code as adopted in Connecticut, Plaintiffs plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the Class to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs. Defendants breached this warranty or contract obligation by failing to repair the defective Class Vehicles, or to replace them.

377.     As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT XIV**

**Fraudulent Concealment**
**(Based on Connecticut Law)**

378.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

379.     Plaintiffs bring this Count on behalf of the Connecticut Class.

380.     Defendants intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

381.     Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car,

66

COMPLAINT

that the Class Vehicles they were selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

382.     Defendants knew these representations were false when made.

383.     The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective CAN buses, as alleged herein.

384.     Defendants had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other Class members relied on Defendants' material representations that the Class Vehicles they were purchasing were safe and free from defects.

385.     The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

386.     The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants knew or recklessly disregarded that their representations were false because they knew that the CAN buses were susceptible to hacking. Defendants intentionally made the false statements in order to sell Class Vehicles.

387.     Plaintiffs and the other Class members relied on Defendants' reputation – along with Defendants' failure to disclose the faulty and defective nature of the CAN buses and Defendants' affirmative assurance that their Class Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Defendants' Class Vehicles.

388.     As a result of their reliance, Plaintiffs and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Class Vehicles.

389.     Defendants' conduct was knowing, intentional, with malice, demonstrated a

67

COMPLAINT

complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members.

390.     Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

### Claims Brought on Behalf of the Delaware Class

### COUNT XXXV

### Violation of the Delaware Consumer Fraud Act
### (6 Delaware Code Sections 2513, *et seq.*)

391.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

392.     The Delaware Consumer Fraud Act ("CFA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby." 6 Del. Code § 2513(a).

393.     Defendants are persons with the meaning of 6 Del. Code § 2511(7).

394.     As described herein Defendants made false representations regarding the safety and reliability of their vehicles and concealed important facts regarding the susceptibility of their vehicles to hacking. Defendants intended that others rely on these misrepresentations and omissions in connection with the sale and lease of their vehicles.

395.     Defendants' actions as set forth above occurred in the conduct of trade or commerce.

396.     Defendants' conduct proximately caused injuries to Plaintiffs and the Class.

397.     Plaintiffs and the Class were injured as a result of Defendants' conduct in that Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

68

COMPLAINT

398.     Plaintiffs are entitled to recover damages, as well as punitive damages for Defendants' gross and aggravated misconduct.

## COUNT XXXVI

### Violation of the Delaware Deceptive Trade Practices Act
### (6 Delaware Code Sections 2532, *et seq.*)

399.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

400.     Delaware's Deceptive Trade Practices Act ("DTPA") prohibits a person from engaging in a "deceptive trade practice," which includes: "(5) Represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have"; "(7) Represent[ing] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; "(9) Advertis[ing] goods or services with intent not to sell them as advertised"; or "(12) Engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

401.     Defendants are persons with the meaning of 6 Del. Code § 2531(5).

402.     In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risk of the Defective Vehicles being hacked as described above. Accordingly, Defendants engaged in unlawful trade practices, including representing that Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Defective Vehicles are of a particular standard and quality when they are not; advertising Defective Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

403.     Defendants' actions as set forth above occurred in the conduct of trade or commerce.

404.     Defendants' conduct proximately caused injuries to Plaintiffs and the Class.

405.     Plaintiffs and the Class were injured as a result of Defendants' conduct in that

69

Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

406.     Plaintiffs seek injunctive relief and, if awarded damages under Delaware common law or Delaware Consumer Fraud Act, treble damages pursuant to 6 Del. Code § 2533(c).

407.     Plaintiffs also seek punitive damages based on the outrageousness and recklessness of Defendants' conduct and their high net worth.

<u>**COUNT XXXVII**</u>

**Breach of Express Warranty**
**<u>(6 Delaware Code Section 2-313)</u>**

408.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

409.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

410.     In the course of selling their vehicles, Defendants expressly warranted in writing that the Vehicles were covered by a Basic Warranty.

411.     Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Vehicles' materials and workmanship defects.

412.     In addition to this Basic Warranty, Defendants expressly warranted several attributes, characteristics and qualities.  These affirmations and promises were part of the basis of the bargain between the parties.

413.     These additional warranties were also breached because the Defective Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees. Defendants did not provide at the time of sale, and have not provided since then, vehicles conforming to these express warranties.

414.     Furthermore, the limited warranty of repair and/or adjustments to defective parts

70

COMPLAINT

1  fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs

2  and the Class whole and because the Defendants have failed and/or have refused to adequately

3  provide the promised remedies within a reasonable time.

4      415.     Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of

5  repair or adjustments to parts defective in materials or workmanship, and Plaintiffs seek all

6  remedies as allowed by law.

7      416.     Also, as alleged in more detail herein, at the time that Defendants warranted and

8  sold the vehicles they knew that the vehicles did not conform to the warranties and were

9  inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or

10 concealed material facts regarding their vehicles. Plaintiffs and the Class were therefore induced

11 to purchase the vehicles under false and/or fraudulent pretenses.

12     417.     Moreover, many of the damages flowing from the Defective Vehicles cannot be

13 resolved through the limited remedy of "replacement or adjustments," as those incidental and

14 consequential damages have already been suffered due to Defendants' fraudulent conduct as

15 alleged herein, and due to their failure and/or continued failure to provide such limited remedy

16 within a reasonable time, and any limitation on Plaintiffs' and the Class' remedies would be

17 insufficient to make Plaintiffs and the Class whole.

18     418.     Finally, due to the Defendants' breach of warranties as set forth herein, Plaintiffs

19 and the Class assert as an additional and/or alternative remedy, as set forth in 6 Del. Code. § 2-

20 608, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of

21 the purchase price of all vehicles currently owned.

22     419.     Defendants were provided notice of these issues by the instant Complaint, and by

23 other means before or within a reasonable amount of time after the allegations of Class Vehicle

24 defects became public.

25     420.     As a direct and proximate result of Defendants' breach of express warranties,

26 Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

27

28

71

COMPLAINT

**COUNT XXXVIII**

**Breach of the Implied Warranty of Merchantability**
**(6 Delaware Code Section 2-314)**

421.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

422.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

423.     A warranty that the Defective Vehicles were in merchantable condition is implied by law in the instant transactions.

424.     These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. As set forth above in detail, the Defective Vehicles are inherently defective in that the CAN buses are susceptible to hacking.

425.     Defendants were provided notice of these issues by numerous means, including the instant complaint, and by numerous communications before or within a reasonable amount of time after the allegations of vehicle defects became public.

426.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**COUNT XXXIX**

**Breach of Contract/Common Law Warranty**
**(Based on Delaware Law)**

427.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

428.     To the extent Defendants' repair or adjust commitment is deemed not to be a warranty under Delaware's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the Class to just repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs.

COMPLAINT

429.     Defendants breached this warranty or contract obligation by failing to repair the Defective Vehicles, or to replace them.

430.     As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

<div align="center">

**Claims Brought on Behalf of the District of Columbia Class**

**COUNT XL**

**Violation of the Consumer Protection Procedures Act
(District of Columbia Code Sections 28-3901, *et seq.*)**

</div>

431.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

432.     Defendants are "persons" under D.C. Code § 28-3901(a)(1).

433.     Plaintiffs are "consumers," as defined by D.C. Code § 28-3901(1)(2), who purchased or leased one or more Defective Vehicles.

434.     Defendants all participated in unfair or deceptive acts or practices that violated the Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 28-3901, *et seq.*, as described above and below. Defendants each are directly liable for these violations of law. TMC also is liable for TMS's violations of the CPPA because TMS acts as TMC's general agent in the United States for purposes of sales and marketing.

435.     By failing to disclose and actively concealing the dangerous risk of hacking in Defective Vehicles equipped with CAN buses, Defendants engaged in unfair or deceptive practices prohibited by the CPPA, D.C. Code § 28-3901, *et seq.*, including (1) representing that Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Defective Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Defective Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving Defective Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction

COMPLAINT

involving Defective Vehicles has been supplied in accordance with a previous representation when it has not.

436.    Defendants' actions as set forth above occurred in the conduct of trade or commerce.

437.    Defendants' actions affect the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Defendants' vehicles as a result of Defendants' generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business.

438.    Plaintiffs and the Class suffered ascertainable loss as a result of Defendants' conduct. Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

439.    Defendants' conduct proximately caused the injuries to Plaintiffs and the Class.

440.    Defendants are liable to Plaintiffs and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

441.    Plaintiffs further allege that Defendants are liable for punitive damages under the CPPA as Defendants acted with a state of mind evincing malice or their equivalent.

## COUNT XLI

### BREACH OF EXPRESS WARRANTY
### (District of Columbia Code Section 28:2-313)

442.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

443.    Defendants are and were at all relevant times a seller with respect to motor vehicles.

444.    In the course of selling their vehicles, Defendants expressly warranted in writing that the Vehicles were covered by a Basic Warranty.

445.    Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Vehicles' materials and workmanship defects.

74

COMPLAINT

446.     In addition to this Basic Warranty, Defendants expressly warranted several attributes, characteristics and qualities.  These affirmations and promises were part of the basis of the bargain between the parties.

447.     These additional warranties were also breached because the Defective Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees. Defendants did not provide at the time of sale, and have not provided since then, vehicles conforming to these express warranties.

448.     Furthermore, the limited warranty of repair and/or adjustments to defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the Class whole and because the Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

449.     Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

450.     Also, as alleged in more detail herein, at the time that Defendants warranted and sold the vehicles they knew that the vehicles did not conform to the warranties and were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles. Plaintiffs and the Class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.

451.     Moreover, many of the damages flowing from the Defective Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Defendants' fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the Class' remedies would be insufficient to make Plaintiffs and the Class whole.

452.     Finally, due to the Defendants' breach of warranties as set forth herein, Plaintiffs and the Class assert as an additional and/or alternative remedy, as set forth in D.C. Code § 28:2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of

75

COMPLAINT

the purchase price of all vehicles currently owned.

453.     Defendants were provided notice of these issues by numerous complaints filed against them, including the instant complaint, before or within a reasonable amount of time after the allegations of vehicle defects became public.

454.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the Class have been damaged in an amount to be determined at trial.

## COUNT XLII

### Breach of the Implied Warranty of Merchantability
### (District of Columbia Code Section 28:2-314)

455.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

456.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

457.     A warranty that the Defective Vehicles were in merchantable condition is implied by law in the instant transactions.

458.     These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. As set forth above in detail, the Defective Vehicles are inherently defective in that the CAN buses are susceptible to hacking.

459.     Defendants were provided notice of these issues by numerous means, including the instant complaint, and by numerous communications before or within a reasonable amount of time after the allegations of vehicle defects became public.

460.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT XLIII

### Breach of Contract/Common Law Warranty
### (Based on District of Columbia Law)

461.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

76

COMPLAINT

forth herein.

462.     To the extent Defendants' repair or adjust commitment is deemed not to be a warranty under the District of Columbia's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the Class to just repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs.

463.     Defendants breached this warranty or contract obligation by failing to repair the Defective Vehicles, or to replace them.

464.     As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

### Claims Brought on Behalf of the Florida Class

### COUNT XLIV

### Violations of the Florida Deceptive & Unfair Trade Practices Act
### (Florida Statutes Sections 501.201, *et seq.*)

465.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

466.     Plaintiffs bring this Count on behalf of the Florida Class.

467.     Florida's Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

468.     In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risk of CAN bus hacking in Class Vehicles as described above. Accordingly, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in Fla. Stat. § 501.204(1), including representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do

COMPLAINT

not have; representing that Class Vehicles are of a particular standard and quality when they are not; advertising Class Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

469.     Defendants' actions as set forth above occurred in the conduct of trade or commerce.

470.     Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

471.     Plaintiffs and the other Class members were injured as a result of Defendants' conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

## COUNT XLV

### Breach of Express Warranty
### (Florida Statutes Section 672.313)

472.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

473.     Plaintiffs bring this Count on behalf of the Florida Class.

474.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

475.     In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

    1.     Toyota's warranty

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

COMPLAINT

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

    2.    <u>Ford's warranty</u>

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

  . . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

    3.    <u>GM's warranty</u>

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

    476.    Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

79

COMPLAINT

477.     Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

478.     In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

479.     These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives. These affirmations and promises were part of the basis of the bargain between the parties.

480.     These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable (and remained so even after the problems were acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees. Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles conforming to these express warranties.

481.     Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make s and the other Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

482.     Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

483.     Also, as alleged in more detail herein, at the time that Defendants warranted and sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and

COMPLAINT

were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

484.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Defendants' fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

485.   Finally, due to Defendants' breach of warranties as set forth herein, Plaintiffs and the other Class members assert as an additional and/or alternative remedy, as set forth in Fla. Stat. § 672.608, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed under Fla. Stat. §§ 672.711 and 672.608.

486.   Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

487.   As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT XLVI

### Breach of Implied Warranty of Merchantability
### (Florida Statutes Section 672.314)

488.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

489.   Plaintiffs bring this Count on behalf of the Florida Class.

490.   Defendants are and were at all relevant times merchants with respect to motor vehicles.

81

COMPLAINT

491.     A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

492.     These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

493.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT XLVII

### Breach of Contract/Common Law Warranty
### (Based on Florida Law)

494.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

495.     Plaintiffs bring this Count on behalf of the Florida Class.

496.     To the extent Defendants' limited remedies are deemed not to be warranties under Florida's Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

497.     Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles, or to replace them.

498.     As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

COMPLAINT

**COUNT XLVIII**

**Fraudulent Concealment**
**(Based on Florida Law)**

499.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

500.     Plaintiffs bring this Count on behalf of the Florida Class.

501.     Defendants intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

502.     Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

503.     Defendants knew these representations were false when made.

504.     The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective CAN buses, as alleged herein.

505.     Defendants had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other Class members relied on Defendants' material representations that the Class Vehicles they were purchasing were safe and free from defects.

506.     The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

507.     The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants knew or recklessly disregarded that their representations were false because they knew the CAN

83

COMPLAINT

buses were susceptible to hacking. Defendants intentionally made the false statements in order to sell Class Vehicles.

508.      Plaintiffs and the other Class members relied on Defendants' reputations – along with Defendants' failure to disclose the faulty and defective nature of the CAN bus and Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Defendants' Class Vehicles.

509.      As a result of their reliance, Plaintiffs and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Class Vehicles.

510.      Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members.

511.      Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

### Claims Brought on Behalf of the Georgia Class

### COUNT XLIX

### Violation of Georgia's Uniform Deceptive Trade Practices Act
### (Georgia Code Annotated Sections 10-1-370, *et seq.*)

512.      Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

513.      The conduct of Defendants as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to Defendants' manufacture and sale of vehicles with CAN buses susceptible to hacking, which Defendants failed to adequately investigate, disclose and remedy, and their misrepresentations and omissions regarding the safety and reliability of their vehicles.

514.      Defendants' actions as set forth above occurred in the conduct of trade or commerce.

84

COMPLAINT

515.     Defendants' actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Defendants vehicles as a result of Defendants' generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business.

516.     Plaintiffs and the Class were injured as a result of Defendants' conduct.

517.     Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

518.     Defendants' conduct proximately caused the injuries to Plaintiffs and the Class.

519.     Defendants are liable to Plaintiffs and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

520.     Pursuant to Ga. Code Ann. § 10-1-370, Plaintiffs will serve the Georgia Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

## COUNT L

### Violation of Georgia's Fair Business Practices Act
### (Georgia Code Annotated Sections 10-1-390, *et seq.*)

521.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

522.     The conduct of Defendants as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Defendants' manufacture and sale of vehicles with CAN buses susceptible to hacking, which Defendants failed to adequately investigate, disclose and remedy, and their misrepresentations and omissions regarding the safety and reliability of their vehicles.

523.     Defendants' actions as set forth above occurred in the conduct of trade or commerce.

524.     Defendants' actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Defendants vehicles as a result of Defendants' generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business.

85

COMPLAINT

525.     Plaintiffs and the Class were injured as a result of Defendants' conduct.

526.     Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

527.     Defendants' conduct proximately caused the injuries to Plaintiffs and the Class.

528.     Defendants are liable to Plaintiffs and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

529.     Pursuant to Ga. Code Ann. § 10-1-390, Plaintiffs will serve the Georgia Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

## COUNT LI

### Breach of Express Warranty
### (Georgia Code Annotated Sections 11-2-313)

530.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

531.     Plaintiffs bring this Count on behalf of the Georgia Class.

532.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

533.     In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

    1.     Toyota's warranty

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or

86

COMPLAINT

36,000 miles, whichever occurs first . . . .

2.     Ford's warranty

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFFERENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

3.     GM's warranty

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

534.     Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

535.     Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

87

COMPLAINT

536.     In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

537.     These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives. These affirmations and promises were part of the basis of the bargain between the parties.

538.     These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable (and remained so even after the problems were acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees. Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles conforming to these express warranties.

539.     Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

540.     Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

541.     Also, as alleged in more detail herein, at the time that Defendants warranted and sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

COMPLAINT

542.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Defendants' fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

543.     Finally, due to the Defendants' breach of warranties as set forth herein, Plaintiffs and the Class assert as an additional and/or alternative remedy, as set forth in Ga. Code Ann. § 11-2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of the purchase price of all vehicles currently owned.

544.     Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

545.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT LII

### Breach of the Implied Warranty of Merchantability
### (Georgia Code Annotated Section 11-2-314)

546.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

547.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

548.     A warranty that the Defective Vehicles were in merchantable condition is implied by law in the instant transactions, pursuant to Ga. Code Ann. § 11-2-314.

549.     These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

89

COMPLAINT

550.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT LIII

### Breach of Contract/Common Law Warranty

551.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

552.     Plaintiffs bring this Count on behalf of the Georgia Class.

553.     To the extent Defendants' limited remedies are deemed not to be warranties under Georgia's Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

554.     Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles, or to replace them.

555.     As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT LIV

### Fraud by Concealment
### (Georgia Code Annotated Section 51-6-2)

556.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

557.     As set forth above, Defendants concealed and/or suppressed material facts concerning the safety of their vehicles.

558.     Defendants intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and

90

COMPLAINT

the other Class members information that is highly relevant to their purchasing decision.

559.     Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

560.     Defendants knew these representations were false when made.

561.     The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective CAN buses, as alleged herein.

562.     Defendants had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other Class members relied on Defendants' material representations that the Class Vehicles they were purchasing were safe and free from defects.

563.     The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

564.     The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants knew or recklessly disregarded that their representations were false because they knew the CAN buses were susceptible to hacking. Defendants intentionally made the false statements in order to sell Class Vehicles.

565.     Plaintiffs and the other Class members relied on Defendants' reputations – along with Defendants' failure to disclose the faulty and defective nature of the CAN bus and Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Defendants' Class Vehicles.

566.     As a result of their reliance, Plaintiffs and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the

91

COMPLAINT

bargain and overpayment at the time of purchase or lease and/or the diminished value of their Class Vehicles.

567.     Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members.

568.     Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

## Claims Brought on Behalf of the Hawaii Class

## COUNT LV

### Unfair Competition and Practices
### (Hawaii Revised Statutes Sections 480, *et seq*.)

569.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

570.     Hawaii's Revised Statute § 480-2(a) prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . . "

571.     Defendants' conduct as set forth herein constitutes unfair methods of competition and unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480-2, because Defendants' acts and practices, including the manufacture and sale of vehicles with CAN buses susceptible to hacking, and Defendants' failure to adequately investigate, disclose and remedy and Defendants' misrepresentations and omissions regarding the safety and reliability of their vehicles, offend established public policy, and because the harm they cause to consumers greatly outweighs any benefits associated with those practices.

572.     Defendants' conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiffs from making fully informed decisions about whether to purchase or lease Defective Vehicles and/or the price to be paid to purchase or lease Defective Vehicles.

573.     Defendants' misrepresentations and omissions regarding the safety and reliability of their Defective Vehicles were material and caused Plaintiffs to purchase or lease vehicles they

92

COMPLAINT

would not have otherwise purchased or leased, or paid as much for, had Plaintiffs known the vehicles were defective.

574.     Defendants' acts or practices as set forth above occurred in the conduct of trade or commerce.

575.     Plaintiffs and the Class have suffered injury, including the loss of money or property, as a result of Defendants' unfair methods of competition and unfair or deceptive acts or practices.

576.     In addition to damages in amounts to be proven at trial, Plaintiffs and the Class seek attorneys' fees, costs of suit and treble damages.

577.     Plaintiffs and the Class also seek injunctive relief to enjoin Defendants from continuing their unfair competition and unfair or deceptive acts or practices.

## COUNT LVI

### Violation of Hawaii's Uniform Deceptive Trade Practice Act
### (Hawaii Revised Statutes Sections 481A, *et seq.*)

578.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

579.     Defendants participated in unfair or deceptive acts or practices that violated the Uniform Deceptive Trade Practice Act ("UDAP"), Haw. Rev. Stat. § 481A, *et seq.*, as described herein.

580.     By failing to disclose and actively concealing the dangerous risk of hacking, Defendants engaged in deceptive business practices prohibited by the UDAP, Haw. Rev. Stat. § 481A, *et seq.*, including (1) representing that Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Defective Vehicles are of a particular standard, quality, and grade when they are not and (3) advertising Defective Vehicles with the intent not to sell them as advertised.

581.     As alleged above, Defendants made numerous material statements about the safety and reliability of Defective Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Defendants' unlawful advertising and

93

COMPLAINT

representations as a whole.

582.        Defendants knew that the CAN buses in Defective Vehicles were susceptible to hacking, and were not suitable for their intended use. Defendants nevertheless failed to warn Plaintiffs about these inherent dangers despite having a duty to do so.

583.        Defendants owed Plaintiffs a duty to disclose the defective nature of Defective Vehicles, including the dangerous risk of hacking, because they:

a)        Possessed exclusive knowledge of the defects rendering Defective Vehicles inherently more dangerous and unreliable than similar vehicles;

b)        Intentionally concealed the hazardous situation with Defective Vehicles through their deceptive marketing campaign that they designed to hide the life-threatening problems from Plaintiffs; and/or

c)        Made incomplete representations about the safety and reliability of Defective Vehicles generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

584.        Defective Vehicles pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to hacking and loss of driver control.

585.        Whether or not a vehicle can be hacked and control of the vehicle's essential functions being removed from the driver are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease. When Plaintiffs bought Defendants' vehicles for personal, family, or household purposes, they reasonably expected the vehicles would not be susceptible to hacking.

586.        Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of the Defective Vehicles.

587.        As a result of their violations of the UDAP detailed above, Defendants caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs. Plaintiffs currently own or lease, or within the class period have owned or leased, Defective Vehicles that

94

COMPLAINT

are defective and inherently unsafe.

588.     Plaintiffs risk irreparable injury as a result of Defendants' acts and omissions in violation of the UDAP, and these violations present a continuing risk to Plaintiffs as well as to the general public.

589.     Plaintiffs seek monetary damages and an order enjoining Defendants' unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's fees and any other just and proper relief available under the UDAP.

## COUNT LVII

### Breach of Express Warranty
### (Hawaii Revised Statutes Section 490:2-313)

590.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

591.     Plaintiffs bring this Count on behalf of the Hawaii Class.

592.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

593.     In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

   1.     Toyota's warranty

   *When Warranty Begins*

   The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

   *Repairs Made at No Charge*

   Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

   *Basic Warranty*

   This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

COMPLAINT

2.     Ford's warranty

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

3.     GM's warranty

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

594.     Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

595.     Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

96

COMPLAINT

596.     In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

597.     These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives. These affirmations and promises were part of the basis of the bargain between the parties.

598.     These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable (and remained so even after the problems were acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees. Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles conforming to these express warranties.

599.     Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

600.     Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

601.     Also, as alleged in more detail herein, at the time that Defendants warranted and sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

COMPLAINT

602.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Defendants' fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

603.     Finally, due to the Defendants' breach of warranties as set forth herein, Plaintiffs and the Class assert as an additional and/or alternative remedy, as set forth in Haw. Rev. Stat. § 490:2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of the purchase price of all vehicles currently owned and for such other incidental and consequential damages as allowed under Hawaii law.

604.     Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

605.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT LVIII

### Breach of Implied Warranty of Merchantability
### (Hawaii Revised Statutes Section 490:2-314)

606.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

607.     Plaintiffs bring this Count on behalf of the Hawaii Class.

608.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

609.     A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

610.     These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.

98

COMPLAINT

Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

611.     Privity is not required in this case because Plaintiffs and the Class are intended third-party beneficiaries of contracts between Defendants and their dealers; specifically, they are the intended beneficiaries of Defendants' implied warranties. The dealers were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided with the Defective Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

612.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT LIX

### Breach of Contract/Common Law Warranty
### (Based on Hawaii Law)

613.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

614.     Plaintiffs bring this Count on behalf of the Hawaii Class.

615.     To the extent Defendants' limited remedies are deemed not to be warranties under Hawaii's Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

616.     Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles, or to replace them.

617.     As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

COMPLAINT

**Claims Brought on Behalf of the Idaho Class**

**COUNT LX**

**Violations of the Idaho Consumer Protection Act**
**(Idaho Civil Code Sections 48-601, *et seq.*)**

618.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

619.     Defendants are "persons" under Idaho Civil Code § 48-602(1).

620.     Plaintiffs are "consumers" who purchased or leased one or more Defective Vehicles.

621.     Defendants both participated in misleading, false, or deceptive acts that violated the Idaho Consumer Protection Act ("ICPA"), Idaho Civ. Code § 48-601, *et seq.*, as described above and below. Defendants each are directly liable for these violations of law. TMC also is liable for TMS's violations of the ICPA because TMS acts as TMC's general agent in the United States for purposes of sales and marketing.

622.     By failing to disclose and actively concealing the dangerous risk of hacking in Defective Vehicles equipped with CAN buses, Defendants engaged in deceptive business practices prohibited by the ICPA, including (1) representing that Defective Vehicles have characteristics, uses, and benefits which they do not have, (2) representing that Defective Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Defective Vehicles with the intent not to sell them as advertised, and (4) engaging in acts or practices which are otherwise misleading, false, or deceptive to the consumer.

623.     As alleged above, Defendants made numerous material statements about the safety and reliability of Defective Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of TMC's and TMS's unlawful advertising and representations as a whole.

624.     Defendants knew that the CAN buses were susceptible to hacking and were not suitable for their intended use. Defendants nevertheless failed to warn Plaintiffs about these inherent dangers despite having a duty to do so.

COMPLAINT

625.     Defendants each owed Plaintiffs a duty to disclose the defective nature of Defective Vehicles, including the dangerous risk of hacking, because they:

a)     Possessed exclusive knowledge of the defects rendering Defective Vehicles inherently more dangerous and unreliable than similar vehicles;

b)     Intentionally concealed the hazardous situation with Defective Vehicles through their deceptive marketing campaign and recall program that they designed to hide the life-threatening problems from Plaintiffs; and/or

c)     Made incomplete representations about the safety and reliability of Defective Vehicles while purposefully withholding material facts from Plaintiffs that contradicted these representations.

626.     Defective Vehicles equipped with CAN buses pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to hacking.

627.     Whether or not a vehicle can be hacked and the taken over by a third party are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease. When Plaintiffs bought a Defendants Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would (a) not be vulnerable to hacking; and (b) equipped with any necessary fail-safe mechanisms.

628.     TMC's and TMS's misleading, false, or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Defective Vehicles.

629.     As a result of their violations of the ICPA detailed above, Defendants caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs. Plaintiffs currently own or lease, or within the class period have owned or leased, Defective Vehicles that are defective and inherently unsafe. CAN bus defects have caused the value of Defective Vehicles to plummet.

630.     Plaintiffs risk irreparable injury as a result of TMC's and TMS's acts and omissions in violation of the ICPA, and these violations present a continuing risk to Plaintiffs as

101

COMPLAINT

1    well as to the general public.

2        631.    Plaintiffs also seek punitive damages against Defendants because each carried out

3    despicable conduct with willful and conscious disregard of the rights and safety of others,

4    subjecting Plaintiffs to cruel and unjust hardship as a result.

5        632.    Defendants intentionally and willfully misrepresented the safety and reliability of

6    Defective Vehicles, deceived Plaintiffs on life-or-death matters, and concealed material facts that

7    only they knew, all to avoid the expense and public relations nightmare of correcting a deadly

8    flaw in the Defective Vehicles they repeatedly promised Plaintiffs were safe. Defendants'

9    unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

10       633.    Plaintiffs further seek an order enjoining Defendants' unfair or deceptive acts or

11   practices, restitution, punitive damages, costs of Court, attorney's fees under Idaho Civil Code

12   § 48-608, and any other just and proper relief available under the ICPA.

13                                **COUNT LXI**

14                      **Breach of Express Warranty**
                  **(Idaho Commercial Code Section 28-2-313)**
15

16       634.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

17   forth herein.

18       635.    Defendants are and were at all relevant times merchants with respect to motor

19   vehicles under Idaho Com. Code § 28-2-104.

20       636.    Defendants' dealerships who sold Defective Vehicles to Plaintiffs and the Class

21   acted as the agents of TMS and/or TMC. Plaintiffs and the Class therefore were in a relationship

22   of privity with Defendants, to the extent such a relationship is required by Idaho Com. Code § 28-

23   2-313.

24       637.    In their Limited Warranties and in advertisements, brochures, and through other

25   statements in the media, Defendants expressly warranted that they would repair or replace defects

26   in material or workmanship free of charge if they became apparent during the warranty period.

27   For example, the following language appears in all Class Vehicle Warranty booklets:

28

                                                                                            102

COMPLAINT

1.     Toyota's warranty

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

2.     Ford's warranty

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

3.     GM's warranty

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

638.     Defendants' Limited Warranties, as well as advertisements, brochures, and other

103

COMPLAINT

statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

639.    Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

640.    In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

641.    These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives. These affirmations and promises were part of the basis of the bargain between the parties.

642.    These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable (and remained so even after the problems were acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees. Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles conforming to these express warranties.

643.    Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

644.    Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

104

COMPLAINT

645.     Also, as alleged in more detail herein, at the time that Defendants warranted and sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses. The enforcement under these circumstances of any limitations whatsoever precluding the recovery of incidental and/or consequential damages is unenforceable pursuant to Idaho Com. Code § 28-2-302(1).

646.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Defendants' fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

647.     Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

648.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

**COUNT LXII**

**Breach of the Implied Warranty pf Merchantability**
**(Idaho Commercial Code Section 28-2-314)**

649.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

650.     Defendants are and were at all relevant times merchants with respect to motor vehicles under Idaho Com. Code § 28-2-104.

651.     A warranty that the Defective Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Idaho Com. Code § 28-2-314.

105

COMPLAINT

652.     These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

653.     Plaintiffs and the Class have had sufficient direct dealings with either the Defendants or their agents (dealerships) to establish privity of contract between Plaintiffs and the Class. Notwithstanding this, privity is not required in this case because Plaintiffs and the Class are intended third-party beneficiaries of contracts between Defendants and their dealers; specifically, they are the intended beneficiaries of Defendants' implied warranties. The dealers were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided with the Defective Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

654.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

<u>**COUNT LXIII**</u>

**Breach of Contract/Common Law Warranty**
**<u>(Under Idaho Law)</u>**

655.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

656.     To the extent Defendants' repair or adjust commitment is deemed not to be a warranty under Idaho's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

657.     Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles, or to replace them.

658.     As a direct and proximate result of Defendants' breach of contract or common

106

COMPLAINT

law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT LXIV

### Fraud by Concealment
### (Based on Idaho Law)

659.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

660.     As set forth above, Defendants concealed and/or suppressed material facts concerning the safety of their vehicles.

661.     Defendants had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Defendants' highest corporate priorities. Once Defendants made representations to the public about safety, Defendants were under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

662.     In addition, Defendants had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendants who have superior knowledge and access to the facts, and Defendants knew they were not known to or reasonably discoverable by Plaintiffs and the Class. These omitted facts were material because they directly impact the safety of the Defective Vehicles.

663.     Whether or not a vehicle is susceptible to hacking and can be commandeered by a third party are material safety concerns. Defendants possessed exclusive knowledge of the defects rendering Defective Vehicles inherently more dangerous and unreliable than similar vehicles.

664.     Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs and the Class to purchase Defective Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

COMPLAINT

665.     Defendants still have not made full and adequate disclosure and continue to defraud Plaintiffs and the Class.

666.     Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' and the Class' actions were justified. Defendants were in exclusive control of the material facts and such facts were not known to the public or the Class.

667.     As a result of the concealment and/or suppression of the facts, Plaintiffs and the Class sustained damage.

668.     Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class' rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**Claims Brought on Behalf of the Illinois Class**

**COUNT LXV**

**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act**
**(815 Illinois Compiled Statutes Sections 505/1, *et seq*. and**
**720 Illinois Compiled Statutes Section 295/1A)**

669.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

670.     The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2 prohibits unfair or deceptive acts or practices in connection with any trade or commerce. Specifically, the Act prohibits suppliers from representing that their goods are of a particular quality or grade they are not.

671.     Defendants are "persons" as that term is defined in the Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. 505/1(c).

672.     Plaintiffs are "consumers" as that term is defined in the Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. 505/1(e).

673.     Defendants' conduct caused Plaintiffs' damages as alleged.

108

COMPLAINT

674.     As a result of the foregoing wrongful conduct of Defendants, Plaintiffs and the Class have been damaged in an amount to be proven at trial, including, but not limited to, actual damages, court costs, and reasonable attorneys' fees pursuant to 815 Ill. Comp. Stat. 505/1, *et seq.*

### COUNT LXVI

**Violation of the Illinois Uniform Deceptive Trade Practices Act**
**(815 Illinois Compiled Statutes Sections 510/1, *et. seq.* and**
**720 Illinois Compiled Statutes Section 295/1A)**

675.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

676.     815 Ill. Comp. Stat. 510/2 provides that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: "(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; . . . (5) represents that goods or services have sponsorship, approval, characteristics ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have; . . . (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; . . . (9) advertises goods or services with intent not to sell them as advertised; . . . [and] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

677.     Defendants are "persons" within the meaning of 815 Ill. Comp. Stat. 510/1(5).

678.     The vehicles sold to Plaintiffs were not of the particular sponsorship, approval, characteristics, ingredients, uses benefits, or qualities represented by Defendants.

679.     Defendants' conduct was knowing and/or intentional and/or with malice and/or demonstrated a complete lack of care and/or reckless and/or was in conscious disregard for the rights of Plaintiffs.

680.     As a result of the foregoing wrongful conduct of Defendants, Plaintiffs have been damaged in an amount to proven at trial, including, but not limited to, actual and punitive damages, equitable relief and reasonable attorneys' fees.

109

COMPLAINT

**COUNT LXVII**

**Breach of Implied Warranty of Merchantability**
**(810 Illinois Compiled Statutes Section 5/2-314 and**
**810 Illinois Compiled Statutes Section 5/2A-212)**

681.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

682.     Defendants impliedly warranted that their vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

683.     Defendants breached the implied warranty that the vehicle was merchantable and safe for use as public transportation by marketing, advertising, distributing and selling vehicles with the common design and manufacturing defect, without incorporating adequate electronic or mechanical fail-safes, and while misrepresenting the dangers of such vehicles to the public.

684.     These dangerous defects existed at the time the vehicles left Defendants' manufacturing facilities and at the time they were sold to the Plaintiffs.

685.     These dangerous defects were the direct and proximate cause of damages to the Plaintiffs.

**COUNT LXVIII**

**Breach of Express Warranties**
**(810 Illinois Compiled Statutes Section 5/2-313)**

686.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

687.     Defendants expressly warranted – through statements and advertisements – that the vehicles were of high quality, and at a minimum, would actually work properly and safely.

688.     Defendants breached this warranty by knowingly selling to Plaintiffs vehicles with dangerous defects, and which were not of high quality.

689.     Plaintiffs have been damaged as a direct and proximate result of the breaches by Defendants in that the Defective Vehicles purchased by Plaintiffs were and are worth far less than

110

COMPLAINT

what the Plaintiffs paid to purchase, which was reasonably foreseeable to Defendants.

## COUNT LXIX

### Strict Product Liability (Defective Design)
### (Based on Illinois Law)

690.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

691.     Defendants are and have been at all times pertinent to this Complaint, engaged in the business of designing, manufacturing, assembling, promoting, advertising, distributing and selling Defective Vehicles in the United States, including those owned or leased by the Plaintiffs and the Class.

692.     Defendants knew and anticipated that the vehicles owned or leased by Plaintiffs and the Class would be sold to and operated by purchasers and/or eventual owners or leasors of Defendants' vehicles, including Plaintiffs and the Class.

693.     Defendants also knew that these Defective Vehicles would reach the Plaintiffs and the Class without substantial change in their condition from the time the vehicles departed the Defendants' assembly lines.

694.     Defendants designed the Defective Vehicles defectively, causing them to fail to perform as safely as an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

695.     Defendants had the capability to use a feasible, alternative, safer design, and failed to correct the design defects.

696.     The risks inherent in the design of Defective Vehicles outweigh significantly any benefits of such design.

697.     Plaintiffs and the Class could not have anticipated and did not know of the aforementioned defects at any time prior to recent revelations regarding the problems of the Defective Vehicles.

698.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered damages, including, but not limited to, diminution in value, return of lease payments and

COMPLAINT

penalties, and injunctive relief related to future lease payments or penalties.

699.     Plaintiffs and the Class have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT LXX

### Strict Product Liability (Failure to Warn)
### (Based on Illinois Law)

700.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

701.     Defendants are and have been at all times pertinent to this Complaint, engaged in the business of designing, manufacturing, assembling, promoting, advertising, distributing and selling Defective Vehicles in the United States, including those owned or leased by the Plaintiffs and the Class.

702.     Defendants, at all times pertinent to this Complaint, knew and anticipated that the Defective Vehicles and their component parts would be purchased, leased and operated by consumers, including Plaintiffs and the Class.

703.     Defendants also knew that these Defective Vehicles would reach the Plaintiffs and the Class without substantial change in their conditions from the time that the vehicles departed the Defendants' assembly lines.

704.     Defendants knew or should have known of the substantial dangers involved in the reasonably foreseeable use of the Defective Vehicles, defective design, manufacturing and lack of sufficient warnings which caused them to have an unreasonably dangerous vulnerability to hacking.

705.     Defendants failed to adequately warn Plaintiffs and the Class when they became aware of the defect that caused Plaintiffs and the Class' vehicles to be prone to hacking.

706.     Defendants also failed to timely recall the vehicles or take any action to timely warn Plaintiffs or the Class of these problems and instead continue to subject Plaintiffs and the Class to harm.

COMPLAINT

707.     Defendants knew, or should have known, that these defects were not readily recognizable to an ordinary consumer and that consumers would lease, purchase and use these products without inspection.

708.     Defendants should have reasonably foreseen that the defect in the Defective Vehicles would subject the Plaintiffs and the Class to harm resulting from the defect.

709.     Plaintiffs and the Class have used the Defective Vehicles for their intended purpose and in a reasonable and foreseeable manner.

710.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the Class have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT LXXI

### Fraudulent Concealment/Fraud by Omission
### (Based on Illinois Law)

711.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

712.     Defendants intentionally concealed the above-described material safety information, or acted with reckless disregard for the truth, and denied Plaintiffs and the Class information that is highly relevant to their purchasing decision.

713.     Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

714.     Defendants knew these representations were false when made.

715.     The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective CAN buses, as alleged herein.

716.     Defendants had a duty to disclose that these Class Vehicles were defective,

113

COMPLAINT

1    unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be

2    rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other

3    Class members relied on Defendants' material representations that the Class Vehicles they were

4    purchasing were safe and free from defects.

5         717.      The aforementioned concealment was material because if it had been disclosed

6    Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or

7    would not have bought or leased those Vehicles at the prices they paid.

8         718.      The aforementioned representations were material because they were facts that

9    would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants

10    knew or recklessly disregarded that their representations were false because they knew the CAN

11    buses were susceptible to hacking. Defendants intentionally made the false statements in order to

12    sell Class Vehicles.

13         719.      Plaintiffs and the other Class members relied on Defendants' reputations – along

14    with Defendants' failure to disclose the faulty and defective nature of the CAN bus and

15    Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other

16    similar false statements – in purchasing or leasing Defendants' Class Vehicles.

17         720.      As a result of their reliance, Plaintiffs and the other Class members have been

18    injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the

19    bargain and overpayment at the time of purchase or lease and/or the diminished value of their

20    Class Vehicles.

21         721.      Defendants' conduct was knowing, intentional, with malice, demonstrated a

22    complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class

23    members.

24         722.      Plaintiffs and the other Class members are therefore entitled to an award of

25    punitive damages.

26

27

28

COMPLAINT

## COUNT LXXII

### Breach of Lease/Contract
### (Based on Illinois Law)

723.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

724.     Plaintiffs and the Class entered into lease agreements with Defendants.

725.     Plaintiffs and the Class entered into agreements to purchase Defendants vehicles which also directly or indirectly benefited Defendants.

726.     The leases and purchase agreements provided that Plaintiffs and the Class would make payments and in return would receive a new vehicle that would operate properly.

727.     Defendants breached their agreements with Plaintiffs and the Class, because the vehicles sold or leased to Plaintiffs and the Class were defective and not of a quality that reasonably would be expected of a new automobile.

728.     Plaintiffs and the Class have fully performed their duties under the purchase and lease agreements.

729.     Defendants are liable for all damages suffered by Plaintiffs and the Class caused by such breaches of contract.

### Claims Brought on Behalf of the Indiana Class

## COUNT LXXIII

### Violation of the Indiana Deceptive Consumer Sales Act
### (Indiana Code Section 24-5-0.5-3)

730.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

731.     Indiana's Deceptive Consumer Sales Act prohibits a person from engaging in a "deceptive trade practice," which includes representing: "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular

115

COMPLAINT

standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; . . . (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; . . . (b) Any representations on or within a product or their packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that such representation is true if such other supplier shall know or have reason to know that such representation was false."

732.     Defendants are persons with the meaning of Ind. Code § 24-5-0.5-2(2).

733.     In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risk of hacking and the lack of adequate fail-safe mechanisms in Defective Vehicles equipped with CAN buses.

734.     Accordingly, Defendants engaged in unlawful trade practices, including representing that Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Defective Vehicles are of a particular standard and quality when they are not; advertising Defective Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

735.     Defendants' actions as set forth above occurred in the conduct of trade or commerce.

736.     Defendants' conduct proximately caused injuries to Plaintiffs and the Class.

737.     Plaintiffs and the Class were injured as a result of Defendants' conduct in that Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

738.     Plaintiffs seek injunctive relief and, if awarded damages under Indiana Deceptive Consumer Protection Act, treble damages pursuant to Ind. Code § 24-5-0.5-4(a)(1).

739.     Plaintiffs also seek punitive damages based on the outrageousness and

116

COMPLAINT

recklessness of Defendants' conduct and their high net worth.

## COUNT LXXIV

**Breach of Express Warranty**
**(Indiana Code Section 26-1-2-313)**

740.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

741.     In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

1.     Toyota's warranty

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

2.     Ford's warranty

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

 . . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

117

COMPLAINT

3.    GM's warranty

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

742.    Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

743.    Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

744.    In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

745.    These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives. These affirmations and promises were part of the basis of the bargain between the parties.

746.    These additional warranties were also breached because the Class Vehicles were

118

COMPLAINT

not fully operational, safe, or reliable (and remained so even after the problems were acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees. Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles conforming to these express warranties.

747.     Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

748.     Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

749.     Also, as alleged in more detail herein, at the time that Defendants warranted and sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

750.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Defendants' fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

751.     Finally, due to the Defendants' breach of warranties as set forth herein, Plaintiffs and the Class assert as an additional and/or alternative remedy, as set forth in Ind. Code § 26-1-2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of the purchase price of all vehicles currently owned.

119

COMPLAINT

752.     Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

753.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT LXXV

### Breach of the Implied Warranty of Merchantability
### (Indiana Code Section 26-1-2-314)

754.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

755.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

756.     A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

757.     These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

758.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT LXXVI

### Breach of Contract/Common Law Warranty
### (Based on Indiana Law)

759.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

760.     To the extent Defendants' repair or adjust commitment is deemed not to be a warranty under Indiana's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other

COMPLAINT

1  Class members to repairs and adjustments needed to correct defects in materials or workmanship

2  of any part supplied by Defendants, and/or warranted the quality or nature of those services to

3  Plaintiffs and the other Class members.

4      761.    Defendants breached this warranty or contract obligation by failing to repair the

5  Class Vehicles, or to replace them.

6      762.    As a direct and proximate result of Defendants' breach of contract or common

7  law warranty, Plaintiffs and the other Class members have been damaged in an amount to be

8  proven at trial, which shall include, but is not limited to, all compensatory damages, incidental

9  and consequential damages, and other damages allowed by law.

10                                     **COUNT LXXVII**

11                                **Fraudulent Concealment**

12                                **(Based on Indiana Law)**

13     763.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

14  forth herein.

15     764.    Defendants intentionally concealed the above-described material safety and

16  functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and

17  the other Class members information that is highly relevant to their purchasing decision.

18     765.    Defendants further affirmatively misrepresented to Plaintiffs in advertising and

19  other forms of communication, including standard and uniform material provided with each car,

20  that the Class Vehicles they was selling were new, had no significant defects, and would perform

21  and operate properly when driven in normal usage.

22     766.    Defendants knew these representations were false when made.

23     767.    The Class Vehicles purchased or leased by Plaintiffs and the other Class members

24  were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and

25  defective CAN buses, as alleged herein.

26     768.    Defendants had a duty to disclose that these Class Vehicles were defective,

27  unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be

28  rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other

121

COMPLAINT

Class members relied on Defendants' material representations that the Class Vehicles they were purchasing were safe and free from defects.

769.     The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

770.     The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants knew or recklessly disregarded that their representations were false because they knew the CAN buses were susceptible to hacking. Defendants intentionally made the false statements in order to sell Class Vehicles.

771.     Plaintiffs and the other Class members relied on Defendants' reputations – along with Defendants' failure to disclose the faulty and defective nature of the CAN bus and Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Defendants' Class Vehicles.

772.     As a result of their reliance, Plaintiffs and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Class Vehicles.

773.     Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members.

774.     Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

**Claims Brought on Behalf of the Iowa Class**

**COUNT LXXVIII**

**Violations of the Private Right of Action for Consumer Frauds Act**
**(Iowa Code Sections 714H.1, *et seq.*)**

775.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

COMPLAINT

1   forth herein.

2       776.       Defendants are "persons" under Iowa Code § 714H.2(7).

3       777.       Plaintiffs are "consumers," as defined by Iowa Code § 714H.2(3), who purchased

4   or leased one or more Class Vehicles.

5       778.       Defendants participated in unfair or deceptive acts or practices that violated

6   Iowa's Private Right of Action for Consumer Fraud Act ("Iowa CFA"), Iowa Code §§ 714H.1, *et*

7   *seq.*, as described herein. Defendants are directly liable for these violations of law.

8       779.       By failing to disclose and actively concealing the defects in the CAN buses in the

9   Class Vehicles, Defendants engaged in deceptive business practices prohibited by the Iowa CFA,

10  including (1) representing that Class Vehicles have characteristics, uses, benefits, and qualities

11  which they do not have, (2) representing that Class Vehicles are of a particular standard, quality,

12  and grade when they are not, (3) advertising Class Vehicles with the intent not to sell them as

13  advertised, and (4) engaging in acts or practices which are otherwise unfair, misleading, false, or

14  deceptive to the consumer.

15      780.       As alleged above, Defendants made numerous material statements about the

16  benefits and characteristics of the Class Vehicles that were either false or misleading. Each of

17  these statements contributed to the deceptive context of Defendants' unlawful advertising and

18  representations as a whole.

19      781.       Defendants knew that the CAN buses in the Class Vehicles were defectively

20  designed or manufactured, were susceptible to hacking, and were not suitable for their intended

21  use. Defendants nevertheless failed to warn Plaintiffs about these defects despite having a duty to

22  do so.

23      782.       Defendants owed Plaintiffs a duty to disclose the defective nature of the CAN

24  buses in the Class Vehicles, because Defendants:

25          a)    Possessed exclusive knowledge of the defects rendering the Class Vehicles more

26  unreliable than similar vehicles;

27          b)    Intentionally concealed the defects through their deceptive marketing campaign

28  that they designed to hide the defects; and/or

123

COMPLAINT

      c)    Made incomplete representations about the characteristics and performance of the Class Vehicles generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

783.      Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true performance and characteristics of the Class Vehicles.

784.      As a result of their violations of the Iowa CFA detailed above, Defendants caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs. Plaintiffs currently owns or leases, or within the Class Period has owned or leased, a Class Vehicle that is defective. Defects associated with the CAN buses have caused the value of the Class Vehicles, including Plaintiffs' Vehicle, to decrease.

785.      Plaintiffs and the Class sustained damages as a result of the Defendants' unlawful acts and are, therefore, entitled to damages and other relief as provided under Chapter 714H of the Iowa Code. Because Defendants' conduct was committed willfully, Plaintiffs seeks treble damages as provided in Iowa Code § 714H.5(4).

786.      Plaintiffs also seeks court costs and attorneys' fees as a result of Defendants' violation of Chapter 714H as provided in Iowa Code § 714H.5(2).

<div align="center">

**COUNT LXXIX**

**Breach of Express Warranty**
**(Iowa Code Section 554.2313)**

</div>

787.      Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

788.      Defendants are and were at all relevant times merchants with respect to motor vehicles under Iowa Code § 554.2104.

789.      In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

124

COMPLAINT

1. Toyota's warranty

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

2. Ford's warranty

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

3. GM's warranty

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

790.     Defendants' Limited Warranties, as well as advertisements, brochures, and other

125

COMPLAINT

1  statements in the media regarding the Class Vehicles, formed the basis of the bargain that was

2  reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles

3  equipped with a CAN bus from Defendants.

4      791.    Defendants breached the express warranty to repair and adjust to correct defects

5  in materials and workmanship of any part supplied by Defendants. Defendants have not repaired

6  or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and

7  workmanship defects.

8      792.    In addition to these Limited Warranties, Defendants otherwise expressly

9  warranted several attributes, characteristics, and qualities of the CAN bus.

10      793.    These warranties are only a sampling of the numerous warranties that Defendants

11  made relating to safety, reliability, and operation. Generally these express warranties promise

12  heightened, superior, and state-of-the-art safety, reliability, and performance standards, and

13  promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements,

14  on Defendants' websites, and in uniform statements provided by Defendants to be made by

15  salespeople, or made publicly by Defendants' executives or by other authorized representatives.

16  These affirmations and promises were part of the basis of the bargain between the parties.

17      794.    These additional warranties were also breached because the Class Vehicles were

18  not fully operational, safe, or reliable (and remained so even after the problems were

19  acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees.

20  Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles

21  conforming to these express warranties.

22      795.    Furthermore, the limited warranty of repair and/or adjustments to defective parts,

23  fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and

24  the other Class members whole and because Defendants have failed and/or have refused to

25  adequately provide the promised remedies within a reasonable time.

26      796.    Accordingly, recovery by Plaintiffs and the other Class members is not limited to the

27  limited warranty of repair or adjustments to parts defective in materials or workmanship, and

28  Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

COMPLAINT

797.     Also, as alleged in more detail herein, at the time that Defendants warranted and sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

798.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Defendants' fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

799.     Finally, due to Defendants' breach of warranties as set forth herein, Plaintiffs and the other Class members assert as an additional and/or alternative remedy, as set forth in Iowa Code § 554.2608, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Class members of the purchase price of all Class Vehicles currently owned and for such other incidental and consequential damages as allowed under Iowa Code §§ 554.2711 and 554.2608.

800.     Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

801.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT LXXX

### Breach of Implied Warranty of Merchantability
### (Iowa Code Section 554.2314)

802.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

127

COMPLAINT

803.     Defendants are and were at all relevant times merchants with respect to motor vehicles under Iowa Code § 554.2104.

804.     A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

805.     These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

806.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT LXXXI

### Breach of Contract/Common Law Warranty
### (Based on Iowa Law)

807.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

808.     To the extent Defendants' limited remedies are deemed not to be warranties under Iowa's Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

809.     Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles, or to replace them.

810.     As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

128

COMPLAINT

## COUNT LXXXII

### Fraudulent Concealment
### (Based on Iowa Law)

811.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

812.     Defendants intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

813.     Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

814.     Defendants knew these representations were false when made.

815.     The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective CAN buses, as alleged herein.

816.     Defendants had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other Class members relied on Defendants' material representations that the Class Vehicles they were purchasing were safe and free from defects.

817.     The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

818.     The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants knew or recklessly disregarded that their representations were false because they knew the CAN buses were susceptible to hacking. Defendants intentionally made the false statements in order to

129

COMPLAINT

1   sell Class Vehicles.

2       819.    Plaintiffs and the other Class members relied on Defendants' reputations – along

3   with Defendants' failure to disclose the faulty and defective nature of the CAN bus and

4   Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other

5   similar false statements – in purchasing or leasing Defendants' Class Vehicles.

6       820.    As a result of their reliance, Plaintiffs and the other Class members have been

7   injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the

8   bargain and overpayment at the time of purchase or lease and/or the diminished value of their

9   Class Vehicles.

10      821.    Defendants' conduct was knowing, intentional, with malice, demonstrated a

11  complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class

12  members.

13      822.    Plaintiffs and the other Class members are therefore entitled to an award of

14  punitive damages.

15  <center>**Claims Brought on Behalf of the Kansas Class**</center>

16  <center>**COUNT LXXX III**</center>

17  <center>**Violations of the Kansas Consumer Protection Act**</center>
18  <center>**(Kansas Statutes Annotated Sections 50-623, *et seq*.)**</center>

19      823.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set
20  forth herein.

21      824.    Defendants are "suppliers" under § 50-624(l) of the Kansas Consumer Protection
22  Act ("Kansas CPA")

23      825.    Plaintiffs are "consumers," as defined by § 50-624(b) of the Kansas CPA, who
24  purchased or leased one or more Defective Vehicles.

25      826.    Defendants both participated in deceptive acts or practices that violated the
26  Kansas CPA, as described above and below. Defendants each are directly liable for these
27  violations of law. TMC also is liable for TMS's violations of the CPA because TMS acts as
28  TMC's general agent in the United States for purposes of sales and marketing.

COMPLAINT

827. Defendants engaged in deceptive acts or practices prohibited by the Kansas CPA, including (1) representing that Defective Vehicles have characteristics, uses, and benefits that they do not have and (2) representing that Defective Vehicles are of a particular standard, quality, and grade when they are of another which differs materially from the representation. Specifically, as alleged above, Defendants made numerous material statements about the safety and reliability of Defective Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of TMC's and TMS's unlawful advertising and representations as a whole.

828. Defendants knew or had reason to know that their representations were false. Defendants knew that the CAN bus in Defective Vehicles was defectively designed or manufactured, was susceptible to hacking, and was not suitable for their intended use. Defendants nevertheless failed to warn Plaintiffs about these inherent dangers despite having a duty to do so.

829. Defendants engaged in further deceptive acts or practices prohibited by the Kansas CPA by willfully failing to disclose or willfully concealing, suppressing, or omitting material facts about Defective Vehicles. Specifically, Defendants failed to disclose and actively concealed the dangerous risk of hacking and the lack of adequate fail-safe mechanisms in Defective Vehicles equipped with CAN buses. Defendants knew that the CAN bus in Defective Vehicles was defectively designed or manufactured, was susceptible to hacking, and was not suitable for their intended use. Defendants nevertheless failed to warn Plaintiffs and the Class about these inherent dangers despite having a duty to do so.

830. Whether or not a vehicle is vulnerable to hacking and can be commandeered by a third party are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.

831. When Plaintiffs bought a Defendants Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would not be vulnerable to hacking, and was equipped with any necessary fail-safe mechanisms.

832. Defendants' acts or practices alleged above are unconscionable because, among other reasons, Defendants knew or had reason to know they had had made misleading statements of opinion on which Plaintiffs were likely to rely to their detriment.

131

COMPLAINT

833.     Defendants' deceptive and unconscionable acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Defective Vehicles as a result of Defendants' violations of the Kansas CPA.

834.     Plaintiffs and the Class suffered loss as a result of Defendants' violations of the Kansas CPA detailed above. Plaintiffs currently own or lease, or within the class period have owned or leased, Defective Vehicles that are defective and inherently unsafe. CAN bus defects have caused the value of Defective Vehicles to plummet.

835.     Pursuant to § 50-634(b) of the Kansas CPA, Plaintiffs seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) civil penalties provided for by § 50-636 of the Kansas CPA.

836.     Plaintiffs also seek punitive damages against Defendants because they acted willfully, wantonly, fraudulently, or maliciously. Defendants intentionally and willfully misrepresented the safety and reliability of Defective Vehicles, deceived Plaintiffs on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Defective Vehicles they repeatedly promised Plaintiffs were safe. Defendants' unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

837.     Plaintiffs risk irreparable injury as a result of Defendants' deceptive and unconscionable acts or practices in violation of the Kansas CPA, and these violations present a continuing risk to Plaintiffs as well as to the general public.

838.     Plaintiffs and the Class further seek an order enjoining Defendants' deceptive and unconscionable acts or practices, restitution, punitive damages, costs of Court, attorney's fees, and any other just and proper relief available under the Kansas CPA.

## COUNT LXXXIV

### Breach of Express Warranty
### (Kansas Statutes Annotated Section 84-2-313)

839.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

132

COMPLAINT

840.     Defendants are and were at all relevant times merchants with respect to motor vehicles under Kan. Stat. Ann. § 84-2-104.

841.     In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

1.     <u>Toyota's warranty</u>

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

2.     <u>Ford's warranty</u>

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

3.     <u>GM's warranty</u>

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first

133

COMPLAINT

. . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

842. Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

843. Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

844. In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

845. These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives. These affirmations and promises were part of the basis of the bargain between the parties.

846. These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable (and remained so even after the problems were acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees. Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles conforming to these express warranties.

847.     Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

848.     Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

849.     Also, as alleged in more detail herein, at the time that Defendants warranted and sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

850.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Defendants' fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

851.     Finally, due to the Defendants' breach of warranties as set forth herein, Plaintiffs and the Class assert as an additional and/or alternative remedy, as set forth in KAN. STAT. ANN. § 84-2-711, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of the purchase price of all vehicles currently owned and for such other incidental and consequential damages as allowed under KAN. STAT. ANN. §§ 84-2-711 and 84-2-608.

852.     Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

135

COMPLAINT

853.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT LXXXV

### Breach of the Implied Warranty of Merchantability
### (Kansas Statutes Annotated Section 84-2-314)

854.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

855.     Plaintiffs are "natural persons" within the meaning of Kan. Stat. Ann. § 84-2-318.

856.     Defendants are and were at all relevant times merchants with respect to motor vehicles under Kan. Stat. Ann. § 84-2-104.

857.     A warranty that the Defective Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Kan. Stat. Ann. § 84-2-314.

858.     These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Vehicles are inherently defective in that there are defects in the CAN buses that make them vulnerable to hacking and the Defective Vehicles do not have an adequate fail-safe to protect against such attacks.

859.     Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

860.     Privity is not required because the Defective Vehicles are inherently dangerous.

861.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT LXXXVI

### Breach of Contract/Common Law Warranty
### (Based on Kansas Law)

862.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

863.     To the extent Defendants' limited remedies are deemed not to be warranties under

COMPLAINT

Kansas' Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

864.     Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles, or to replace them.

865.     As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT LXXXVII

### Fraud by Concealment
### (Based on Kansas Law)

866.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

867.     As set forth above, Defendants concealed and/or suppressed material facts concerning the safety of their vehicles.

868.     Defendants had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Defendants' highest corporate priorities. Once Defendants made representations to the public about safety, Defendants were under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

869.     In addition, Defendants had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendants who have superior knowledge and access to the facts, and Defendants knew they were not known to or reasonably discoverable by Plaintiffs and the Class. These omitted facts were material because they directly impact the safety

137

COMPLAINT

1  of the Defective Vehicles.

2      870.      Whether or not a vehicle is susceptible to hacking and being commandeered by a

3  third party are material safety concerns. Defendants possessed exclusive knowledge of the defects

4  rendering Defective Vehicles inherently more dangerous and unreliable than similar vehicles.

5      871.      Defendants actively concealed and/or suppressed these material facts, in whole or

6  in part, with the intent to induce Plaintiffs and the Class to purchase Defective Vehicles at a

7  higher price for the vehicles, which did not match the vehicles' true value.

8      872.      Defendants still have not made full and adequate disclosure and continue to

9  defraud Plaintiffs and the Class.

10     873.      Plaintiffs and the Class were unaware of these omitted material facts and would

11  not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs'

12  and the Class' actions were justified. Defendants were in exclusive control of the material facts

13  and such facts were not known to the public or the Class.

14     874.      As a result of the concealment and/or suppression of the facts, Plaintiffs and the

15  Class sustained damage. Plaintiffs and the Class reserve their right to elect either to (a) rescind

16  their purchase or lease of Defective Vehicles and obtain restitution (b) affirm their purchase or

17  lease of Defective Vehicles and recover damages.

18     875.      Defendants' acts were done willfully, wantonly, fraudulently, or maliciously,

19  oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the

20  Class' rights and well-being to enrich Defendants.

21     876.      Defendants' conduct warrants an assessment of punitive damages in an amount

22  sufficient to deter such conduct in the future, which amount is to be determined according to proof.

23                          **Claims Brought on Behalf of the Kentucky Class**

24                                  **COUNT LXXXVIII**

25                      **Violation of the Kentucky Consumer Protection Act**
                        **(Kentucky Revised Statutes Sections 367.110, *et seq*.)**
26

27     877.      Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

28  forth herein.

                                                                                    138

COMPLAINT

878.     Defendants misrepresented the safety of the Defective Vehicles after learning of their defects with the intent that Plaintiffs relied on such representations in their decision regarding the purchase, lease and/or use of the Defective Vehicles.

879.     Plaintiffs did, in fact, rely on such representations in their decision regarding the purchase, lease and/or use of the Defective Vehicles.

880.     Through those misleading and deceptive statements and false promises, Defendants violated the Kentucky Consumer Protection Act ("KCPA").

881.     The KCPA applies to Defendants' transactions with Plaintiffs because Defendants' deceptive scheme was carried out in Kentucky and affected Plaintiffs.

882.     Defendants also failed to advise NHSTA and the public about what they knew about the CAN bus defects in the Defective Vehicles.

883.     Plaintiffs relied on Defendants' silence as to known defects in connection with their decision regarding the purchase, lease and/or use of the Defective Vehicles.

884.     As a direct and proximate result of Defendants' deceptive conduct and violation of the KCPA, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT LXXXIX

### Breach of Express Warranty
### (Kentucky Statutes Annotated Section 355.2-313)

885.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

886.     Defendants expressly warranted – through statements and advertisements described above – that the vehicles were of high quality, and at a minimum, would actually work properly and safely.

887.     Defendants breached this warranty by knowingly selling to Plaintiffs vehicles with dangerous defects, and which were not of high quality.

888.     Plaintiffs have been damaged as a direct and proximate result of the breaches by

139

Defendants in that the Defective Vehicles purchased by Plaintiffs were and are worth far less than what the Plaintiffs paid to purchase, which was reasonably foreseeable to Defendants.

## COUNT XC

### Breach of Implied Warranties of Merchantability
### (Kentucky Statutes Annotated Section 335.2-314)

889.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

890.     Defendants impliedly warranted that their vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

891.     As described above, there were dangerous defects in the vehicles manufactured, distributed, and/or sold by Defendants, which Plaintiffs purchased, including, but not limited to, defects that caused the vehicles to be vulnerable to hacking.

892.     These dangerous defects existed at the time the vehicles left Defendants' manufacturing facilities and at the time they were sold to Plaintiffs. Furthermore, because of these dangerous defects, Plaintiffs did not receive the benefit of their bargain and the vehicles have suffered a diminution in value.

893.     These dangerous defects were the direct and proximate cause of damages to the Plaintiffs and the Class.

## COUNT XCI

### Fraudulent Concealment
### (Based on Kentucky Law)

894.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

895.     Defendants intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

140

COMPLAINT

896.    Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

897.    Defendants knew these representations were false when made.

898.    The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective CAN buses, as alleged herein.

899.    Defendants had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other Class members relied on Defendants' material representations that the Class Vehicles they were purchasing were safe and free from defects.

900.    The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

901.    The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants knew or recklessly disregarded that their representations were false because they knew the CAN buses were susceptible to hacking. Defendants intentionally made the false statements in order to sell Class Vehicles.

902.    Plaintiffs and the other Class members relied on Defendants' reputations – along with Defendants' failure to disclose the faulty and defective nature of the CAN bus and Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Defendants' Class Vehicles.

903.    As a result of their reliance, Plaintiffs and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their

141

COMPLAINT

Class Vehicles.

904.     Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members.

905.     Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

### Claims Brought on Behalf of the Louisiana Class

### COUNT XCII

### Louisiana Products Liability Act
### (Louisiana Revised Statutes Sections 9:2800.51, *et seq.*)

906.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

907.     Plaintiffs allege that Defendants have defectively designed, manufactured, sold or otherwise placed in the stream of commerce Defective Vehicles as set forth above.

908.     The product in question is unreasonably dangerous for the following reasons:

a)     It is unreasonably dangerous in construction or composition as provided in La. Rev. Stat. § 9:2800.55;

b)     It is unreasonably dangerous in design as provided in La. Rev. Stat. § 9:2800.56;

c)     It is unreasonably dangerous because an adequate warning about the product was not provided as required by La. Rev. Stat. § 9:2800.57; and

d)     It is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product that render it unreasonably dangerous under La. Rev. Stat. §§ 9:2800.55, *et seq.*, that existed at the time the product left the control of the manufacturer.

909.     Defendants knew and expected for the Defective Vehicles to eventually be sold to and operated by purchasers and/or eventual owners of the Defective Vehicles, including Plaintiffs; consequently, Plaintiffs were an expected user of the product which Defendants

142

COMPLAINT

1   manufactured.

2   910.     The Defective Vehicles reached Plaintiffs without substantial changes in their

3   condition from time of completion of manufacture by Defendants.

4   911.     The defects in the Defective Vehicles could not have been contemplated by any

5   reasonable person expected to operate the Defective Vehicles, and, therefore, presented an

6   unreasonably dangerous situation for expected users of the Defective Vehicles even though the

7   Defective Vehicles were operated by expected users in a reasonable manner.

8   912.     As a direct and proximate cause of Defendants' design, manufacture, assembly,

9   marketing, and sales of the Defective Vehicles, Plaintiffs have sustained and will continue to

10   sustain the loss of use of his/her vehicle, economic losses and consequential damages, and are

11   therefore entitled to compensatory relief according to proof, and entitled to a declaratory

12   judgment that Defendants are liable to Plaintiffs for breach of their duty to design, manufacture,

13   assemble, market, and sell a safe product, fit for their reasonably intended use. Plaintiffs allege

14   that the vulnerability of the CAN buses to hacking would not happen in the absence of a defective

15   product. Plaintiffs allege the application of res ipsa loquitur under Louisiana Products Liability

16   Law.

17   **COUNT XCIII**

18   **Redhibition**

19   **(Louisiana Civil Code Articles 2520, *et seq*. and 2545)**

20   913.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

21   forth herein.

22   914.     Plaintiffs allege that Defendants defectively designed, manufactured, sold or

23   otherwise placed in the stream of commerce vehicles that are defective.

24   915.     Plaintiffs allege that the vulnerability of the CAN buses to hacking would not

25   happen in the absence of a defective product.

26   916.     Plaintiffs allege the application of res ipsa loquitur under Louisiana Products

27   Liability Law.

28   917.     Plaintiffs allege that Defendants have known about safety hazards that result in

143

COMPLAINT

susceptibility to hacking of their vehicles for a number of years and have failed to adequately address those safety concerns.

918.     Defendants, as manufacturers of the Defective Vehicles, are responsible for damages caused by the failure of their product to conform to well-defined standards. In particular, the vehicles contain vices or defects which rendered them useless or their use so inconvenient and unsafe that a reasonable buyer would not have purchased them. Defendants manufactured, sold and promoted the vehicles and placed the vehicles into the stream of commerce. Under Louisiana Law, the seller and manufacturers warrants the buyer against redhibitory defects or vices in the things sold. La. Code Civ. P. Art. 2520. The vehicles as sold and promoted by Defendants possessed redhibitory defects because they were not manufactured and marketed in accordance with industry standards and/or were unreasonably dangerous as described above, which rendered the vehicles useless or their use so inconvenient and unsafe that it must be presumed that a buyer would not have bought the vehicles had he/she known of the defect. Pursuant to La. Code Civ. P. Art. 2520, Plaintiffs are entitled to obtain a rescission of the sale of the subject product.

919.     The vehicles alternatively possess redhibitory defects because the vehicles were not manufactured and marketed in accordance with industry standards and/or were unreasonably dangerous as described above, which diminished the value of the vehicles so that it must be presumed that a reasonable buyer would still have bought the vehicles, but for a lesser price, had the redhibitory defects been disclosed. In this instance, Plaintiffs are entitled to a reduction of the purchase price.

920.     As the manufacturers of the vehicle, under Louisiana Law, defendants are deemed to know that the vehicle contained redhibitory defects pursuant to La. Code Civ. P. Art. 2545. Defendants are liable as bad faith sellers for selling a defective product with knowledge of defects and thus are liable to Plaintiffs for the price of the subject product, with interest from the purchase date, as well as reasonable expenses occasioned by the sale of the subject product, and attorney's fees.

921.     Due to the defects and redhibitory vices in the vehicles sold to Plaintiffs, they have suffered damages under Louisiana Law.

144

COMPLAINT

**COUNT XCIV**

**Breach of Implied Warranty of Fitness for Ordinary Use**
**(Louisiana Civil Code Article 2524)**

922.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

923.    At all relevant times, Defendants marketed, sold and distributed the automobile for use by Plaintiffs, knew of the use for which the Defective Vehicles were intended, and impliedly warranted them to be fit for ordinary use.

924.    The Defective Vehicles, when sold, were defective, unmerchantable, and unfit for ordinary use.

925.    The Defective Vehicles contain vices or defects which render them either absolutely useless or render their use inconvenient, imperfect, and unsafe such that Plaintiffs would not have purchased the Defective Vehicles had they known of the vices or defects.

926.    The damages in question arose from the reasonably anticipated use of the product in question.

927.    Defendants breached the implied warranties of merchantability and fitness for ordinary use when the Defective Vehicles were sold to Plaintiffs because they are vulnerable to hacking and lack a fail-safe mechanism.

928.    As a direct and proximate cause of Defendants' breach of the implied warranties of merchantability and fitness for ordinary use, Plaintiffs and the Class have suffered injuries and damages.

**Claims Brought on Behalf of the Maine Class**

**COUNT XCV**

**Violation of Maine Unfair Trade Practices Act**
**(Maine Revised Statutes Annotated title 5 Sections 205-A, *et seq*.)**

929.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

930.    The Maine Unfair Trade Practices Act ("UTPA") makes unlawful "[u]nfair

145

COMPLAINT

1   methods of competition and unfair or deceptive acts or practices in the conduct of any trade or

2   commerce. . . ." per Me. Rev. Stat. Ann. tit. 5 § 207.

3       931.    The advertising and sale of motor vehicles by Defendants constitutes "trade or

4   commerce" within the meaning of UTPA per Me. Rev. Stat. Ann. tit. 5 § 206(3).

5       932.    In the course of Defendants' business, they willfully failed to disclose and

6   actively concealed the dangerous risk of hacking as described above. This was a deceptive act in

7   that Defendants represented that Defective Vehicles have characteristics, uses, benefits, and

8   qualities which they do not have; represented that Defective Vehicles are of a particular standard

9   and quality when they are not; and advertised Defective Vehicles with the intent not to sell them

10  as advertised. Defendants knew or should have known that their conduct violated the UTPA.

11      933.    Defendants engaged in a deceptive trade practice when they failed to disclose

12  material information concerning the Defendants vehicles which was known to Defendants at the

13  time of the sale. Defendants deliberately withheld the information about the vehicles'

14  susceptibility to hacking in order to ensure that consumers would purchase their vehicles and to

15  induce the consumer to enter into a transaction.

16      934.    The information withheld was material in that it was information that was

17  important to consumers and likely to affect their choice of, or conduct regarding, the purchase of

18  their cars. Defendants' withholding of this information was likely to mislead consumers acting

19  reasonably under the circumstances. The vulnerability of the vehicles to hacking and their lack of

20  a fail-safe mechanism were material to Plaintiffs and the Class. Had Plaintiffs and the Class

21  known that their vehicles had these serious safety defects, they would not have purchased their

22  vehicles.

23      935.    Defendants' conduct has caused or is to cause a substantial injury that is not

24  reasonably avoided by consumers, and the harm is not outweighed by a countervailing benefit to

25  consumers or competition.

26      936.    As a result of Defendants' deceptive and unfair practices, Plaintiffs and the Class

27  have suffered loss of money or property. Plaintiffs and the Class overpaid for their vehicles and

28  did not receive the benefit of their bargain. The value of their vehicles have diminished now that

146

COMPLAINT

the safety issues have come to light, and Plaintiffs and the Class own vehicles that are not safe.

937.    Plaintiffs are entitled to actual damages, restitution and such other equitable relief, including an injunction, as the Court determines to be necessary and proper.

938.    Pursuant to Me. Rev. Stat. Ann. tit. 5 § 213(3), Plaintiffs will mail a copy of the complaint to Maine's Attorney General.

## COUNT XCVI

### Breach of Implied Warranty of Merchantability
### (Maine Revised Statutes Annotated title 11 Section 2-314)

939.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

940.    Defendants are and were at all relevant times merchants with respect to motor vehicles.

941.    A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

942.    These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

943.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT XCVII

### Breach of Contract
### (Based on Maine Law)

944.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

945.    To the extent Defendants' limited remedies are deemed not to be warranties under Maine's Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law contract law. Defendants limited the remedies

147

COMPLAINT

available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

946. Defendants breached this contract obligation by failing to repair the Class Vehicles, or to replace them.

947. As a direct and proximate result of Defendants' breach of contract, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**Claims Brought on Behalf of the Maryland Class**

**COUNT XCVIII**

**Violations of the Maryland Consumer Protection Act**
**(Maryland Code of Commercial Law Sections 13-101, *et seq.*)**

948. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

949. Plaintiffs are persons within the meaning of the Maryland Consumer Protection Act (the "Act") for all purposes therein.

950. Defendants are persons within the meaning of the Act for all purposes therein.

951. The false, deceptive and misleading statements and representations made by Defendants alleged above and below are Unfair and Deceptive Trade Practices within the meaning of the Act.

952. Defendants participated in unfair or deceptive acts or practices that violated the Act, as described above and below, and those unfair and deceptive trade practices occurred or were committed in the course, vocation or occupation of Defendants' businesses. Defendants engaged in the unfair and deceptive trade practices and each are directly liable for these violations of law.

953. The Unfair and Deceptive Trade Practices as alleged above and below significantly impact the public as actual or potential customers of Defendants.

COMPLAINT

954.     By failing to disclose and actively concealing the dangerous risk of hacking and the lack of adequate fail-safe mechanisms in Defective Vehicles equipped with CAN buses, Defendants engaged in deceptive business practices prohibited by the Act, including, but not limited to, (1) representing that Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Defective Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Defective Vehicles with the intent not to sell them as advertised; (4) representing that a transaction involving Defective Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Defective Vehicles has been supplied in accordance with a previous representation when it has not.

955.     As alleged above, Defendants made numerous material statements about the safety and reliability of Defective Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Defendants' unlawful advertising and representations as a whole.

956.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Defective Vehicles.

957.     As a direct and proximate result of their unfair and deceptive business practices, and violations of the Act detailed above, Defendants caused actual damages, injuries, and losses to Plaintiffs and, if not stopped, will continue to harm Plaintiffs. Plaintiffs currently own or lease, or within the class period have owned or leased, Defective Vehicles that are defective and inherently unsafe. CAN bus defects and the resulting vulnerability to hacking have caused the value of Defective Vehicles to plummet.

958.     Plaintiffs are entitled to all damages permitted by M.R.S. §§ 13-101, *et seq.,* including actual damages sustained, civil penalties, attorneys' fees, and costs of this action. Also, the State of Maryland is entitled to statutory penalties from defendants for each violation of the Act.

COMPLAINT

## COUNT XCIX

**Breach of Express Warranty**
**(Maryland Code of Commercial Law Section 2-313)**

959.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

960.     Defendants are and were at all relevant times merchants as defined by the Uniform Commercial Code.

961.     In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

1.     Toyota's warranty

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

2.     Ford's warranty

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

150

COMPLAINT

3.   GM's warranty

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

962.     Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

963.     Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

964.     In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

965.     These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives. These affirmations and promises were part of the basis of the bargain between the parties.

966.     These additional warranties were also breached because the Class Vehicles were

151

COMPLAINT

1  not fully operational, safe, or reliable (and remained so even after the problems were

2  acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees.

3  Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles

4  conforming to these express warranties.

5    967.  Furthermore, the limited warranty of repair and/or adjustments to defective parts,

6  fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and

7  the other Class members whole and because Defendants have failed and/or have refused to

8  adequately provide the promised remedies within a reasonable time.

9    968.  Accordingly, recovery by Plaintiffs and the other Class members is not limited to

10  the limited warranty of repair or adjustments to parts defective in materials or workmanship, and

11  Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by

12  law.

13    969.  Also, as alleged in more detail herein, at the time that Defendants warranted and

14  sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and

15  were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or

16  concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members

17  were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent

18  pretenses.

19    970.  Moreover, many of the injuries flowing from the Class Vehicles cannot be

20  resolved through the limited remedy of "replacement or adjustments," as many incidental and

21  consequential damages have already been suffered due to Defendants' fraudulent conduct as

22  alleged herein, and due to their failure and/or continued failure to provide such limited remedy

23  within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies

24  would be insufficient to make Plaintiffs and the other Class members whole.

25    971.  Finally, due to the Defendants' breach of warranties as set forth herein, Plaintiffs

26  and the Class assert as an additional and/or alternative remedy, as set forth in Md. Code Com.

27  Law § 2-608 for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the

28  Class of the purchase price of all vehicles currently.

152

COMPLAINT

972.     Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

973.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT C

### Breach of the Implied Warranty of Merchantability
### (Maryland Code of Commercial Law Section 2-314)

974.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

975.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

976.     A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

977.     These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

978.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT CI

### Fraud by Concealment
### (Based on Maryland Law)

979.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

980.     As set forth above, Defendants concealed and/or suppressed material facts concerning the safety of their vehicles.

981.     Defendants had a duty to disclose these safety issues because they consistently

153

COMPLAINT

marketed their vehicles as safe and proclaimed that safety is one of Defendants' highest corporate priorities. Once Defendants made representations to the public about safety, Defendants were under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

982.     In addition, Defendants had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendants who have superior knowledge and access to the facts, and Defendants knew they were not known to or reasonably discoverable by Plaintiffs and the Class. These omitted facts were material because they directly impact the safety of the Defective Vehicles. Whether or not a vehicle is susceptible to hacking and can be commandeered by a third party are material safety concerns. Defendants possessed exclusive knowledge of the defects rendering Defective Vehicles inherently more dangerous and unreliable than similar vehicles.

983.     Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs and the Class to purchase Defective Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

984.     Defendants still have not made full and adequate disclosure and continue to defraud Plaintiffs and the Class.

985.     Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' and the Class' actions were justified. Defendants were in exclusive control of the material facts and such facts were not known to the public or the Class.

986.     As a result of the concealment and/or suppression of the facts, Plaintiffs and the Class sustained damage. For those Plaintiffs and the Class who elect to affirm the sale, these damages, include the difference between the actual value of that which Plaintiffs and the Class paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of

154

1    use and enjoyment of the property, and/or lost profits. For those Plaintiffs and the Class who want
2    to rescind the purchase, then those Plaintiffs and the Class are entitled to restitution and
3    consequential damages.

4         987.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to
5    defraud, and in reckless disregard of Plaintiffs' and the Class' rights and well-being to enrich
6    Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount
7    sufficient to deter such conduct in the future, which amount is to be determined according to
8    proof.

9                                    **COUNT CII**

10                         **Strict Products Liability – Design Defect**
11                              **(Based on Maryland Law)**

12        988.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set
13   forth herein.

14        989.    At all times relevant hereto, Defendants were engaged in the business of
15   designing, manufacturing, assembling, promoting, advertising, selling, and distributing
16   Defendants vehicles in the United States, including, but not limited to, the Defective Vehicles.

17        990.    Defendants knew and expected for the Defective Vehicles to eventually be sold to
18   and operated by consumers and/or eventual owners of the Defective Vehicles, including Plaintiffs
19   and the Class. Consequently, Plaintiffs and the Class were foreseeable users of the products which
20   Defendants manufactured.

21        991.    The Defective Vehicles reached Plaintiffs and the Class without substantial
22   change in condition from the time they were manufactured by Defendants.

23        992.    The susceptibility of the Defective Vehicles to hackling could not have been
24   contemplated by any reasonable person expected to operate the Defective Vehicles, and for that
25   reason, presented an unreasonably dangerous situation for foreseeable users of the Defective
26   Vehicles even though the Defective Vehicles were operated by foreseeable users in a reasonable
27   manner.

28        993.    Defendants should have reasonably foreseen that the dangerous conditions of the

155

COMPLAINT

Defective Vehicles being vulnerable to hacking without a fail-safe mechanism to would subject Plaintiffs and the Class to harm.

994.     As a result of these defective designs, the Defective Vehicles are unreasonably dangerous.

995.     Plaintiffs and the Class have used the Defective Vehicles reasonably and as intended, to the fullest degree possible given their defective nature, and, nevertheless, have suffered damages through no fault of their own.

996.     Safer, alternative designs existed for the Defective Vehicles.

997.     As a direct and proximate result of Defendants' design, manufacture, assembly, marketing, and sales of the Defective Vehicles, Plaintiffs and the Class have sustained and will continue to sustain the loss of the use of their vehicles, economic losses, and consequential damages, and are, therefore, entitled to compensatory relief according to proof, and entitled to a declaratory judgment that Defendants are liable to Plaintiffs and the Class for breach of their duty to design, manufacture, assemble, market, and sell a safe product, fit for their reasonably intended use. Plaintiffs and the Class are therefore entitled to equitable relief as described below.

998.     Plaintiffs and the Class demand judgment against Defendants for design defects as prayed for below.

## COUNT CIII

### Strict Products Liability – Defective Manufacturing
### (Based on Maryland Law)

999.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1000.     Defendants are the manufacturers, designers, distributors, sellers, or suppliers of the Defective Vehicles.

1001.     The Defective Vehicles manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants were defective in their manufacture and construction such that they were unreasonably dangerous, were not fit for the ordinary purposes for which they were intended, and/or did not meet the reasonable expectations of any consumer.

156

COMPLAINT

1002.     The Defective Vehicles manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants, were defective in their manufacture and construction as described at the time they left Defendants' control.

1003.     The Defective Vehicles are unreasonably dangerous due to their defective manufacture.

1004.     As a direct and proximate result of Plaintiffs' purchase and use of the Defective Vehicles as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiffs and the Class suffered economic losses, and will continue to suffer such damages and economic losses in the future.

1005.     Plaintiffs demand judgment against Defendants for manufacturing defects as prayed for below.

## COUNT CIV

### Strict Products Liability – Defect Due to Nonconformance with Representations (Based on Maryland Law)

1006.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1007.     Defendants are the manufacturers, designers, distributors, sellers, or suppliers of the Defective Vehicles, and Defendants made representations regarding the character or quality of the Defective Vehicles.

1008.     The Defective Vehicles manufactured and supplied by Defendants were defective in that, when they left the hands of Defendants, they did not conform to the representations made by Defendants concerning the Defective Vehicles.

1009.     Plaintiffs and the Class justifiably relied upon Defendants' representations regarding the Defective Vehicles when they purchased and used the Defective Vehicles.

1010.     As a direct and proximate result of their reliance on Defendants' representations regarding the character and quality of the Defective Vehicles, Plaintiffs and the Class suffered damages and economic losses, and will continue to suffer such damages and economic losses in the future.

COMPLAINT

1011.     Plaintiffs demand judgment against Defendants for manufacturing defects as prayed for below.

**Claims Brought on Behalf of the Massachusetts Class**

**COUNT CV**

**Violations of the Massachusetts Consumer Protection Act**
**(Massachusetts General Laws Chapter 93A)**

1012.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1013.     The conduct of Defendants as set forth herein constitutes unfair and deceptive acts or practices in violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ch. 93A, including but not limited to Defendants' design, manufacture, and sale of Class Vehicles with the defective CAN bus, which Defendants failed to adequately investigate, disclose, and remedy, and their misrepresentations and omissions regarding the safety, reliability, and functionality of their Class Vehicles, which misrepresentations and omissions possessed the tendency to deceive.

1014.     Defendants engages in the conduct of trade or commerce and the misconduct alleged herein occurred in trade or commerce.

1015.     Plaintiffs, individually and on behalf of the other Class members, will make a demand on Defendants pursuant to Mass. Gen. Laws Ch. 93A, § 9(3). The letter will assert that rights of consumers as claimants had been violated, describe the unfair and deceptive acts committed by Defendants, and specify the injuries the Plaintiffs and the other Class members have suffered and the relief they seek.

1016.     Therefore, Plaintiffs seeks monetary and equitable relief under the Massachusetts Consumer Protection Act as a result of Defendants' unfair and deceptive acts and practices.

**COUNT CVI**

**Breach of Express Warranty**
**(Massachusetts General Laws Chapter 106, Section 2-313)**

1017.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

158

COMPLAINT

forth herein.

1018.    Defendants are and were at all relevant times merchants with respect to motor vehicles.

1019.    In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

1.    <u>Toyota's warranty</u>

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

2.    <u>Ford's warranty</u>

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

3.    <u>GM's warranty</u>

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

159

COMPLAINT

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

1020.     Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

1021.     Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1022.     In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

1023.     These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives. These affirmations and promises were part of the basis of the bargain between the parties.

1024.     These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable (and remained so even after the problems were acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees. Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles conforming to these express warranties.

160

COMPLAINT

1025.    Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1026.    Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

1027.    Also, as alleged in more detail herein, at the time that Defendants warranted and sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1028.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Defendants' fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

1029.    Finally, due to the Defendants' breach of warranties as set forth herein, Plaintiffs and the Class assert as an additional and/or alternative remedy, as set forth in ALM GL ch. 106, § 2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of the purchase price of all vehicles currently owned.

1030.    Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

1031.    As a direct and proximate result of Defendants' breach of express warranties,

161

COMPLAINT

Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT CVII

### Breach of Implied Warranty of Merchantability
### (Massachusetts General Laws Chapter 106, Section 2-314)

1032.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1033.    Defendants are and were at all relevant times merchants with respect to motor vehicles.

1034.    A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

1035.    These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

1036.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT CVIII

### Breach of Contract/Common Law Warranty
### (Based on Massachusetts Law)

1037.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1038.    Plaintiffs bring this Count on behalf of the Massachusetts Class.

1039.    To the extent Defendants' limited remedies are deemed not to be warranties under Massachusetts' Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other

162

COMPLAINT

1    Class members.

2    1040.    Defendants breached this warranty or contract obligation by failing to repair the

3    Class Vehicles, or to replace them.

4    1041.    As a direct and proximate result of Defendants' breach of contract or common

5    law warranty, Plaintiffs and the other Class members have been damaged in an amount to be

6    proven at trial, which shall include, but is not limited to, all compensatory damages, incidental

7    and consequential damages, and other damages allowed by law.

8                                    **COUNT CIX**

9                            **Fraudulent Concealment**
10                           **(Based on Massachusetts Law)**

11    1042.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

12    forth herein.

13    1043.    Defendants intentionally concealed the above-described material safety and

14    functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and

15    the other Class members information that is highly relevant to their purchasing decision.

16    1044.    Defendants further affirmatively misrepresented to Plaintiffs in advertising and

17    other forms of communication, including standard and uniform material provided with each car,

18    that the Class Vehicles they was selling were new, had no significant defects, and would perform

19    and operate properly when driven in normal usage.

20    1045.    Defendants knew these representations were false when made.

21    1046.    The Class Vehicles purchased or leased by Plaintiffs and the other Class members

22    were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and

23    defective CAN buses, as alleged herein.

24    1047.    Defendants had a duty to disclose that these Class Vehicles were defective,

25    unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be

26    rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other

27    Class members relied on Defendants' material representations that the Class Vehicles they were

28    purchasing were safe and free from defects.

163

COMPLAINT

1048.     The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

1049.     The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants knew or recklessly disregarded that their representations were false because they knew the CAN buses were susceptible to hacking. Defendants intentionally made the false statements in order to sell Class Vehicles.

1050.     Plaintiffs and the other Class members relied on Defendants' reputations – along with Defendants' failure to disclose the faulty and defective nature of the CAN bus and Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Defendants' Class Vehicles.

1051.     As a result of their reliance, Plaintiffs and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Class Vehicles.

1052.     Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members.

1053.     Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

**Claims Brought on Behalf of the Michigan Class**

**<u>COUNT CX</u>**

**Violation of the Michigan Consumer Protection Act**
**(Michigan Compiled Laws Sections 445.901, *et seq.*)**

1054.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1055.     Defendants misrepresented the safety of the Defective Vehicles after learning of

164

COMPLAINT

their defects with the intent that Plaintiffs relied on such representations in their decision regarding the purchase, lease and/or use of the Defective Vehicles.

1056.    Plaintiffs did, in fact, rely on such representations in their decision regarding the purchase, lease and/or use of the Defective Vehicles.

1057.    Through those misleading and deceptive statements and false promises, Defendants violated the Michigan Consumer Protection Act.

1058.    The Michigan Consumer Protection Act applies to Defendants' transactions with Plaintiffs because Defendants' deceptive scheme was carried out in Michigan and affected Plaintiffs.

1059.    Defendants also failed to advise NHSTA and the public about what they knew about the CAN bus defects in the Defective Vehicles.

1060.    Plaintiffs relied on Defendants' silence as to known defects in connection with their decision regarding the purchase, lease and/or use of the Defective Vehicles.

1061.    As a direct and proximate result of Defendants' deceptive conduct and violation of the Michigan Consumer Protection Act, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT CXI

### Breach of Express Warranty
### (Michigan Compiled Laws Section 440.2313)

1062.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1063.    Defendants expressly warranted – through statements and advertisements described above – that the vehicles were of high quality, and at a minimum, would actually work properly and safely.

1064.    Defendants breached this warranty by knowingly selling to Plaintiffs vehicles with dangerous defects, and which were not of high quality.

1065.    Plaintiffs have been damaged as a direct and proximate result of the breaches by

165

COMPLAINT

Defendants in that the Defective Vehicles purchased by Plaintiffs were and are worth far less than what the Plaintiffs paid to purchase, which was reasonably foreseeable to Defendants.

## COUNT CXII

### Breach of Implied Warranty of Merchantability
### (Michigan Compiled Laws Section 440.2314)

1066.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1067.    Defendants impliedly warranted that their vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonably safety during normal operation, and without unduly endangering them or members of the public.

1068.    As described above, there were dangerous defects in the vehicles manufactured, distributed, and/or sold by Defendants, which Plaintiffs purchased, including, but not limited to, defects that caused the vehicles to be vulnerable to hacking.

1069.    These dangerous defects existed at the time the vehicles left Defendants' manufacturing facilities and at the time they were sold to Plaintiffs. Furthermore, because of these dangerous defects, Plaintiffs did not receive the benefit of their bargain and the vehicles have suffered a diminution in value.

1070.    These dangerous defects were the direct and proximate cause of damages to the Plaintiffs.

### Claims Brought on Behalf of the Minnesota Class

## COUNT CXIII

### Violation of Minnesota False Statement in Advertising Statute
### (Minnesota Statutes Sections 325F.67 *et seq.*)

1071.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1072.    Defendants produced and published advertisements and deceptive and misleading statements on the safety and reliability of the Defective Vehicles, even after learning of their

166

COMPLAINT

defects, with the intent to sell the Defective Vehicles.

1073.     Defendants continue to represent or otherwise disseminate misleading information about the defect and cause of the defect with the intent to induce the public to by the Defective Vehicles.

1074.     Defendants concealed their deceptive practices in order to increase the sale of and profit from the Defective Vehicles.

1075.     Defendants violated the Minnesota False Statements in Advertising Act, Minn. Stat. §§ 325F.67, *et seq.*, by publicly misrepresenting safety of the Defective Vehicles, including the susceptibility of the CAN buses to hacking.

1076.     Defendants also failed to advise the NHTSA and the public about what they knew about the vulnerable CAN buses.

1077.     The Minnesota False Statements in Advertising Act applies to Plaintiffs' transactions with Defendants because Defendants' deceptive scheme was carried out in Minnesota and affected Plaintiffs.

1078.     As a direct and proximate result of Defendants' deceptive, unfair, and fraudulent conduct and violations of Minn. Stat. § 325F.67, *et seq.*, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT CXIV

### Violation of Minnesota Uniform Deceptive Trade Practices Act
### (Minnesota Statutes Sections 325D.43-48, *et seq.*)

1079.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein

1080.     Defendants engaged in – and continue to engage in – conduct that violates the Minnesota Deceptive Trade Practices Act, Minn. Stat. §§ 325D.44, *et seq.* The violations include the following:

a)     Defendants violated Minn. Stat. § 325D.44(5) by representing the Defective Vehicles as having characteristics, uses, and benefits of safe and mechanically sound

COMPLAINT

1  vehicles while knowing that the statements were false and the Defective Vehicles contained
2  defects;

3          b)      Defendants violated Minn. Stat. § 325D.44(7) by representing the
4  Defective Vehicles as a non-defective product of a particular standard, quality, or grade while
5  knowing the statements were false and the Defective Vehicles contained defects;

6          c)      Defendants violated Minn. Stat. § 325D.44(9) by advertising, marketing,
7  and selling the Defective Vehicles as reliable and without a known defect while knowing those
8  claims were false; and

9          d)      Defendants violated Minn. Stat. § 325D.44(13) by creating a likelihood of
10 confusion and/or misrepresenting the safety of the Defective Vehicles.

11 1081.      Defendants' deceptive scheme was carried out in Minnesota and affected
12 Plaintiffs.

13 1082.      Defendants also failed to advise the NHSTA and the public about what they knew
14 about the susceptibility of the CAN buses to hacking.

15 1083.      As a direct and proximate result of Defendants' deceptive conduct and violation
16 of Minn. Stat. §§ 325D.44, *et seq.*, Plaintiffs have sustained and will continue to sustain economic
17 losses and other damages for which they are entitled to compensatory and equitable damages and
18 declaratory relief in an amount to be proven at trial.

19                          **COUNT CXV**

20          **Violation of Minnesota Prevention of Consumer Fraud Act**
             **(Minnesota Statutes Sections 325F.68, *et seq*.)**
21

22 1084.      Plaintiffs reallege and incorporate by reference all paragraphs as though fully set
23 forth herein.

24 1085.      Defendants misrepresented the safety of the Defective Vehicles after learning of
25 their defects with the intent that Plaintiffs relied on such representations in their decision
26 regarding the purchase, lease and/or use of the Defective Vehicles.

27 1086.      Plaintiffs did, in fact, rely on such representations in their decision regarding the
28 purchase, lease and/or use of the Defective Vehicles.

COMPLAINT

1087.     Through these misleading and deceptive statements and false promises, Defendants violated Minn. Stat. § 325F.69.

1088.     The Minnesota Prevention of Consumer Fraud Act applies to Defendants' transactions with Plaintiffs because Defendants' deceptive scheme was carried out in Minnesota and affected Plaintiffs.

1089.     Defendants also failed to advise the NHSTA and the public about what they knew about the sudden and unintended acceleration defects in the Defective Vehicles.

1090.     Plaintiffs relied on Defendants' silence as to known defects in connection with their decision regarding the purchase, lease and/or use of the Defective Vehicles.

1091.     As a direct and proximate result of Defendants' deceptive conduct and violation of Minn. Stat. § 325F.69, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT CXVI

### Fraudulent Misrepresentation and Fraudulent Concealment
### (Based on Minnesota Law)

1092.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1093.     Defendants intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1094.     Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

1095.     Defendants knew these representations were false when made.

1096.     The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and

169

COMPLAINT

1  defective CAN buses, as alleged herein.

2  1097.  Defendants had a duty to disclose that these Class Vehicles were defective,

3  unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be

4  rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other

5  Class members relied on Defendants' material representations that the Class Vehicles they were

6  purchasing were safe and free from defects.

7  1098.  The aforementioned concealment was material because if it had been disclosed

8  Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or

9  would not have bought or leased those Vehicles at the prices they paid.

10  1099.  The aforementioned representations were material because they were facts that

11  would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants

12  knew or recklessly disregarded that their representations were false because they knew the CAN

13  buses were susceptible to hacking. Defendants intentionally made the false statements in order to

14  sell Class Vehicles.

15  1100.  Plaintiffs and the other Class members relied on Defendants' reputations – along

16  with Defendants' failure to disclose the faulty and defective nature of the CAN bus and

17  Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other

18  similar false statements – in purchasing or leasing Defendants' Class Vehicles.

19  1101.  As a result of their reliance, Plaintiffs and the other Class members have been

20  injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the

21  bargain and overpayment at the time of purchase or lease and/or the diminished value of their

22  Class Vehicles.

23  1102.  Defendants' conduct was knowing, intentional, with malice, demonstrated a

24  complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class

25  members.

26  1103.  Plaintiffs and the other Class members are therefore entitled to an award of

27  punitive damages.

28

170

COMPLAINT

## COUNT CXVII

### Breach of Express Warranty
### (Minnesota Statutes Section 325G.19 Express Warranties)

1104.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1105.     Defendants are and at all relevant times were merchants as defined by the Uniform Commercial Code ("UCC").

1106.     Defendants expressly warranted – through uniform statements described above – that the vehicles were of high quality, and, at a minimum, would actually work properly and safely. These warranties became part of the basis of the bargain.

1107.     Defendants breached this warranty by knowingly selling to Plaintiffs vehicles with dangerous defects, and which were not of high quality.

1108.     Plaintiffs have been damaged as a direct and proximate result of the breaches by Defendants in that the Defective Vehicles purchased by Plaintiffs were and are worth far less than what the Plaintiffs paid to purchase, which was reasonably foreseeable to Defendants.

1109.     Plaintiffs were unaware of these defects and could not have reasonably discovered them when they purchased their vehicles from Defendants.

1110.     Plaintiffs and the Class are entitled to damages, including the diminished value of their vehicles and the value of the non-use of the vehicles pending successful repair, in addition to any costs associated with purchasing safer vehicles, incidental an consequential damages, and all other damages allowable under the law, including such further relief as the Court deems just and proper.

## COUNT CXVIII

### Breach of Implied Warranty of Merchantability (Strict Liability)
### (Minnesota Statutes Section 336.2-314 Implied Warranty; Merchantability; Usage of Trade)

1111.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1112.     Defendants   impliedly   warranted   that   their   vehicles   were   of   good   and

171

COMPLAINT

merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

1113.     As described above, there were dangerous defects in the vehicles manufactured, distributed, and/or sold by Defendants, which Plaintiffs purchased, including, but not limited to, defects that caused the vehicles to be vulnerable to hacking.

1114.     These dangerous defects existed at the time the vehicles left Defendants' manufacturing facilities and at the time they were sold to the Plaintiffs. Furthermore, because of these dangerous defects, Plaintiffs did not receive the benefit of their bargain and the vehicles have suffered a diminution in value.

1115.     These dangerous defects were the direct and proximate cause of damages to the Plaintiffs.

## COUNT CXIX

### Strict Liability (Design Defect)
### (Based on Minnesota Law)

1116.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1117.     Defendants are and have been at all times pertinent to this Complaint, engaged in the business of designing, manufacturing, assembling, promoting, advertising, distributing and selling Defective Vehicles in the United States, including those owned or leased by the Plaintiffs and the Class.

1118.     Defendants knew and anticipated that the vehicles owned or leased by Plaintiffs and the Class would be sold to and operated by purchasers and/or eventual owners or leasors of Defendants' vehicles, including Plaintiffs and the Class.

1119.     Defendants also knew that these Defective Vehicles would reach the Plaintiffs and the Class without substantial change in their condition from the time the vehicles departed the Defendants' assembly lines.

1120.     Defendants designed the Defective Vehicles defectively, causing them to fail to

172

COMPLAINT

perform as safely as an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

1121.    Defendants had the capability to use a feasible, alternative, safer design, and failed to correct the design defects.

1122.    The risks inherent in the design of the Defective Vehicles outweigh significantly any benefits of such design.

1123.    Plaintiffs and the Class could not have anticipated and did not know of the aforementioned defects at any time prior to recent revelations regarding the problems with the Defective Vehicles.

1124.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the Class have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

**COUNT CXX**

**Strict Liability (Failure to Warn)**
**(Based on Minnesota Law)**

1125.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1126.    Defendants are and have been at all times pertinent to this Complaint, engaged in the business of designing, manufacturing, assembling, promoting, advertising distributing and selling Defective Vehicles in the United States, including those owned or leased by the Plaintiffs and the Class.

1127.    Defendants, at all times pertinent to this Complaint, knew and anticipated that the Defective Vehicles and their component parts would be purchased, leased and operated by consumers, including Plaintiffs and the Class.

1128.    Defendants also knew that these Defective Vehicles would reach the Plaintiffs and the Class without substantial change in their conditions from the time that the vehicles departed the Defendants' assembly lines.

173

COMPLAINT

1129.      Defendants knew or should have known of the substantial dangers involved in the reasonably foreseeable use of the Defective Vehicles, defective design, manufacturing and lack of sufficient warnings caused them to have an unreasonably dangerous propensity to sudden and unintended acceleration.

1130.      The Defendants failed to adequately warn Plaintiffs and the Class when they became aware of the defect that caused Plaintiffs and the Class vehicles to be prone to sudden and unintended acceleration.

1131.      Defendants also failed to timely recall the vehicles or take any action to timely warn Plaintiffs or the Class of these problems and instead continue to subject Plaintiffs and the Class to harm.

1132.      Defendants knew, or should have known, that these defects were not readily recognizable to an ordinary consumer and that consumers would lease, purchase and use these products without inspection.

1133.      Defendants should have reasonably foreseen that the CAN bus defect in the Defective Vehicles would subject the Plaintiffs and the Class to harm resulting from the defect.

1134.      Plaintiffs and the Class have used the Defective Vehicles for their intended purpose and in a reasonable and foreseeable manner.

1135.      As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the Class have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## Claims Brought on Behalf of the Mississippi Class

## COUNT CXXI

## Mississippi Products Liability Act
### (Mississippi Code Annotated Sections 11-1-63, *et seq.*)

1136.      Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1137.      Defendants have defectively designed, manufactured, sold or otherwise placed in

174

COMPLAINT

1   the stream of commerce Defective Vehicles.

2   1138.   Defendants are strictly liable in tort for the Plaintiffs' injuries and damages and

3   the Plaintiffs respectfully rely upon the Doctrine as set forth in *Restatement, Second, Torts*

4   § 402(a).

5   1139.   Because of the negligence of the design and manufacture of the Defective

6   Vehicle, by which Plaintiffs were injured and the failure of Defendants to warn Plaintiffs of the

7   certain dangers concerning the operation of the Defective Vehicles which were known to

8   Defendants but were unknown to Plaintiffs, the Defendants have committed a tort.

9   1140.   The Defective Vehicles which caused Plaintiffs' injuries were manufactured by

10  Defendants.

11  1141.   At all times herein material, Defendants negligently and carelessly did certain acts

12  and failed to do other things, including, but not limited to, inventing, developing, designing,

13  researching, guarding, manufacturing, building, inspecting, investigating, testing, labeling,

14  instructing, and negligently and carelessly failing to provide adequate and fair warning of the

15  characteristics, angers and hazards associated with the operation of the vehicles in question to

16  users of the Defective Vehicles, including, but not limited to, Plaintiffs, and willfully failing to

17  recall or otherwise cure one or more of the defects in the product involved thereby directly and

18  proximately causing the hereinafter described injury.

19  1142.   The Defective Vehicles were unsafe for their use by reason of the fact that they

20  were defective. For example, the Defective Vehicles were defective in their design, guarding,

21  development, manufacture, and lack of permanent, accurate, adequate and fair warning of the

22  characteristics, danger and hazard to the user, prospective user and members of the general public,

23  including, but not limited to, Plaintiffs, and because Defendants failed to recall or otherwise cure

24  one or more defects in the vehicles involved thereby directly and proximately causing the

25  described injuries.

26  1143.   Defendants, and each of them, knew or reasonably should have known that the

27  above mentioned product would be purchased and used without all necessary testing or inspection

28  for defects by the Plaintiffs and the Class.

175

COMPLAINT

1144.    Plaintiffs were not aware of those defects, or else Plaintiffs was unable, as a practical matter, to cure that defective condition.

1145.    Plaintiffs used the product in a foreseeable manner.

1146.    As a proximate result of the negligence of Defendants, Plaintiffs suffered injuries and damages.

## COUNT CXXII

### Breach of Implied Warranty of Merchantability
### (Mississippi Code Annotated Section 75-2-314)

1147.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1148.    Defendants have defectively designed, manufactured, sold or otherwise placed in the stream of commerce defective vehicles as set forth above.

1149.    Defendants impliedly warranted that the Defective Vehicles were merchantable and for the ordinary purpose for which they were designed, manufactured, and sold.

1150.    The Defective Vehicles were not in merchantable condition or fit for ordinary use due to the defects described above and as a result of the breach of warranty of merchantability by Defendants, Plaintiffs sustained injuries and damages.

## COUNT CXXIII

### Negligent Misrepresentation/Fraud
### (Based on Mississippi Law)

1151.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1152.    As set forth above, Defendants concealed and/or suppressed material facts concerning the safety of their vehicles.

1153.    Defendants had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Defendants' highest corporate priorities. Once Defendants made representations to the public about safety, Defendants were under a duty to disclose these omitted facts, because where one does speak one must speak the

COMPLAINT

1   whole truth and not conceal any facts which materially qualify those facts stated. One who

2   volunteers information must be truthful, and the telling of a half-truth calculated to deceive is

3   fraud.

4   1154.   In addition, Defendants had a duty to disclose these omitted material facts

5   because they were known and/or accessible only to Defendants who have superior knowledge and

6   access to the facts, and Defendants knew they were not known to or reasonably discoverable by

7   Plaintiffs and the Class. These omitted facts were material because they directly impact the safety

8   of the Defective Vehicles. Whether or not a vehicle is susceptible to hacking and to being

9   commandeered by a third party are material safety concerns. Defendants possessed exclusive

10  knowledge of the defects rendering Defective Vehicles inherently more dangerous and unreliable

11  than similar vehicles.

12  1155.   Defendants actively concealed and/or suppressed these material facts, in whole or

13  in part, with the intent to induce Plaintiffs and the Class to purchase Defective Vehicles at a

14  higher price for the vehicles, which did not match the vehicles' true value.

15  1156.   Defendants still have not made full and adequate disclosure and continue to

16  defraud Plaintiffs and the Class.

17  1157.   Plaintiffs and the Class were unaware of these omitted material facts and would

18  not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs'

19  and the Class' actions were justified. Defendants were in exclusive control of the material facts

20  and such facts were not known to the public or the Class.

21  1158.   As a result of the misrepresentation concealment and/or suppression of the facts,

22  Plaintiffs and the Class sustained damage. For those Plaintiffs and the Class who elect to affirm

23  the sale, these damages, under Mississippi law, include the difference between the actual value of

24  that which Plaintiffs and the Class paid and the actual value of that which they received, together

25  with additional damages arising from the sales transaction, amounts expended in reliance upon

26  the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits. For

27  those Plaintiffs and the Class who want to rescind the purchase, then those Plaintiffs and the Class

28  are entitled to restitution and consequential damages under Mississippi law.

COMPLAINT

1159.     Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class' rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**Claims Brought on Behalf of the Missouri Class**

**COUNT CXXIV**

**Violation of Missouri Merchandising Practices Act**
**(Missouri Revised Statutes Sections 407.010, *et seq*.)**

1160.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1161.     The conduct of Defendants as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Defendants' manufacture and sale of vehicles with a CAN bus defect that lack an effective fail-safe mechanism, which Defendants failed to adequately investigate, disclose and remedy, and their misrepresentations and omissions regarding the safety and reliability of their vehicles.

1162.     Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1163.     Defendants' actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Defendants vehicles as a result of Defendants' generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business.

1164.     Plaintiffs and the Class were injured as a result of Defendants' conduct. Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

1165.     Defendants' conduct proximately caused the injuries to Plaintiffs and the Class.

1166.     Defendants are liable to Plaintiffs and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

178

COMPLAINT

1167.     Pursuant to Mo. Rev. Stat. § 407.010, Plaintiffs will serve the Missouri Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

## COUNT CXXV

**Breach of Express Warranty**
**(Missouri Revised Statutes Section 400.2-313)**

1168.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1169.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

1170.     In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

1.     Toyota's warranty

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

2.     Ford's warranty

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

179

COMPLAINT

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

3. <u>GM's warranty</u>

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

1171.     Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

1172.     Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1173.     In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

1174.     These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives.

COMPLAINT

1    These affirmations and promises were part of the basis of the bargain between the parties.

2    1175.    These additional warranties were also breached because the Class Vehicles were

3    not fully operational, safe, or reliable (and remained so even after the problems were

4    acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees.

5    Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles

6    conforming to these express warranties.

7    1176.    Furthermore, the limited warranty of repair and/or adjustments to defective parts,

8    fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and

9    the other Class members whole and because Defendants have failed and/or have refused to

10   adequately provide the promised remedies within a reasonable time.

11   1177.    Accordingly, recovery by Plaintiffs and the other Class members is not limited to

12   the limited warranty of repair or adjustments to parts defective in materials or workmanship, and

13   Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by

14   law.

15   1178.    Also, as alleged in more detail herein, at the time that Defendants warranted and

16   sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and

17   were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or

18   concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members

19   were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent

20   pretenses.

21   1179.    Moreover, many of the injuries flowing from the Class Vehicles cannot be

22   resolved through the limited remedy of "replacement or adjustments," as many incidental and

23   consequential damages have already been suffered due to Defendants' fraudulent conduct as

24   alleged herein, and due to their failure and/or continued failure to provide such limited remedy

25   within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies

26   would be insufficient to make Plaintiffs and the other Class members whole.

27   1180.    Finally, due to the Defendants' breach of warranties as set forth herein, Plaintiffs

28   and the Class assert as an additional and/or alternative remedy, as set forth in Mo. Rev. Stat.

181

§ 400.2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of the purchase price of all vehicles currently owned.

1181.　　Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

1182.　　As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

**COUNT CXXVI**

**Breach of the Implied Warranty of Merchantability**
**(Missouri Revised Statutes Section 400.2-314)**

1183.　　Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1184.　　Defendants are and were at all relevant times merchants with respect to motor vehicles.

1185.　　A warranty that the Defective Vehicles were in merchantable condition is implied by law in the instant transactions, pursuant to Mo. Rev. Stat. § 400.2-314.

1186.　　These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Vehicles are inherently defective in that there are defects in the CAN buses making them vulnerable to hacking, and the Defective Vehicles do not have an adequate fail-safe to protect against such attacks.

1187.　　Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

1188.　　Plaintiffs and the Class have had sufficient dealings with either the Defendants or their agents (dealerships) to establish privity of contract between Plaintiffs and the Class. Notwithstanding this, privity is not required in this case because Plaintiffs and the Class are intended third-party beneficiaries of contracts between Defendants and their dealers; specifically, they are the intended beneficiaries of Defendants' implied warranties. The dealers were not

182

COMPLAINT

intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided with the Defective Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiffs' and the Class' vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

1189.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT CXXVII

### Breach of Contract/Common Law Warranty
### (Based on Missouri Law)

1190.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1191.    To the extent Defendants' limited remedies are deemed not to be warranties under Missouri's Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

1192.    Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles, or to replace them.

1193.    As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT CXXVIII

### Fraudulent Concealment
### (Based on Missouri Law)

1194.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

183

COMPLAINT

forth herein.

1195.     Defendants intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1196.     Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

1197.     Defendants knew these representations were false when made.

1198.     The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective CAN buses, as alleged herein.

1199.     Defendants had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other Class members relied on Defendants' material representations that the Class Vehicles they were purchasing were safe and free from defects.

1200.     The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

1201.     The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants knew or recklessly disregarded that their representations were false because they knew the CAN buses were susceptible to hacking. Defendants intentionally made the false statements in order to sell Class Vehicles.

1202.     Plaintiffs and the other Class members relied on Defendants' reputations – along with Defendants' failure to disclose the faulty and defective nature of the CAN bus and Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other

184

COMPLAINT

similar false statements – in purchasing or leasing Defendants' Class Vehicles.

1203.     As a result of their reliance, Plaintiffs and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Class Vehicles.

1204.     Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members.

1205.     Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

**Claims Brought on Behalf of the Montana Class**

**COUNT CXXIX**

**Breach of Express Warranty**
**(Montana Code Section 30-2-313)**

1206.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1207.     Defendants are and were at all relevant times merchants with respect to motor vehicles under Mont. Code. Ann. § 30-2-104.

1208.     In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

1.     Toyota's warranty

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

185

COMPLAINT

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

2.      Ford's warranty

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

3.      GM's warranty

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

1209.      Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

1210.      Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and

186

COMPLAINT

1   workmanship defects.

2   1211.    In addition to these Limited Warranties, Defendants otherwise expressly

3   warranted several attributes, characteristics, and qualities of the CAN bus.

4   1212.    These warranties are only a sampling of the numerous warranties that Defendants

5   made relating to safety, reliability, and operation. Generally these express warranties promise

6   heightened, superior, and state-of-the-art safety, reliability, and performance standards, and

7   promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements,

8   on Defendants' websites, and in uniform statements provided by Defendants to be made by

9   salespeople, or made publicly by Defendants' executives or by other authorized representatives.

10  These affirmations and promises were part of the basis of the bargain between the parties.

11  1213.    These additional warranties were also breached because the Class Vehicles were

12  not fully operational, safe, or reliable (and remained so even after the problems were

13  acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees.

14  Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles

15  conforming to these express warranties.

16  1214.    Furthermore, the limited warranty of repair and/or adjustments to defective parts,

17  fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and

18  the other Class members whole and because Defendants have failed and/or have refused to

19  adequately provide the promised remedies within a reasonable time.

20  1215.    Accordingly, recovery by Plaintiffs and the other Class members is not limited to

21  the limited warranty of repair or adjustments to parts defective in materials or workmanship, and

22  Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by

23  law.

24  1216.    Also, as alleged in more detail herein, at the time that Defendants warranted and

25  sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and

26  were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or

27  concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members

28  were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent

187

COMPLAINT

1  pretenses.

2  1217.     Moreover, many of the injuries flowing from the Class Vehicles cannot be

3  resolved through the limited remedy of "replacement or adjustments," as many incidental and

4  consequential damages have already been suffered due to Defendants' fraudulent conduct as

5  alleged herein, and due to their failure and/or continued failure to provide such limited remedy

6  within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies

7  would be insufficient to make Plaintiffs and the other Class members whole.

8  1218.     Finally, due to the Defendants' breach of warranties as set forth herein, Plaintiffs

9  and the Class assert as an additional and/or alternative remedy, as set forth in Mont. Code § 30-2-

10  711, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of

11  the purchase price of all vehicles currently owned and for such other incidental and consequential

12  damages as allowed under Mont. Code §§ 30-2-711 and 30-2-608.

13  1219.     Defendants were provided notice of these issues by the instant Complaint, and by

14  other means before or within a reasonable amount of time after the allegations of Class Vehicle

15  defects became public.

16  1220.     As a direct and proximate result of Defendants' breach of express warranties,

17  Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

18  **COUNT CXXX**

19  **Breach of the Implied Warranty of Merchantability**
**(Montana Code Section 30-2-314)**

20

21  1221.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

22  forth herein.

23  1222.     Defendants are and were at all relevant times merchants with respect to motor

24  vehicles under Mont. Code § 30-2-104.

25  1223.     A warranty that the Defective Vehicles were in merchantable condition was

26  implied by law in the instant transaction, pursuant to Mont. Code § 30-2-314.

27  1224.     These Class Vehicles, when sold and at all times thereafter, were not in

28  merchantable condition and are not fit for the ordinary purpose for which cars are used.

188

COMPLAINT

Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

1225.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT CXXXI

### Breach of Contract/Common Law Warranty
### (Based on Montana Law)

1226.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1227.    To the extent Defendants' limited remedies are deemed not to be warranties under Montana's Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

1228.    Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles, or to replace them.

1229.    As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT CXXXII

### Fraudulent Concealment
### (Based on Montana Law)

1230.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1231.    Defendants intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and

189

COMPLAINT

the other Class members information that is highly relevant to their purchasing decision.

1232.     Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

1233.     Defendants knew these representations were false when made.

1234.     The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective CAN buses, as alleged herein.

1235.     Defendants had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other Class members relied on Defendants' material representations that the Class Vehicles they were purchasing were safe and free from defects.

1236.     The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

1237.     The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants knew or recklessly disregarded that their representations were false because they knew the CAN buses were susceptible to hacking. Defendants intentionally made the false statements in order to sell Class Vehicles.

1238.     Plaintiffs and the other Class members relied on Defendants' reputations – along with Defendants' failure to disclose the faulty and defective nature of the CAN bus and Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Defendants' Class Vehicles.

1239.     As a result of their reliance, Plaintiffs and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the

190

COMPLAINT

bargain and overpayment at the time of purchase or lease and/or the diminished value of their Class Vehicles.

1240.   Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members.

1241.   Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

### Claims Brought on Behalf of the Nebraska Class

### COUNT CXXXIII

### Violation of the Nebraska Consumer Protection Act
### (Nebraska Revised Statutes Sections 59-1601, *et seq.*)

1242.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1243.   The Nebraska Consumer Protection Act ("NCPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."

1244.   "Trade or commerce" means "the sale of assets or services and any commerce directly or indirectly affecting the people of the State of Nebraska."

1245.   The conduct of Defendants as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Defendants' manufacture and sale of vehicles with a CAN bus defect that lack an effective fail-safe mechanism, which Defendants failed to adequately investigate, disclose and remedy, and their misrepresentations and omissions regarding the safety and reliability of their vehicles, which misrepresentations and omissions possessed the tendency or capacity to mislead.

1246.   Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1247.   Defendants' actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Defendants vehicles as a result of Defendants' generalized course of deception. All of the wrongful conduct alleged herein

191

COMPLAINT

occurred, and continues to occur, in the conduct of Defendants' business.

1248.     Plaintiffs and the Class were injured as a result of Defendants' conduct. Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

1249.     Defendants' conduct proximately caused the injuries to Plaintiffs and the Class, who are entitled to recover actual damages, as well as enhanced damages pursuant to § 59-1609.

<div align="center">

**COUNT CXXXIV**

**Breach of the Implied Warranty of Merchantability**
**(Nebraska Revised Statutes Section 2-314)**

</div>

1250.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1251.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

1252.     A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

1253.     These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

1254.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

<div align="center">

**Claims Brought on Behalf of the Nevada Class**

**COUNT CXXXV**

**Violation of the Nevada Deceptive Trade Practices Act**
**(Nevada Revised Statutes Sections 598.0903, *et seq*.)**

</div>

1255.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1256.     Defendants are "persons" as required under the statute.

192

COMPLAINT

1   1257.   Defendants' actions as set forth above occurred in the course of business.

2   1258.   The Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.*,

3   prohibits unfair or deceptive consumer sales practices.

4   1259.   The Nev. Rev. Stat. § 598.0915 provides that a person engages in a "deceptive

5   trade practice" if, in the course of his or her business or occupation, he or she does any of the

6   following, including: "5. Knowingly makes a false representation as to the characteristics,

7   ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false

8   representation as to the sponsorship, approval, status, affiliation or connection of a person

9   therewith"; "7. Represents that goods or services for sale or lease are of a particular standard,

10   quality or grade, or that such goods are of a particular style or model, if he or she knows or should

11   know that they are of another standard, quality, grade, style or model"; "9. Advertises goods or

12   services with intent not to sell or lease them as advertised"; or "15. Knowingly makes any other

13   false representation in a transaction."

14   1260.   In the course of Defendants' business, they willfully failed to disclose and

15   actively concealed the dangerous risk of hacking and the lack of adequate fail-safe mechanisms in

16   Defective Vehicles equipped with CAN buses as described above. Accordingly, Defendants

17   engaged in deceptive trade practices, including making false representation as to the

18   characteristics, uses, and benefits of the Defective Vehicles; representing that Defective Vehicles

19   are of a particular standard and quality when they are not; advertising Defective Vehicles with the

20   intent not to sell them as advertised; and knowingly made numerous other false representations as

21   further described during the fact section of this complaint.

22   1261.   Defendants knowingly made false representations to consumers with the intent to

23   induce consumers into purchasing Defendants' vehicles. Plaintiffs reasonably relied on false

24   representations by Defendants and were induced to each purchase a Defendants vehicle, to his/her

25   detriment. As a result of these unlawful trade practices, Plaintiffs have suffered ascertainable loss.

26   1262.   Plaintiffs and the Class suffered ascertainable loss caused by Defendants' false

27   representations and failure to disclose material information. Plaintiffs and the Class overpaid for

28   their vehicles and did not receive the benefit of their bargain. The value of their vehicles has

193

COMPLAINT

diminished now that the safety issues have come to light, and Plaintiffs and the Class own vehicles that are not safe.

### COUNT CXXXVI

**Breach of Express Warranty**
**(Nevada Revised Statutes Sections 104.2313)**

1263.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1264.     Defendants are and were at all relevant times merchants with respect to motor vehicles under the Uniform Commercial Code.

1265.     In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

1.     Toyota's warranty

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

2.     Ford's warranty

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

 . . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

194

COMPLAINT

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

3.      GM's warranty

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

1266.      Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

1267.      Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1268.      In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

1269.      These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives.

195

COMPLAINT

1  These affirmations and promises were part of the basis of the bargain between the parties.

2  1270.   These additional warranties were also breached because the Class Vehicles were

3  not fully operational, safe, or reliable (and remained so even after the problems were

4  acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees.

5  Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles

6  conforming to these express warranties.

7  1271.   Furthermore, the limited warranty of repair and/or adjustments to defective parts,

8  fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and

9  the other Class members whole and because Defendants have failed and/or have refused to

10  adequately provide the promised remedies within a reasonable time.

11  1272.   Accordingly, recovery by Plaintiffs and the other Class members is not limited to

12  the limited warranty of repair or adjustments to parts defective in materials or workmanship, and

13  Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by

14  law.

15  1273.   Also, as alleged in more detail herein, at the time that Defendants warranted and

16  sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and

17  were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or

18  concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members

19  were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent

20  pretenses.

21  1274.   Moreover, many of the injuries flowing from the Class Vehicles cannot be

22  resolved through the limited remedy of "replacement or adjustments," as many incidental and

23  consequential damages have already been suffered due to Defendants' fraudulent conduct as

24  alleged herein, and due to their failure and/or continued failure to provide such limited remedy

25  within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies

26  would be insufficient to make Plaintiffs and the other Class members whole.

27  1275.   Defendants were provided notice of these issues by the instant Complaint, and by

28  other means before or within a reasonable amount of time after the allegations of Class Vehicle

196

COMPLAINT

defects became public.

1276.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT CXXXVII

### Breach of the Implied Warranty of Merchantability
### (Nevada Revised Statutes Section 104.2314)

1277.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1278.     Defendants are and were at all relevant times merchants with respect to motor vehicles under the Uniform Commercial Code.

1279.     A warranty that the Defective Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to the Uniform Commercial Code.

1280.     These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

1281.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT CXXXVIII

### Breach of Contract/Common Law Warranty
### (Based on Nevada Law)

1282.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1283.     To the extent Defendants' limited remedies are deemed not to be warranties under Nevada's Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted

197

COMPLAINT

the quality or nature of those services to Plaintiffs and the other Class members.

1284.     Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles, or to replace them.

1285.     As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT CXXXIX

### Fraudulent Concealment
### (Based on Nevada Law)

1286.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1287.     Defendants intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1288.     Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

1289.     Defendants knew these representations were false when made.

1290.     The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective CAN buses, as alleged herein.

1291.     Defendants had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other Class members relied on Defendants' material representations that the Class Vehicles they were purchasing were safe and free from defects.

COMPLAINT

1292.     The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

1293.     The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants knew or recklessly disregarded that their representations were false because they knew the CAN buses were susceptible to hacking. Defendants intentionally made the false statements in order to sell Class Vehicles.

1294.     Plaintiffs and the other Class members relied on Defendants' reputations – along with Defendants' failure to disclose the faulty and defective nature of the CAN bus and Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Defendants' Class Vehicles.

1295.     As a result of their reliance, Plaintiffs and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Class Vehicles.

1296.     Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members.

1297.     Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

**Claims Brought on Behalf of the New Hampshire Class**

**COUNT CXL**

**Violation of New Hampshire Consumer Protection Act
(New Hampshire Revised Statutes Annotated Sections 358A:1, *et seq.*)**

1298.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1299.     The New Hampshire Consumer Protection Act ("CPA") prohibits a person, in the

199

COMPLAINT

conduct of any trade or commerce, from doing any of the following:

1300.    "(V) Representing that goods or services have . . . characteristics, . . . uses, benefits, or quantities that they do not have; . . . (VII) Representing that goods or services are of a particular standard, quality, or grade, . . . if they are of another; . . . and (IX) Advertising goods or services with intent not to sell them as advertised." N.H. Rev. Stat. § 358-A:2.

1301.    Defendants are persons within the meaning of the CPA. *See* N.H. Rev. Stat. § 358A:1(I).

1302.    In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risk of hacking and the lack of adequate fail-safe mechanisms in Defective Vehicles equipped with CAN buses as described above. Accordingly, Defendants engaged in unlawful trade practices, including representing that Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Defective Vehicles are of a particular standard and quality when they are not; and advertising Defective Vehicles with the intent not to sell them as advertised. Defendants knew or should have known that their conduct violated the CPA.

1303.    Defendants engaged in a deceptive trade practice when they failed to disclose material information concerning the Defendants vehicles which was known to Defendants at the time of the sale. Defendants deliberately withheld the information about the vehicles' vulnerability to hacking in order to ensure that consumers would purchase their vehicles and to induce the consumer to enter into a transaction.

1304.    The susceptibility of the vehicles to hacking and their lack of a fail-safe mechanism were material to Plaintiffs and the Class. Had Plaintiffs and the Class known that their vehicles had these serious safety defects, they would not have purchased their vehicles.

1305.    Defendants' failure to disclose material information has injured Plaintiffs and the Class. Plaintiffs and the Class overpaid for their vehicles and did not receive the benefit of their bargain. The value of their vehicles has diminished now that the safety issues have come to light, and Plaintiffs and the Class own vehicles that are not safe.

1306.    Plaintiffs are entitled to recover the greater of actual damages or $1,000 pursuant

COMPLAINT

to N.H. Rev. Stat. § 358-A:10. Plaintiffs are also entitled to treble damages because Defendants acted willfully in their unfair and deceptive practices.

### COUNT CXLI

**Breach of Express Warranty**
**(New Hampshire Revised Statutes Annotated Section 382-A:2-313)**

1307.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1308.    Defendants are and were at all relevant times merchants with respect to motor vehicles under N.H. Rev. Stat. § 382-A:2-313.

1309.    In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

1.    Toyota's warranty

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

2.    Ford's warranty

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

201

COMPLAINT

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

3.    GM's warranty

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

1310.    Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

1311.    Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1312.    In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

1313.    These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives.

COMPLAINT

1    These affirmations and promises were part of the basis of the bargain between the parties.

2        1314.    These additional warranties were also breached because the Class Vehicles were

3    not fully operational, safe, or reliable (and remained so even after the problems were

4    acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees.

5    Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles

6    conforming to these express warranties.

7        1315.    Furthermore, the limited warranty of repair and/or adjustments to defective parts,

8    fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and

9    the other Class members whole and because Defendants have failed and/or have refused to

10   adequately provide the promised remedies within a reasonable time.

11       1316.    Accordingly, recovery by Plaintiffs and the other Class members is not limited to

12   the limited warranty of repair or adjustments to parts defective in materials or workmanship, and

13   Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by

14   law.

15       1317.    Also, as alleged in more detail herein, at the time that Defendants warranted and

16   sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and

17   were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or

18   concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members

19   were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent

20   pretenses.

21       1318.    Moreover, many of the injuries flowing from the Class Vehicles cannot be

22   resolved through the limited remedy of "replacement or adjustments," as many incidental and

23   consequential damages have already been suffered due to Defendants' fraudulent conduct as

24   alleged herein, and due to their failure and/or continued failure to provide such limited remedy

25   within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies

26   would be insufficient to make Plaintiffs and the other Class members whole.

27       1319.    Finally, due to the Defendants' breach of warranties as set forth herein, Plaintiffs

28   and the Class assert as an additional and/or alternative remedy, as set forth in N.H. Rev. Stat.

203

COMPLAINT

§§ 382-A:2-608 and 382-A:2-711, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of the purchase price of all vehicles currently owned and for such other incidental and consequential damages as allowed under N.H. Rev. Stat. §§ 382-A:2-608 and 382-A:2-711.

1320.    Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

1321.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT CXLII

### Breach of Implied Warranty of Merchantability
### (New Hampshire Revised Statutes Annotated Section 382-A:2-314)

1322.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1323.    Defendants are and were at all relevant times merchants with respect to motor vehicles.

1324.    A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

1325.    These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

1326.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT CXLIII

### Breach of Common Law Warranty
### (Based on New Hampshire Law)

1327.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

204

COMPLAINT

forth herein.

1328.    To the extent Defendants' limited remedies are deemed not to be warranties under New Hampshire's Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

1329.    Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles, or to replace them.

1330.    As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**Claims Brought on Behalf of the New Jersey Class**

**COUNT CXLIV**

**Violations of the New Jersey Consumer Fraud Act**
**(New Jersey Statutes Annotated Sections 56:8-1, *et seq.*)**

1331.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1332.    The New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.* ("NJ CFA"), prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

1333.    In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risk of CAN bus hacking in Class Vehicles as described above. Accordingly, Defendants engaged in unfair and deceptive trade practices, including representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard and quality when they are not; advertising Class Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive. Further, Defendants' acts and practices described herein offend

205

COMPLAINT

established public policy because the harm they cause to consumers, motorists, and pedestrians outweighs any benefit associated with such practices, and because Defendants fraudulently concealed the defective nature of the Class Vehicles from consumers.

1334.     Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1335.     Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

1336.     Plaintiffs and the other Class members were injured as a result of Defendants' conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

1337.     Pursuant to N.J. Stat. Ann. § 56:8-20, Plaintiffs will serve the New Jersey Attorney General with a copy of this Complaint.

## COUNT CXLV

### Breach of Express Warranty
### (New Jersey Statutes Annotated Section 12A:2-313)

1338.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1339.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

1340.     In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

    1.     Toyota's warranty

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a

COMPLAINT

company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

2.      Ford's warranty

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

3.      GM's warranty

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

1341.      Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

207

COMPLAINT

1342.     Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1343.     In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

1344.     These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives. These affirmations and promises were part of the basis of the bargain between the parties.

1345.     These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable (and remained so even after the problems were acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees. Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles conforming to these express warranties.

1346.     Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1347.     Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

1348.     Also, as alleged in more detail herein, at the time that Defendants warranted and sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and

208

COMPLAINT

1   were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or

2   concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members

3   were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent

4   pretenses.

5       1349.    Moreover, many of the injuries flowing from the Class Vehicles cannot be

6   resolved through the limited remedy of "replacement or adjustments," as many incidental and

7   consequential damages have already been suffered due to Defendants' fraudulent conduct as

8   alleged herein, and due to their failure and/or continued failure to provide such limited remedy

9   within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies

10  would be insufficient to make Plaintiffs and the other Class members whole.

11      1350.    Finally, due to Defendants' breach of warranties as set forth herein, Plaintiffs and

12  the other Class members assert as an additional and/or alternative remedy, as set forth in N.J. Stat.

13  Ann § 12A:2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to

14  the other Class members of the purchase price of all Class Vehicles currently owned for such

15  other incidental and consequential damages as allowed under N.J. Stat. Ann. §§ 12A:2-711 and

16  12A:2-608.

17      1351.    Defendants were provided notice of these issues by the instant Complaint, and by

18  other means before or within a reasonable amount of time after the allegations of Class Vehicle

19  defects became public.

20      1352.    As a direct and proximate result of Defendants' breach of express warranties,

21  Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

### COUNT CXLVI

### Breach of Implied Warranty of Merchantability
### (New Jersey Statutes Annotated Section 12A:2-314)

25      1353.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

26  forth herein.

27      1354.    Defendants are and were at all relevant times merchants with respect to motor

28  vehicles.

209

COMPLAINT

1355.    A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

1356.    These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

1357.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT CXLVII

### Breach of Contract/Common Law Warranty
### (Based on New Jersey Law)

1358.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1359.    To the extent Defendants' limited remedies are deemed not to be warranties under New Jersey's Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

1360.    Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles, or to replace them.

1361.    As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

210

COMPLAINT

## COUNT CXLVIII

### Fraudulent Concealment
### (Based on New Jersey Law)

1362.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1363.     Defendants intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1364.     Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

1365.     Defendants knew these representations were false when made.

1366.     The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective CAN buses, as alleged herein.

1367.     Defendants had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other Class members relied on Defendants' material representations that the Class Vehicles they were purchasing were safe and free from defects.

1368.     The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

1369.     The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants knew or recklessly disregarded that their representations were false because they knew the CAN buses were susceptible to hacking. Defendants intentionally made the false statements in order to

211

1   sell Class Vehicles.

2       1370.    Plaintiffs and the other Class members relied on Defendants' reputations – along

3   with Defendants' failure to disclose the faulty and defective nature of the CAN bus and

4   Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other

5   similar false statements – in purchasing or leasing Defendants' Class Vehicles.

6       1371.    As a result of their reliance, Plaintiffs and the other Class members have been

7   injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the

8   bargain and overpayment at the time of purchase or lease and/or the diminished value of their

9   Class Vehicles.

10      1372.    Defendants' conduct was knowing, intentional, with malice, demonstrated a

11  complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class

12  members.

13      1373.    Plaintiffs and the other Class members are therefore entitled to an award of

14  punitive damages.

**Claims Brought on Behalf of the New Mexico Class**

**<u>COUNT CXLIX</u>**

**Breach of Express Warranty**
**<u>(New Mexico Statutes Annotated Section 55-2-313)</u>**

19      1374.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

20  forth herein.

21      1375.    Defendants are and were at all relevant times merchants with respect to motor

22  vehicles under N.M. Stat. Ann. § 55-2-104.

23      1376.    In their Limited Warranties and in advertisements, brochures, and through other

24  statements in the media, Defendants expressly warranted that they would repair or replace defects

25  in material or workmanship free of charge if they became apparent during the warranty period.

26  For example, the following language appears in all Class Vehicle Warranty booklets:

27          1.    <u>Toyota's warranty</u>

            *When Warranty Begins*

28

COMPLAINT

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

    2.    <u>Ford's warranty</u>

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

    3.    <u>GM's warranty</u>

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

    1377.    Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was

COMPLAINT

reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

1378.    Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1379.    In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

1380.    These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives. These affirmations and promises were part of the basis of the bargain between the parties.

1381.    These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable (and remained so even after the problems were acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees. Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles conforming to these express warranties.

1382.    Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1383.    Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

214

COMPLAINT

1384.     Also, as alleged in more detail herein, at the time that Defendants warranted and sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1385.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Defendants' fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

1386.     Finally, due to the Defendants' breach of warranties as set forth herein, Plaintiffs and the Class assert as an additional and/or alternative remedy, as set forth in N.M. Stat. Ann. § 55-2-711, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of the purchase price of all vehicles currently owned and for such other incidental and consequential damages as allowed under N.M. Stat. Ann. §§ 55-2-711 and 55-2-608.

1387.     Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

1388.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT CL

### Breach of the Implied Warranty of Merchantability
### (New Mexico Statutes Annotated Section 55-2-314)

1389.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1390.     Defendants are and were at all relevant times merchants with respect to motor

215

COMPLAINT

1   vehicles under N.M. Stat. Ann. § 55-2-104.

2   1391.   A warranty that the Defective Vehicles were in merchantable condition was

3   implied by law in the instant transaction, pursuant to N.M. Stat. Ann. § 55-2-314.

4   1392.   These Class Vehicles, when sold and at all times thereafter, were not in

5   merchantable condition and are not fit for the ordinary purpose for which cars are used.

6   Defendants were provided notice of these issues by numerous complaints filed against them,

7   including the instant Complaint, and by other means.

8   1393.   As a direct and proximate result of Defendants' breach of the warranties of

9   merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

10   **COUNT CLI**

11   **Breach of Contract/Common Law Warranty**

12   **(Based on New Mexico Law)**

13   1394.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

14   forth herein.

15   1395.   To the extent Defendants' limited remedies are deemed not to be warranties under

16   New Mexico's Commercial Code, Plaintiffs, individually and on behalf of the other Class

17   members, plead in the alternative under common law warranty and contract law. Defendants

18   limited the remedies available to Plaintiffs and the other Class members to repairs and

19   adjustments needed to correct defects in materials or workmanship of any part supplied by

20   Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other

21   Class members.

22   1396.   Defendants breached this warranty or contract obligation by failing to repair the

23   Class Vehicles, or to replace them.

24   1397.   As a direct and proximate result of Defendants' breach of contract or common

25   law warranty, Plaintiffs and the other Class members have been damaged in an amount to be

26   proven at trial, which shall include, but is not limited to, all compensatory damages, incidental

27   and consequential damages, and other damages allowed by law.

28

COMPLAINT

## COUNT CLII

### Fraudulent Concealment
### (Based on New Mexico Law)

1398.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1399.     Defendants intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1400.     Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

1401.     Defendants knew these representations were false when made.

1402.     The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective CAN buses, as alleged herein.

1403.     Defendants had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other Class members relied on Defendants' material representations that the Class Vehicles they were purchasing were safe and free from defects.

1404.     The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

1405.     The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants knew or recklessly disregarded that their representations were false because they knew the CAN buses were susceptible to hacking. Defendants intentionally made the false statements in order to

217

COMPLAINT

sell Class Vehicles.

1406.     Plaintiffs and the other Class members relied on Defendants' reputations – along with Defendants' failure to disclose the faulty and defective nature of the CAN bus and Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Defendants' Class Vehicles.

1407.     As a result of their reliance, Plaintiffs and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Class Vehicles.

1408.     Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members.

1409.     Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

## COUNT CLIII

### Violations of the New Mexico Unfair Trade Practices Act
### (New Mexico Statutes Annotated Sections 57-12-1, *et seq.*)

1410.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1411.     Defendants' above-described acts and omissions constitute unfair or deceptive acts or practices under the New Mexico Unfair Trade Practices Act, N.M. Stat. Ann. §§ 57-12-1, *et seq.* ("New Mexico UTPA").

1412.     By failing to disclose and actively concealing the dangerous risk of hacking and the lack of adequate fail-safe mechanisms in Defective Vehicles equipped with CAN buses, Defendants engaged in deceptive business practices prohibited by the New Mexico UTPA, including (1) representing that Defective Vehicles have characteristics and benefits, which they do not have, (2) representing that Defective Vehicles are of a particular standard, quality, and grade when they are not, (3) using exaggeration as to a material fact and by doing so deceiving or

218

COMPLAINT

tending to deceive, (4) failing to state a material fact and by doing so deceiving or tending to deceive, and (5) representing that a transaction involving Defective Vehicles confers or involves rights, remedies, and obligations which it does not.

1413.     As alleged above, Defendants made numerous material statements about the safety and reliability of Defective Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of TMC's and TMS's unlawful advertising and representations as a whole.

1414.     Defendants took advantage of the lack of knowledge, ability, experience, and capacity of Plaintiffs and the Class to a grossly unfair degree. Defendants' actions resulted in a gross disparity between the value received and the price paid by Plaintiffs and the Class. Defendants' actions constitute unconscionable actions under § 57-12-2(E) of the New Mexico UTPA.

1415.     Plaintiffs and the Class sustained damages as a result of the Defendants' unlawful acts and are, therefore, entitled to damages and other relief provided for under § 57-12-10 of the New Mexico UTPA. Because Defendants' conduct was committed willfully, Plaintiffs and the Class seek treble damages.

1416.     Plaintiffs and the Class also seek court costs and attorneys' fees under § 57-12-10(C) of the New Mexico UTPA.

### COUNT CLIV

**Violations of the New Mexico Motor Vehicle Dealers Franchising Act**
**(New Mexico Statutes Annotated Sections 57-16-1, *et seq*.)**

1417.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1418.     As alleged above, Defendants used false, misleading, and deceptive advertising in connection with their business in violation of the New Mexico Motor Vehicle Dealers Franchising Act, N.M. Stat. Ann. §§ 57-16-1, *et seq.* ("New Mexico MVDFA").

1419.     Plaintiffs and the Class sustained damages as a result of the Defendants' unlawful acts and are, therefore, entitled to damages and other relief provided for under § 57-16-13 of the

219

COMPLAINT

1  New Mexico MVDFA. Because Defendants' conduct was committed maliciously, Plaintiffs and
2  the Class seek treble damages.

3  1420.   Plaintiffs and the Class also seek court costs and attorneys' fees under § 57-16-13
4  of the New Mexico MVDFA.

5  **Claims Brought on Behalf of the New York Class**

6  **COUNT CLV**

7  **Violations of New York General Business Law Section 349**
8  **(New York General Business Law Section 349)**

9  1421.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set
10  forth herein.

11  1422.   New York's General Business Law § 349 makes unlawful "[d]eceptive acts or
12  practices in the conduct of any business, trade or commerce."

13  1423.   In the course of Defendants' business, they willfully failed to disclose and
14  actively concealed the dangerous risk of CAN bus hacking in Class Vehicles as described above.
15  Accordingly, Defendants engaged in unfair methods of competition, unconscionable acts or
16  practices, and unfair or deceptive acts or practices as defined in N.Y. Gen. Bus. Law § 349,
17  including representing that Class Vehicles have characteristics, uses, benefits, and qualities which
18  they do not have; representing that Class Vehicles are of a particular standard and quality when
19  they are not; advertising Class Vehicles with the intent not to sell them as advertised; and
20  otherwise engaging in conduct likely to deceive.

21  1424.   Defendants' actions as set forth above occurred in the conduct of trade or
22  commerce.

23  1425.   Because Defendants' deception takes place in the context of automobile safety,
24  their deception affects the public interest. Further, Defendants' unlawful conduct constitutes
25  unfair acts or practices that have the capacity to deceive consumers, and that have a broad impact
26  on consumers at large.

27  1426.   Defendants' conduct proximately caused injuries to Plaintiffs and the other Class
28  members.

220

COMPLAINT

1427.     Plaintiffs and the other Class members were injured as a result of Defendants' conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

## COUNT CLVI

### Violations of New York General Business Law Section 350
### (New York General Business Law Section 350)

1428.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1429.     New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]" False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity . . . ." N.Y. Gen. Bus. Law § 350-a.

818. Defendants caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including Plaintiffs and the other Class members.

1430.     Defendants have violated N.Y. Gen. Bus. Law § 350 because the misrepresentations and omissions regarding the dangerous risk of CAN bus hacking in Class Vehicles as described above, as well as the inherently defective nature of the CAN bus as designed and sold by Defendants, were material and likely to deceive a reasonable consumer.

1431.     Plaintiffs and the other Class members have suffered injury, including the loss of money or property, as a result of Defendants' false advertising. In purchasing or leasing their Class Vehicles, Plaintiffs and the other Class members relied on the misrepresentations and/or omissions of Defendants with respect to the safety, quality, functionality, and reliability of the Class Vehicles. Defendants' representations turned out to be untrue because the CAN buses

221

COMPLAINT

installed in Class Vehicles are vulnerable to hacking and other failures as described hereinabove. Had Plaintiffs and the other Class members known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them.

1432.     Accordingly, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of the bargain for their Class Vehicles, which have also suffered diminution in value.

1433.     Plaintiffs, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful and/or deceptive practices. Plaintiffs and the other Class members are also entitled to recover their actual damages or $500, whichever is greater. Because Defendants acted willfully or knowingly, Plaintiffs and the other Class members are entitled to recover three times actual damages, up to $10,000.

## COUNT CLVII

### Breach of Express Warranty
### (New York Uniform Commercial Code Section 2-313)

1434.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1435.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

1436.     In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

  1.     Toyota's warranty

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for

222

COMPLAINT

parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

2.     Ford's warranty

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

3.     GM's warranty

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

1437.     Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

1438.     Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired

223

COMPLAINT

1   or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and
2   workmanship defects.

3   1439.      In addition to these Limited Warranties, Defendants otherwise expressly
4   warranted several attributes, characteristics, and qualities of the CAN bus.

5   1440.      These warranties are only a sampling of the numerous warranties that Defendants
6   made relating to safety, reliability, and operation. Generally these express warranties promise
7   heightened, superior, and state-of-the-art safety, reliability, and performance standards, and
8   promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements,
9   on Defendants' websites, and in uniform statements provided by Defendants to be made by
10  salespeople, or made publicly by Defendants' executives or by other authorized representatives.
11  These affirmations and promises were part of the basis of the bargain between the parties.

12  1441.      These additional warranties were also breached because the Class Vehicles were
13  not fully operational, safe, or reliable (and remained so even after the problems were
14  acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees.
15  Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles
16  conforming to these express warranties.

17  1442.      Furthermore, the limited warranty of repair and/or adjustments to defective parts,
18  fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and
19  the other Class members whole and because Defendants have failed and/or have refused to
20  adequately provide the promised remedies within a reasonable time.

21  1443.      Accordingly, recovery by Plaintiffs and the other Class members is not limited to
22  the limited warranty of repair or adjustments to parts defective in materials or workmanship, and
23  Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by
24  law.

25  1444.      Also, as alleged in more detail herein, at the time that Defendants warranted and
26  sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and
27  were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or
28  concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members

224

COMPLAINT

were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1445.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Defendants' fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

1446.    Finally, due to Defendants' breach of warranties as set forth herein, Plaintiffs and the other Class members assert as an additional and/or alternative remedy, as set forth in N.Y. U.C.C. § 2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed under N.Y. U.C.C. §§ 2-711 and 2-608.

1447.    Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

1448.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT CLVIII

### Breach of Implied Warranty of Merchantability
### (New York Uniform Commercial Code Section 2-314)

1449.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1450.    Defendants are and were at all relevant times merchants with respect to motor vehicles.

1451.    A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

1452.    These Class Vehicles, when sold and at all times thereafter, were not in

225

merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

1453.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

<u>**COUNT CLIX**</u>

**Breach of Contract/Common Law Warranty**
<u>**(Based on New York Law)**</u>

1454.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1455.    To the extent Defendants' limited remedies are deemed not to be warranties under New York's Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

1456.    Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles, or to replace them.

1457.    As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

<u>**COUNT CLX**</u>

**Fraudulent Concealment**
<u>**(Based on New York Law)**</u>

1458.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1459.    Defendants intentionally concealed the above-described material safety and

226

COMPLAINT

functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1460. Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

1461. Defendants knew these representations were false when made.

1462. The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective CAN buses, as alleged herein.

1463. Defendants had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other Class members relied on Defendants' material representations that the Class Vehicles they were purchasing were safe and free from defects.

1464. The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

1465. The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants knew or recklessly disregarded that their representations were false because they knew the CAN buses were susceptible to hacking. Defendants intentionally made the false statements in order to sell Class Vehicles.

1466. Plaintiffs and the other Class members relied on Defendants' reputations – along with Defendants' failure to disclose the faulty and defective nature of the CAN bus and Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Defendants' Class Vehicles.

1467. As a result of their reliance, Plaintiffs and the other Class members have been

227

COMPLAINT

injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Class Vehicles.

1468.     Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members.

1469.     Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

<div align="center">

**Claims Brought on Behalf of the North Carolina Class**

**<u>COUNT CLXI</u>**

**Violations of the North Carolina Unfair and Deceptive Trade Practices Act**
**<u>(North Carolina General Statutes Sections 75-1.1, *et seq*.</u>)**

</div>

1470.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1471.     North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.* ("NCUDTPA"), prohibits a person from engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA. N.C. Gen. Stat. § 75-16.

1472.     Defendants' acts and practices complained of herein were performed in the course of Defendants' trade or business and thus occurred in or affected "commerce," as defined in N.C. Gen. Stat. § 75-1.1(b).

1473.     In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risk of CAN bus hacking in Class Vehicles as described above.

1474.     Accordingly, Defendants engaged in unlawful trade practices, including representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard and quality when they are

228

COMPLAINT

not; advertising Class Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

1475.    Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

1476.    Defendants acted with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs and the other Class members to cruel and unjust hardship as a result, such that an award of punitive damages is appropriate.

1477.    Plaintiffs and the other Class members were injured as a result of Defendants' conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

1478.    Plaintiffs, individually and on behalf of the other Class members, seeks treble damages pursuant to N.C. Gen. Stat. § 75-16, and an award of attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1.

## COUNT CLXII

### Breach of Express Warranty
### (North Carolina General Statutes Section 25-2-313)

1479.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1480.    Defendants are and were at all relevant times merchants with respect to motor vehicles.

1481.    In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

    1.    Toyota's warranty
    *When Warranty Begins*

229

COMPLAINT

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

2.    Ford's warranty

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

3.    GM's warranty

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

1482.    Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was

230

COMPLAINT

reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

1483.     Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1484.     In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

1485.     These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives. These affirmations and promises were part of the basis of the bargain between the parties.

1486.     These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable (and remained so even after the problems were acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees. Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles conforming to these express warranties.

1487.     Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1488.     Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

231

COMPLAINT

1489.     Also, as alleged in more detail herein, at the time that Defendants warranted and sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1490.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Defendants' fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

1491.     Finally, due to Defendants' breach of warranties as set forth herein, Plaintiffs and the other Class members assert as an additional and/or alternative remedy, as set forth in N.C. Gen. Stat. § 25-2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed under N.C. Gen. Stat. §§ 25-2-711 and 25-2-608.

1492.     Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

1493.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT CLXIII

### Breach of Implied Warranty of Merchantability
### (North Carolina General Statutes Section 25-2-314)

1494.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

232

COMPLAINT

1495.    Defendants are and were at all relevant times merchants with respect to motor vehicles.

1496.    A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

1497.    These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

1498.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT CLXIV

### Breach of Contract/Common Law Warranty
### (Based on North Carolina Law)

1499.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1500.    To the extent Defendants' limited remedies are deemed not to be warranties under North Carolina's Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

1501.    Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles, or to replace them.

1502.    As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

COMPLAINT

**COUNT CLXV**

**Fraudulent Concealment**
**(Based on North Carolina Law)**

1503.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1504.    Defendants intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1505.    Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

1506.    Defendants knew these representations were false when made.

1507.    The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective CAN buses, as alleged herein.

1508.    Defendants had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other Class members relied on Defendants' material representations that the Class Vehicles they were purchasing were safe and free from defects.

1509.    The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

1510.    The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants knew or recklessly disregarded that their representations were false because they knew the CAN buses were susceptible to hacking. Defendants intentionally made the false statements in order to

234

COMPLAINT

1  sell Class Vehicles.

2  1511.    Plaintiffs and the other Class members relied on Defendants' reputations – along
3  with Defendants' failure to disclose the faulty and defective nature of the CAN bus and
4  Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other
5  similar false statements – in purchasing or leasing Defendants' Class Vehicles.

6  1512.    As a result of their reliance, Plaintiffs and the other Class members have been
7  injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the
8  bargain and overpayment at the time of purchase or lease and/or the diminished value of their
9  Class Vehicles.

10  1513.    Defendants' conduct was knowing, intentional, with malice, demonstrated a
11  complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class
12  members.

13  1514.    Plaintiffs and the other Class members are therefore entitled to an award of
14  punitive damages.

15  **Claims Brought on Behalf of the North Dakota Class**

16  **COUNT CLXVI**

17  **Breach of Express Warranty**
18  **(North Dakota Century Code Section 41-02-30)**

19  1515.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set
20  forth herein.

21  1516.    Defendants are and were at all relevant times merchants with respect to motor
22  vehicles.

23  1517.    In their Limited Warranties and in advertisements, brochures, and through other
24  statements in the media, Defendants expressly warranted that they would repair or replace defects
25  in material or workmanship free of charge if they became apparent during the warranty period.
26  For example, the following language appears in all Class Vehicle Warranty booklets:

27  1.    Toyota's warranty
28  *When Warranty Begins*

235

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

    2.    <u>Ford's warranty</u>

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

  . . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

    3.    <u>GM's warranty</u>

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

    1518.    Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was

236

COMPLAINT

reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

1519.     Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1520.     In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

1521.     These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives. These affirmations and promises were part of the basis of the bargain between the parties.

1522.     These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable (and remained so even after the problems were acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees. Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles conforming to these express warranties.

1523.     Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1524.     Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

237

COMPLAINT

1525.    Also, as alleged in more detail herein, at the time that Defendants warranted and sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1526.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Defendants' fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

1527.    Finally, due to the Defendants' breach of warranties as set forth herein, Plaintiffs and the Class assert as an additional and/or alternative remedy, as set forth in N.D. Cent. Code § 41-02-71 (2-608), for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of the purchase price of all vehicles currently owned.

1528.    Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

1529.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT CLXVII

### Breach of the Implied Warranty of Merchantability
### (North Dakota Century Code Section 41-02-31)

1530.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1531.    Defendants are and were at all relevant times merchants with respect to motor vehicles.

238

COMPLAINT

1532.     A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

1533.     These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

1534.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT CLXVIII

### Violation of the North Dakota Consumer Fraud Act
### (North Dakota Century Code Section 51-15-02)

1535.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1536.     The conduct of Defendants as set forth herein constitutes deceptive acts or practices, fraud, and misrepresentation, including, but not limited to, Defendants' manufacture and sale of vehicles with a defect that leaves them vulnerable to hacking and that lack an effective fail-safe mechanism which Defendants failed to adequately investigate, disclose and remedy, and Defendants' misrepresentations and omissions regarding the safety and reliability of their vehicles.

1537.     Plaintiffs and the Class were injured as a result of Defendants' conduct. Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

1538.     Defendants' conduct proximately caused the injuries to Plaintiffs and the Class.

1539.     Further, Defendants knowingly committed the conduct described above, and thus, under N.D. Cent. Code § 51-15-09, Defendants are liable to Plaintiffs and the Class for treble damages in amounts to be proven at trial, as well as attorneys' fees, costs, and disbursements.

COMPLAINT

**COUNT CLXIX**

**Breach of Contract/Common Law Warranty**
**(Based on North Dakota Law)**

1540.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1541.     To the extent Defendants' limited remedies are deemed not to be warranties under North Dakota's Century Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

1542.     Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles, or to replace them.

1543.     As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT CLXX**

**Fraudulent Concealment**
**(Based on North Dakota Law)**

1544.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1545.     Defendants intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1546.     Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they was selling were new, had no significant defects, and would perform

240

COMPLAINT

1  and operate properly when driven in normal usage.

2  1547.    Defendants knew these representations were false when made.

3  1548.    The Class Vehicles purchased or leased by Plaintiffs and the other Class members
4  were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and
5  defective CAN buses, as alleged herein.

6  1549.    Defendants had a duty to disclose that these Class Vehicles were defective,
7  unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be
8  rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other
9  Class members relied on Defendants' material representations that the Class Vehicles they were
10 purchasing were safe and free from defects.

11 1550.    The aforementioned concealment was material because if it had been disclosed
12 Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or
13 would not have bought or leased those Vehicles at the prices they paid.

14 1551.    The aforementioned representations were material because they were facts that
15 would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants
16 knew or recklessly disregarded that their representations were false because they knew the CAN
17 buses were susceptible to hacking. Defendants intentionally made the false statements in order to
18 sell Class Vehicles.

19 1552.    Plaintiffs and the other Class members relied on Defendants' reputations – along
20 with Defendants' failure to disclose the faulty and defective nature of the CAN bus and
21 Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other
22 similar false statements – in purchasing or leasing Defendants' Class Vehicles.

23 1553.    As a result of their reliance, Plaintiffs and the other Class members have been
24 injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the
25 bargain and overpayment at the time of purchase or lease and/or the diminished value of their
26 Class Vehicles.

27 1554.    Defendants' conduct was knowing, intentional, with malice, demonstrated a
28 complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class

241

COMPLAINT

members.

1555.     Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

### Claims Brought on Behalf of the Ohio Class

### COUNT CLXXI

### Violations of the Consumer Sales Practices Act
### (Ohio Revised Code Sections 1345.01, *et seq.*)

1556.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1557.     Plaintiffs and the other Ohio Class members are "consumers" as defined by the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 ("OCSPA"). Defendants are "suppliers" as defined by the OCSPA. Plaintiffs' and the other Ohio Class members' purchases or leases of Class Vehicles were "consumer transactions" as defined by the OCSPA.

1558.     By failing to disclose and actively concealing the defects in the Class Vehicles, Defendants engaged in deceptive business practices prohibited by the OCSPA, including (1) representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Class Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Class Vehicles with the intent not to sell them as advertised, and (4) engaging in acts or practices which are otherwise unfair, misleading, false, or deceptive to the consumer.

1559.     As alleged above, Defendants made numerous material statements about the benefits and characteristics of the Class Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Defendants' unlawful advertising and representations as a whole.

1560.     Defendants knew that the CAN buses in the Class Vehicles were defectively designed or manufactured because they were susceptible to hacking, and were not suitable for their intended use. Defendants nevertheless failed to warn Plaintiffs about these defects despite having a duty to do so.

242

COMPLAINT

1561.     Defendants owed Plaintiffs a duty to disclose the defective nature of the CAN buses in the Class Vehicles, because Defendants:

1562.     Possessed exclusive knowledge of the defects rendering the Class Vehicles more unreliable than similar vehicles;

1563.     Intentionally concealed the defects associated with the CAN buses through their deceptive marketing campaign that they designed to hide the defects; and/or

1564.     Made incomplete representations about the characteristics and performance of the Class Vehicles generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1565.     Defendants' unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiffs, about the true performance and characteristics of the Class Vehicles.

1566.     As a result of their violations of the OCSPA detailed above, Defendants caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs. Plaintiffs currently owns or leases, or within the class period has owned or leased, a Class Vehicle that is defective. Defects associated with the CAN bus have caused the value of Class Vehicles to decrease.

1567.     Plaintiffs and the Class sustained damages as a result of the Defendants' unlawful acts and are, therefore, entitled to damages and other relief as provided under the OCSPA.

1568.     Plaintiffs also seeks court costs and attorneys' fees as a result of Defendants' violation of the OCSPA as provided in Ohio Rev. Code § 1345.09.

## COUNT CLXXII

### Breach of Express Warranty
### (Ohio Revised Code Section 1302.26)

1569.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1570.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

243

COMPLAINT

1571.     In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

    1.     <u>Toyota's warranty</u>

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

    2.     <u>Ford's warranty</u>

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

    3.     <u>GM's warranty</u>

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

244

COMPLAINT

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

1572.     Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

1573.     Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1574.     In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

1575.     These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives. These affirmations and promises were part of the basis of the bargain between the parties.

1576.     These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable (and remained so even after the problems were acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees. Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles conforming to these express warranties.

1577.     Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Defendants have failed and/or have refused to

245

COMPLAINT

adequately provide the promised remedies within a reasonable time.

1578.     Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

1579.     Also, as alleged in more detail herein, at the time that Defendants warranted and sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1580.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Defendants' fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

1581.     Finally, due to Defendants' breach of warranties as set forth herein, Plaintiffs and the other Class members assert as an additional and/or alternative remedy, as set forth in Ohio Rev. Code § 1302.66, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed under Ohio Rev. Code §§ 1302.66 and 1302.85.

1582.     Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

1583.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

246

COMPLAINT

**COUNT CLXXIII**

**Breach of Implied Warranty in Tort**
**(Based on Ohio Law)**

1584.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1585.     The Class Vehicles contained a design defect, namely, a CAN bus that is vulnerable to hacking and enables the commandeering of the vehicle by a third party, as detailed herein more fully.

1586.     The design, manufacturing, and/or assembly defect existed at the time these Class Vehicles containing the CAN buses left the hands of Defendants.

1587.     Based upon the dangerous product defect and their certainty to occur, Defendants failed to meet the expectations of a reasonable consumer. The Class Vehicles failed their ordinary, intended use because the Class Vehicles do not function as a reasonable consumer would expect. Moreover, it presents a serious danger to Plaintiffs and the other Class members that cannot be eliminated without significant cost.

1588.     The design defect in the CAN buses in these Class Vehicles was the direct and proximate cause of economic damages to Plaintiffs, as well as damages incurred or to be incurred by each of the other Class members.

**COUNT CLXXIV**

**Breach of Contract**
**(Based on Ohio Law)**

1589.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1590.     To the extent Defendants' limited remedies are deemed not to be warranties under Ohio law, Plaintiffs plead in the alternative under common law contract law. Defendants limited the remedies available to Plaintiffs and the Class to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs. Defendants breached this contract obligation by

COMPLAINT

failing to repair the defective Class Vehicles, or to replace them.

1591.    As a direct and proximate result of Defendants' breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT CLXXV

### Fraudulent Concealment
### (Based on Ohio Law)

1592.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1593.    Defendants intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1594.    Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

1595.    Defendants knew these representations were false when made.

1596.    The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective CAN buses, as alleged herein.

1597.    Defendants had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other Class members relied on Defendants' material representations that the Class Vehicles they were purchasing were safe and free from defects.

1598.    The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or

248

COMPLAINT

1   would not have bought or leased those Vehicles at the prices they paid.

2   1599.   The aforementioned representations were material because they were facts that

3   would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants

4   knew or recklessly disregarded that their representations were false because they knew the CAN

5   buses were susceptible to hacking. Defendants intentionally made the false statements in order to

6   sell Class Vehicles.

7   1600.   Plaintiffs and the other Class members relied on Defendants' reputations – along

8   with Defendants' failure to disclose the faulty and defective nature of the CAN bus and

9   Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other

10  similar false statements – in purchasing or leasing Defendants' Class Vehicles.

11  1601.   As a result of their reliance, Plaintiffs and the other Class members have been

12  injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the

13  bargain and overpayment at the time of purchase or lease and/or the diminished value of their

14  Class Vehicles.

15  1602.   Defendants' conduct was knowing, intentional, with malice, demonstrated a

16  complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class

17  members.

18  1603.   Plaintiffs and the other Class members are therefore entitled to an award of

19  punitive damages.

20  **Claims Brought on Behalf of the Oklahoma Class**

21  <u>**COUNT CLXXVI**</u>

22  **Violation of Oklahoma Consumer Protection Act**
    **<u>(Oklahoma Statutes title 15 Sections 751,</u> <i><u>et seq.</u></i><u>)</u>**
23

24  1604.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

25  forth herein.

26  1605.   The conduct of Defendants as set forth herein constitutes unfair or deceptive acts

27  or practices, including, but not limited to, Defendants' manufacture and sale of vehicles that are

28  susceptible to hacking and lack effective fail-safe mechanisms, which Defendants failed to

249

COMPLAINT

1  adequately investigate, disclose and remedy, and their misrepresentations and omissions
2  regarding the safety and reliability of their vehicles.

3  1606.   Defendants' actions as set forth above occurred in the conduct of trade or
4  commerce.

5  1607.   Defendants' actions impact the public interest because Plaintiffs were injured in
6  exactly the same way as millions of others purchasing and/or leasing Defendants vehicles as a
7  result of Defendants' generalized course of deception. All of the wrongful conduct alleged herein
8  occurred, and continues to occur, in the conduct of Defendants' business.

9  1608.   Plaintiffs and the Class were injured as a result of Defendants' conduct. Plaintiffs
10  overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their
11  vehicles have suffered a diminution in value.

12  1609.   Defendants' conduct proximately caused the injuries to Plaintiffs and the Class.

13  1610.   Defendants are liable to Plaintiffs and the Class for damages in amounts to be
14  proven at trial, including attorneys' fees, costs, and treble damages.

15  1611.   Pursuant to Okla. Stat. tit. 15 § 751, Plaintiffs will serve the Oklahoma Attorney
16  General with a copy of this complaint as Plaintiffs seek injunctive relief.

17  ## COUNT CLXXVII

18  ### Violation of Oklahoma Deceptive Trade Practices Act
19  ### (78 Oklahoma Statutes Annotated Sections 51, *et seq*.)

20  1612.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set
21  forth herein.

22  1613.   The conduct of Defendants as set forth herein constitutes unfair or deceptive acts
23  or practices, including, but not limited to, Defendants' manufacture and sale of vehicles that are
24  susceptible to hacking and lack effective fail-safe mechanisms, which Defendants failed to
25  adequately investigate, disclose and remedy, and their misrepresentations and omissions
26  regarding the safety and reliability of their vehicles.

27  1614.   Defendants' actions as set forth above occurred in the conduct of trade or
28  commerce.

COMPLAINT

1615.     Defendants' actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Defendants vehicles as a result of Defendants' generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business.

1616.     Plaintiffs and the Class were injured as a result of Defendants' conduct. Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

1617.     Defendants' conduct proximately caused the injuries to Plaintiffs and the Class.

1618.     Defendants are liable to Plaintiffs and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

1619.     Pursuant to Okla. Stat. tit. 78 § 51, Plaintiffs will serve the Oklahoma Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

## COUNT CLXXVIII

### Breach of Express Warranty
### (12A Oklahoma Statutes Annotated Section 2-313)

1620.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1621.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

1622.     In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

    1.     <u>Toyota's warranty</u>

    *When Warranty Begins*

    The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

    *Repairs Made at No Charge*

    Repairs and adjustments covered by these warranties are made at no charge for

251

COMPLAINT

parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

2.      Ford's warranty

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

3.      GM's warranty

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

1623.      Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

1624.      Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired

252

COMPLAINT

1  or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and
2  workmanship defects.

3   1625.    In addition to these Limited Warranties, Defendants otherwise expressly
4  warranted several attributes, characteristics, and qualities of the CAN bus.

5   1626.    These warranties are only a sampling of the numerous warranties that Defendants
6  made relating to safety, reliability, and operation. Generally these express warranties promise
7  heightened, superior, and state-of-the-art safety, reliability, and performance standards, and
8  promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements,
9  on Defendants' websites, and in uniform statements provided by Defendants to be made by
10  salespeople, or made publicly by Defendants' executives or by other authorized representatives.
11  These affirmations and promises were part of the basis of the bargain between the parties.

12   1627.    These additional warranties were also breached because the Class Vehicles were
13  not fully operational, safe, or reliable (and remained so even after the problems were
14  acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees.
15  Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles
16  conforming to these express warranties.

17   1628.    Furthermore, the limited warranty of repair and/or adjustments to defective parts,
18  fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and
19  the other Class members whole and because Defendants have failed and/or have refused to
20  adequately provide the promised remedies within a reasonable time.

21   1629.    Accordingly, recovery by Plaintiffs and the other Class members is not limited to
22  the limited warranty of repair or adjustments to parts defective in materials or workmanship, and
23  Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by
24  law.

25   1630.    Also, as alleged in more detail herein, at the time that Defendants warranted and
26  sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and
27  were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or
28  concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members

253

COMPLAINT

were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1631.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Defendants' fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

1632.    Finally, due to the Defendants' breach of warranties as set forth herein, Plaintiffs and the Class assert as an additional and/or alternative remedy, as set forth in 12A Okla. Stat. Ann. § 2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of the purchase price of all vehicles currently owned.

1633.    Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

1634.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT CLXXIX

### Breach of the Implied Warranty of Merchantability
### (12A Oklahoma Statutes Annotated Section 2-314)

1635.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1636.    Defendants are and were at all relevant times merchants with respect to motor vehicles.

1637.    A warranty that the Defective Vehicles were in merchantable condition is implied by law in the instant transactions, pursuant to 12A Okla. Stat. Ann. § 2-314.

1638.    These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were

254

COMPLAINT

1  provided notice of these issues by numerous complaints filed against them, including the instant

2  Complaint, and by other means.

3     1639.     Plaintiffs and the Class have had sufficient dealings with either the Defendants or

4  their agents (dealerships) to establish privity of contract between Plaintiffs and the Class.

5  Notwithstanding this, privity is not required in this case because Plaintiffs and the Class are

6  intended third-party beneficiaries of contracts between Defendants and their dealers; specifically,

7  they are the intended beneficiaries of Defendants' implied warranties. The dealers were not

8  intended to be the ultimate consumers of the Defective Vehicles and have no rights under the

9  warranty agreements provided with the Defective Vehicles; the warranty agreements were

10  designed for and intended to benefit the ultimate consumers only. Finally, privity is also not

11  required because Plaintiffs' and Class members' vehicles are dangerous instrumentalities due to

12  the aforementioned defects and nonconformities.

13     1640.     As a direct and proximate result of Defendants' breach of the warranties of

14  merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

15                              **COUNT CLXXX**

16                  **Breach of Contract/Common Law Warranty**
                         **(Based on Oklahoma Law)**
17

18     1641.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

19  forth herein.

20     1642.     To the extent Defendants' limited remedies are deemed not to be warranties under

21  Oklahoma's Commercial Code, Plaintiffs, individually and on behalf of the other Class members,

22  plead in the alternative under common law warranty and contract law. Defendants limited the

23  remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to

24  correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted

25  the quality or nature of those services to Plaintiffs and the other Class members.

26     1643.     Defendants breached this warranty or contract obligation by failing to repair the

27  Class Vehicles, or to replace them.

28     1644.     As a direct and proximate result of Defendants' breach of contract or common

255

COMPLAINT

law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT CLXXXI

### Fraudulent Concealment
### (Based on Oklahoma Law)

1645.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1646.     Defendants intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1647.     Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

1648.     Defendants knew these representations were false when made.

1649.     The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective CAN buses, as alleged herein.

1650.     Defendants had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other Class members relied on Defendants' material representations that the Class Vehicles they were purchasing were safe and free from defects.

1651.     The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

1652.     The aforementioned representations were material because they were facts that

COMPLAINT

would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants knew or recklessly disregarded that their representations were false because they knew the CAN buses were susceptible to hacking. Defendants intentionally made the false statements in order to sell Class Vehicles.

1653.     Plaintiffs and the other Class members relied on Defendants' reputations – along with Defendants' failure to disclose the faulty and defective nature of the CAN bus and Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Defendants' Class Vehicles.

1654.     As a result of their reliance, Plaintiffs and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Class Vehicles.

1655.     Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members.

1656.     Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

<div align="center">

**Claims Brought on Behalf of the Oregon Class**

**COUNT CLXXXII**

**Violation of the Oregon Unlawful Trade Practices Act**
**(Oregon Revised Statutes Sections 646.605, *et seq*.)**

</div>

1657.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1658.     The Oregon Unfair Trade Practices Act ("OUTPA") prohibits a person from, in the course of the person's business, doing any of the following: "(e) Represent[ing] that . . . goods . . . have . . . characteristics . . . uses, benefits, . . . or qualities that they do not have; (g) Represent[ing] that . . . goods . . . are of a particular standard [or] quality . . . if they are of another; and (i) Advertis[ing] . . . goods or services with intent not to provide them as advertised." Or. Rev. Stat. § 646.608(1).

257

COMPLAINT

1659.     Defendants are persons within the meaning of Or. Rev. Stat. § 646.605(4).

1660.     The Defective Vehicles at issue are "goods" obtained primarily for personal family or household purposes within the meaning of Or. Rev. Stat. § 646.605(6).

1661.     In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risk of hacking and the lack of adequate fail-safe mechanisms in Defective Vehicles equipped with CAN buses as described above. Accordingly, Defendants engaged in unlawful trade practices, including representing that Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Defective Vehicles are of a particular standard and quality when they are not; and advertising Defective Vehicles with the intent not to sell them as advertised. Defendants knew or should have known that their conduct violated the OUTPA.

1662.     As a result of these unlawful trade practices, Plaintiffs have suffered ascertainable loss.

1663.     Defendants engaged in a deceptive trade practice when they failed to disclose material information concerning the vehicles that was known to Defendants at the time of the sale. Defendants deliberately withheld the information about the vehicles' susceptibility to hacking in order to ensure that consumers would purchase their vehicles and to induce the consumer to enter into a transaction.

1664.     The susceptibility of the vehicles to hacking and their lack of a fail-safe mechanism were material to Plaintiffs and the Class. Had Plaintiffs and the Class known that their vehicles had these serious safety defects, they would not have purchased their vehicles.

1665.     Plaintiffs and the Class suffered ascertainable loss caused by Defendants' failure to disclose material information. Plaintiffs and the Class overpaid for their vehicles and did not receive the benefit of their bargain. The value of their Vehicles has diminished now that the safety issues have come to light, and Plaintiffs and the Class own vehicles that are not safe.

1666.     Plaintiffs are entitled to recover the greater of actual damages or $200 pursuant to Or. Rev. Stat. § 646.638(1). Plaintiffs are also entitled to punitive damages because Defendants engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights of

258

others.

1667. Pursuant to Or. Rev. Stat. § 646.638(2), Plaintiffs will mail a copy of the complaint to Oregon's attorney general.

## COUNT CLXXXIII

### Breach of the Implied Warranty of Merchantability
### (Oregon Revised Statutes Section 72.3140)

1668. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1669. Defendants are and were at all relevant times merchants with respect to motor vehicles.

1670. A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

1671. These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

1672. As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT CLXXXIV

### Fraudulent Concealment
### (Based on Oregon Law)

1673. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1674. Defendants intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1675. Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car,

259

COMPLAINT

that the Class Vehicles they was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

1676.    Defendants knew these representations were false when made.

1677.    The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective CAN buses, as alleged herein.

1678.    Defendants had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other Class members relied on Defendants' material representations that the Class Vehicles they were purchasing were safe and free from defects.

1679.    The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

1680.    The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants knew or recklessly disregarded that their representations were false because they knew the CAN buses were susceptible to hacking. Defendants intentionally made the false statements in order to sell Class Vehicles.

1681.    Plaintiffs and the other Class members relied on Defendants' reputations – along with Defendants' failure to disclose the faulty and defective nature of the CAN bus and Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Defendants' Class Vehicles.

1682.    As a result of their reliance, Plaintiffs and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Class Vehicles.

1683.    Defendants' conduct was knowing, intentional, with malice, demonstrated a

COMPLAINT

1  complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class

2  members.

3      1684.      Plaintiffs and the other Class members are therefore entitled to an award of

4  punitive damages.

5  **Claims Brought on Behalf of the Pennsylvania Class**

6  **COUNT CLXXXV**

7  **Violations of the Unfair Trade Practices and Consumer Protection Law**
   **(Pennsylvania Statutes Annotated Sections 201-1, _et seq._)**

8

9      1685.      Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

10  forth herein.

11      1686.      By failing to disclose and actively concealing the defects in the Class Vehicles,

12  Defendants engaged in deceptive business practices prohibited by the Pennsylvania Unfair Trade

13  Practices and Consumer Protection Law, Pa. Stat. Ann. §§ 201-1, _et seq._ ("UTPCPL"), including

14  (1) representing that Class Vehicles have characteristics, uses, benefits, and qualities which they

15  do not have, (2) representing that Class Vehicles are of a particular standard, quality, and grade

16  when they are not, (3) advertising Class Vehicles with the intent not to sell them as advertised,

17  and (4) engaging in acts or practices which are otherwise unfair, misleading, false, or deceptive to

18  the consumer.

19      1687.      As alleged above, Defendants made numerous material statements about the

20  benefits and characteristics of the Class Vehicles that were either false or misleading. Each of

21  these statements contributed to the deceptive context of Defendants' unlawful advertising and

22  representations as a whole.

23      1688.      Defendants knew that the CAN buses in the Class Vehicles were defectively

24  designed or manufactured, were susceptible to hacking, and were not suitable for their intended

25  use. Defendants nevertheless failed to warn Plaintiffs about these defects despite having a duty to

26  do so.

27      1689.      Defendants owed Plaintiffs a duty to disclose the defective nature of the Class

28  Vehicles, because Defendants:

COMPLAINT

1690.    Possessed exclusive knowledge of the defects rendering the Class Vehicles more unreliable than similar vehicles;

1691.    Intentionally concealed the defects associated with the CAN buses through their deceptive marketing campaign and recall program that they designed to hide the defects in the Class Vehicles; and/or

1692.    Made incomplete representations about the characteristics and performance of the Class Vehicles generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1693.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true performance and characteristics of the Class Vehicles.

1694.    As a result of their violations of the UTPCPL detailed above, Defendants caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs. Plaintiffs currently own or lease, or within the class period have owned or leased, a Class Vehicle that is defective. Defects associated with the CAN buses have caused the value of Class Vehicles to decrease.

1695.    Plaintiffs and the Class sustained damages as a result of the Defendants' unlawful acts and are, therefore, entitled to damages and other relief as provided under the UTPCPL, including treble damages.

1696.    Plaintiffs also seeks court costs and attorneys' fees as a result of Defendants' violation of the UTPCPL as provided in Pa. Stat. Ann. § 201-9.2.

## COUNT CLXXXVI

### Breach of Express Warranty
### (13 Pennsylvania Statutes Annotated Section 2313)

1697.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1698.    Defendants are and were at all relevant times merchants with respect to motor vehicles under 13 Pa. Stat. Ann. § 2104.

262

COMPLAINT

1699.    In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

1.    Toyota's warranty

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

2.    Ford's warranty

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFFERENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

3.    GM's warranty

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

263

COMPLAINT

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

1700.     Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

1701.     Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1702.     In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

1703.     These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives. These affirmations and promises were part of the basis of the bargain between the parties.

1704.     These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable (and remained so even after the problems were acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees. Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles conforming to these express warranties.

1705.     Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Defendants have failed and/or have refused to

264

1   adequately provide the promised remedies within a reasonable time.

2   1706.   Accordingly, recovery by Plaintiffs and the other Class members is not limited to

3   the limited warranty of repair or adjustments to parts defective in materials or workmanship, and

4   Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by

5   law.

6   1707.   Also, as alleged in more detail herein, at the time that Defendants warranted and

7   sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and

8   were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or

9   concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members

10  were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent

11  pretenses.

12  1708.   Moreover, many of the injuries flowing from the Class Vehicles cannot be

13  resolved through the limited remedy of "replacement or adjustments," as many incidental and

14  consequential damages have already been suffered due to Defendants' fraudulent conduct as

15  alleged herein, and due to their failure and/or continued failure to provide such limited remedy

16  within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies

17  would be insufficient to make Plaintiffs and the other Class members whole.

18  1709.   Finally, due to Defendants' breach of warranties as set forth herein, Plaintiffs and

19  the other Class members assert as an additional and/or alternative remedy, as set forth in 13 Pa.

20  Stat. Ann. § 2711, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to

21  the other Class members of the purchase price of all Class Vehicles currently owned and for such

22  other incidental and consequential damages as allowed under 13 Pa. Stat. Ann. §§ 2711 and 2608.

23  1710.   Defendants were provided notice of these issues by the instant Complaint, and by

24  other means before or within a reasonable amount of time after the allegations of Class Vehicle

25  defects became public.

26  1711.   As a direct and proximate result of Defendants' breach of express warranties,

27  Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

28

265

COMPLAINT

**COUNT CLXXXVII**

**Breach of Implied Warranty of Merchantability**
**(13 Pennsylvania Statutes Annotated Section 2314)**

1712.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1713.    Defendants are and were at all relevant times merchants with respect to motor vehicles under 13 Pa. Stat. Ann. § 2104.

1714.    A warranty that the Class Vehicles were in merchantable condition was implied by law in the instant transactions, pursuant to 13 Pa. Stat. Ann. § 2314.

1715.    These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

1716.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**COUNT CLXXXVIII**

**Breach of Contract/Common Law Warranty**
**(Based on Pennsylvania Law)**

1717.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1718.    To the extent Defendants' limited remedies are deemed not to be warranties under Pennsylvania's Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

1719.    Defendants breached this warranty or contract obligation by failing to repair the

266

COMPLAINT

Class Vehicles, or to replace them.

1720.     As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

<div align="center">

**COUNT CLXXXIX**

**Fraudulent Concealment**
**(Based on Pennsylvania Law)**

</div>

1721.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1722.     Defendants intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1723.     Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

1724.     Defendants knew these representations were false when made.

1725.     The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective CAN buses, as alleged herein.

1726.     Defendants had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other Class members relied on Defendants' material representations that the Class Vehicles they were purchasing were safe and free from defects.

1727.     The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or

COMPLAINT

would not have bought or leased those Vehicles at the prices they paid.

1728.     The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants knew or recklessly disregarded that their representations were false because they knew the CAN buses were susceptible to hacking. Defendants intentionally made the false statements in order to sell Class Vehicles.

1729.     Plaintiffs and the other Class members relied on Defendants' reputations – along with Defendants' failure to disclose the faulty and defective nature of the CAN bus and Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Defendants' Class Vehicles.

1730.     As a result of their reliance, Plaintiffs and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Class Vehicles.

1731.     Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members.

1732.     Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

### Claims Brought on Behalf of the Rhode Island Class

### COUNT CXC

### Violation of the Rhode Island Unfair Trade Practices and Consumer Protection Act (Rhode Island General Laws Sections 6-13.1, *et seq.*)

1733.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1734.     Plaintiffs are persons who purchase or lease goods primarily for personal, family, or household purposes within the meaning of R.I. Gen. Laws § 6-13.1-5.2(a).

1735.     Rhode Island's Unfair Trade Practices and Consumer Protection Act

268

COMPLAINT

1   ("UTPCPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or

2   commerce" including: "(v) Representing that goods or services have sponsorship, approval,

3   characteristics, ingredients, uses, benefits, or quantities that they do not have"; "(vii) Representing

4   that goods or services are of a particular standard, quality, or grade . . . , if they are of another";

5   "(ix) Advertising goods or services with intent not to sell them as advertised"; "(xii) Engaging in

6   any other conduct that similarly creates a likelihood of confusion or of misunderstanding";

7   "(xiii) Engaging in any act or practice that is unfair or deceptive to the consumer"; and "(xiv)

8   Using any other methods, acts or practices which mislead or deceive members of the public in a

9   material respect." R.I. Gen. Laws § 6-13.1-1(6).

10   1736.      In the course of Defendants' business, they willfully failed to disclose and

11   actively concealed the dangerous risk of hacking and the lack of adequate fail-safe mechanisms in

12   Defective Vehicles equipped with CAN buses as described above. Accordingly, Defendants

13   engaged in unlawful trade practices, including representing that Defective Vehicles have

14   characteristics, uses, benefits, and qualities which they do not have; representing that Defective

15   Vehicles are of a particular standard and quality when they are not; advertising Defective

16   Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely

17   to deceive.

18   1737.      Defendants' actions as set forth above occurred in the conduct of trade or

19   commerce.

20   1738.      Plaintiffs suffered ascertainable loss of money as a result of Defendants' violation

21   of the UTPCPA.

22   1739.      Plaintiffs and the Class were injured as a result of Defendants' conduct in that

23   Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain,

24   and their vehicles have suffered a diminution in value. These injuries are the direct and natural

25   consequence of Defendants' misrepresentations and omissions.

26   1740.      Accordingly, Plaintiffs are entitled to recover the greater of actual damages or

27   $200 pursuant to R.I. Gen. Laws § 6-13.1-5.2(a).

28

COMPLAINT

1

**COUNT CXCI**

2

**Breach of the Implied Warranty of Merchantability**
**(Rhode Island General Laws Section 6A-2-314)**

3

4
     1741.      Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

5
forth herein.

6
     1742.      Defendants are and were at all relevant times merchants with respect to motor

7
vehicles.

8
     1743.      A warranty that the Class Vehicles were in merchantable condition is implied by

9
law in the instant transactions.

10
     1744.      These Class Vehicles, when sold and at all times thereafter, were not in

11
merchantable condition and are not fit for the ordinary purpose for which cars are used.

12
Defendants were provided notice of these issues by numerous complaints filed against them,

13
including the instant Complaint, and by other means.

14
     1745.      As a direct and proximate result of Defendants' breach of the warranties of

15
merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

16

**Claims Brought on Behalf of the South Carolina Class**

17

**COUNT CXCII**

18

**Breach of the Implied Warranty of Merchantability**
**(South Carolina Code Section 36-2-314)**

19

20
     1746.      Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

21
forth herein.

22
     1747.      Defendants are and were at all relevant times merchants with respect to motor

23
vehicles under S.C. Code § 36-2-314.

24
     1748.      A warranty that the Defective Vehicles were in merchantable condition was

25
implied by law in the instant transaction, pursuant to S.C. Code § 36-2-314.

26
     1749.      These Class Vehicles, when sold and at all times thereafter, were not in

27
merchantable condition and are not fit for the ordinary purpose for which cars are used.

28
Defendants were provided notice of these issues by numerous complaints filed against them,

270

COMPLAINT

including the instant Complaint, and by other means.

1750.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

### COUNT CXCIII

### Violations of the South Carolina Unfair Trade Practices Act
### (South Carolina Code Annotated Sections 39-5-10, *et seq.*)

1751.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1752.     Defendants are "persons" under S.C. Code Ann. § 39-5-10.

1753.     Defendants both participated in unfair or deceptive acts or practices that violated the South Carolina Unfair Trade Practices Act (the "Act"), S.C. Code Ann. §§ 39-5-10, *et seq.*, as described above and below. Defendants each are directly liable for these violations of law. TMC also is liable for TMS's violations of the Act because TMS acts as TMC's general agent in the United States for purposes of sales and marketing.

1754.     By failing to disclose and actively concealing the dangerous risk of hacking and the lack of adequate fail-safe mechanisms in Defective Vehicles equipped with CAN buses, Defendants engaged in unfair or deceptive practices prohibited by the Act, S.C. Code Ann. §§ 39-5-10, *et seq.*, including (1) representing that Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Defective Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Defective Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving Defective Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Defective Vehicles has been supplied in accordance with a previous representation when it has not.

1755.     As alleged above, Defendants made numerous material statements about the safety and reliability of Defective Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Defendants' unlawful advertising and representations as a whole.

271

COMPLAINT

1756.     Defendants knew that the CAN buses in Defective Vehicles were defectively designed or manufactured, were susceptible to hacking, and were not suitable for their intended use. Defendants nevertheless failed to warn Plaintiffs about these inherent dangers despite having a duty to do so.

1757.     Defendants each owed Plaintiffs a duty to disclose the defective nature of Defective Vehicles, including the dangerous risk of hacking and the lack of adequate fail-safe mechanisms, because they:

1758.     Possessed exclusive knowledge of the defects rendering Defective Vehicles inherently more dangerous and unreliable than similar vehicles;

1759.     Intentionally concealed the hazardous situation with Defective Vehicles through their deceptive marketing campaign that they designed to hide the life-threatening problems from Plaintiffs; and/or

1760.     Made incomplete representations about the safety and reliability of Defective Vehicles while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1761.     Defective Vehicles equipped with CAN buses pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to incidents of hacking.

1762.     Whether or not a vehicle is vulnerable to hacking and can be commandeered by a third party are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease. When Plaintiffs bought a Defendants Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would not be vulnerable to hacking, and was equipped with any necessary fail-safe mechanisms.

1763.     Defendants' unfair or deceptive trade practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Defective Vehicles.

1764.     As a result of their violations of the Act detailed above, Defendants caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs. Plaintiffs currently own

COMPLAINT

or lease, or within the class period have owned or leased, Defective Vehicles that are defective and inherently unsafe. CAN bus defects have caused the value of Defective Vehicles to plummet.

1765.    Plaintiffs risk irreparable injury as a result of Defendants' acts and omissions in violation of the Act, and these violations present a continuing risk to Plaintiffs as well as to the general public.

1766.    Pursuant to S.C. Code Ann. § 39-5-140, Plaintiffs seek monetary relief against Defendants to recover for their sustained losses.

1767.    Plaintiffs further allege that Defendants' malicious and deliberate conduct warrants an assessment of punitive damages because Defendants each carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs to cruel and unjust hardship as a result. Defendants intentionally and willfully misrepresented the safety and reliability of Defective Vehicles, deceived Plaintiffs on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Defective Vehicles they repeatedly promised Plaintiffs were safe. Defendants' unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

1768.    Plaintiffs further seek an order enjoining Defendants' unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's fees, and any other just and proper relief available under the Act.

## COUNT CXCIV

**Violations of the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act (South Carolina Code Annotated Sections 56-15-10, *et seq*.)**

1769.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1770.    Defendants are "manufacturers" as set forth in S.C. Code Ann. § 56-15-10, as they are engaged in the business of manufacturing or assembling new and unused motor vehicles.

1771.    Defendants both participated in unfair or deceptive acts or practices that violated the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act ("Dealers Act"),

273

COMPLAINT

S.C. Code Ann. § 56-15-30. Defendants each are directly liable for these violations of law. TMC also is liable for TMS's violations of the Dealers Act because TMS acts as TMC's general agent in the United States for purposes of sales and marketing.

1772.     Defendants have engaged in actions which were arbitrary, in bad faith, unconscionable, and which caused damage to Plaintiffs, the Class, and to the public. Defendants have directly participated in the wrongful conduct.

1773.     Defendants' bad faith and unconscionable actions include, but are not limited to: (1) representing that Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Defective Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Defective Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving Defective Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Defective Vehicles has been supplied in accordance with a previous representation when it has not.

1774.     Defendants have resorted to and used false and misleading advertisement in connection with their business. As alleged above, Defendants made numerous material statements about the safety and reliability of Defective Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Defendants' unlawful advertising and representations as a whole.

1775.     Pursuant to S.C. Code Ann. § 56-15-110(2), Plaintiffs bring this action on behalf of themselves and the Class, as the action is one of common or general interest to many persons and the parties are too numerous to bring them all before the court.

1776.     Plaintiffs and the Class are entitled to double the actual damages, the cost of the suit, attorney's fees pursuant to S.C. Code Ann. § 56-15-110, and Plaintiffs also seek injunctive relief under S.C. Code Ann. § 56-15-110. Plaintiffs also seek treble damages because Defendants have acted maliciously.

COMPLAINT

## COUNT CXCV

### Breach of Contract/Common Law Warranty
### (Based on South Carolina Law)

1777.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1778.     To the extent Defendants' limited remedies are deemed not to be warranties under South Carolina's Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

1779.     Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles, or to replace them.

1780.     As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

### Claims Brought on Behalf of the South Dakota Class

### COUNT CXCVI

### Breach of Express Warranty
### (South Dakota Codified Laws Section 57A-2-313)

1781.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1782.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

1783.     Under S.D. Codified Laws § 57A-2-318, Plaintiffs have the same standing as any direct purchaser of a vehicle from Defendants.

275

COMPLAINT

1784.     In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

    1.     Toyota's warranty

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

    2.     Ford's warranty

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

    3.     GM's warranty

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

COMPLAINT

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

1785.     Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

1786.     Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1787.     In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

1788.     These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives. These affirmations and promises were part of the basis of the bargain between the parties.

1789.     These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable (and remained so even after the problems were acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees. Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles conforming to these express warranties.

1790.     Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Defendants have failed and/or have refused to

277

COMPLAINT

1   adequately provide the promised remedies within a reasonable time.

2   1791.    Accordingly, recovery by Plaintiffs and the other Class members is not limited to

3   the limited warranty of repair or adjustments to parts defective in materials or workmanship, and

4   Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by

5   law.

6   1792.    Also, as alleged in more detail herein, at the time that Defendants warranted and

7   sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and

8   were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or

9   concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members

10  were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent

11  pretenses.

12  1793.    Moreover, many of the injuries flowing from the Class Vehicles cannot be

13  resolved through the limited remedy of "replacement or adjustments," as many incidental and

14  consequential damages have already been suffered due to Defendants' fraudulent conduct as

15  alleged herein, and due to their failure and/or continued failure to provide such limited remedy

16  within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies

17  would be insufficient to make Plaintiffs and the other Class members whole.

18  1794.    Finally, due to the Defendants' breach of warranties as set forth herein, Plaintiffs

19  and the Class assert as an additional and/or alternative remedy, as set forth in S.D. Codified Laws

20  § 57A-2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the

21  Class of the purchase price of all vehicles currently owned.

22  1795.    Defendants were provided notice of these issues by the instant Complaint, and by

23  other means before or within a reasonable amount of time after the allegations of Class Vehicle

24  defects became public.

25  1796.    As a direct and proximate result of Defendants' breach of express warranties,

26  Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

27

28

COMPLAINT

## COUNT CXCVII

### Breach of the Implied Warranty pf Merchantability
### (South Dakota Codified Laws Section 57A-2-314)

1797.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1798.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

1799.     A warranty that the Defective Vehicles were merchantable is implied by law in the instant transactions.

1800.     Under S.D. Codified Laws § 57A-2-318, Plaintiffs have the same standing as any direct purchaser of a vehicle from Defendants.

1801.     These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

1802.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT CXCVIII

### Violation of the South Dakota Deceptive Trade Practices Act
### (South Dakota Codified Laws Section 37-24-6)

1803.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1804.     The conduct of Defendants as set forth herein constitutes deceptive acts or practices, fraud, and misrepresentation, including, but not limited to, Defendants' manufacture and sale of vehicles that are susceptible to hacking and that lack effective fail-safe mechanisms which Defendants failed to adequately investigate, disclose and remedy, and Defendants' misrepresentations and omissions regarding the safety and reliability of their vehicles.

1805.     Plaintiffs and the Class were injured as a result of Defendants' conduct. Plaintiffs

279

COMPLAINT

overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

1806.     Defendants' conduct proximately caused the injuries to Plaintiffs and the Class.

1807.     Under S.D. Codified Laws § 37-24-31, Plaintiffs and the Class are entitled to a recovery of their actual damages suffered as a result of Defendants' acts and practices.

### COUNT CXCIX

**Breach of Contract/Common Law Warranty**
**(Based on South Dakota Law)**

1808.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1809.     To the extent Defendants' limited remedies are deemed not to be warranties under South Dakota's Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

1810.     Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles, or to replace them.

1811.     As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**Claims Brought on Behalf of the Tennessee Class**

### COUNT CC

**Violation of Tennessee Consumer Protection Act**
**(Tennessee Code Annotated Sections 47-18-101, *et seq*.)**

1812.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

280

COMPLAINT

1   forth herein.

2   1813.     Defendants misrepresented the safety of the Defective Vehicles after learning of

3   their defects with the intent that Plaintiffs relied on such representations in their decision

4   regarding the purchase, lease and/or use of the Defective Vehicles.

5   1814.     Plaintiffs did, in fact, rely on such representations in their decision regarding the

6   purchase, lease and/or use of the Defective Vehicles.

7   1815.     Through these misleading and deceptive statements and false promises,

8   Defendants violated the Tennessee Consumer Protection Act.

9   1816.     The Tennessee Consumer Protection Act applies to Defendants' transactions with

10   Plaintiffs because Defendants' deceptive scheme was carried out in Tennessee and affected

11   Plaintiffs.

12   1817.     Defendants also failed to advise the NHSTA and the public about what they knew

13   about the vulnerability of the Defective Vehicles to hacking.

14   1818.     Plaintiffs relied on Defendants' silence as to known defects in connection with

15   their decision regarding the purchase, lease and/or use of the Defective Vehicles.

16   1819.     As a direct and proximate result of Defendants' deceptive conduct and violation

17   of the Tennessee Consumer Protection Act, Plaintiffs have sustained and will continue to sustain

18   economic losses and other damages for which they are entitled to compensatory and equitable

19   damages and declaratory relief in an amount to be proven at trial.

20   **COUNT CCI**

21   **Fraudulent Misrepresentation and Fraudulent Concealment**
22   **(Based on Tennessee Law)**

23   1820.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

24   forth herein.

25   1821.     Defendants intentionally concealed the above-described material safety and

26   functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and

27   the other Class members information that is highly relevant to their purchasing decision.

28   1822.     Defendants further affirmatively misrepresented to Plaintiffs in advertising and

281

COMPLAINT

other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

1823.    Defendants knew these representations were false when made.

1824.    The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective CAN buses, as alleged herein.

1825.    Defendants had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other Class members relied on Defendants' material representations that the Class Vehicles they were purchasing were safe and free from defects.

1826.    The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

1827.    The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants knew or recklessly disregarded that their representations were false because it knew the CAN buses were susceptible to hacking. Defendants intentionally made the false statements in order to sell Class Vehicles.

1828.    Plaintiffs and the other Class members relied on Defendants' reputations – along with Defendants' failure to disclose the faulty and defective nature of the CAN bus and Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Defendants' Class Vehicles.

1829.    As a result of their reliance, Plaintiffs and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Class Vehicles.

282

COMPLAINT

1830.     Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members.

1831.     Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

## COUNT CCII

### Breach of Express Warranty
### (Tennessee Code Annotated Section 47-2-313)

1832.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1833.     Defendants are and at all relevant times were sellers as defined by Tenn. Code Ann. § 47-2-103.

1834.     In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

  1.     Toyota's warranty

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

  2.     Ford's warranty

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

283

COMPLAINT

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

3.      GM's warranty

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

1835.      Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

1836.      Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1837.      In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

1838.      These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and

284

COMPLAINT

1   promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements,

2   on Defendants' websites, and in uniform statements provided by Defendants to be made by

3   salespeople, or made publicly by Defendants' executives or by other authorized representatives.

4   These affirmations and promises were part of the basis of the bargain between the parties.

5   1839.   These additional warranties were also breached because the Class Vehicles were

6   not fully operational, safe, or reliable (and remained so even after the problems were

7   acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees.

8   Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles

9   conforming to these express warranties.

10   1840.   Furthermore, the limited warranty of repair and/or adjustments to defective parts,

11   fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and

12   the other Class members whole and because Defendants have failed and/or have refused to

13   adequately provide the promised remedies within a reasonable time.

14   1841.   Accordingly, recovery by Plaintiffs and the other Class members is not limited to

15   the limited warranty of repair or adjustments to parts defective in materials or workmanship, and

16   Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by

17   law.

18   1842.   Also, as alleged in more detail herein, at the time that Defendants warranted and

19   sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and

20   were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or

21   concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members

22   were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent

23   pretenses.

24   1843.   Moreover, many of the injuries flowing from the Class Vehicles cannot be

25   resolved through the limited remedy of "replacement or adjustments," as many incidental and

26   consequential damages have already been suffered due to Defendants' fraudulent conduct as

27   alleged herein, and due to their failure and/or continued failure to provide such limited remedy

28   within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies

285

COMPLAINT

1   would be insufficient to make Plaintiffs and the other Class members whole.

2   1844.      Defendants were provided notice of these issues by the instant Complaint, and by

3   other means before or within a reasonable amount of time after the allegations of Class Vehicle

4   defects became public.

5   1845.      As a direct and proximate result of Defendants' breach of express warranties,

6   Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

7   <u>**COUNT CCIII**</u>

8   **Breach of Implied Warranty of Merchantability**

9   <u>**(Tennessee Code Annotated Section 47-2-314)**</u>

10   1846.      Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

11   forth herein.

12   1847.      Defendants impliedly warranted that their vehicles were of good and

13   merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and

14   passengers in reasonable safety during normal operation, and without unduly endangering them or

15   members of the public.

16   1848.      As described above, there were dangerous defects in the vehicles manufactured,

17   distributed, and/or sold by Defendants, which Plaintiffs purchased, including, but not limited to,

18   defects that caused the vehicles to be susceptible to hacking, and the lack of safety systems to

19   stave off an attack.

20   1849.      These dangerous defects existed at the time the vehicles left Defendants'

21   manufacturing facilities and at the time they were sold to the Plaintiffs. Furthermore, because of

22   these dangerous defects, Plaintiffs did not receive the benefit of their bargain and the vehicles

23   have suffered a diminution in value.

24   1850.      These dangerous defects were the direct and proximate cause of damages to the

25   Plaintiffs.

26

27

28

COMPLAINT

**Claims Brought on Behalf of the Texas Class**

**COUNT CCIV**

**Violations of the Deceptive Trade Practices Act**
**(Texas Business and Commercial Code Sections 17.41, *et seq.*)**

1851.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1852.     Plaintiffs and Defendants are each "persons" as defined by Tex. Bus. & Com. Code § 17.45(3). The Class Vehicles are "goods" under Tex. Bus. & Com. Code § 17.45(1). Plaintiffs and the other Texas Class members are "consumers" as defined in Tex. Bus. & Com. Code § 17.45(4). Defendants have at all relevant times engaged in "trade" and "commerce" as defined in Tex. Bus. & Com. Code § 17.45(6), by advertising, offering for sale, selling, leasing, and/or distributing the Class Vehicles in Texas, directly or indirectly affecting Texas citizens through that trade and commerce.

1853.     The allegations set forth herein constitute false, misleading, or deceptive trade acts or practices in violation of Texas's Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code §§ 17.41, *et seq.*

1854.     By failing to disclose and actively concealing the defects in the Class Vehicles, Defendants engaged in deceptive business practices prohibited by the DTPA, including (1) representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Class Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Class Vehicles with the intent not to sell them as advertised, and (4) engaging in acts or practices which are otherwise unfair, misleading, false, or deceptive to the consumer.

1855.     As alleged above, Defendants made numerous material statements about the benefits and characteristics of the Class Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Defendants' unlawful advertising and representations as a whole.

1856.     Defendants knew that the CAN buses in the Class Vehicles were defectively

287

COMPLAINT

designed or manufactured, were susceptible to hacking, and were not suitable for their intended use. Defendants nevertheless failed to warn Plaintiffs about these defects despite having a duty to do so.

1857.     Defendants owed Plaintiffs a duty to disclose the defective nature of the CAN buses in the Class Vehicles, because Defendants:

1858.     Possessed exclusive knowledge of the defects rendering the Class Vehicles

1859.     more unreliable than similar vehicles;

1860.     Intentionally concealed the defects through their deceptive marketing campaign that they designed to hide the defects in the Class Vehicles; and/or

1861.     Made incomplete representations about the characteristics and performance of the Class Vehicles generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1862.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true performance and characteristics of the Class Vehicles.

1863.     Defendants' intentional concealment of and failure to disclose the defective nature of the Class Vehicles to Plaintiffs and the other Class members constitutes an "unconscionable action or course of action" under Tex. Bus. & Com. Code § 17.45(5) because, to the detriment of Plaintiffs and the other Class members, that conduct took advantage of their lack of knowledge, ability, and experience to a grossly unfair degree. That "unconscionable action or course of action" was a producing cause of the economic damages sustained by Plaintiffs and the other Class members.

1864.     Defendants are also liable under Tex. Bus. & Com. Code § 17.50(a) because Defendants' breach of the implied warranty of merchantability set forth herein was a producing cause of economic damages sustained by Plaintiffs and the other Class members.

1865.     As a result of their violations of the DTPA detailed above, Defendants caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs. Plaintiffs currently own or lease, or within the class period have owned or leased, a Class Vehicle that is

288

COMPLAINT

defective. Defects associated with the CAN bus have caused the value of Class Vehicles to decrease.

1866.     All procedural prerequisites, including notice, have been met. The giving of notice to Defendants is rendered impracticable pursuant to Tex. Bus. & Com. Code § 17.505(b) and unnecessary because Defendants have notice of the claims against them.

1867.     Pursuant to Tex. Bus. & Com. Code § 17.505(b), Plaintiffs, individually and on behalf of the other Class members, will send to the Texas Consumer Protection Division a copy of this Complaint.

1868.     Plaintiffs and the Class sustained damages as a result of the Defendants' unlawful acts and are, therefore, entitled to damages and other relief as provided under the DTPA.

1869.     Plaintiffs and the other Class members should be awarded three times the amount of their economic damages because Defendants intentionally concealed and failed to disclose the defective nature of the Class Vehicles.

**COUNT CCV**

**Breach of Express Warranty**
**(Texas Business and Commercial Code Section 2.313)**

1870.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1871.     Defendants are and were at all relevant times merchants with respect to motor vehicles under Tex. Bus. & Com. Code § 2.104.

1872.     In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

    1.     Toyota's warranty

    *When Warranty Begins*

    The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

289

COMPLAINT

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

    2.    <u>Ford's warranty</u>

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

    3.    <u>GM's warranty</u>

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

    1873.    Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

290

COMPLAINT

1874.    Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1875.    In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

1876.    These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives. These affirmations and promises were part of the basis of the bargain between the parties.

1877.    These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable (and remained so even after the problems were acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees. Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles conforming to these express warranties.

1878.    Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1879.    Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

1880.    Also, as alleged in more detail herein, at the time that Defendants warranted and sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and

291

COMPLAINT

were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1881.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Defendants' fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

1882.    Finally, due to Defendants' breach of warranties as set forth herein, Plaintiffs and the other Class members assert as an additional and/or alternative remedy, as set forth in Tex. Bus. & Com. Code § 2.711, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Class members of the purchase price of all Class Vehicles currently owned and for such other incidental and consequential damages as allowed under Tex. Bus. & Com. Code §§ 2.711 and 2.608.

1883.    Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

1884.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT CCVI

### Breach of the Implied Warranty of Merchantability
### (Texas Business and Commercial Code Section 2.314)

1885.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1886.    Defendants are and were at all relevant times merchants with respect to motor vehicles under Tex. Bus. & Com. Code § 2.104.

COMPLAINT

1887.     A warranty that the Class Vehicles were in merchantable condition was implied by law in the instant transactions, pursuant to Tex. Bus. & Com. Code § 2.314.

1888.     These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

1889.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT CCVII

### Breach of Contract/Common Law Warranty
### (Based on Texas Law)

1890.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1891.     To the extent Defendants' limited remedies are deemed not to be warranties under the Uniform Commercial Code as adopted in Texas, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

1892.     Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles, or to replace them.

1893.     As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

293

COMPLAINT

**COUNT CCVIII**

**Fraudulent Concealment**
**(Based on Texas Law)**

1894.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1895.     Defendants intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1896.     Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

1897.     Defendants knew these representations were false when made.

1898.     The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective CAN buses, as alleged herein.

1899.     Defendants had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other Class members relied on Defendants' material representations that the Class Vehicles they were purchasing were safe and free from defects.

1900.     The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

1901.     The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants knew or recklessly disregarded that their representations were false because they knew the CAN buses were susceptible to hacking. Defendants intentionally made the false statements in order to

294

COMPLAINT

1    sell Class Vehicles.

2    1902.    Plaintiffs and the other Class members relied on Defendants' reputations – along

3    with Defendants' failure to disclose the faulty and defective nature of the CAN bus and

4    Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other

5    similar false statements – in purchasing or leasing Defendants' Class Vehicles.

6    1903.    As a result of their reliance, Plaintiffs and the other Class members have been

7    injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the

8    bargain and overpayment at the time of purchase or lease and/or the diminished value of their

9    Class Vehicles.

10    1904.    Defendants' conduct was knowing, intentional, with malice, demonstrated a

11    complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class

12    members.

13    1905.    Plaintiffs and the other Class members are therefore entitled to an award of

14    punitive damages.

**Claims Brought on Behalf of the Utah Class**

**<u>COUNT CCIX</u>**

**Breach of Express Warranty**
**<u>(Utah Code Annotated Section 70A-2-313)</u>**

19    1906.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

20    forth herein.

21    1907.    Defendants are and were at all relevant times merchants as defined by the

22    Uniform Commercial Code.

23    1908.    In their Limited Warranties and in advertisements, brochures, and through other

24    statements in the media, Defendants expressly warranted that they would repair or replace defects

25    in material or workmanship free of charge if they became apparent during the warranty period.

26    For example, the following language appears in all Class Vehicle Warranty booklets:

27        1.    <u>Toyota's warranty</u>
        *When Warranty Begins*

28

295

COMPLAINT

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

2.    Ford's warranty

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

  . . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

3.    GM's warranty

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

1909.    Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was

296

COMPLAINT

reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

1910.    Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1911.    In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

1912.    These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives. These affirmations and promises were part of the basis of the bargain between the parties.

1913.    These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable (and remained so even after the problems were acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees. Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles conforming to these express warranties.

1914.    Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1915.    Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

297

COMPLAINT

1916.     Also, as alleged in more detail herein, at the time that Defendants warranted and sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1917.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Defendants' fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

1918.     Finally, due to the Defendants' breach of warranties as set forth herein, Plaintiffs and the Class assert as an additional and/or alternative remedy, as set forth in U.C.A. § 70A-2-608 for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of the purchase price of all vehicles currently.

1919.     Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

1920.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT CCX

### Breach of the Implied Warranty of Merchantability
### (Utah Code Annotated Section 70A-2-314)

1921.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1922.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

COMPLAINT

1923. A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

1924. These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

1925. As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT CCXI

### Breach of Contract/Common Law Warranty
### (Based on Utah Law)

1926. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1927. To the extent Defendants' limited remedies are deemed not to be warranties under the Utah Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

1928. Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles, or to replace them.

1929. As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

299

COMPLAINT

**Claims Brought on Behalf of the Vermont Class**

<u>COUNT CCXII</u>

**Violation of Vermont Consumer Fraud Act**
**(Vermont Statutes Annotated title 9, Sections 2451, *et seq.*)**

1930.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1931.    The Vermont Consumer Fraud Act ("VCFA") makes unlawful "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce. . . ." Vt. Stat. Ann. tit. 9, § 2453(a).

1932.    Defendants are sellers within the meaning of the VCFA. Vt. Stat. Ann. tit. 9, § 2451(a)(c).

1933.    In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risk of hacking and the lack of adequate fail-safe mechanisms in Defective Vehicles equipped with CAN buses as described above. This was a deceptive act in that Defendants represented that Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; represented that Defective Vehicles are of a particular standard and quality when they are not; and advertised Defective Vehicles with the intent not to sell them as advertised. Defendants knew or should have known that their conduct violated the VCFA.

1934.    Defendants engaged in a deceptive trade practice under the VCFA when they failed to disclose material information concerning the Defendants vehicles which was known to Defendants at the time of the sale. Defendants deliberately withheld the information about the vehicles' vulnerability to hacking in order to ensure that consumers would purchase their vehicles and to induce the consumer to enter into a transaction.

1935.    The information withheld was material in that it was information that was important to consumers and likely to affect their choice of, or conduct regarding, the purchase of their cars. Defendants' withholding of this information was likely to mislead consumers acting reasonably under the circumstances. The susceptibility of the Vehicles to hacking and their lack of a fail-safe mechanism were material to Plaintiffs and the Class. Had Plaintiffs and the Class

known that their Vehicles had these serious safety defects, they would not have purchased their Vehicles.

1936.     Defendants' conduct has caused or is to cause a substantial injury that is not reasonably avoided by consumers, and the harm is not outweighed by a countervailing benefit to consumers or competition.

1937.     Plaintiffs and the Class have suffered injury and damages as a result of Defendants' false or fraudulent representations and practices in violation of § 2453. Plaintiffs and the Class overpaid for their vehicles and did not receive the benefit of their bargain. The value of their vehicles has diminished now that the safety issues have come to light, and Plaintiffs and the Class own vehicles that are not safe.

1938.     Plaintiffs are entitled to recover "appropriate equitable relief" and "the amount of [their] damages, or the consideration or the value of the consideration given by [them], reasonable attorney's fees, and exemplary damages not exceeding three times the value of the consideration given by [them]" pursuant to Vt. Stat. Ann. tit. 9, § 2461(b).

## COUNT CCXIII

### Breach of Express Warranty
### (Vermont Statutes Annotated title 9A Section 2-313)

1939.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1940.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

1941.     In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

   1.     Toyota's warranty

   *When Warranty Begins*

   The warranty period begins on the vehicle's in-service date, which is the first date
   the vehicle is either delivered to an ultimate purchaser, leased, or used as a

COMPLAINT

company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

2.      Ford's warranty

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

3.      GM's warranty

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

1942.      Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

302

COMPLAINT

1943.     Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1944.     In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

1945.     These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives. These affirmations and promises were part of the basis of the bargain between the parties.

1946.     These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable (and remained so even after the problems were acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees. Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles conforming to these express warranties.

1947.     Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1948.     Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

1949.     Also, as alleged in more detail herein, at the time that Defendants warranted and sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and

303

COMPLAINT

were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1950. Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Defendants' fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

1951. Finally, due to the Defendants' breach of warranties as set forth herein, Plaintiffs and the Class assert as an additional and/or alternative remedy, as set forth in Vt. Stat. Ann. tit. 9, § 2-608, for revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of the purchase price of all vehicles currently owned.

1952. Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

1953. As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT CCXIV

### Breach of Implied Warranty of Merchantability
### (Vermont Statutes Annotated title 9A Section 2-314)

1954. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1955. Defendants are and were at all relevant times merchants with respect to motor vehicles.

1956. A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

304

COMPLAINT

1957.    These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

1958.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT CCXV

### Breach of Contract
### (Based on Vermont Law)

1959.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1960.    To the extent Defendants' limited remedies are deemed not to be warranties under Vermont's Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

1961.    Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles, or to replace them.

1962.    As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

### Claims Brought on Behalf of the Virginia Class

## COUNT CCXVI

### Violations of the Virginia Consumer Protection Act
### (Virginia Code Annotated Sections 59.1-196, *et seq*.)

1963.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

305

COMPLAINT

forth herein.

1964.      The Virginia Consumer Protection prohibits "(5) misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; (6) misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; . . . (8) advertising goods or services with intent not to sell them as advertised . . . ; [and] (14) using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction[.]" Va. Code Ann. § 59.1-200(A).

1965.      Defendants are "persons" as defined by Va. Code Ann. § 59.1-198. The transactions between Plaintiffs and the other Class members on one hand and Defendants on the other, leading to the purchase or lease of the Class Vehicles by Plaintiffs and the other Class members, are "consumer transactions" as defined by Va. Code Ann. § 59.1-198, because the Class Vehicles were purchased or leased primarily for personal, family or household purposes.

1966.      In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risk of hacking in Class Vehicles as described above. Accordingly, Defendants engaged in acts and practices violating Va. Code Ann. § 59.1-200(A), including representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard and quality when they are not; advertising Class Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

1967.      Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1968.      Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

1969.      Plaintiffs and the other Class members were injured as a result of Defendants' conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

306

COMPLAINT

1970.        Defendants actively and willfully concealed and/or suppressed the material facts regarding the defective and unreasonably dangerous nature of the CAN bus and the Class Vehicles, in whole or in part, with the intent to deceive and mislead Plaintiffs and the other Class members and to induce Plaintiffs and the other Class members to purchase or lease Class Vehicles at a higher price, which did not match the Class Vehicles' true value. Plaintiffs and the other Class members therefore seek treble damages.

## COUNT CCXVII

### Breach of Express Warranty
### (Virginia Code Annotated Section 8.2-313)

1971.        Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1972.        Defendants are and were at all relevant times merchants with respect to motor vehicles.

1973.        In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

1.      Toyota's warranty

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

2.      Ford's warranty

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the

307

COMPLAINT

day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

3.      GM's warranty

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

1974.      Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

1975.      Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1976.      In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

1977.      These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise

308

heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives. These affirmations and promises were part of the basis of the bargain between the parties.

1978.    These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable (and remained so even after the problems were acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees. Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles conforming to these express warranties.

1979.    Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1980.    Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

1981.    Also, as alleged in more detail herein, at the time that Defendants warranted and sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1982.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Defendants' fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy

309

COMPLAINT

within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

1983.    Finally, due to Defendants' breach of warranties as set forth herein, Plaintiffs and the other Class members assert as an additional and/or alternative remedy, as set forth in Va. Code Ann. § 8.2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed under Va. Code Ann. §§ 8.2-711 and 8.2-608.

1984.    Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

1985.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT CCXVIII

### Breach of Implied Warranty of Merchantability
### (Virginia Code Annotated Section 8.2-314)

1986.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1987.    Defendants are and were at all relevant times merchants with respect to motor vehicles.

1988.    A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

1989.    These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

1990.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

310

COMPLAINT

**COUNT CCXIX**

**Breach of Contract/Common Law Warranty**
**(Based on Virginia Law)**

1991.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1992.     To the extent Defendants' limited remedies are deemed not to be warranties under Virginia's Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

1993.     Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles, or to replace them.

1994.     As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT CCXX**

**Fraudulent Concealment**
**(Based on Virginia Law)**

1995.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1996.     Defendants intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1997.     Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they was selling were new, had no significant defects, and would perform

311

COMPLAINT

1    and operate properly when driven in normal usage.

2    1998.    Defendants knew these representations were false when made.

3    1999.    The Class Vehicles purchased or leased by Plaintiffs and the other Class members

4    were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and

5    defective CAN buses, as alleged herein.

6    2000.    Defendants had a duty to disclose that these Class Vehicles were defective,

7    unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be

8    rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other

9    Class members relied on Defendants' material representations that the Class Vehicles they were

10   purchasing were safe and free from defects.

11   2001.    The aforementioned concealment was material because if it had been disclosed

12   Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or

13   would not have bought or leased those Vehicles at the prices they paid.

14   2002.    The aforementioned representations were material because they were facts that

15   would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants

16   knew or recklessly disregarded that their representations were false because they knew the CAN

17   buses were susceptible to hacking. Defendants intentionally made the false statements in order to

18   sell Class Vehicles.

19   2003.    Plaintiffs and the other Class members relied on Defendants' reputations – along

20   with Defendants' failure to disclose the faulty and defective nature of the CAN bus and

21   Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other

22   similar false statements – in purchasing or leasing Defendants' Class Vehicles.

23   2004.    As a result of their reliance, Plaintiffs and the other Class members have been

24   injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the

25   bargain and overpayment at the time of purchase or lease and/or the diminished value of their

26   Class Vehicles.

27   2005.    Defendants' conduct was knowing, intentional, with malice, demonstrated a

28   complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class

312

members.

2006.     Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

**Claims Brought on Behalf of the Washington Class**

**COUNT CCXXI**

**Violation of the Consumer Protection Act**
**(Revised Code of Washington Annotated Sections 19.86.010, *et seq.*)**

2007.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2008.     The conduct of Defendants as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Defendants' manufacture and sale of vehicles with a sudden acceleration defect that lack brake-override or other effective fail-safe mechanisms, which Defendants failed to adequately investigate, disclose and remedy, and their misrepresentations and omissions regarding the safety and reliability of their vehicles.

2009.     Defendants' actions as set forth above occurred in the conduct of trade or commerce.

2010.     Defendants' actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Defendants vehicles as a result of Defendants' generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business.

2011.     Plaintiffs and the Class were injured as a result of Defendants' conduct. Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

2012.     Defendants' conduct proximately caused the injuries to Plaintiffs and the Class.

2013.     Defendants are liable to Plaintiffs and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

2014.     Pursuant to Wash. Rev. Code Ann. § 19.86.095, Plaintiffs will serve the Washington Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

313

COMPLAINT

**COUNT CCXXII**

**Breach of Express Warranty**
**(Revised Code of Washington Section 62A.2-313)**

2015.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2016.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

2017.     In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

    1.    Toyota's warranty

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

    2.    Ford's warranty

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

314

COMPLAINT

3.    GM's warranty

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

2018.    Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

2019.    Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

2020.    In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

2021.    These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives. These affirmations and promises were part of the basis of the bargain between the parties.

2022.    These additional warranties were also breached because the Class Vehicles were

315

COMPLAINT

1   not fully operational, safe, or reliable (and remained so even after the problems were
2   acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees.
3   Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles
4   conforming to these express warranties.

5       2023.       Furthermore, the limited warranty of repair and/or adjustments to defective parts,
6   fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and
7   the other Class members whole and because Defendants have failed and/or have refused to
8   adequately provide the promised remedies within a reasonable time.

9       2024.       Accordingly, recovery by Plaintiffs and the other Class members is not limited to
10   the limited warranty of repair or adjustments to parts defective in materials or workmanship, and
11   Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by
12   law.

13      2025.       Also, as alleged in more detail herein, at the time that Defendants warranted and
14   sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and
15   were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or
16   concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members
17   were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent
18   pretenses.

19      2026.       Moreover, many of the injuries flowing from the Class Vehicles cannot be
20   resolved through the limited remedy of "replacement or adjustments," as many incidental and
21   consequential damages have already been suffered due to Defendants' fraudulent conduct as
22   alleged herein, and due to their failure and/or continued failure to provide such limited remedy
23   within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies
24   would be insufficient to make Plaintiffs and the other Class members whole.

25      2027.       Finally, due to the Defendants' breach of warranties as set forth herein, Plaintiffs
26   and the Class assert as an additional and/or alternative remedy, as set forth in Rev. Code Wash.
27   § 62A.2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the
28   Class of the purchase price of all vehicles currently owned.

316

COMPLAINT

2028.     Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

2029.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

**COUNT CCXXIII**

**Breach of the Implied Warranty of Merchantability**
**(Revised Code of Washington Section 62A.2-614)**

2030.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2031.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

2032.     A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

2033.     These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

2034.     Privity is not required in this case because Plaintiffs and the Class are intended third-party beneficiaries of contracts between Defendants and their dealers; specifically, they are the intended beneficiaries of Defendants' implied warranties. The dealers were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided with the Defective Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

2035.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

317

COMPLAINT

**COUNT CCXXIV**

**Breach of Contract/Common Law Warranty**
**(Based on Washington Law)**

2036.　　Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2037.　　To the extent Defendants' limited remedies are deemed not to be warranties under Washington's Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

2038.　　Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles, or to replace them.

2039.　　As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT CCXXV**

**Fraudulent Concealment**
**(Based on Washington Law)**

2040.　　Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2041.　　Defendants intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

2042.　　Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car,

318

COMPLAINT

1  that the Class Vehicles they was selling were new, had no significant defects, and would perform
2  and operate properly when driven in normal usage.

3  2043.    Defendants knew these representations were false when made.

4  2044.    The Class Vehicles purchased or leased by Plaintiffs and the other Class members
5  were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and
6  defective CAN buses, as alleged herein.

7  2045.    Defendants had a duty to disclose that these Class Vehicles were defective,
8  unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be
9  rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other
10 Class members relied on Defendants' material representations that the Class Vehicles they were
11 purchasing were safe and free from defects.

12 2046.    The aforementioned concealment was material because if it had been disclosed
13 Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or
14 would not have bought or leased those Vehicles at the prices they paid.

15 2047.    The aforementioned representations were material because they were facts that
16 would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants
17 knew or recklessly disregarded that their representations were false because they knew the CAN
18 buses were susceptible to hacking. Defendants intentionally made the false statements in order to
19 sell Class Vehicles.

20 2048.    Plaintiffs and the other Class members relied on Defendants' reputations – along
21 with Defendants' failure to disclose the faulty and defective nature of the CAN bus and
22 Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other
23 similar false statements – in purchasing or leasing Defendants' Class Vehicles.

24 2049.    As a result of their reliance, Plaintiffs and the other Class members have been
25 injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the
26 bargain and overpayment at the time of purchase or lease and/or the diminished value of their
27 Class Vehicles.

28 2050.    Defendants' conduct was knowing, intentional, with malice, demonstrated a

319

COMPLAINT

complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members.

2051.    Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

### Claims Brought on Behalf of the West Virginia Class

### COUNT CCXXVI

### Violations of the Consumer Credit and Protection Act
### (West Virginia Code Sections 46A-1-101, *et seq.*)

2052.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2053.    Defendants are "persons" under W.Va. Code § 46A-1-102(31).

2054.    Plaintiffs are "consumers," as defined by W.Va. Code §§ and 46A-1-102(12) and 46A-6-102(2), who purchased or leased one or more Defective Vehicles.

2055.    Defendants both participated in unfair or deceptive acts or practices that violated the Consumer Credit and Protection Act ("CCPA"), W.Va. Code §§ 46A-1-101, *et seq.* as described above and below. Defendants each are directly liable for these violations of law. TMC also is liable for TMS's violations of the CCPA because TMS acts as TMC's general agent in the United States for purposes of sales and marketing.

2056.    By failing to disclose and actively concealing the dangerous risk of hacking and the lack of adequate fail-safe mechanisms in Defective Vehicles equipped with CAN buses, Defendants engaged in deceptive business practices prohibited by the CCPA, W.Va. Code § 46A-1-101, *et seq.*, including (1) representing that Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Defective Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Defective Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving Defective Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Defective Vehicles has been supplied in accordance with a previous representation when it has not.

COMPLAINT

1   2057.    As alleged above, Defendants made numerous material statements about the

2   safety and reliability of Defective Vehicles that were either false or misleading.

3   2058.    Each of these statements contributed to the deceptive context of TMC's and

4   TMS's unlawful advertising and representations as a whole.

5   2059.    Defendants knew that the CAN buses in Defective Vehicles were defectively

6   designed or manufactured, were susceptible to hacking, and were not suitable for their intended

7   use. Defendants nevertheless failed to warn Plaintiffs about these inherent dangers despite having

8   a duty to do so.

9   2060.    Defendants each owed Plaintiffs a duty to disclose the defective nature

10  2061.    of Defective Vehicles, including the dangerous risk of hacking and the lack of

11  adequate fail-safe mechanisms, because they:

12          a)    Possessed exclusive knowledge of the defects rendering Defective

13  Vehicles inherently more dangerous and unreliable than similar vehicles;

14          b)    Intentionally concealed the hazardous situation with Defective Vehicles

15  through their deceptive marketing campaign that they designed to hide the life-threatening

16  problems from Plaintiffs; and/or

17          c)    Made incomplete representations about the safety and reliability of

18  Defective Vehicles while purposefully withholding material facts from Plaintiffs that contradicted

19  these representations.

20  2062.    Defective Vehicles equipped with CAN buses pose an unreasonable risk of death

21  or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at

22  large, because they are susceptible to hacking.

23  2063.    Whether or not a vehicle is susceptible to hacking and can be commandeered by a

24  third party are facts that a reasonable consumer would consider important in selecting a vehicle to

25  purchase or lease. When Plaintiffs bought a Defendants Vehicle for personal, family, or

26  household purposes, they reasonably expected the vehicle was not vulnerable to hacking and was

27  equipped with any necessary fail-safe mechanisms.

28  2064.    Defendants' unfair or deceptive acts or practices were likely to deceive reasonable

321

COMPLAINT

consumers, including Plaintiffs, about the true safety and reliability of Defective Vehicles.

2065.     As a result of their violations of the CCPA detailed above, Defendants caused ascertainable loss to Plaintiffs and, if not stopped, will continue to harm Plaintiffs. Plaintiffs currently own or lease, or within the class period have owned or leased, Defective Vehicles that are defective and inherently unsafe. CAN bus defects have caused the value to Defective Vehicles to plummet.

2066.     Plaintiffs risk irreparable injury as a result of Defendants' acts and omissions in violation of the CCPA, and these violations present a continuing risk to Plaintiffs as well as to the general public.

2067.     Plaintiffs will send a notice and demand letter pursuant to W.Va. Code § 46A-1-106(b).

2068.     Pursuant to W.Va. Code § 46A-1-106, Plaintiffs seek monetary relief against TMS and TMC measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $200 per violation of the CCPA for each Plaintiffs and each member of the Class they seek to represent.

2069.     Plaintiffs also seek punitive damages against Defendants because each carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs to cruel and unjust hardship as a result. Defendants intentionally and willfully misrepresented the safety and reliability of Defective Vehicles, deceived Plaintiffs on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Defective Vehicles they repeatedly promised Plaintiffs were safe. Defendants' unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

2070.     Plaintiffs further seek an order enjoining Defendants' unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's fees under W.Va. Code §§ 46A-5-101, *et seq.*, and any other just and proper relief available under the CCPA.

COMPLAINT

## COUNT CCXXVII

### Breach of Express Warranty
### (West Virginia Code Section 46-2-313)

2071.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2072.     Defendants are and were at all relevant times sellers of motor vehicles under

2073.     West Virginia Code Section 46-2-313, and are also "merchants" as the term is used in W.Va. Code § 46A-6-107.

2074.     In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

1.     Toyota's warranty

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

2.     Ford's warranty

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

*WHO PAYS FOR WARRANTY REPAIRS?*

323

COMPLAINT

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

3.      GM's warranty

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

2075.      Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

2076.      Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

2077.      In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

2078.      These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives.

324

COMPLAINT

1    These affirmations and promises were part of the basis of the bargain between the parties.

2        2079.    These additional warranties were also breached because the Class Vehicles were

3    not fully operational, safe, or reliable (and remained so even after the problems were

4    acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees.

5    Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles

6    conforming to these express warranties.

7        2080.    Furthermore, the limited warranty of repair and/or adjustments to defective parts,

8    fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and

9    the other Class members whole and because Defendants have failed and/or have refused to

10   adequately provide the promised remedies within a reasonable time.

11       2081.    Accordingly, recovery by Plaintiffs and the other Class members is not limited to

12   the limited warranty of repair or adjustments to parts defective in materials or workmanship, and

13   Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by

14   law.

15       2082.    Also, as alleged in more detail herein, at the time that Defendants warranted and

16   sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and

17   were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or

18   concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members

19   were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent

20   pretenses.

21       2083.    Moreover, many of the injuries flowing from the Class Vehicles cannot be

22   resolved through the limited remedy of "replacement or adjustments," as many incidental and

23   consequential damages have already been suffered due to Defendants' fraudulent conduct as

24   alleged herein, and due to their failure and/or continued failure to provide such limited remedy

25   within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies

26   would be insufficient to make Plaintiffs and the other Class members whole.

27       2084.    Finally, due to the Defendants' breach of warranties as set forth herein,

28       2085.    Plaintiffs and the Class assert as an additional and/or alternative remedy, as set

325

COMPLAINT

forth in W.Va. Code § 46A-6A-4, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of the purchase price of all vehicles currently owned and for such other incidental and consequential damages as allowed under W.Va. Code §§ 46A-6A-1, *et seq.*

2086.　　　Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

2087.　　　As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

<div align="center">

**COUNT CCXXVIII**

**Breach of Implied Warranty of Merchantability**
**(West Virginia Code Section 46-2-314)**

</div>

2088.　　　Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2089.　　　Defendants are and were at all relevant times sellers of motor vehicles under

2090.　　　West Virginia Code Section § 46-2-314, and are also "merchants" as the term is used in W.Va. Code §§ 46A-6-107 and 46-2-314.

2091.　　　A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

2092.　　　These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

2093.　　　Plaintiffs and the Class have had sufficient direct dealings with either the Defendants or their agents (dealerships) to establish privity of contract between Plaintiffs and Defendants. Notwithstanding this, privity is not required in this case for the Plaintiffs pursuant to W.Va. Code § 46A-6-107. Moreover, privity is not required as to any Plaintiff because Plaintiffs and the Class are intended third-party beneficiaries of contracts between Defendants and their dealers; specifically, they are the intended beneficiaries of Defendants' implied warranties. The

326

COMPLAINT

dealers were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided with the Defective Vehicles; the warranty agreements were designed for and intended to benefit the ultimate users or owners only. Finally, privity is also not required because Plaintiffs' and Class members' Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

2094.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT CCXXIX

### Breach of Contract/Common Law Warranty
### (Based on West Virginia Law)

2095.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2096.     To the extent Defendants' limited remedies are deemed not to be warranties under West Virginia's Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

2097.     Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles, or to replace them.

2098.     As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

COMPLAINT

**Claims Brought on Behalf of the Wisconsin Class**

**COUNT CCXXX**

**Violations of the Wisconsin Deceptive Trade Practices Act**
**(Wisconsin Statute Section 110.18)**

2099.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2100.     Defendants' above-described acts and omissions constitute false, misleading or deceptive acts or practices under the Wisconsin Deceptive Trade Practices Act § 110.18 ("Wisconsin DTPA").

2101.     By failing to disclose and misrepresenting the risk of hacking and lack of fail-safe mechanisms in Defective Vehicles equipped with CAN buses, Defendants engaged in deceptive business practices prohibited by the Wisconsin DTPA, including (1) representing that Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Defective Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Defective Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving Defective Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Defective Vehicles has been supplied in accordance with a previous representation when it has not.

2102.     As alleged above, Defendants made numerous material statements about the safety and reliability of Defective Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Defendants' unlawful advertising and representations as a whole.

2103.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Defective Vehicles.

2104.     In purchasing or leasing their vehicles, the Plaintiffs relied on the misrepresentations and/or omissions of Defendants with respect of the safety and reliability of the

328

COMPLAINT

vehicles. Defendants' representations turned out not to be true because the vehicles can unexpectedly and dangerously be hacked.

2105.    Had the Plaintiffs known this they would not have purchased or leased their Defective Vehicles and/or paid as much for them.

2106.    Plaintiffs and the Class sustained damages as a result of the Defendants' unlawful acts and are, therefore, entitled to damages and other relief provided for under § 110.18(11)(b)(2) of the Wisconsin DTPA. Because Defendants' conduct was committed knowingly and/or intentionally, the Plaintiffs and the Class are entitled to treble damages.

2107.    Plaintiffs and the Class also seek court costs and attorneys' fees under § 110.18(11)(b)(2) of the Wisconsin DTPA.

## COUNT CCXXXI

### Breach of Express Warranty
### (Wisconsin Statutes Section 402.313)

2108.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2109.    Defendants are and were at all relevant times merchants with respect to motor vehicles under Wisc. Stat. § 402.104.

2110.    In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

    1.    Toyota's warranty

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

329

COMPLAINT

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

2.    Ford's warranty

KNOW WHEN YOUR WARRANTY BEGINS

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

QUICK REFERRENCE: WARRANTY COVERAGE

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

WHO PAYS FOR WARRANTY REPAIRS?

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

3.    GM's warranty

Warranty Period

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

Bumper-to-Bumper Coverage

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

No Charge

Warranty repairs, including towing, parts, and labor, will be made at no charge.

Repairs Covered

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

2111.    Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

2112.    Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

330

COMPLAINT

2113.     In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

2114.     These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives. These affirmations and promises were part of the basis of the bargain between the parties.

2115.     These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable (and remained so even after the problems were acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees. Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles conforming to these express warranties.

2116.     Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2117.     Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

2118.     Also, as alleged in more detail herein, at the time that Defendants warranted and sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

331

COMPLAINT

2119.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Defendants' fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

2120.     Finally, due to the Defendants' breach of warranties as set forth herein, Plaintiffs and the Class assert as an additional and/or alternative remedy, as set forth in Wisc. Stat. § 402.608, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of the purchase price of all vehicles currently owned and for such other incidental and consequential damages as allowed under Wisc. Stat. §§ 402.711 and 402.608.

2121.     Defendants were provided notice of these issues by the instant Complaint, and by other means before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

2122.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT CCXXXII

### Breach of Contract/Common Law Warranty
### (Based on Wisconsin Law)

2123.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2124.     To the extent Defendants' limited remedies are deemed not to be warranties under the Uniform Commercial Code as adopted in Wisconsin, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

332

COMPLAINT

2125.      Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles, or to replace them.

2126.      As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT CCXXXIII

### Fraudulent Concealment
### (Based on Wisconsin Law)

2127.      Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2128.      Defendants intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

2129.      Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

2130.      Defendants knew these representations were false when made.

2131.      The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective CAN buses, as alleged herein.

2132.      Defendants had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other Class members relied on Defendants' material representations that the Class Vehicles they were purchasing were safe and free from defects.

2133.      The aforementioned concealment was material because if it had been disclosed

333

1    Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or

2    would not have bought or leased those Vehicles at the prices they paid.

3        2134.    The aforementioned representations were material because they were facts that

4    would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants

5    knew or recklessly disregarded that their representations were false because they knew the CAN

6    buses were susceptible to hacking. Defendants intentionally made the false statements in order to

7    sell Class Vehicles.

8        2135.    Plaintiffs and the other Class members relied on Defendants' reputations – along

9    with Defendants' failure to disclose the faulty and defective nature of the CAN bus and

10   Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other

11   similar false statements – in purchasing or leasing Defendants' Class Vehicles.

12       2136.    As a result of their reliance, Plaintiffs and the other Class members have been

13   injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the

14   bargain and overpayment at the time of purchase or lease and/or the diminished value of their

15   Class Vehicles.

16       2137.    Defendants' conduct was knowing, intentional, with malice, demonstrated a

17   complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class

18   members.

19       2138.    Plaintiffs and the other Class members are therefore entitled to an award of

20   punitive damages.

21                    **Claims Brought on Behalf of the Wyoming Class**

22                              **COUNT CCXXXIV**

23                **Violation of the Wyoming Consumer Protection Act**
                  **(Wyoming Statutes Sections 45-12-105, *et seq.*)**
24

25       2139.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

26   forth herein.

27       2140.    The Wyoming Consumer Protection Act describes that a person engages in a

28   deceptive trade practice under this act when, in the course of his business and in connection with

                                                                                      334

COMPLAINT

a consumer transaction he knowingly does one or more of the following, including: "(iii) Represents that merchandise is of a particular standard, grade, style or model, if it is not"; "(v) Represents that merchandise has been supplied in accordance with a previous representation, if it has not . . . "; "(viii) Represents that a consumer transaction involves a warranty, a disclaimer of warranties, particular warranty terms, or other rights, remedies or obligations if the representation is false"; "(x) Advertises merchandise with intent not to sell it as advertised"; and "(xv) Engages in unfair or deceptive acts or practices." Wyo. Stat. § 45-12-105.

2141.     In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risk of hacking and the lack of adequate fail-safe mechanisms in Defective Vehicles equipped with CAN buses as described above. Accordingly, Defendants engaged in deceptive trade practices, including representing that Defective Vehicles are of a particular standard and grade, which they are not; representing that Defective Vehicles have been supplied with a previous representation when they are not; advertising Defective Vehicles with the intent not to sell them as advertised; representing that their transaction involves a warranty, rights, remedies, or obligations that are false; and overall engaging in unfair and deceptive acts or practices.

2142.     Defendants knowingly made false representations to consumers with the intent to induce consumers into purchasing Defendants vehicles. Plaintiffs reasonably relied on false representations by Defendants and were induced to each purchase a Defendants vehicle, to his/her detriment. As a result of these unlawful trade practices, Plaintiffs have suffered ascertainable loss.

2143.     Plaintiffs and the Class suffered ascertainable loss caused by Defendants' false representations and failure to disclose material information. Plaintiffs and the Class overpaid for their vehicles and did not receive the benefit of their bargain. The value of their vehicles has diminished now that the safety issues have come to light, and Plaintiffs and the Class own vehicles that are not safe.

2144.     Defendants are "persons" as required under the statute.

2145.     Defendants' actions as set forth above occurred in the course of business and in connection with a consumer transaction.

COMPLAINT

2146.     As required under the Wyoming Consumer Protection Act, a notice letter will be sent on behalf of the Class.

<div align="center">

**COUNT CCXXXV**

**Breach of Express Warranty**
**(Wyoming Statutes Section 34.1-2-313)**

</div>

2147.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2148.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

2149.     In their Limited Warranties and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty booklets:

 1. <u>Toyota's warranty</u>

*When Warranty Begins*

The warranty period begins on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator.

*Repairs Made at No Charge*

Repairs and adjustments covered by these warranties are made at no charge for parts and labor.

*Basic Warranty*

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota . . . . Coverage is for 36 months or 36,000 miles, whichever occurs first . . . .

 2. <u>Ford's warranty</u>

*KNOW WHEN YOUR WARRANTY BEGINS*

Your Warranty Start Date is the day you take delivery of your new vehicle or the day it is first put into service . . . .

*QUICK REFERRENCE: WARRANTY COVERAGE*

. . .

Your Bumper to Bumper Coverage lasts for three years - unless you drive more than 36,000 miles before three years elapse.

COMPLAINT

*WHO PAYS FOR WARRANTY REPAIRS?*

You will not be charged for repairs covered by any applicable warranty during the stated coverage periods . . . .

3.    GM's warranty

*Warranty Period*

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

*Bumper-to-Bumper Coverage*

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first . . . .

*No Charge*

Warranty repairs, including towing, parts, and labor, will be made at no charge.

*Repairs Covered*

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

2150.    Defendants' Limited Warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with a CAN bus from Defendants.

2151.    Defendants breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

2152.    In addition to these Limited Warranties, Defendants otherwise expressly warranted several attributes, characteristics, and qualities of the CAN bus.

2153.    These warranties are only a sampling of the numerous warranties that Defendants made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the CAN bus. These warranties were made, *inter alia*, in advertisements, on Defendants' websites, and in uniform statements provided by Defendants to be made by salespeople, or made publicly by Defendants' executives or by other authorized representatives.

337

COMPLAINT

1  These affirmations and promises were part of the basis of the bargain between the parties.

2  2154.    These additional warranties were also breached because the Class Vehicles were
3  not fully operational, safe, or reliable (and remained so even after the problems were
4  acknowledged), nor did they comply with the warranties expressly made to purchasers or lessees.
5  Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles
6  conforming to these express warranties.

7  2155.    Furthermore, the limited warranty of repair and/or adjustments to defective parts,
8  fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and
9  the other Class members whole and because Defendants have failed and/or have refused to
10  adequately provide the promised remedies within a reasonable time.

11  2156.    Accordingly, recovery by Plaintiffs and the other Class members is not limited to
12  the limited warranty of repair or adjustments to parts defective in materials or workmanship, and
13  Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by
14  law.

15  2157.    Also, as alleged in more detail herein, at the time that Defendants warranted and
16  sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranties and
17  were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or
18  concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members
19  were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent
20  pretenses.

21  2158.    Moreover, many of the injuries flowing from the Class Vehicles cannot be
22  resolved through the limited remedy of "replacement or adjustments," as many incidental and
23  consequential damages have already been suffered due to Defendants' fraudulent conduct as
24  alleged herein, and due to their failure and/or continued failure to provide such limited remedy
25  within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies
26  would be insufficient to make Plaintiffs and the other Class members whole.

27  2159.    Defendants were provided notice of these issues by the instant Complaint, and by
28  other means before or within a reasonable amount of time after the allegations of Class Vehicle

338

COMPLAINT

defects became public.

2160.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT CCXXXVI

### Breach of the Implied Warranty of Merchantability
### (Wyoming Statutes Section 34.1-2-314)

2161.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2162.     Defendants are and were at all relevant times merchants with respect to motor vehicles.

2163.     A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

2164.     These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by other means.

2165.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT CCXXXVII

### Breach of Contract/Common Law Warranty
### (Based on Wyoming Law)

2166.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2167.     To the extent Defendants' limited remedies are deemed not to be warranties under Wyoming's Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants, and/or warranted

339

COMPLAINT

the quality or nature of those services to Plaintiffs and the other Class members.

2168.     Defendants breached this warranty or contract obligation by failing to repair the Class Vehicles, or to replace them.

2169.     As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT CCXXXVIII

### Fraudulent Concealment
### (Based on Wyoming Law)

2170.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2171.     Defendants intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

2172.     Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

2173.     Defendants knew these representations were false when made.

2174.     The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective CAN buses, as alleged herein.

2175.     Defendants had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be rendered inoperative due to faulty and defective CAN buses, because Plaintiffs and the other Class members relied on Defendants' material representations that the Class Vehicles they were purchasing were safe and free from defects.

COMPLAINT

1  2176.    The aforementioned concealment was material because if it had been disclosed

2  Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or

3  would not have bought or leased those Vehicles at the prices they paid.

4  2177.    The aforementioned representations were material because they were facts that

5  would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendants

6  knew or recklessly disregarded that their representations were false because they knew the CAN

7  buses were susceptible to hacking. Defendants intentionally made the false statements in order to

8  sell Class Vehicles.

9  2178.    Plaintiffs and the other Class members relied on Defendants' reputations – along

10  with Defendants' failure to disclose the faulty and defective nature of the CAN bus and

11  Defendants' affirmative assurances that their Class Vehicles were safe and reliable, and other

12  similar false statements – in purchasing or leasing Defendants' Class Vehicles.

13  2179.    As a result of their reliance, Plaintiffs and the other Class members have been

14  injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the

15  bargain and overpayment at the time of purchase or lease and/or the diminished value of their

16  Class Vehicles.

17  2180.    Defendants' conduct was knowing, intentional, with malice, demonstrated a

18  complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class

19  members.

20  2181.    Plaintiffs and the other Class members are therefore entitled to an award of

21  punitive damages.

22  ## **REQUEST FOR RELIEF**

23  WHEREFORE, Plaintiffs, individually and on behalf of members of the Nationwide and

24  California Classes, respectfully request that the Court enter judgment in their favor and against

25  Defendants, as follows:

26  A.    Certification of the proposed Nationwide Class and California Class, including

27  appointment of Plaintiffs' counsel as Class Counsel;

28  B.    An order temporarily and permanently enjoining Defendants from continuing the

341

COMPLAINT

1   unlawful, deceptive, fraudulent, and unfair business practices alleged in this

2        C.     Complaint;

3        D.     Injunctive relief in the form of a recall or free replacement program;

4        E.     Costs, restitution, damages, including punitive damages, and disgorgement in an

5   amount to be determined at trial;

6        F.     An order requiring Defendants to pay both pre- and post-judgment interest on any

7   amounts awarded;

8        G.     An award of costs and attorneys' fees; and

9        H.     Such other or further relief as may be appropriate.

10   <u>**DEMAND FOR JURY TRIAL**</u>

11        Plaintiffs hereby demand a jury trial for all claims so triable.

12   DATED: March 10, 2015          STANLEY LAW GROUP
                             MATTHEW J. ZEVIN

15                                */s/ Matthew J. Zevin*
                             MATTHEW J. ZEVIN

17                                225 Broadway, Suite 1350
                             San Diego, CA  92101
                             Telephone:    (619) 235-5306
                             Facsimile:    (815) 377-8419
                             e-mail:       mzevin@aol.com

20                                STANLEY LAW GROUP
                             MARC R. STANLEY, Texas SBN: 19046500
                             (*pro hac vice* to be filed)
                             MARTIN WOODWARD, Texas SBN: 00797693
                             (*pro hac vice* to be filed)
                             6116 North Central Expressway, Suite 1500
                             Dallas, TX  75206
                             Telephone:    (214) 443-4300
                             Facsimile:    (214) 443-0358
                             e-mail: marcstanley@mac.com
                                     mwoodward@stanleylawgroup.com

26                                Attorneys for Plaintiffs, Helene Cahen, Kerry J.
                             Tompulis, and Merrill Nisam

COMPLAINT