STANLEY LAW GROUP
MATTHEW J. ZEVIN, SBN: 170736
10021 Willow Creek Road, Suite 200
San Diego, CA  92131
Telephone:      (619) 235-5306
Facsimile:      (815) 377-8419
e-mail:  mzevin@aol.com

STANLEY LAW GROUP
MARC R. STANLEY, Texas SBN: 19046500
Admitted *Pro Hac Vice*
MARTIN WOODWARD, Texas SBN: 00797693
Admitted *Pro Hac Vice*
6116 North Central Expressway, Suite 1500
Dallas, TX  75206
Telephone:      (214) 443-4300
Facsimile:      (214) 443-0358
e-mail:  marcstanley@mac.com
 mwoodward@stanleylawgroup.com

Attorneys for Plaintiffs
[Additional Counsel Listed on Signature Page]

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| HELENE CAHEN, KERRY J. TOMPULIS, and MERRILL NISAM, RICHARD GIBBS, and LUCY L. LANGDON, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC., FORD MOTOR COMPANY, GENERAL MOTORS LLC, and DOES 1 through 50,<br><br>Defendants. | CASE NO. 15-cv-01104-WHO<br><br>**FIRST AMENDED COMPLAINT FOR BREACH OF WARRANTY, BREACH OF CONTRACT, FRAUD, FRAUDULENT CONCEALMENT, INVASION OF PRIVACY AND VIOLATION OF CONSUMER PROTECTION LAWS**<br><br>**CLASS ACTION**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

FIRST AMENDED COMPLAINT                               CASE NO. 15-cv-01104-WHO

Plaintiffs Helene Cahen, Kerry J. Tompulis, Merrill Nisam, Richard Gibbs, and Lucy L. Langdon ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Class"), allege as follows:

**INTRODUCTION**

1. Some automobile manufacturers have chosen to manufacture and sell cars that rely heavily on computer technology. In choosing to add this technology to their cars, Defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. (together, "Toyota"), Ford Motor Company ("Ford"), and General Motors LLC ("GM") assumed a very significant responsibility: the obligation to keep drivers and passengers safe from harm, even though the computer technology in the cars is exposed to the dangers of being "hacked"—infiltrated and taken over by third parties.  Such "hacking" can result in loss of driver authority over the throttle, braking and steering of the vehicle, as well as loss of personal and private data.

2. But Toyota, Ford, and GM did not think through the consequences of their actions. These three automakers essentially turned their cars into smartphones on wheels—but used ancient, outmoded technology with known vulnerabilities that make the cars highly susceptible to hacking and, therefore, unreasonably dangerous. Because Defendants failed to ensure the basic electronic security of their vehicles, control of the basic functions of the vehicle can be taken by others not behind the wheel or necessarily even in the car, which can endanger the safety of the driver and others.

3. This is because Defendants' vehicles contain dozens of electronic control units (ECUs) that are connected through an insecure controller area network (typically a "CAN" or "CAN bus"). Vehicle functionality and safety depend on the proper functioning of these small computers, which depends in part on the reliability of their communications.

4. The ECUs communicate by sending each other "CAN packets," which are digital messages containing data and/or requests. But if an outside source, such as a hacker, were able to send CAN packets to ECUs on a vehicle's CAN bus, the hacker could confuse one or more ECUs and thereby, either temporarily or permanently, take control of basic functions of the vehicle away from the driver.

1

FIRST AMENDED COMPLAINT                                     CASE NO. 15-cv-01104-WHO

5.      Disturbingly, as Defendants have known, their controller area network bus-equipped vehicles, when connected to integrated cell phone systems or a Class 1 or Class 2 master Bluetooth device[1] are susceptible to hacking, and their ECUs cannot detect or stop hacked CAN packets. For this reason, Defendants' vehicles are not secure, and are therefore not safe.

6.      As a result of Defendants' unfair, deceptive, and/or fraudulent business practices, and their failure to disclose the highly material fact that their vehicles are susceptible to hacking and neither secure nor safe, owners and/or lessees of Defendants' vehicles are currently at risk of theft, damage, serious physical injury, or death as a result of hacking, and they will continue to face this risk until they are notified of the dangers associated with their vehicles and are given funds and guidance by Defendants as to how to correct the security defects, or until Defendants correct them.

7.      Moreover, unbeknownst to the owners and/or lessees of Defendants' vehicles, Defendants are remotely collecting data from the vehicles. Even though drivers have a reasonable expectation of privacy as to such data, Defendants share it with or sell it to third parties, often without adequate security (making it an attractive target for hackers). This violates the privacy rights of the owners and lessees.

8.      Toyota manufactures and sells vehicles under the Toyota, Lexus, and Scion names (the "Toyota Vehicles"); Ford manufactures and sells vehicles under the Ford, Lincoln, and (until 2011) Mercury names (the "Ford Vehicles"); GM manufactures and sells vehicles under the Buick, Cadillac, Chevrolet, and GMC names (the "GM Vehicles").[2] The computerized components in all Toyota Vehicles, Ford Vehicles, and GM Vehicles are essentially identical in that they are all susceptible to hacking when connected with integrated cell phone systems or a Class 1 or Class 2 master Bluetooth and thus suffer from the same defect. For purposes of this

/././

---

[1] Bluetooth is a wireless technology standard for exchanging data over short distances (using short-wavelength UHF radio waves in the ISM band from 2.4 to 2.485 GHz[4]) from fixed and mobile devices, and building personal area networks (PANs).  Class 1 has a range of 66-98 feet and Class 2 has a range of 16-33 feet. https://en.wikipedia.org/wiki/Bluetooth (last accessed June 30, 2015).
[2] The term "GM Vehicles" as used in this Complaint only includes vehicles manufactured and sold by GM on or after July 10, 2009.

2

FIRST AMENDED COMPLAINT                         CASE NO. 15-cv-01104-WHO

Complaint, all Toyota Vehicles, Ford Vehicles, and GM Vehicles equipped with computerized components are referred to collectively as the "Class Vehicles" or "Defective Vehicles."

9. Plaintiffs bring this action individually and on behalf of all other current and former owners or lessees of Toyota Vehicles, Ford Vehicles, and GM Vehicles equipped with computerized components that are connected via a controller area network to an integrated cell phone or Class 1 or Class 2 master Bluetooth device. Plaintiffs seek damages, injunctive relief, and equitable relief for the conduct of Defendants, as alleged in this complaint.

## JURISDICTION

10. This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceed $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## VENUE

11. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Plaintiffs Cahen and Nisam purchased Class Vehicles in this District, and Defendants have marketed, advertised, sold, and leased the Class Vehicles within this District.

## PARTIES

12. Plaintiff Helene Cahen is an individual residing in Berkeley, California. In September 2008, Plaintiff Cahen purchased a new 2008 Lexus RX 400 H from an authorized Lexus dealer in San Rafael, California. Plaintiff Cahen still owns this vehicle.

13. Plaintiff Kerry J. Tompulis is an individual residing in Beaverton, Oregon. In August 2014, Plaintiff Tompulis leased a new 2014 Ford Escape from Landmark Ford, an authorized Ford dealer in Tigard, Oregon. Plaintiff Tompulis still leases this vehicle.

14. Plaintiff Merrill Nisam is an individual residing in Mill Valley, California. In March 2013, Plaintiff Nisam purchased a new 2013 Chevrolet Volt from Novato Chevrolet, an authorized Chevrolet dealer in Novato, California. Plaintiff Nisam still owns this vehicle.

/././

3

FIRST AMENDED COMPLAINT                              CASE NO. 15-cv-01104-WHO

15.     Plaintiffs Richard Gibbs and Lucy L. Langdon are individuals residing in Sequim, Washington. In 2014, Plaintiffs Gibbs and Langdon purchased a pre-owned 2013 Ford Fusion from Sound Ford, an authorized Ford dealer in Renton, Washington. Plaintiffs Gibbs and Langdon still own this vehicle.[3]

16.     Defendant Toyota Motor Corporation ("TMC") is a Japanese corporation. TMC is the parent corporation of Toyota Motor Sales, U.S.A., Inc. TMC, through its various entities, designs, manufactures, markets, distributes and sells Toyota, Lexus and Scion automobiles in California and multiple other locations in the United States and worldwide.

17.     Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") is incorporated and headquartered in California. TMS is Toyota's U.S. sales and marketing arm, which oversees sales and other operations in 49 states, and specifically in the states of California, Washington and Oregon. TMS distributes Toyota, Lexus and Scion vehicles and sells these vehicles through its network of dealers.

18.     Money received from the purchase of a Toyota Vehicle from a dealer flows from the dealer to TMS. Money received by the dealer from a purchaser can be traced to TMS and TMC.

19.     TMS and TMC sell Toyota Vehicles through a network of dealers who are the agents of TMS and TMC.

20.     TMS and TMC are collectively referred to in this complaint as "Toyota" or the "Toyota Defendants" unless identified as TMS or TMC.

21.     At all times relevant to this action, Toyota manufactured, sold, leased, and warranted the Toyota Vehicles at issue under the Toyota, Lexus, and Scion names throughout the United States. Toyota and/or its agents designed, manufactured, and installed the defective CAN buses in the Toyota Vehicles. Toyota also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Toyota Vehicles.

---

[3] A television news story about this vehicle showing it being compromised and controlled remotely is available for viewing at http://www.king5.com/story/news/2015/05/19/cars-auto-computer-security-hacking/27610967/ (last accessed June 30, 2015).

4

22. Defendant Ford Motor Company is a corporation doing business in all fifty states (including the District of Columbia), and specifically in the states of California, Washington and Oregon and is organized under the laws of the State of Delaware, with its principal place of business in Dearborn, Michigan.

23. At all times relevant to this action, Ford manufactured, sold, leased, and warranted the Ford Vehicles at issue under the Ford, Lincoln, and (until 2011) Mercury names throughout the United States. Ford and/or its agents designed, manufactured, and installed the defective CAN buses in the Ford Vehicles. Ford also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Ford Vehicles.

24. Defendant General Motors LLC is a limited liability company formed under the laws of the State of Delaware with its principal place of business in Detroit, Michigan. GM was incorporated in 2009 and on July 10, 2009 acquired substantially all assets and assumed certain liabilities of General Motors Corporation through a Section 363 sale under Chapter 11 of the U.S. Bankruptcy Code.

25. At all times relevant to this action, GM manufactured, sold, leased, and warranted the GM Vehicles[4] at issue under the Buick, Cadillac, Chevrolet, and GMC names throughout the United States, and specifically in the states of California, Washington and Oregon. GM and/or its agents designed, manufactured, and installed the defective CAN buses in the GM Vehicles. GM also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the GM Vehicles.

## TOLLING OF THE STATUTE OF LIMITATIONS

26. Any applicable statute(s) of limitations has been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Plaintiffs and the other Class members could not have reasonably discovered the true, latent defective nature of the CAN buses until shortly before this class action litigation was commenced.

/././

---

[4] As set forth *supra* n.2, the term "GM Vehicles" only includes vehicles manufactured and sold by GM on or after July 10, 2009, and does not include any vehicle manufactured and sold before that date by General Motors Corporation.

5

FIRST AMENDED COMPLAINT                    CASE NO. 15-cv-01104-WHO

27.    Defendants were and remain under a continuing duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the Class Vehicles, that this defect is a result of Defendants' design choices, and that it will require costly repairs, and diminishes the resale value of the Class Vehicles. As a result of the active concealment by Defendants, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

**How Defendants' Computerized Vehicles Work**

28.    Many modern automobiles, including the Class Vehicles, contain a number of different networked electronic components that together monitor and control the vehicle. Class Vehicles each contain dozens of electronic control units ("ECUs"), many of which are networked together on a controller area network (typically a "CAN" or "CAN bus").[5] Crucially, the overall safety of the vehicle relies on near real time communication between these various ECUs.[6]

29.    As stated by two researchers in a 2013 study funded by the U.S. Defense Advanced Research Projects Agency ("DARPA"): "Drivers and passengers are strictly at the mercy of the code running in their automobiles and, unlike when their web browser crashes or is compromised, the threat to their physical well-being is real."[7]

30.    ECUs networked together on one or more CAN buses communicate with one another by sending electronic messages comprised of small amounts of data called CAN packets.[8] These CAN packets are broadcast to all components on a CAN bus, and each ECU decides /././

---

[5] Other such networks are LINBus, MOST, Flexray, and Ethernet. *See* Craig Smith, *Car Hackers 2014: Owner's Manual* at 21.
[6] *Tracking & Hacking: Security & Privacy Gaps Out American Drivers at Risk*, A report written by the staff of Senator Edward J. Markey (D-Massachusetts), http://www.markey.senate.gov/imo/media/doc/2015-02-06_MarkeyReport-Tracking_Hacking_CarSecurity%202.pdf (last accessed June 30, 2015) (hereinafter "Markey Report") at 3 (a true and correct copy of the Markey Report is attached hereto as Exhibit 1); *see also* Dr. Charlie Miller & Chris Valasek, Technical White Paper: *Adventures in Automotive Networks and Control Units*, http://www.ioactive.com/pdfs/IOActive_Adventures_in_Automotive_Networks_and_Control_Units.pdf (last accessed June 30, 2015) (hereinafter "Miller & Valasek") at 5, 7-8.
[7] Miller & Valasek at 4; *see also* Markey Report at 3.
[8] Miller & Valasek at 4.

6

FIRST AMENDED COMPLAINT                                CASE NO. 15-cv-01104-WHO

whether it is the intended recipient of any given CAN packet. Notably, there is no ECU source or authentication, nor any encryption, built into CAN packets.

31. As described by one commentator: "Consider the level of complexity of modern day cars—and the chance for a screw up. The space ship that put humans on the moon, Apollo 11, had 145,000 lines of computer code. The Android operating system has 12 million. A modern car? Easily 100 million lines of code."[9]

**Defendants' Computerized Vehicles Are Susceptible to Dangerous Hacking**

32. The CAN standard was first developed in the mid-1980s and is a low-level protocol which does not intrinsically support any security features.[10] Companies that employ CAN busses must deploy their own security mechanisms with higher protocol layers; e.g., to authenticate senders and prevent man-in-the-middle and replay attacks.[11]

33. Lacking security, an automobile reliant upon CAN packets for safety is exposed to hacking that injects one or more false messages onto a CAN bus or manipulates packets in transit on the network.[12] This capability can be used maliciously by anyone with physical access to a CAN bus equipped vehicle.

34. Moreover, wireless interfaces dramatically increase the attack surface in a vehicle by allowing anyone capable of connecting to such a wireless interface to thereby gain access to the CAN bus to invade a user's privacy, by observing CAN packets, and/or inject or modify CAN packets to take remote control of the operation of a vehicle. For example, a vehicle equipped with a Bluetooth wireless interface is susceptible to an attacker remotely and wirelessly accessing the vehicle's CAN bus through Bluetooth connections.[13] An even greater risk exists with an integrated cell phone connected to the CAN bus. Vehicles equipped with OnStar (GM), Entune /././

---

[9] Jose Paglieri, *Your Car Is A Giant Computer—And It Can Be Hacked*, http://money.cnn.com/2014/06/01/technology/security/car-hack/ (last accessed June 30, 2015).
[10] http://en.wikipedia.org/w/index.php?title=CAN_bus (last accessed June 30, 2015).
[11] *Id.*
[12] *See* Xavier Aaronson, *We Drove a Car While It Was Being Hacked*, http://motherboard.vice.com/read/we-drove-a-car-while-it-was-being-hacked (last accessed June 30, 2015).
[13] Miller & Valasek at 4; *see also* Markey Report at 3.

7

FIRST AMENDED COMPLAINT                                    CASE NO. 15-cv-01104-WHO

(Toyota) and other telematics services[14] have such integrated cellular phones. Others, such as those equipped with Sync (Ford)[15] allow the owner or a vehicle occupant to use their own cellular phone to have access to the CAN bus via a Bluetooth connection. Hacking can be accomplished by connecting to such integrated or Bluetooth connected phones, as demonstrated by DARPA in an episode broadcast on CBS 60 Minutes.[16]

35.    One journalist described the experience of driving a vehicle whose CAN bus was being hacked remotely (but under controlled circumstances) as follows:

> As I drove to the top of the parking lot ramp, the car's engine suddenly shut off, and I started to roll backward. I expected this to happen, but it still left me wide-eyed.
>
> I felt as though someone had just performed a magic trick on me. What ought to have triggered panic actually elicited a dumbfounded surprise in me. However, as the car slowly began to roll back down the ramp, surprise turned to alarm as the task of steering backwards without power brakes finally sank in.
>
> This wasn't some glitch triggered by a defective ignition switch, but rather an orchestrated attack performed wirelessly, from the other side of the parking lot, by a security researcher.[17]

**Defendants Have Known for Years that Their Computerized Vehicles Can Be Hacked**

36.    These security vulnerabilities have been known in the automotive industry—and, specifically, by Defendants—for years. Researchers at the University of California San Diego and University of Washington had discovered in 2011 that modern automobiles can be hacked in a number of different ways—and, crucially, that wireless interfaces can allow a hacker to take control of a vehicle from a long distance.[18]

/././

---

[14] See PRN Newswire Sprint and Ford Team to Deliver In-Vehicle, Integrated, Voice-Activated Wireless Products And Services. http://www.prnewswire.com/news-releases/sprint-and-ford-team-to-deliver-in-vehicle-integrated-voice-activated-wireless-products-and-services-73097807.html (last accessed June 30, 2015).

[15] http://www.ford.com/technology/sync/?ef_id=VRMkYQAAAI14FTX2:20150630122926:s&searchid=67176874|2242383154 (last accessed June 30, 2015).

[16] https://news.cs.washington.edu/2015/02/09/watch-uw-cse-and-darpa-hack-a-car-driven-by-60-minutes-leslie-stahl/ (last accessed June 30, 2015).

[17] Xavier Aaronson, *We Drove a Car While It Was Being Hacked*, http://motherboard.vice.com/read/we-drove-a-car-while-it-was-being-hacked (last accessed June 30, 2015).

[18] Stephen Checkoway et al., *Comprehensive Experimental Analyses of Automotive Attack Surfaces*, http://www.autosec.org/pubs/cars-usenixsec2011.pdf (last accessed June 30, 2015).

8

FIRST AMENDED COMPLAINT                    CASE NO. 15-cv-01104-WHO

37.     Building on this research, in a 2013 DARPA-funded study, two researchers demonstrated their ability to connect a laptop to the CAN bus of a 2010 Toyota Prius and a 2010 Ford Escape using a cable, send commands to different ECUs through the CAN, and thereby control the engine, brakes, steering and other critical vehicle components.[19] In their initial tests with a laptop, the researchers were able to cause the cars to suddenly accelerate and turn, kill the brakes, activate the horn, control the headlights, and modify the speedometer and gas gauge readings.[20]

38.     Before the researchers went public with their 2013 findings, they shared the results with Toyota and Ford in the hopes that the companies would address the identified vulnerabilities.[21] The companies, however, did not.

39.     In August of 2014, members of a security research group who had independently studied automobile hacking wrote an open letter to the CEOs of major automobile manufacturers, urging them to work collaboratively with the cyber security industry in making vehicles safe from the threat of hacking.[22] The group proposed a five-point protocol for automobile manufacturers to follow—including such measures as ensuring that vehicles have the capability for security updates, logging and evidence capture (similar to an airplane's "black box"), and segmentation and isolation to ensure that non-critical systems (e.g., Bluetooth) cannot affect critical systems (e.g., brakes or steering) if compromised.[23] Despite the group's elaborate description of known vulnerabilities to the automotive industry CEOs, Defendants have not adopted any of the proposed security protocols that would address the vulnerabilities and make vehicles safer.

/././

/././

---

[19] *See generally* Miller & Valasek.
[20] *See generally* Miller & Valasek. A video of the researchers hacking and taking control of the operation of the cars can be viewed at https://www.youtube.com/watch?v=oqe6S6m73Zw (last accessed June 30, 2015).
[21] Markey Report at 3.
[22] August 8, 2014 letter from "I Am The Cavalry," https://www.iamthecavalry.org/wp-content/uploads/2014/08/IATC-Open-letter-to-the-Automotive-Industry.pdf (last accessed June 30, 2015).
[23] I Am The Cavalry, Five Star Automotive Cyber Safety Framework, https://www.iamthecavalry.org/domains/automotive/5star/ (last accessed June 30, 2015).

9

FIRST AMENDED COMPLAINT                                    CASE NO. 15-cv-01104-WHO

40.     And, as recently as May of 2015, the general counsel for an automobile industry association (of which Defendant Toyota is a member) acknowledged the imminent eventuality of a remote hacking attack on cars:

> Picture this: you're driving along a stretch of road, and an unseen force takes over. The car picks up speed, then swerves—without your touching the accelerator or turning the wheel. You're no more than a helpless passenger. What just happened? Your car has been hacked.
>
> It's a frightening scenario. But how real is this threat? Real enough that car manufacturers and security experts from the federal government are taking it seriously.
>
> ***"Any cyber expert will tell you that you can't prevent it; it's just a question of when,"*** says Mark Dowd, assistant general counsel for Global Automakers, a coalition of car manufacturers working to combat the looming threat of cyber attacks (emphasis added).[24]

**Despite Selling Unsafe Computerized Vehicles, Defendants Tout Their Safety**

**Toyota**

41.     Toyota has consistently marketed its vehicles as "safe" and portrayed safety as one of its highest priorities.

42.     As Toyota states in one of its promotional materials:

> Toyota believes that the ultimate goal of a society that values mobility is to eliminate traffic fatalities and injuries. Toyota's Integrated Safety Management Concept sets the direction for safety technology development and vehicle development, and covers all aspects of driving by integrating individual vehicle safety technologies and systems rather than viewing them as independently functioning units.[25]

43.     In another, Toyota states:

> Pursuit for Vehicle Safety
>
> Toyota has been implementing "safety" measures to help create safer vehicles.[26]

/././

---

[24] Jim Travers, *Keeping Your Car Safe from Hacking*, http://www.consumerreports.org/cro/news/2015/05/keeping-your-car-safe-from-hacking/index.htm (last accessed June 30, 2015).
[25] http://www.toyota-global.com/innovation/safety_technology/media-tour/ (last accessed June 30, 2015).
[26] http://www.toyota-global.com/innovation/safety_technology/safety_measurements/ (last accessed June 30, 2015).

10

FIRST AMENDED COMPLAINT                    CASE NO. 15-cv-01104-WHO

44.    And in a third, Toyota states:

Toyota recognizes the importance of the driver being in ultimate control of a vehicle and is therefore aiming to introduce AHDA and other advanced driving support systems where the driver maintains control and the fun-to-drive aspect of controlling a vehicle is not compromised.[27]

**Ford**

45.    Ford similarly markets and promotes its vehicles as "safe." For example, in describing its 2015 Fusion, Ford states:

Safety

When you look over the impressive list of collision avoidance and occupant protection features, you'll know how well-equipped Fusion is when it comes to you and your passengers' safety.[28]

46.    In describing its 2015 Focus, Ford states:

Safety

You don't have to pick and choose when it comes to safety. Focus is well equipped with an impressive list of safety features.[29]

**GM**

47.    GM also heavily promotes the safety of its vehicles. As GM states in one of its promotional materials:

GM's Commitment to Safety

Quality and safety are at the top of the agenda at GM, as we work on technology improvements in crash avoidance and crashworthiness to augment the post-event benefits of OnStar, like advanced automatic crash notification.[30]

48.    And in a recent press release, GM stated:

GM Paves Way for Global Active Safety Development

Thu, Oct 23 2014

MILFORD, Mich. – General Motors today revealed that the development of one of the largest active automotive safety testing

---

[27] http://www.toyota.com/esq/safety/active-safety/advanced-driving-support-system.html (last accessed June 30, 2015).
[28] http://www.ford.com/cars/fusion/trim/s/safety/ (last accessed March 5, 2015).
[29] http://www.ford.com/cars/focus/trim/st/safety/ (last accessed March 5, 2015).
[30] http://www.gm.com/vision/quality_safety/gms_commitment_tosafety.html (last accessed June 30, 2015).

11

FIRST AMENDED COMPLAINT                    CASE NO. 15-cv-01104-WHO

> areas in North America is nearly complete at its Milford Proving Ground campus.
>
> …
>
> The Active Safety Testing Area, or ASTA, will complement the Milford Proving Ground's vast test capabilities and increase GM's ability to bring the best new safety technologies to the customer.[31]

**Defendants Collect and Transmit Vehicle Data in Violation of Privacy Rights**

49.     Without drivers ever knowing, Defendants also collect data from their vehicles and share the data with third parties.[32] While Defendants agreed to adopt voluntary privacy guidelines governing their collection and sharing of this data, the American Automobile Association and Senator Markey of Massachusetts stated that these measures are insufficient, as they do not provide drivers the right to control their own information and fail to allow drivers to withhold sensitive information from collection in the first instance.[33]

50.     As detailed in Sen. Markey's report, Defendants collect large amounts of data on driving history and vehicle performance, and they transmit the data to third-party data centers without effectively securing the data.[34] Defendants only make drivers aware of such data collection in owners' manuals, online "privacy statements," and terms & conditions of specific feature activations—but drivers can't comprehensively opt out of all collection of data by Defendants, and in the limited situations where opting out is permitted, the driver must turn off a feature or cancel a service subscription.[35]

/././

/././

/././

---

[31] http://www.gm.com/article.content_pages_news_us_en_2014_oct_1023-active-safety.~content~gmcom~home~vision~quality_safety.html (last accessed March 5, 2015).
[32] *See* Lucas Mearian, Once Your Car's Connected to The Internet, Who Guards Your Privacy? http://www.computerworld.com/article/2684298/once-your-cars-connected-to-the-internet-who-guards-your-privacy.html (last accessed June 30, 2015) (detailing practices of Defendants Ford and GM).
[33] *See* Kate Kaye, Ford, GM and Others to Adopt Data Privacy Rules, But AAA Says The Industry's Voluntary Guidelines Fall Short, http://adage.com/article/privacy-and-regulation/ford-gm-adopt-auto-data-privacy-rules/295859 (last accessed June 30, 2015) (detailing practices of Defendants Ford, GM, and Toyota).
[34] Markey Report at 8-11.
[35] *See* Markey Report at 12.

12

FIRST AMENDED COMPLAINT                                    CASE NO. 15-cv-01104-WHO

**CLASS ALLEGATIONS**

51.    Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following classes:

> All persons or entities who purchased or leased a GM Vehicle or Toyota Vehicle equipped with networked electronic or computerized components connected via a controller area network to an integrated cell phone or Class 1 or Class 2 master Bluetooth device in the State of California (the "California Class").

> All persons or entities who purchased or leased a Ford Vehicle equipped with networked electronic or computerized components connected via a controller area network to an integrated cell phone or Class 1 or Class 2 master Bluetooth device in the State of Oregon (the "Oregon Class").

> All persons or entities who purchased or leased a Ford Vehicle equipped with networked electronic or computerized components connected via a controller area network to an integrated cell phone or Class 1 or Class 2 master Bluetooth device in the State of Washington (the "Washington Class").

> (Collectively, the "Class," unless otherwise noted).

52.    Excluded from the Class are Defendants and their subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family.

53.    Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

54.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

55.    This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

56.    Numerosity. Federal Rule of Civil Procedure 23(a)(1): The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are not less than tens of thousands of members of the Class, the precise number of Class members is unknown to

13

FIRST AMENDED COMPLAINT                              CASE NO. 15-cv-01104-WHO

Plaintiffs, but may be ascertained from Defendants' books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

57.    Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

(a)    Whether Defendants engaged in the conduct alleged herein;

(b)    Whether Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

(c)    Whether the Class Vehicles contain defects;

(d)    Whether such defects can cause the Class Vehicles to malfunction;

(e)    Whether Defendants knew about the defects and, if so, how long Defendants have known of the defects;

(f)    Whether Defendants designed, manufactured, marketed, and distributed defective Class Vehicles;

(g)    Whether Defendants' conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

(h)    Whether Defendants knew or reasonably should have known of the defects in the Class Vehicles before it sold or leased them to Class members;

(i)    Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

(j)    Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

58.    Typicality: Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendants' wrongful conduct as described above.

/./././

14

FIRST AMENDED COMPLAINT                    CASE NO. 15-cv-01104-WHO

59. Adequacy: Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes each respectively seeks to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

60. Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2): Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

61. Superiority: Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

/././

/././

/././

/././

/././

/././

15

FIRST AMENDED COMPLAINT                     CASE NO. 15-cv-01104-WHO

## VIOLATIONS ALLEGED

## CLAIMS BROUGHT ON BEHALF OF THE CALIFORNIA CLASS

## COUNT I

### Violation Of California Unfair Competition Law

### (Cal. Bus. & Prof. Code §§ 17200, et seq.)

62.     Plaintiffs Cahen and Nisam bring this Count on behalf of the California Class against Defendants GM and Toyota.

63.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

64.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

65.     Defendants' conduct, as described herein, was and is in violation of the UCL. Defendants' conduct violates the UCL in at least the following ways:

(a)     By knowingly and intentionally concealing from Plaintiffs and the other California Class members that the Class Vehicles suffer from a design defect while obtaining money from Plaintiffs;

(b)     By refusing or otherwise failing to repair and/or replace defective electronic and computerized components in Class Vehicles;

(c)     By violating other California laws, including Cal. Civ. Code §§ 1709, 1710, and 1750, et seq., Cal. Comm. Code § 2313, and (as set forth *infra* in Count VIII) Article I, Section 1 of the California Constitution.

66.     Had Plaintiffs Cahen and Nisam known about the design defects that Defendants failed to disclose, they would not have purchased their Class Vehicles or would not have paid as much as they did to purchase them.

67.     Plaintiffs seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendants under Cal. Bus. & Prof. Code § 17200.

/././

16

FIRST AMENDED COMPLAINT                                    CASE NO. 15-cv-01104-WHO

68.    Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and members of the Class any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief set forth below.

## COUNT II

### Violation of California Consumers Legal Remedies Act

### (Cal. Civ. Code §§ 1750, et seq.)

69.    Plaintiffs Cahen and Nisam bring this Count on behalf of the California Class against Defendants GM and Toyota.

70.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

71.    California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq., proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

72.    The Class Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

73.    Plaintiffs and the other California class members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiffs, the other California class members, and Defendants are "persons" as defined in Cal. Civ. Code § 1761(c).

74.    As alleged above, Defendants made numerous representations concerning the benefits and safety features of the Class Vehicles that were misleading.

75.    In purchasing or leasing the Class Vehicles, Plaintiffs and the other California Class members were deceived by Defendants' failure to disclose that the Class Vehicles were equipped with defective electronic and computerized components.

76.    Defendants' conduct, as described hereinabove, was and is in violation of the CLRA.

/././

17

FIRST AMENDED COMPLAINT                                 CASE NO. 15-cv-01104-WHO

77. Defendants' conduct violates at least the following enumerated CLRA provisions:

(a) Cal. Civ. Code § 1770(a)(5): Representing that goods have characteristics, uses, and benefits which they do not have;

(b) Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

(c) Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

(d) Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

78. Plaintiffs and the other California Class members have suffered injury in fact and actual damages resulting from Defendants' material omissions and misrepresentations because they paid an inflated purchase or lease price for the Class Vehicles.

79. Defendants knew, should have known, or were reckless in not knowing of the defective design and/or manufacture of the electronic and computerized components, and that they were not suitable for their intended use.

80. The facts concealed and omitted by Defendants to Plaintiffs and the other California Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price.

81. Had Plaintiffs Cahen and Nisam known about the design defects that Defendants failed to disclose, they would not have purchased their Class Vehicles or would not have paid as much as they did to purchase them.

82. Plaintiffs have provided Defendants with notice of their violations of the CLRA pursuant to Cal. Civ. Code § 1782(a). More than thirty (30) days have passed, and Defendants have failed to take any corrective action as required by Plaintiffs' notice or Cal. Civ. Code § 1782(b).

83. Plaintiffs' and the other California Class members' injuries were proximately caused by Defendants' fraudulent and deceptive business practices. Therefore, Plaintiffs and the /././

18

FIRST AMENDED COMPLAINT                    CASE NO. 15-cv-01104-WHO

other California Class members are entitled to equitable and monetary relief under the CLRA. Plaintiffs additionally seek monetary damages pursuant to the CLRA.

## COUNT III

### Violation of California False Advertising Law

### (Cal. Bus. & Prof. Code §§ 17500, et seq.)

84.     Plaintiffs Cahen and Nisam bring this Count on behalf of the California Class against Defendants GM and Toyota.

85.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

86.     California Bus. & Prof. Code § 17500 states: "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

87.     Defendants have violated § 17500 because their omissions regarding the safety, reliability, and functionality of their Class Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

88.     Plaintiffs and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiffs and the other Class members relied on the omissions of Defendants with respect to the safety and reliability of the Class Vehicles..

89.     Had Plaintiffs Cahen and Nisam known about the design defects that Defendants failed to disclose, they would not have purchased their Class Vehicles or would not have paid as much as they did to purchase them.

/././

19

FIRST AMENDED COMPLAINT                    CASE NO. 15-cv-01104-WHO

90.     All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

91.     Plaintiffs, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and the other Class members any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

<strong><u>COUNT IV</u></strong>

<strong>Breach of Implied Warranty of Merchantability</strong>

<strong><u>(Cal. Com. Code § 2314)</u></strong>

92.     Plaintiffs Cahen and Nisam bring this Count on behalf of the California Class against Defendants GM and Toyota.

93.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

94.     Defendants are and were at all relevant times merchants with respect to motor vehicles under Cal. Com. Code § 2104.

95.     A warranty that the Class Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

96.     These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that there are defects in the electronic and computerized components; and they were not adequately designed, manufactured, and tested.

97.     Defendants were provided notice of these issues by research studies, and by this Complaint, before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

/././

20

FIRST AMENDED COMPLAINT                    CASE NO. 15-cv-01104-WHO

98.    Plaintiffs and the other Class members have had sufficient direct dealings with either Defendants or their agents (dealerships) to establish privity of contract between Plaintiffs and the other Class members. Notwithstanding this, privity is not required in this case because Plaintiffs and the other Class members are intended third-party beneficiaries of contracts between Defendants and their dealers; specifically, they are the intended beneficiaries of Defendants' implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

99.    Finally, privity is also not required because Plaintiffs' and the other Class members' Class Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

100.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

## COUNT V

### Breach of Contract/Common Law Warranty

### (Based on California Law)

101.    Plaintiffs Cahen and Nisam bring this Count on behalf of the California Class against Defendants GM and Toyota.

102.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

103.    To the extent Defendants' limited remedies are deemed not to be warranties under California's Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendants and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

104.    Defendants breached this warranty or contract obligation by failing to repair or

21

FIRST AMENDED COMPLAINT                    CASE NO. 15-cv-01104-WHO

recall the Class Vehicles with faulty and defective electronic and computerized components, or to replace them.

105. As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT VI

## Fraud By Concealment

## (Based on California Law)

106. Plaintiffs Cahen and Nisam bring this Count on behalf of the California Class against Defendants GM and Toyota.

107. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

108. As set forth above, Defendants concealed and/or suppressed material facts concerning the safety, quality, functionality, and reliability of their Class Vehicles.

109. Defendants had a duty to disclose these safety, quality, functionality, and reliability issues because they consistently marketed their Class Vehicles as safe and proclaimed that safety is one of Defendants' highest corporate priorities. Once Defendants made representations to the public about safety, quality, functionality, and reliability, Defendants were under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

110. In addition, Defendants had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendants which has superior knowledge and access to the facts, and Defendants knew they were not known to or reasonably discoverable by /././

Plaintiffs and the other Class members. These omitted facts were material because they directly

22

FIRST AMENDED COMPLAINT                     CASE NO. 15-cv-01104-WHO

impact the safety, quality, functionality, and reliability of the Class Vehicles.

111. Whether or not a vehicle is susceptible to hacking as a result of the defect alleged herein is a material safety concern. Defendants possessed exclusive knowledge of the defect rendering the Class Vehicles inherently more dangerous and unreliable than similar vehicles.

112. Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs and the other Class members to purchase or lease Class Vehicles at a higher price for the Class Vehicles, which did not match the Class Vehicles' true value.

113. Defendants still have not made full and adequate disclosure and continues to defraud Plaintiffs and the other Class members.

114. Plaintiffs and the other Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' and the other Class members' actions were justified. Defendants were in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Class.

115. As a result of the concealment and/or suppression of the facts, Plaintiffs and the other Class members sustained damage.

116. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the other Class members' rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

/././

/././

/././

/././

## COUNT VII

### Violation of Song-Beverly Consumer Warranty Act for

23

**Breach of Implied Warranty of Merchantability**

**(Cal. Civ. Code §§ 1791.1 & 1792)**

117.    Plaintiffs Cahen and Nisam bring this Count on behalf of the California Class against Defendants GM and Toyota.

118.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

119.    Plaintiffs and the other Class members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

120.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

121.    Defendants are "manufacturers" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

122.    Defendants impliedly warranted to Plaintiffs and the other Class members that their Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792, however, the Class Vehicles do not have the quality that a buyer would reasonably expect.

123.    Cal. Civ. Code § 1791.1(a) states:

"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1) Pass without objection in the trade under the contract description.

(2) Are fit for the ordinary purposes for which such goods are used.

(3) Are adequately contained, packaged, and labeled.

(4) Conform to the promises or affirmations of fact made on the container or label.

/././

/././

124.    The Class Vehicles would not pass without objection in the automotive trade because of the defects in the Class Vehicles' electronic and computerized components that cause crucial functions of the Class Vehicles to be susceptible to hacking.

24

FIRST AMENDED COMPLAINT                          CASE NO. 15-cv-01104-WHO

125. Because of the defects in the Class Vehicles' electronic and computerized components that cause crucial functions of the Class Vehicles to be susceptible to hacking, they are not safe to drive and thus not fit for ordinary purposes.

126. The Class Vehicles are not adequately labeled because the labeling fails to disclose the defects in the Class Vehicles' electronic and computerized components that cause crucial functions of the Class Vehicles to be susceptible to hacking.

127. Defendants breached the implied warranty of merchantability by manufacturing and selling Class Vehicles containing defects associated with the electronic and computerized components. Furthermore, these defects have caused Plaintiffs and the other Class members to not receive the benefit of their bargain and have caused Class Vehicles to depreciate in value.

128. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the other Class members received goods whose dangerous and dysfunctional condition substantially impairs their value to Plaintiffs and the other Class members.

129. Plaintiffs and the other Class members have been damaged as a result of the diminished value of Defendants' products, the products' malfunctioning, and the nonuse of their Class Vehicles.

130. Pursuant to Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs and the other Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

131. Pursuant to Cal. Civ. Code § 1794, Plaintiffs and the other Class members are entitled to costs and attorneys' fees.

/././

### COUNT VIII

**Invasion of Privacy**

**(Cal. Const. Art. I, § 1)**

132. Plaintiffs Cahen and Nisam bring this Count on behalf of the California Class

25

FIRST AMENDED COMPLAINT                    CASE NO. 15-cv-01104-WHO

against Defendants GM and Toyota.

133.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

134.    Plaintiffs are informed and believe, and thereupon allege, that in doing the things alleged herein, Defendants, without Plaintiffs' consent, violated their right to privacy established in Article I, Section 1 of the California Constitution.

135.    Plaintiffs maintain a legally protected privacy interest in their personal data collected and transmitted to third parties by Defendants, including but not limited to the geographic location of their vehicles at various times.

136.    Defendants knew, or should have known, that Plaintiffs had a reasonable expectation of privacy in their personal data, and that Defendants' collection and transmission to third parties of such data constituted a violation of Plaintiffs' constitutionally protected right to privacy.

137.    Defendants' wrongful conduct as alleged herein, without regard to whether Defendants acted intentionally or with any other particular state of mind or scienter, renders Defendants liable to Plaintiffs for the wrongful violations of Plaintiffs' constitutionally protected right to privacy and for the damages caused thereby. In doing the acts as alleged herein, Defendants acted intentionally or with conscious disregard for Plaintiffs' right to privacy.

138.    Plaintiffs have suffered damages as a result of Defendants' wrongful conduct, and Plaintiffs seek to enjoin Defendants from collecting and disseminating data obtained as a result of violating Plaintiffs' constitutionally protected right to privacy.

/././

/././

/././

26

FIRST AMENDED COMPLAINT                    CASE NO. 15-cv-01104-WHO

**CLAIMS BROUGHT ON BEHALF OF THE OREGON CLASS**

**COUNT I**

**Violation of the Oregon Unlawful Trade Practices Act**

**(Or. Rev. Stat. §§ 646.605, et seq.)**

139. Plaintiff Tompulis brings this Count on behalf of the Oregon Class against Defendant Ford.

140. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

141. The Oregon Unfair Trade Practices Act ("OUTPA") prohibits a person from, in the course of the person's business, doing any of the following: "(e) Represent[ing] that … goods … have … characteristics … uses, benefits, … or qualities that they do not have; (g) Represent[ing] that … goods … are of a particular standard [or] quality … if they are of another; and (i) Advertis[ing] … goods or services with intent not to provide them as advertised." OR. REV. STAT. § 646.608(1).

142. Defendant is a person within the meaning of OR. REV. STAT. § 646.605(4).

143. The Defective Vehicles at issue are "goods" obtained primarily for personal family or household purposes within the meaning of OR. REV. STAT. § 646.605(6).

144. In the course of Defendant's business, it willfully failed to disclose and actively concealed the dangerous risk of hacking and the lack of adequate fail-safe mechanisms in Defective Vehicles as described above. Accordingly, Defendant engaged in unlawful trade practices, including representing that Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Defective Vehicles are of a particular standard and quality when they are not; and advertising Defective Vehicles with the intent not to sell them as advertised. Defendant knew or should have known that its conduct violated the OUTPA.

145. As a result of these unlawful trade practices, Plaintiff has suffered ascertainable loss.

/././

146. Defendant engaged in a deceptive trade practice when it failed to disclose material

27

FIRST AMENDED COMPLAINT                    CASE NO. 15-cv-01104-WHO

information concerning the vehicles that was known to Defendant at the time of the sale. Defendant deliberately withheld the information about the vehicles' susceptibility to hacking in order to ensure that consumers would purchase its vehicles and to induce the consumer to enter into a transaction.

147. The susceptibility of the vehicles to hacking and their lack of a fail-safe mechanism were material to Plaintiff and the Class. Had Plaintiff and the Class known that their vehicles had these serious safety defects, they would not have purchased their vehicles.

148. Plaintiff is entitled to recover the greater of actual damages or $200 pursuant to OR. REV. STAT. § 646.638(1). Plaintiff is also entitled to punitive damages because Defendant engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights of others.

149. Pursuant to OR. REV. STAT. § 646.638(2), Plaintiff will mail a copy of the complaint to Oregon's attorney general.

## COUNT II

### Breach of the Implied Warranty of Merchantability

### (Or. Rev. Stat. § 72.3140)

150. Plaintiff Tompulis brings this Count on behalf of the Oregon Class against Defendant Ford.

151. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

152. Defendant is and was at all relevant times a merchant with respect to motor vehicles.

153. A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

154. These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. /././

Defendant was provided notice of these issues by numerous complaints filed against it, including

28

FIRST AMENDED COMPLAINT                         CASE NO. 15-cv-01104-WHO

the instant Complaint, and by other means.

155.    As a direct and proximate result of Defendant's breach of the warranties of merchantability, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## COUNT III

### Fraudulent Concealment

### (Based on Oregon Law)

156.    Plaintiff Tompulis brings this Count on behalf of the Oregon Class against Defendant Ford.

157.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

158.    Defendant intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiff and the other Class members' information that is highly relevant to their purchasing decision.

159.    Defendant further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

160.    Defendant knew these representations were false when made.

161.    The Class Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective electronic and computerized components, as alleged herein.

162.    Defendant had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be rendered inoperative due to faulty and defective electronic and computerized components, because Plaintiff and the other Class members relied on Defendant's material representations that the Class Vehicles they were purchasing were safe and free from defects.

/././

163.    The aforementioned representations were material because they were facts that

29

FIRST AMENDED COMPLAINT                    CASE NO. 15-cv-01104-WHO

would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendant knew or recklessly disregarded that its representations were false because it knew the Class Vehicles were susceptible to hacking. Defendant intentionally made the false statements in order to sell Class Vehicles.

164.    Plaintiff and the other Class members relied on Defendant's reputation – along with Defendant's failure to disclose the faulty and defective nature of the electronic and computerized components and Defendant's affirmative assurances that its Class Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Defendant's Class Vehicles.

165.    As a result of their reliance, Plaintiff and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Class Vehicles.

166.    Defendant's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other Class members.

167.    Plaintiff and the other Class members are therefore entitled to an award of punitive damages.

## CLAIMS BROUGHT ON BEHALF OF THE WASHINGTON CLASS

## COUNT I

### Violation of the Consumer Protection Act

### (Rev. Code Wash. Ann. §§ 19.86.010, et seq.)

168.    Plaintiffs Gibbs and Langdon bring this Count on behalf of the Washington Class against Defendant Ford.

169.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

/././

170.    The conduct of Defendant as set forth herein constitutes unfair or deceptive acts or

30

FIRST AMENDED COMPLAINT                    CASE NO. 15-cv-01104-WHO

practices, including, but not limited to, Defendant's manufacture and sale of vehicles with faulty and defective electronic and computerized components rendering Class Vehicles susceptible to hacking, which Defendant failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles.

171.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

172.    Defendant's actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Defendant's vehicles as a result of Defendant's generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business.

173.    Plaintiffs and the Class were injured as a result of Defendant's conduct. Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

174.    Defendant's conduct proximately caused the injuries to Plaintiffs and the Class.

175.    Defendant is liable to Plaintiffs and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

176.    Pursuant to WASH. REV. CODE ANN. § 19.86.095, Plaintiffs will serve the Washington Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

**COUNT II**

**Breach of the Implied Warranty of Merchantability**

**(Rev. Code Wash. § 62A.2-614)**

177.    Plaintiffs Gibbs and Langdon bring this Count on behalf of the Washington Class against Defendant Ford.

178.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

179.    Defendant is and was at all relevant times a merchant with respect to motor vehicles.

180.    A warranty that the Class Vehicles were in merchantable condition is implied by

31

FIRST AMENDED COMPLAINT                    CASE NO. 15-cv-01104-WHO

law in the instant transactions.

181. These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Defendant was provided notice of these issues by numerous complaints filed against it, including the instant Complaint, and by other means.

182. Privity is not required in this case because Plaintiffs and the Class are intended third-party beneficiaries of contracts between Defendant and its dealers; specifically, they are the intended beneficiaries of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided with the Defective Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

183. As a direct and proximate result of Defendant's breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**COUNT III**

**Breach of Contract/Common Law Warranty**

**(Based on Washington Law)**

184. Plaintiffs Gibbs and Langdon bring this Count on behalf of the Washington Class against Defendant Ford.

185. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

186. To the extent Defendant's limited remedies are deemed not to be warranties under Washington's Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law. Defendant limited the remedies available to Plaintiffs and the other Class members to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Defendant, and/or warranted the quality or nature of those services to Plaintiffs and the other Class members.

187. Defendant breached this warranty or contract obligation by failing to repair or

32

FIRST AMENDED COMPLAINT                    CASE NO. 15-cv-01104-WHO

recall the Class Vehicles, or to replace them.

188. As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT IV

### Fraudulent Concealment

### (Based on Washington Law)

189. Plaintiffs Gibbs and Langdon bring this Count on behalf of the Washington Class against Defendant Ford.

190. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

191. Defendant intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members' information that is highly relevant to their purchasing decision.

192. Defendant further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

193. Defendant knew these representations were false when made.

194. The Class Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective electronic and computerized components, as alleged herein.

195. Defendant had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that certain crucial safety functions of the Class Vehicles would be rendered inoperative due to faulty and defective electronic and computerized components, because Plaintiffs and the other Class members relied on Defendant's material representations that the Class Vehicles they were purchasing were safe and free from defects.

33

FIRST AMENDED COMPLAINT                    CASE NO. 15-cv-01104-WHO

196. The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendant knew or recklessly disregarded that its representations were false because it knew the Class Vehicles were susceptible to hacking. Defendant intentionally made the false statements in order to sell Class Vehicles.

197. Plaintiffs and the other Class members relied on Defendant's reputation – along with Defendant's failure to disclose the faulty and defective nature of the Class Vehicles and Defendant's affirmative assurances that its Class Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Defendant's Class Vehicles.

198. As a result of their reliance, Plaintiffs and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Class Vehicles.

199. Defendant's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members.

200. Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the California, Oregon, and Washington Classes, respectfully request that the Court enter judgment in their favor and against Defendants, as follows:

1. Certification of the proposed California, Oregon and Washington Classes, including appointment of Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel;

2. An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

3. Injunctive relief in the form of a recall or free replacement program;

34

FIRST AMENDED COMPLAINT                    CASE NO. 15-cv-01104-WHO

4.      Repair of the class vehicles to provide adequate security to prevent hacking, such as the addition of Trusted Platform Modules (TPM) or the equivalent;

5.      Costs, restitution, damages, including punitive damages, and disgorgement in an amount to be determined at trial;

6.      An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

7.      An award of costs and attorneys' fees; and

8.      Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

DATED: July 1, 2015                    STANLEY LAW GROUP

                                        */s/ Matthew J. Zevin*
                                        MATTHEW J. ZEVIN
                                        10021 Willow Creek Road, Suite 200
                                        San Diego, CA  92131
                                        Telephone:    (619) 235-5306
                                        Facsimile:    (815) 377-8419
                                        e-mail:        mzevin@aol.com

                                        STANLEY LAW GROUP
                                        MARC R. STANLEY, Texas SBN: 19046500
                                        MARTIN WOODWARD, Texas SBN: 00797693
                                        6116 North Central Expressway, Suite 1500
                                        Dallas, TX  75206
                                        Telephone:    (214) 443-4300
                                        Facsimile:    (214) 443-0358
                                        e-mail: marcstanley@mac.com
                                               mwoodward@stanleylawgroup.com

                                        Donald H. Slavik (application for Pro Hac Vice forthcoming)
                                        SLAVIK LAW FIRM, LLC
                                        2834 Blackhawk Court
                                        Steamboat Springs, Colorado 80487-2018
                                        Telephone: (970) 457-1011
                                        dslavik@slavik.us

                                        Attorneys for Plaintiffs

35

FIRST AMENDED COMPLAINT                        CASE NO. 15-cv-01104-WHO