MICHAEL L. MALLOW (SBN 188745)
mmallow@sidley.com
RACHEL A. STRAUS (SBN 268836)
rstraus@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone: 213.896.6000
Facsimile: 213.896.6600

LIVIA M. KISER (SBN 285411)
lkiser@sidley.com
J. SIMONE JONES (*pro hac vice* to be filed)
simone.jones@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Telephone: 312.853.7000
Facsimile: 312.853.7036

Attorneys for Defendant
FORD MOTOR COMPANY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| Helene Cahen, Kerry J. Tompulis, and Merrill Nisam, Richard Gibbs, and Lucy L. Langdon, on Behalf of Themselves and All Others Similarly Situated,<br><br>   Plaintiffs,<br><br>vs.<br><br>Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., Ford Motor Company, General Motors LLC, and Does 1 through 50,<br><br>   Defendants. | Case No. 3:15-cv-01104-WHO<br><br>**FORD MOTOR COMPANY'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. William H. Orrick<br>Date: November 3, 2015<br>Time: 3:00 p.m.<br>Place: Courtroom 2 |

1

## **TABLE OF CONTENTS**

2   INTRODUCTION......................................................................................................... 1

3   ARGUMENT ................................................................................................................ 3

4   I.    THE COURT CANNOT EXERCISE PERSONAL JURISDICTION
        OVER FORD........................................................................................................ 3

5
6         A.    The Ford Plaintiffs Cannot Establish That This Court
                Can Exercise General Personal Jurisdiction Over Ford................................ 4

7         B.    The Ford Plaintiffs Cannot Establish That the Court Has Specific
                Personal Jurisdiction Over Ford .................................................................. 6

8
9               1.    The Ford Plaintiffs Do Not Allege that Ford Purposefully
                      Availed Itself of the Forum or Purposefully Directed its
                      Activities at the Forum ...................................................................... 7

10
11              2.    The Ford Plaintiffs Claims Do Not Arise Out of
                      Ford's Contacts with California ........................................................ 8

12  II.   The Ford Plaintiffs Lack Standing Under State Law And
          Article III Because They Have Suffered No Legally-Cognizable Injury ..................... 9

13
14        A.    The Ford Plaintiffs Lack Standing Under State Law Because
                They Suffered No Loss.................................................................................. 9

15        B.    The Ford Plaintiffs Fail to Allege A Cognizable "Injury In Fact"................ 11

16        C.    The Ford Plaintiffs Fail To (And Cannot) Allege A Viable
                "Causal Link" Between Their Hypothetical Injury And
17              Ford's Alleged Conduct ............................................................................... 12

18  III.  THE FORD PLAINTIFFS' CLAIMS SHOULD BE DISMISSED
          FOR FAILURE TO STATE A CLAIM........................................................................ 13

19
20        A.    "Ascertainable Loss" Is An Essential Element Of
                UTPA And CPA Claims Lacking Here ........................................................ 14

21        B.    The Ford Plaintiffs Cannot State a Claim Against Ford
                For Breach of Implied Warranty of Merchantability
22              Under Oregon or Washington Law................................................................ 14

23        C.    The Ford Plaintiffs Fail to Plead Fraudulent Concealment
                Under Oregon and Washington Law With the Particularity
24              Required by Rule 9(b) .................................................................................. 16

25  IV.   THE FORD PLAINTIFFS' CLAIMS ARE PREEMPTED
          AND/OR FORECLOSED BY STATE LAW ............................................................... 17

26
27        A.    The Clean Air Act Amendments of 1990 Require Ford
                To Permit Access To Vehicles' CAN bus Units............................................ 18

28        B.    State Law Also Requires Ford To Permit CAN bus Access........................... 18

**CONCLUSION** ................................................................................................................ **19**

# TABLE OF AUTHORITIES

*Allen v. G.D. Searle & Co.*,
    708 F. Supp. 1142 (D. Or. 1989) ........................................................15

*Alliance for the Wild Rockies v. U.S. Dep't of Agric.*,
    772 F.3d 592 (9th Cir. 2014) ..............................................................9

*Amiri v. DynCorp Int'l, Inc.*,
    No. 14-CV-03333, 2015 WL 166910 (N.D. Cal. Jan. 13, 2015)................4, 5, 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................................................14

*Avenue Lofts Condos. Owners' Assn. v. Victaulic Co.*,
    24 F. Supp. 3d 1010, 1020 (D. Or. 2014) ......................................14, 16

*Babb v. Regal Marine Indus., Inc.*,
    186 Wash. App. 1003 (Wash. Ct. App. 2015) ...............................2, 15

*Baughn v. Johnson & Johnson*,
    No. C15-5283 BHS, 2015 WL 4759151 (W.D. Wa. Aug. 12, 2015)............14, 16, 17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).....................................................................13, 14

*Bias v. Wells Fargo & Co.*,
    942 F. Supp. 2d 915 (N.D. Cal. 2013) ...........................................14

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009) ...........................................................11

*Bojorquez v. Wells Fargo Bank, NA*,
    No. 6:12-cv-02077, 2013 WL 6055258 (D. Or. Nov. 7, 2013) ..............9

*Boschetto v. Hansing*,
    539 F.3d 1011 (9th Cir. 2008) ...........................................................4

*Browne v. Avvo, Inc.*,
    525 F. Supp. 2d 1249 (W.D. Wash. 2007).....................................2, 9, 14

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)........................................................................5, 6

*Capital Cities Cable, Inc. v. Crisp*,
    467 U.S. 691 (1984)..........................................................................17

*Cipollone v. Liggett Group, Inc.*,
    505 U.S. 504 (1992)..........................................................................17

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013)..............................................................................9, 13

*Colvin v. FMC Corp.*,
   604 P.2d 157 (Or. Ct. App. 1979).............................................................2, 15

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014) ............................................................................ *passim*

*Doe v. Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001) ........................................................................8

*Dravo Equip. Co. v. German*,
   698 P.2d 63 (Or. Ct. App. 1985).................................................................14

*Fields v. Legacy Health Sys.*,
   413 F.3d 943 (9th Cir. 2005) .......................................................................14

*Forest Glade Homeowners Ass'n v. Allied Mut. Ins. Co.*,
   No. C07-1762JLR, 2009 WL 927750 (W.D. Wash. Mar. 31, 2009)..............9

*Galaria v. Nationwide Mut. Ins. Co.*,
   998 F. Supp. 2d 646 (S.D. Ohio 2014) ........................................................13

*Geier v. Am. Honda Motor Co., Inc.*,
   529 U.S. 861 (2000)........................................................................17, 18, 19

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
   284 F.3d 1114 (9th Cir. 2002) ......................................................................7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   131 S.Ct. 2846 (2011)...................................................................................5

*Hines v. Davidowitz*,
   312 U.S. 52 (1941).......................................................................................17

*In re Horizon Healthcare Servs., Inc. Data Breach Litig.*,
   No. 13−7418, 2015 WL 1472483 (D.N.J. Mar. 31, 2015) ..........................13

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ......................................................2, 13, 14, 17

*Krottner v. Starbucks Corp.*,
   628 F.3d 1139 (9th Cir. 2010) .....................................................................11

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)......................................................................................12

*Marolda v Symantec Corp.*,
   672 F. Supp. 2d 992 (N.D. Cal. 2009) .........................................................17

iv

*Martinez v. Aero Caribbean,*
    764 F.3d 1062 (9th Cir. 2014) ........................................................................3, 4, 5, 9

*Maya v. Centex Corp.,*
    658 F.3d 1060 (9th Cir. 2011) ...................................................................................12

*Monaghan v. Fiddler,*
    No. C11-3278 CW, 2011 WL 4984710 (N.D. Cal. 2011) ........................................3

*Parkinson v. Novartis Pharms. Corp.,*
    5 F. Supp. 3d 1265, 1277 (D. Or. 2014) ..................................................................15

*Paul v. Providence Health Sys.-Oregon,*
    240 P.3d 1110 (Or. Ct. App. 2010) ..............................................................2, 10, 14

*Picot v. Weston,*
    780 F.3d 1206 (9th Cir. 2015) .....................................................................................4

*Porche v. Pilot & Associates, Inc.,*
    319 Fed.Appx. 619 (9th Cir. 2009) .........................................................................3, 8

*Redfield v. Mead, Johnson & Co.,*
    512 P.2d 776 (Or. 1973) ...........................................................................................15

*Reilly v. Ceridian Corp.,*
    664 F.3d 38 (3d Cir. 2011) ........................................................................................13

*Schwarzenegger v. Fred Martin Motor Co.,*
    374 F.3d 797 (9th Cir. 2004) .....................................................................................6, 8

*Schweickert v. Hunts Point Ventures, Inc.,*
    No. 13-cv-675RSM, 2014 WL 6886630 (W.D. Wash. Dec. 4, 2014) ......................14

*Simon v. E. Ky. Welfare Rights Org.,*
    426 U.S. 26 (1976) ....................................................................................................12

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001) .....................................................................................14

*Stroud v. Tyson Foods, Inc.,*
    No. 14-CV-3281, 2015 WL 1034452 (E.D.N.Y. Mar. 10, 2015) ..........................2, 6

*Terracom v. Valley Nat'l Bank,*
    49 F.3d 555 (9th Cir. 1995) .....................................................................................7, 8

*U.S. Hotel & Resort Mgmt., Inc. v. Onity Inc.,*
    No. 13−1499, 2014 WL 3748639 (D. Minn. July 30, 2014) ...................................13

*Walden v. Fiore,*
    134 S.Ct. 1115 (2014) .................................................................................................7

v

*Young v. Actions Semiconductor Co. Ltd.*,
  386 F. App'x. 623 (9th Cir. 2010) .......................................................................8

*Yunker v. Pandora Media Inc.*,
  No. 11−03113−JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) .......................................11

**Statutes**

18 U.S.C. § 1030 .........................................................................................12

28 U.S.C. § 1391 ...........................................................................................3

Cal. Penal Code § 502 ....................................................................................13

Mass. Gen. Laws ch. 93K, § 2 (2013) ..............................................................18, 19

Or. Rev. Stat. § 646.638 ...................................................................................9

40 C.F.R. §86.094 ........................................................................................18

Cal. Code Civ. P. § 410.10 .................................................................................4

Cal. Code Regs. tit. 13, § 1968 ...............................................................1, 18, 19

Fed. R. Civ. P. 8 ..................................................................................... *passim*

Fed. R. Civ. P. 9 ..................................................................................... *passim*

Fed. R. Civ. P. 12 ................................................................................... *passim*

Or. Admin. R. 340-257-0050 ..............................................................................1

U.S. Const., art. VI, cl. 2 ................................................................................17

**TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on November 3, 2015, at 3:00 p.m., or as soon thereafter as it may be heard, in Courtroom 2 of this Court, located at 450 Golden Gate Avenue, San Francisco, California, before the Honorable William H. Orrick, Defendant Ford Motor Company ("Ford") will and hereby does move the Court for an order dismissing all of the claims and causes of action contained in the First Amended Complaint ("FAC") of Plaintiff Kerry J. Tompulis and Plaintiffs Richard Gibbs and Lucy L. Langdon (collectively, "Ford Plaintiffs") pursuant to Rule 12(b)(2),  or, in the alternative, Rules 12(b)(1), 12(b)(3), and 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure.  Ford brings this Motion on the following grounds:

(1)     The Court does not have general personal jurisdiction over Ford, a company incorporated in Delaware with its principal place of business in Dearborn, Michigan.

(2)     The Court does not have specific personal jurisdiction over Ford.  Ford did not design or manufacture  the  Ford Plaintiffs' vehicles in California and the claims at issue have no connection with or to California.

(3)     This venue is not proper for this action pursuant to 28 U.S.C. § 1391.  Plaintiff Tompulis resides in Oregon and leased her car from a dealership there.  (FAC ¶ 13.)  Plaintiffs Gibbs and Langdon reside and purchased their car in Washington.  (FAC ¶ 15.)  None of the alleged events or omissions "giving rise to the claim[s]" occurred in this judicial district, and Ford does not reside in this district.

Even if this Court concluded that this Court could properly exercise personal jurisdiction over Ford for these claims and venue is proper, the complaint must still be dismissed.

(4)     The Ford Plaintiffs lack standing to bring claims under the Oregon Unlawful Trade Practices Act ("UTPA") and Washington's Consumer Protection Act ("CPA") because they do not allege (and did not actually experience) an "ascertainable loss."

(5)      The Ford Plaintiffs lack standing under Article III of the United States Constitution because their purported "injury" rests on purely hypothetical, contingent, and conjectural allegations of harm that could only result from the criminal acts of third parties.  Plaintiffs' allegations of some potential future alleged injuries are not the type of imminent, concrete, and

particularized harms required for Article III standing.

Even were this Court to conclude that the Ford Plaintiffs have standing, the Ford Plaintiffs' OTPA, CPA, and breach of implied warranty and fraud claims under Oregon and Washington still fail.

(6)     Plaintiff Tompulis cannot establish an essential element of her Oregon UTPA claim as a matter of law because she does not plead (and did not suffer) an ascertainable loss.

(7)     Plaintiffs Gibbs and Langdon cannot establish an essential element of their CPA claim as a matter of law because they do not plead (and did not suffer) an ascertainable loss.

(8)     The Ford Plaintiffs cannot plausibly allege any claim for breach of implied warranty under Oregon and Washington law because:  (i) they are not in privity with Ford, having purchased or leased their vehicles from third-party dealers;  and, with respect to Plaintiff Tompulis, (ii) she admits she did not provide notice of her claim prior to filing the lawsuit as Oregon law requires.

(9)     The Ford Plaintiffs fail to state a claim for fraudulent concealment under Oregon or Washington law, because they fail to satisfy Rule 9(b)'s heightened pleading standard applicable to fraud claims.

(10)     The Ford Plaintiffs fail to state a claim because they seek to hold Ford liable under state law for making their vehicles' CAN bus systems reasonably accessible to third parties as required by federal and state law.

## STATEMENT OF ISSUES TO BE DECIDED PER CIVIL L.R. 7-4(A)(3)

I.      Whether the Court has jurisdiction over Ford where Ford is not incorporated in California, does not maintain its principal place of business there, and none of the conduct alleged by the Ford Plaintiffs occurred in California.

II.      Whether venue is improper because Plaintiff Tompulis resides in Oregon and leased her car from a dealership there, Plaintiffs Gibbs and Langdon reside and purchased their car in Washington, and none of the alleged events or omissions "giving rise to the claim[s]" occurred in this judicial district, and Ford does not reside in California.

III.      Whether the Ford Plaintiffs lack standing to bring claims under the Oregon Unlawful Trade Practices Act ("UTPA") and Washington's Consumer Protection Act ("CPA") because they do not allege (and did not actually experience) an "ascertainable loss."

IV.      Whether Article III standing is conferred upon the Ford Plaintiffs based solely upon allegations of theoretical, speculative harm which could only occur (if at all) if third parties committed independent, criminal acts in the future, and where the Ford Plaintiffs fail to allege a causal link between these future harmful third-party acts and Ford.

V.      Whether Plaintiff Tompulis can establish an essential element of her Oregon UTPA claim where (as here) she does not plead (and did not suffer) an ascertainable loss.

VI.      Whether Plaintiffs Gibbs and Langdon can establish an essential element of their CPA claim where (as here) they do not plead (and did not suffer) an ascertainable loss.

VII.      Whether the Ford Plaintiffs plausibly allege claims for breach of implied warranty under Oregon and Washington law where they are not in privity with Ford, having purchased or leased their vehicles from third-party dealers;  and, with respect to Plaintiff Tompulis, she admits she did not provide pre-suit notice of her claim as Oregon law requires.

VIII.      Whether the Ford Plaintiffs state claims for fraud under Oregon or Washington law where they fail to satisfy Rule 9(b)'s heightened pleading standard applicable to fraud claims.

IX.      Whether Ford can be held liable for making its CAN bus system accessible to third parties where federal and state laws require it to do so.

1

## **INTRODUCTION**

2        Plaintiff Kerry J. Tompulis (an Oregon resident who leased a new Ford Escape in 2014) and

3   Plaintiffs Richard Gibbs and Lucy L. Langdon (Washington residents who co-own their vehicle,  a

4   used 2013 Ford Fusion)  (Tompulis, Langdon and Gibbs collectively referred to throughout as "Ford

5   Plaintiffs") assert that the controller area network (CAN) bus units (also known as "CAN bus

6   systems") in their vehicles are "susceptible to hacking and [are] therefore unreasonably dangerous."

7   (First Amended Complaint ("FAC") ¶ 2.)  A CAN bus is a diagnostic and repair information system

8   implemented in motor vehicles to allow communication between and among the vehicle's electronic

9   control units ("ECUs").  (*See* FAC ¶¶ 3, 28.)[1]  For well over a decade, all vehicles have had some

10  form of CAN bus system and motor vehicle manufacturers ("OEMs") are legally required to make

11  CAN bus units reasonably accessible to third parties.  Here, however, and based on nothing more

12  than a conclusory allegation that CAN bus systems in Ford vehicles manufactured since at least 2007

13  are "defective," the Ford Plaintiffs assert numerous causes of action against Ford Motor Company

14  ("Ford") on behalf of themselves and two proposed classes for purported violations of Oregon and

15  Washington consumer protection statutes and state common law.  (*Id*. ¶¶ 139-200.)  These claims are

16  entirely separate and distinct from the claims asserted by the other plaintiffs in this lawsuit.[2]

17        The Ford Plaintiffs' claims are legally infirm and cannot proceed in this Court.  *First*, the

18  claims must be dismissed because this Court lacks both general and specific personal jurisdiction

19  over Ford, and venue is also improper.  Ford is incorporated in Delaware, and maintains its principal

20  place of business in Dearborn, Michigan.  (FAC ¶ 22)  Moreover, the Ford Plaintiffs have failed to

21  plead that any of Ford's alleged conduct giving rise to their claims occurred in California (and,

22  indeed, it did not).  (*Id*. at *passim*).  Plaintiffs are not even residents of California and did not

23  purchase or lease their cars in California.  (*Id*.)  Accordingly, general and specific personal

24

[1] The CAN bus is a mandatory feature that comes standard on cars and certain other vehicles, and
25  provides diagnostic information to facilitate vehicle repair.  *See, e.g.*, CAL. CODE REGS. tit. 13, §
    1968.2; OR. ADMIN. R. 340-257-0050.
26
[2] The other Plaintiffs in this case (residents of California) purchased vehicles made by Toyota and
27  General Motors (collectively, "Toyota and GM Plaintiffs,") and, thus, do not (and cannot) assert
    claims against Ford.  (*See* FAC ¶¶ 12-14.).  The status of the Toyota and GM Plaintiffs has no
28  bearing on whether the Ford Plaintiffs have brought their claims in the proper Court (they have not).
    *See* n. 4 *infra*.

jurisdiction over Ford are both lacking, and Plaintiffs' claims against Ford must be dismissed under Federal Rule of Civil Procedure 12(b)(2) and/or 12(b)(3).  *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760-762 (2014); *see also Stroud v. Tyson Foods, Inc.*, No. 14-CV-3281, 2015 WL 1034452 at *5-6 (E.D.N.Y. Mar. 10, 2015).

 *Second*, even if Ford were subject to jurisdiction in California and venue was proper, and it is not, the Ford Plaintiffs lack standing to pursue their claims.  For example, because the Ford Plaintiffs have suffered no "ascertainable loss" from their vehicle's alleged "defect" (their vehicles have never been hacked and the Ford Plaintiffs do not allege that their vehicles have failed to perform as intended), they cannot satisfy a necessary element of the Oregon Unlawful Trade Practices Act ("UTPA") and Washington's Consumer Protection Act ("CPA").  *See Paul v. Providence Health Sys.-Oregon*, 240 P.3d 1110 (Or. Ct. App. 2010); *Browne v. Avvo, Inc.*, 525 F. Supp. 2d 1249 (W.D. Wash. 2007).  Plaintiffs' described "injury" – "the computer technology [*i.e.*, CAN bus] in the cars is ***exposed to the dangers*** of being hacked" (FAC ¶1 (emphasis supplied)) – is not the kind of imminent, concrete and particularized harm required for Article III standing.  In truth, simply by virtue of being operational, all computer technology in existence is "exposed to the dangers" of hacking, just as all wallets are "exposed to the dangers" of being stolen when carried, and all tires are "exposed to the dangers" of being punctured when driven on the road.  But that doesn't make the computer technology, wallets or tires inherently defective or "not safe."

 *Third*, the Ford Plaintiffs' claims should be dismissed because they are not viable under Federal Rules 8, 9 and/or 12(b)(6).  The Ford Plaintiffs' breach of implied warranty claims under Oregon and Washington law also fail because the Ford Plaintiffs fail to allege that they were in privity with Ford when they purchased/leased their vehicles (and, in fact, they were not, because Ford does not sell or lease vehicles directly to consumers; rather, Ford sells to authorized, independent dealers (who are not Ford) and they, in turn, sell and lease vehicles to consumers).  *See Colvin v. FMC Corp.*, 604 P.2d 157, 160 (Or. Ct. App. 1979); *Babb v. Regal Marine Indus., Inc.*, 186 Wash. App. 1003 (Wash. Ct. App. 2015).  Additionally, the Ford Plaintiffs do not plead fraudulent concealment under either Oregon or Washington law with the specificity required by Federal Rule of Civil Procedure 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.

2009).

*Finally*, the Ford Plaintiffs' claims should be dismissed because they directly conflict with federal law and the laws of states that obligate Ford to make vehicles' CAN bus systems readily accessible to third parties.  As a practical matter (and as the law requires), CAN bus units must be reasonably accessible so (among other reasons) the vehicles can be diagnosed and repaired.  In the FAC, the Ford Plaintiffs claim the fact that the CAN bus system is accessible *at all* is somehow indicia of defect, but that cannot form the basis of a claim, as federal and state laws require motor vehicle manufacturers to make their CAN bus systems reasonably available to third parties.

In short, all of the claims against Ford should be dismissed.[3]

## **ARGUMENT**

### I.    **THE COURT CANNOT EXERCISE PERSONAL JURISDICTION OVER FORD**

This Court need not delve further into this case than to dismiss it for lack of personal jurisdiction over Ford.  Because Ford is neither headquartered nor incorporated in California, this Court does not have general personal jurisdiction over Ford.  Moreover, because the Ford Plaintiffs' claims do not arise out of Ford's California-related activities, the Court does not have specific personal jurisdiction over Ford either.  Consequently, the Ford Plaintiffs' claims against Ford must be dismissed, *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014).[4]

Where a defendant moves to dismiss a complaint for lack of personal jurisdiction pursuant to

---

[3] In this motion, Ford addresses the infirmities of the Ford Plaintiffs' pleading pursuant to Fed. R. Civ. P. 8, 9 and 12 unique to it.  The Ford Plaintiffs' claims against Ford are not viable for reasons stated herein, but in an abundance of caution, Ford expressly reserves the right to raise other, potentially-dispositive defenses to the Ford Plaintiffs' claims (including arbitration) should they elect to refile their lawsuit in a forum in which Ford is subject to personal jurisdiction.

[4] Ford respectfully submits in the alternative that the Ford Plaintiffs' claims also should be dismissed pursuant to Rule 12(b)(3) and 28 U.S.C. § 1391 for improper venue.  Plaintiff Tompulis resides in Oregon and leases her car from a dealership there.  (FAC ¶ 13.)  Plaintiffs Gibbs and Langdon reside and purchased their car in Washington.  (FAC ¶ 15.)  None of the alleged events or omissions "giving rise to the claim[s]" occurred in this judicial district, and Ford does not reside in this district. *See generally* Declaration of Elizabeth Dwyer ("Dwyer Decl."), Exhibit 1 hereto, at *passim*; Declaration of Bill Pappas ("Pappas Decl."), Exhibit 2 hereto, at *passim*.  None of the other plaintiffs (who are residents of California) have any claims against Ford.  *See generally* FAC at *passim*. Accordingly, the claims against Ford should be dismissed.  *See Porche v. Pilot & Associates, Inc.*, 319 Fed.Appx. 619 (9th Cir. 2009) (affirming dismissal of lawsuit where venue was improper); *Monaghan v. Fiddler*, No. C11-3278 CW, 2011 WL 4984710 (N.D. Cal. 2011) (dismissing action where Northern District of California was improper venue).

1   Rule 12(b)(2), "Plaintiffs bear the burden of showing that the Court has personal jurisdiction over

2   Defendants," and must make "a prima facie showing of jurisdictional facts to withstand the motion

3   to dismiss." *Amiri v. DynCorp Int'l, Inc.*, No. 14-CV-03333, 2015 WL 166910, at *1 (N.D. Cal. Jan.

4   13, 2015) (quotations and citation omitted); *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015)

5   ("[T]he plaintiff bears the burden of demonstrating that jurisdiction is appropriate.") (quotation

6   omitted).[5]   For the reasons set forth below, the Ford Plaintiffs cannot meet this burden.

7       **A.      The Ford Plaintiffs Cannot Establish That This Court Can Exercise General
                   Personal Jurisdiction Over Ford**

8           "General jurisdiction over a corporation is appropriate only when the corporation's contacts

9   with the forum state 'are so constant and pervasive as to render it essentially at home' in the state."

10  *Martinez*, 764 F.3d at 1066 (quoting *Daimler*, 134 S. Ct. at 755.  As the Supreme Court recently

11  clarified, this test generally is only met when a lawsuit is brought in the jurisdiction in which a

12  defendant (1) is incorporated or (2) maintains its principal place of business.  *Daimler*, 134 S. Ct. at

13  761, n.19; *accord Martinez*, 764 F.3d at 1070.[6]

14          In support of jurisdiction, the Ford Plaintiffs allege only that Ford "manufactured, sold,

15  leased, and warranted the Ford Vehicles . . . throughout the United States."  (FAC ¶ 23.)  These

16  facts, even if true, do not render Ford "at home" in California, and do not even begin to satisfy the

17  Supreme Court's "rigorous test."  *Daimler*, 134 S. Ct. at 751, 757.  Indeed, the Supreme Court in

18  *Daimler* found that this Court did not have general jurisdiction over a vehicle manufacturer

19  analogous to Ford, one who "distributes . . . vehicles to independent dealerships throughout the

20  United States, including California."  *Id.* at 751.  As the Court explained, "[a]lthough the placement

21

22  _____

23  [5] Where, as here, no federal statute governs personal jurisdiction, a district court applies the long-
    arm statute of the state in which it sits.  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).
24  California's long-arm statute permits a court to exercise personal jurisdiction where doing so
    comports with federal constitutional due process.  *Id.*; Cal. Code Civ. P. § 410.10.

25  [6] Although *Daimler* allowed that there could be an "exceptional case" where a company has
    operations "so substantial and of such a nature as to render the corporation at home" in a jurisdiction,
26  134 S. Ct. at 761 n.19, this Court has recognized that "[t]he bar for such a finding is very high."
    *Amiri*, 2015 WL 166910, at *2.  Accordingly, "outside a corporation's place of incorporation or
27  principal place of business" general personal jurisdiction "is ***rarely*** satisfied."  *Id.* (emphasis
    supplied).  Plaintiffs do not allege any facts suggesting that Ford's California activities "approach
28  th[is] level."  *Daimler*, 134 S. Ct. at 761 n.19.  And indeed, Ford's activities do not.  *See generally*
    Dwyer Decl., Exhibit 1 hereto, at *passim*; Pappas Decl., Exhibit 2 hereto, at *passim*.

of a product into the stream of commerce 'may bolster an affiliation germane to *specific* jurisdiction,' . . . such contacts 'do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant.'" *Id.* at 757 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2857 (2011) (emphasis in original).  Plaintiffs do not (and cannot) plead any facts suggesting Ford is different.

Moreover, in *Daimler*, even though: (1) the foreign defendant's subsidiary (whose California contacts were imputed to defendant for purposes of the Court's analysis, 134 S. Ct. at 749) "ha[d] multiple California-based facilities, including a regional office in Costa Mesa, a Vehicle Preparation Center in Carson, and a Class Center in Irvine"; (*id.* at  752) <u>and</u> (2) the subsidiary was "the largest supplier of luxury vehicles to the California market, . . . account[ing] for 2.4% of [defendant's] worldwide sales" (*id.*), the Court held that the Northern District of California lacked general personal jurisdiction over defendant, recognizing that

> [i]f [defendant's] activities sufficed to allow adjudication of this [foreign]-rooted case in California, the same global reach would presumably be available in every other State in which [defendant's subsidiary's] sales are sizable.  Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'

*Id.* at 761-62 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Such a result, the Court determined, would stretch beyond the bounds of general jurisdiction, which instead "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide.  A corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 762 n.20; *Martinez*, 764 F.3d at 1066; *Amiri*, 2015 WL 166910, at *1.  Similarly, in *Martinez*, the Ninth Circuit found no general jurisdiction over a foreign defendant corporation that had "contracts, worth between $225 and $450 million, to sell airplanes to . . . a California corporation;" "contracts with eleven California component suppliers;" representatives in the state that attended industry conferences, promoted defendant's products, and met with suppliers; deployed airplanes in California routes; and "advertis[ed] in trade publications with distribution in California." 764 F.3d at 1070.  Relying on *Daimler*, the court held that "[t]hese contacts are <u>plainly</u> <u>insufficient</u> to subject [defendant] to general jurisdiction in California," because "its California contacts are minor compared to its other worldwide contacts."  *Id.* (citing *Daimler*, 134 S. Ct. at 762 n.20).  In

addition,  in *Amiri*, this Court recognized no jurisdiction over a foreign defendant that had "a contract . . . worth between $46.6 million and $176.9 million . . . for aircraft maintenance and support split between four facilities, one of which is located in California," "a $9,643,087 contract . . . with 16 percent of the work to be performed . . . [in] California," "239 employees [out of 13,350 worldwide] who reside in California," and "registration with the Secretary of State to do business in California."  2015 WL 166910, at *4.  When "[c]onsidering [defendants'] activities 'in their entirety, nationwide and worldwide,' [the Court held that] none of the . . . entities can be deemed 'at home' in California."  *Id.* (quoting *Daimler*, 134 S. Ct. at 762 n.20).

Like defendants in *Daimler*, *Martinez*, and *Amiri*, Ford is a global company with significant sales throughout the world.  (*See* FAC ¶ 23.  In addition, Ford is a Delaware corporation with headquarters in Michigan.  (*Id.* at ¶ 22.)  Plaintiffs plead no facts that would make general jurisdiction in California proper, and this Court should so hold.  *Tyson Foods, Inc.*, 2015 WL 1034452 at *5-6 (corporate defendant incorporated in Delaware with principal place of business in Arkansas not "at home" in New York even though its "alter ego" operated a manufacturing plant in Buffalo, New York; court thus "lack[ed] authority to exercise general jurisdiction over" defendant).

## B.   The Ford Plaintiffs Cannot Establish That The Court Has Specific Personal Jurisdiction Over Ford

Plaintiffs have also failed to establish that this Court has specific jurisdiction over Ford.  The Ninth Circuit analyzes specific jurisdiction under a three-pronged test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *see also Burger King Corp.*, 471 U.S. at 475-76. The plaintiffs bear the burden of satisfying the first two prongs, and if either of these prongs is not satisfied, personal jurisdiction cannot be established. *Schwarzenegger*, 374 F.3d at 802.

1

2

### 1.     The Ford Plaintiffs Do Not Allege That Ford Purposefully Availed Itself of The Forum Or Purposefully Directed Its Activities At The Forum

Plaintiffs, who are Oregon and Washington residents who purchased or leased their vehicles in those states, fail to allege that their claims are grounded in any activities Ford purposefully directed at California, because no such activities exist.  *See* Pappas Decl., Ex. 2 hereto, at *passim*; Dwyer Decl., Ex. 1 hereto, at *passim*.  In *Walden v. Fiore*, the Supreme Court clarified that the purposeful availment test requires a court to look to the defendant's suit-related contacts with the forum.  134 S.Ct. 1115, 1122 (2014).  *Walden* underscores the longstanding principle that "for a State to exercise jurisdiction consistent with due process, the defendant's suit related conduct must create a substantial connection with the forum-State."  *Id.* at 1121.

Here, the Ford Plaintiffs' claims arise from the allegedly defective CAN bus units in their vehicles and alleged deficiencies in Ford's disclosures to consumers in Oregon and Washington *vis-à-vis* the sale, marketing, distribution and warranties of those cars.  But Plaintiffs have not alleged California is where Ford designed, manufactured and installed the allegedly defective CAN bus units in their vehicles, nor could they, because Ford designed and manufactured the vehicles (including installing the CAN bus systems) elsewhere.  Pappas Decl. ¶ 3-5; Dwyer Decl. ¶¶ 4-5.  In point of fact, neither of the Ford Plaintiffs' vehicles has any connection to or with California.  The 2014 Ford Escape Ms. Tompulis leased was manufactured at Ford's Louisville, Kentucky Assembly Plant in Louisville, Kentucky.  Dwyer Decl. ¶¶ 4.  The vehicle was then sold by Ford to Landmark Ford Lincoln in Oregon.  *Id.*  The 2013 Ford Fusion Richard Gibbs and Lucy L. Langdon purchased used was manufactured at Ford's Hermosillo Stamping and Assembly Plant in Sonora, Mexico.  *Id.* ¶¶ 5.  Ford then sold the vehicle to Sound Ford in Washington.  *Id.*  The warranties, owner manuals and other "glove box" documents are disseminated with new vehicles at point of sale, and are also online at Ford's website.  Dwyer Decl. ¶ 6 and Ex. A.  Ford's website is administered from Michigan.  *See* http://corporate.ford.com/legal/terms-and-conditions.html (last visited Aug. 27, 2015).  In fact, Plaintiffs allege no facts connecting any Ford activity to California, let alone any "suit-related conduct…[that] create[s] a substantial connection" with California.  *Walden*, 134 S.Ct. at 1121.

### 2. The Ford Plaintiffs' Claims Do Not Arise Out Of Ford's Contacts With California

To establish the causation element, the Ninth Circuit applies a "but for" analysis. *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995); *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002) ("We apply a 'but for' test to assess whether [the plaintiff]'s claims 'arise out of' [the defendant]'s forum conduct: [The plaintiff] must show that it would not have been injured 'but for' [the defendant]'s contacts with California.").

The Ford Plaintiffs' claims against Ford have no connection whatsoever to California. Plaintiff Tompulis leased and drives her 2014 Ford Escape in Oregon (FAC ¶ 13), and the Escape was first sold to an independent Ford dealership in Oregon.[7] Dwyer Decl. ¶ 4. Plaintiffs Gibbs and Langdon purchased and drive their used 2013 Ford Fusion in Washington  (FAC ¶ 15), and the Fusion was first sold to an independent Ford dealership in Washington.  Dwyer Decl.  ¶ 5.

Moreover, Plaintiffs do not and cannot allege that the allegedly defective CAN bus units, let alone Plaintiffs' vehicles, have any nexus to California.  In fact, as noted above, Tompulis's Escape was manufactured in Louisville, Kentucky, and Gibbs/Langdon's Fusion was manufactured in Mexico.  Dwyer Decl. ¶¶ 4-5.  The CAN bus system in the 2014 Ford Escape was not even designed in California, and neither was the CAN bus system in the 2013 Ford Fusion (which is different from the CAN bus system in the 2014 Ford Escape).  Pappas Decl. ¶4-5.   In fact, both vehicles were designed in locations *other than* California.  Pappas Decl. ¶3.

Thus, it is certainly not the case that the Ford Plaintiffs' "cause[s] of action would not have arisen . . . 'but for' the contacts between" Ford and California.  *Terracom*, 49 F.3d at 561.  Even if Ford had never sold a single vehicle to any independent California Ford dealership and even if Ford had no employees or business operations in California, Plaintiffs' claims would be exactly the same. As a result, none of the Ford Plaintiffs can demonstrate that their claims "arose out of or were related to…[Ford's] activities in California." *Porche*, 319 Fed.Appx. 619 (affirming dismissal of lawsuit where venue was improper and the district court did not have personal or specific jurisdiction over defendant).  The Ford Plaintiffs' claims do not "arise[] out of or relate[] to [Ford's] forum-related

---

[7] It is worth noting that Ford does not sell vehicles to consumers.  Ford sells to independently owned and operated dealerships who in turn sell and/or lease vehicles to the public.  Dwyer Decl. ¶ 3.

1   activities," *Schwarzenegger*, 374 F.3d at 802, and, therefore, specific personal jurisdiction over Ford

2   is lacking.  *See also Young v. Actions Semiconductor Co. Ltd.*, 386 F. App'x. 623, 627 (9th Cir.

3   2010); *Doe v. Unocal Corp.*, 248 F.3d 915, 924-25 (9th Cir. 2001).

4       As this Court has neither general nor specific personal jurisdiction over Ford, the Ford

5   Plaintiffs' claims against Ford must be dismissed.  *Martinez*, 764 F.3d at 1066.

6   II.    **The Ford Plaintiffs Lack Standing Under State Law And Article III Because They Have Suffered No Legally-Cognizable Injury**

7       Even if the Ford Plaintiffs could establish that the Court has jurisdiction over Ford, which it

8   does not, the Ford Plaintiffs do not have standing to pursue their claims.  The UTPA and CPA

9   require a person to have suffered an "ascertainable loss" in order to have standing, but none of the

10  Ford Plaintiffs have alleged (or actually suffered) such a loss.  Or. Rev. Stat. § 646.638.  Similarly,

11  "[t]o establish Article III standing, a plaintiff must show" that he/she has suffered an "injury in

12  fact"—*i.e.*, "an injury that is concrete and particularized, and actual or imminent." *Alliance for the

13  Wild Rockies v. U.S. Dep't of Agric.*, 772 F.3d 592, 598 (9th Cir. 2014). In *Clapper v. Amnesty Int'l

14  USA*, the Supreme Court recently "reiterated that threatened injury must be *certainly impending* to

15  constitute injury in fact, and that [a]llegations of *possible* future injury are not sufficient." 133 S. Ct.

16  1138, 1147 (2013) (quotations omitted) (emphasis in original).  The Supreme Court further made

17  clear that a plaintiff cannot "manufacture standing merely by inflicting harm on [himself] based on

18  ... fears of hypothetical harm that is not certainly impending." *Id.* at 1151.  In other words,

19  allegations that the Ford Plaintiffs are afraid that their vehicles could be hacked in the future is not a

20  cognizable harm that satisfies standing requirements.

21
22      A.    **The Ford Plaintiffs Lack Standing Under State Law Because They Suffered No Loss**

23      "The UTPA extends a private cause of action to 'any person who suffers any ascertainable

24  loss of money or property' as a result of an unlawful trade practice." *Bojorquez v. Wells Fargo

25  Bank, NA*, No. 6:12-cv-02077, 2013 WL 6055258, at *7 (D. Or. Nov. 7, 2013) (*quoting* Or. Rev.

26  Stat. § 646.638(1)).  Therefore, "[t]o state a claim under the UTPA, a plaintiff is required to plead:

27  (1) that defendant violated one or more of the[] subsections" delineated by Or. Rev. Stat. § 646.638;

28  (2) "causation ('as a result of'); and (3) damage ('ascertainable loss')." *Id.* (quotation omitted).

9

Similarly, under Washington law, a CPA claim will be dismissed if the injury alleged is too speculative.  *See e.g.*, *Browne*, 525 F. Supp. 2d at  1255; *see also Forest Glade Homeowners Ass'n v. Allied Mut. Ins. Co.*, No. C07-1762JLR, 2009 WL 927750, at *4 (W.D. Wash. Mar. 31, 2009).

In this case, as noted above, the Ford Plaintiffs' only alleged "loss" is that their vehicles are theoretically "susceptible to hacking," but the Ford Plaintiffs do not aver their vehicles – nor any other Ford, Mercury, or Lincoln vehicle for that matter – have ever actually been "hacked."  (*See, e.g.*, FAC ¶¶ 1, 4-5.)  Moreover, as the Ford Plaintiffs concede, the "hacking" about which they complain could only conceivably occur following both: (1) illegal access to one of their vehicles, and (2) a wrongful act by a third party.  (*See* FAC ¶¶ 2, 6, 33) (Ford Plaintiffs alleging their vehicles are "susceptible to hacking [by some unnamed third party] and are therefore unreasonably dangerous").

Strictly theoretical (but never realized) "damage" that is dependent on a future, third-party (criminal) act is not the type of "ascertainable loss" contemplated by the UTPA or the CPA.  *Paul*, 240 P.3d 1110, is instructive.  There, plaintiffs brought a putative class action for an alleged violation of the UTPA on behalf of patients of a defendant medical provider, after defendant's employee left computer disks and tapes containing class members' medical and financial records in his car and they were stolen.  *Id*. at 1112.  Plaintiffs alleged that defendant violated the UTPA because defendant "represented, in offering medical services and products for sale, that it would keep patients' private information confidential," but because the defendant allegedly did not have procedures and practices in place to protect against the loss by theft of that information, "patient records … and, thus, defendant's services were not of the standard or quality represented."  *Id*. at 1120.  The court rejected plaintiffs' claims, however, finding that they only had been "*threatened* with a loss of money or property due to the theft of their financial data . . ." not that such loss had actually occurred.  *Id*. at 1121 (emphasis in original).  Accordingly, the court affirmed dismissal of plaintiffs' UTPA claim for lack of ascertainable loss.  *Id*. at 1122.

In this case, the Ford Plaintiffs' purported "loss" is even more attenuated than that of plaintiffs in *Paul* because in this case, each received the full benefit of his/her bargain – a fully functioning vehicle with an entirely operational CAN bus.  (FAC ¶¶ 13, 15).  The Ford Plaintiffs'

1    UTPA and CPA claims – like all of their other claims against Ford – fail for lack of any

2    ascertainable loss (*i.e.*, injury) and must be dismissed.

3         **B.    The Ford Plaintiffs Fail To Allege A Cognizable "Injury In Fact"**

4         Standing likewise founders because the Ford Plaintiffs do not, and cannot, allege they have

5    been injured.  Like the Supreme Court, the Ninth Circuit has rejected attempts to base Article III

6    standing on remote, conjectural, hypothetical, or speculative harms.  For example, the Ninth Circuit

7    held that plaintiffs lacked Article III standing to pursue claims that the Apple iPod was "defective"

8    because it "pose[d] an unreasonable risk of noise-induced hearing loss to its users."  *Birdsong v.*

9    *Apple, Inc.*, 590 F.3d 955, 956 (9th Cir. 2009).  It explained that "[a]t most, the plaintiffs plead a

10   potential risk of hearing loss not to themselves, but to other unidentified iPod users who might

11   *choose* to use their iPods in an unsafe manner[,]" and therefore, "[t]he risk of injury the plaintiffs

12   allege is not concrete and particularized as to themselves."  *Id.* at 962 and n. 4; *see also Krottner v.*

13   *Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010) (concluding that although employees whose

14   personal information was stolen had adequately alleged a greater risk of identity theft that was

15   neither conjectural nor hypothetical, "if no laptop had been stolen, and Plaintiffs had sued based on

16   the risk that it would be stolen at some point in the future," the court "would find the threat far less

17   credible" and insufficient to confer Article III standing); *Yunker v. Pandora Media Inc.*,

18   No. 11−03113−JSW, 2013 WL 1282980, at *5 (N.D. Cal. Mar. 26, 2013) (reasoning that because

19   "the possibility of future harm is insufficient to establish standing," a plaintiff lacks Article III

20   standing where he "at best alleges facts that show it might be possible that, in the future, he could be

21   the victim of identity theft.")

22        Like the plaintiffs in *Clapper*, *Birdsong*, *Krottner* and *Yunker*, the Ford Plaintiffs allege

23   "harm" that is hypothetical at best.  Ford Plaintiffs allege that "***if*** an outside source, such as a hacker,

24   were able to send CAN packets to ECUs on a vehicle's CAN bus unit, the hacker ***could*** confuse one

25   or more ECUs and thereby, either temporarily or permanently, take control of basic functions of the

26   vehicle away from the driver."  FAC ¶ 4 (emphasis supplied).  But the Ford Plaintiffs cannot point to

27   any actual incident where anyone obtained such unlawful access to their vehicles (let alone to any

28

putative class vehicles) and "confused one or more ECUs."[8]  In other words, the Ford Plaintiffs'

claims all are grounded in purely theoretical, general allegations that their vehicles might one day be

"infiltrated and taken over" by third parties, harm that could only occur (if at all) if third parties

somehow gained unlawful access to the proposed class vehicles at some point in the future.  (FAC ¶

1.)

## C.    The Ford Plaintiffs Fail To (And Cannot) Allege A Viable "Causal Link" Between Their Hypothetical Injury And Ford's Alleged Conduct

Even if the Ford Plaintiffs had alleged "concrete and particularized harm," which they do not,

in order to satisfy the standing requirement, plaintiffs must also plead a "line of causation" between

the defendant's conduct and the plaintiff's injury.  *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th

Cir. 2011); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) ("[T]here must be a

causal connection between the injury and the conduct complained of – the injury has to be 'fairly . . .

trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent

action of some third party not before the court.'") (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426

U.S. 26, 41-42 (1976)).  A plaintiff may not satisfy this "threshold" inquiry by engaging in an

"ingenious academic exercise in the conceivable."  *Maya*, 658 F.3d at 1068.

Here, the Ford Plaintiffs cannot possibly demonstrate the necessary causal link between their

speculative injury and Ford's conduct because the alleged harm could only occur "*if* an outside

---

[8] Ford anticipates that in response to its argument that the Ford Plaintiffs have failed to allege that
any vehicle has been compromised in the manner alleged in the FAC, the Ford Plaintiffs will point to
the television news story about Plaintiffs Gibbs/Langdon's pre-owned 2013 Ford Fusion.  FAC ¶ 15
n.3.  But this is an entirely different, and unrelated, situation.  According to the news story, Plaintiffs
Gibbs/Langdon's vehicle was accessed by a previous owner by using his login credentials as a result
of his failing to delete his credentials prior to sale of the vehicle to Gibbs/Langdon.  Putting aside the
impropriety of a previous owner affirmatively accessing a vehicle he no longer owns (no different
than if he had simply kept a spare key and unlocked the door), the incident was by no means the
result of a stranger "hacking" into the CAN bus unit.  *Id.*  Moreover, this type of access can easily be
prevented.  In fact, the 2013 Ford Fusion Owner Manual explains exactly how to delete all previous
access to the vehicle.  Dwyer Decl. ¶ 6 and Ex. A, p. 136 ("[w]e recommend that upon the sale or
lease termination of your vehicle, you erase the programmed function buttons for security reasons);
p. 299 ("[t]he cellular profile, media device index and development log will remain in the vehicle
unless you delete them…. If you no longer plan to use the system or the vehicle, we recommend you
perform a Master Reset to erase all stored information"); and p. 328 (directions for doing a Master
Reset).  The Ford Plaintiffs cannot legitimately argue that Ford should be responsible for the
potential compromised security of a used vehicle sold on the secondary market when they
themselves failed to undertake the steps specifically identified in the owner's manual that would
protect them against the very compromised security of which they complain.

---

source, such as a hacker," FAC ¶ 4, committed a criminal and tortious act with malicious intent.[9]  In

analogous circumstances, federal courts have consistently found standing lacking.  For example, in

*U.S. Hotel & Resort Mgmt., Inc. v. Onity Inc.*, No. 13−1499, 2014 WL 3748639 (D. Minn. July 30,

2014), an engineer published a study demonstrating a method for breaching the locks of hotel doors

using a "homemade opening device, created with readily available and store-bought parts."  *Id*.

After learning of the study, hotel owners filed suit against the lock manufacturer, claiming as their

injury the heightened risk of unauthorized entry into their hotel rooms in the future.  The District

Court rejected this claimed "injury" as sufficient to confer Article III standing:

> [T]he fact remains that no such unauthorized entry could occur unless and until
> that third party acted with criminal intent to gain entry.  But where the future
> injury is contingent upon the actions of another, the Supreme Court has declined
> 'to abandon [its] usual reluctance to endorse standing theories that rest on
> speculation about the decisions of independent actors' not before the court.

2014 WL 3748639, at *4 (quoting *Clapper*, 133 S. Ct. at 1150); *see also Reilly v. Ceridian Corp.*, 664

F.3d 38 (3d Cir. 2011) ("[W]e cannot now describe how [plaintiffs] will be injured in this case

without beginning our explanation with the word 'if': *if* the hacker read, copied, and understood the

hacked information, and *if* the hacker attempts to use the information, and *if* he does so successfully,

only then will Appellants have suffered an injury").[10]   In sum, the Ford Plaintiffs' claims should also

be dismissed for lack of standing.

## III.   THE FORD PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

All of the Ford Plaintiffs' claims are infirm under applicable state and federal law, but even if

they were not, Plaintiff Tompulis' Oregon-based claims and Plaintiff Gibbs and Langdon's

---

[9] *See, e.g.*, 18 U.S.C. § 1030 (Computer Fraud and Abuse Act outlaws third party hacking, such as "intentionally access[ing] a computer without authorization [] and thereby obtains [] information from any protected computer," or "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, recklessly causes damage"); Cal. Penal Code § 502 (California Comprehensive Computer Data Access & Fraud Act criminalizes third-party acts that "tamper[], interfere[], damage, and [provide] unauthorized access to lawfully created computer data and computer systems").

[10] *See also, e.g.*, *In re Horizon Healthcare Servs., Inc. Data Breach Litig.*, No. 13−7418, 2015 WL 1472483, at *6 (D.N.J. Mar. 31, 2015) ("Plaintiffs' future injuries stem from the conjectural conduct of a *third party bandit* and are therefore inadequate to confer standing.") (emphasis added); *Galaria v. Nationwide Mut. Ins. Co.*, 998 F. Supp. 2d 646, 657 (S.D. Ohio 2014)  ("[T]he increased risk that Plaintiffs will be victims of identity theft, identity fraud, medical fraud, or phishing at some indeterminate point in the future does not constitute injury sufficient to confer standing … .").

Washington-based claims also should be dismissed because they fail to state claims pursuant to Federal Rules 8, 9(b), and 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).[11]

## A. "Ascertainable Loss" Is An Essential Element Of UTPA And CPA Claims Lacking Here

Even if the Court determines that the Ford Plaintiffs have standing under state law to bring UTPA and CPA claims, the claims must still be dismissed because the Ford Plaintiffs do not (and cannot) plead they suffered an "ascertainable loss," an essential element to state a claim under both laws. Strictly theoretical (but never realized) "damage" that is dependent on a future, third-party (criminal) act is not the type of "ascertainable loss" contemplated by the UTPA or the CPA. *See Paul v. Providence Health Sys.-Oregon*, 240 P.3d 1110 (Or. Ct. App. 2010); *Browne v. Avvo, Inc.*, 525 F. Supp. 2d 1249 (W.D. Wash. 2007); disc. *supra* at 9-10.

## B. The Ford Plaintiffs Cannot State a Claim Against Ford For Breach of Implied Warranty of Merchantability Under Oregon or Washington Law

The Ford Plaintiffs' breach of implied warranty of merchantability claims under Oregon and Washington law should be dismissed because the Ford Plaintiffs are not in privity with Ford, a

---

[11] A Rule 12(b)(6) motion to dismiss should be granted if a plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Nor does a complaint suffer if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). The Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 990 (9th Cir. 2001) (citations omitted), or any "unwarranted inferences." *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 n.5 (9th Cir. 2005). Additionally, claims sounding in fraud must be pled with particularity pursuant to Federal Rule of Civil Procedure 9(b). "'Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Avenue Lofts Condos. Owners' Assn. v. Victaulic Co.*, 24 F. Supp. 3d 1010, 1020 (D. Or. 2014) (quoting *Kearns*, 567 F.3d at 1124); *see also Schweickert v. Hunts Point Ventures, Inc.*, No. 13-cv-675RSM, 2014 WL 6886630, *3 (W.D. Wash. Dec. 4, 2014). "'Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged. A party alleging fraud must set forth more than the neutral facts necessary to identify the transaction.'" *Avenue Lofts Condos. Owners' Assn.*, 24 F. Supp. 3d at 1020 (citations omitted); *see also Schweickert*, 2014 WL 6886630 at *3. Moreover, a plaintiff alleging fraudulent concealment must still satisfy Rule 9(b) particularity. *See Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 935 (N.D. Cal. 2013) ("Although Plaintiffs' allegations do allege a fraud based in part on omissions, a plaintiff must still plead such claim with particularity"); *Baughn v. Johnson & Johnson*, No. C15-5283 BHS, 2015 WL 4759151 (W.D. Wa. Aug. 12, 2015) (same).

requirement to state a breach of implied warranty of merchantability claim for economic loss under both Oregon and Washington law.  *See Dravo Equip. Co. v. German*, 698 P.2d 63, 65 (Or. Ct. App. 1985) ("privity of contract is essential before a purchaser can recover economic loss from a manufacturer for breach of an implied warranty"); *Colvin*, 604 P.2d at 160  ("While the Supreme Court has not spoken to the question of whether privity is a prerequisite to liability in cases of Personal injury, it has spoken clearly to the same question where only Economic injury is alleged: privity is necessary."); *Babb,* 186 Wash. App. at 1003 (finding that breach of implied warranty claims against boat manufacturer should be dismissed because "[l]ack of contractual privity has historically been a defense to claims of breach of warranty," including claims for breach of implied warranty of merchantability based on allegations that plaintiffs were third-party beneficiaries). Plaintiff Tompulis claims to have leased her Ford vehicle from an Oregon dealership.  (FAC ¶ 13.) Plaintiffs Gibbs and Langdon claim they purchased a pre-owned vehicle from a Washington dealership.  (FAC ¶ 14.)  Dealerships are businesses that are entirely independent from Ford, and Ford does not sell vehicles to consumers directly.  *See* Dwyer Decl. ¶ 3.  As such, the Ford Plaintiffs are not in privity with Ford, and their breach of implied warranty of merchantability claims fail. *Colvin*, 604 P.2d at 160; *Babb*, 186 Wash.App. at 1003.

Additionally, Plaintiff Tompulis' implied warranty claim should be dismissed because under Oregon law, "notice is an essential element of [a] plaintiff's" breach of implied warranty of merchantability claim.  *Redfield v. Mead, Johnson & Co*., 512 P.2d 776, 781 (Or. 1973); *accord Allen v. G.D. Searle & Co*., 708 F. Supp. 1142, 1160 (D. Or. 1989) ("in the absence of any evidence that [plaintiff] gave notice of her express or implied warranty claims, this court must rule that [plaintiff] has not established an essential element of her warranty claims.").  Here, Plaintiff Tompulis did not provide notice of her claim prior to filing this lawsuit.  (*See* FAC ¶ 154.)  And while Plaintiff Tompulis contends that the filing of the FAC itself "provided notice," (*id*.), that argument has been flatly rejected by courts construing Oregon law.  *See, e.g., Parkinson v. Novartis Pharms. Corp*., 5 F. Supp. 3d 1265, 1277 (D. Or. 2014) (granting summary judgment for defendant on breach of warranty claims for lack of notice, because "to the extent that Plaintiff asserts commencement of this action constituted notice . . ., the Court notes this argument has been rejected

by several courts").[12]   The Ford Plaintiffs' implied warranty claims must be dismissed.

**C.   The Ford Plaintiffs Fail To Plead Fraudulent Concealment Under Oregon And Washington Law With The Particularity Required By Rule 9(b)**

The Ford Plaintiffs additionally fail to state a claim for fraudulent concealment under either Oregon or Washington law because they have not alleged their claims with the specificity required by Federal Rule 9(b).[13]   Rather, they make conclusory allegations that  Ford "intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiff and the other Class members' [sic] information that is highly relevant to their purchasing decision," (FAC ¶¶ 159, 191), and that Ford "further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles they were selling were new, had no significant defects, and would perform and operate properly when driven in normal usage." (*Id*. ¶¶ 159, 192.)

But the Ford Plaintiffs offer no details regarding their vehicle purchases pertinent to establishing fraud.  Nor do they set forth what specific "advertising and other forms of communication" they ever received, reviewed, or relied on that contained any misrepresentation or omission, or what specific statements were allegedly fraudulent pertaining to the CAN bus.  The only Ford materials and representations referred to anywhere in the FAC are (1) a non-specific reference to an "owner's manual and warranty booklets, advertisements, and other promotional materials," (*id*. ¶ 23) and (2) two references to "safety" that appear on Ford's websites for the Ford Fusion and Ford Focus, (*id*. ¶¶ 45-46), neither of which Plaintiffs ever allegedly viewed (and indeed, none of the Ford Plaintiffs purchased or leased a Ford Focus).  (*Id*. ¶¶ 13,15.)

---

[12] Plaintiffs Gibbs and Langdon also assert a claim for "Breach of Contract/Common Law Warranty" under Washington law.  Although it is not entirely clear what claim they are asserting, Ford was unable to locate any cases addressing "common law warrant[ies]" under Washington law. But even if Washington did recognize a claim for "Common Law Warranty," that claim would fail for the same reasons as their implied warranty claim.

[13] As set forth above, a plaintiff alleging fraudulent concealment must still satisfy Rule 9(b) particularity.  *See Baughn*, 2015 WL 4759151 at *3  (holding that a fraudulent concealment under Washington law must satisfy Rule 9(b)'s heightened pleading standard); *Avenue Lofts Condos. Owners' Assn.*, 24 F. Supp. 3d at 1020 (dismissing fraudulent misrepresentation and concealment claims under Oregon law for failure to meet Rule 9(b)).

1    These scant references do not suffice to state a claim for fraudulent concealment pursuant to

2    Rule 9(b).  Rather, to plead the circumstances of omission with sufficient specificity, a plaintiff

3        must describe the content of the omission and where the omitted information
         should or could have been revealed, as well as provide representative samples of
4        advertisements, offers, or other representations that plaintiffs relied on to make
         their purchases and that failed to include the allegedly omitted information.
5        Plaintiffs' complaint should also include samples of materials documenting . . .
         purchases that leave out the essential information . . .
6

7    *Marolda v Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009); *accord Baughn*,  2015 WL

8    4759151, at *3; *see also, e.g., Kearns*, 567 F.3d 1126.  The Ford Plaintiffs' fraud-based claims must

9    be dismissed.

10   IV.    **THE FORD PLAINTIFFS' CLAIMS ARE PREEMPTED AND/OR FORECLOSED
             BY STATE LAW**

11       The Ford Plaintiffs' claims should also be dismissed because, as pled, they are preempted

12   and/or barred by state law.  Federal preemption stems from the constitutional provision that the laws

13   of the United States are the supreme law of the land.  U.S. Const., art. VI, cl. 2.  The intent of

14   Congress to preempt state law "may be explicitly stated in the statute's language or implicitly

15   contained in its structure and purpose."  *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992)

16   (internal quotations omitted).  Implied conflict preemption will be found when an actual conflict

17   exists between state and federal law, *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 873 (2000),

18   or when state law "stands as an obstacle to the accomplishment and execution of the full purposes

19   and objectives of Congress."  *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 698-99 (1984).  With

20   regard to the latter, "[i]f the purpose of the act cannot otherwise be accomplished . . . the state law

21   must yield to the regulation of Congress within the sphere of its delegated power."  *Hines v.*

22   *Davidowitz*, 312 U.S. 52, 67 n.20 (1941) (internal quotations omitted); *see also Geier*, 529 U.S. at

23   873 (obstacles exist where state law presents "difference; irreconcilability; inconsistency; violation;

24   curtailment . . . ; interference, or the like" with federal law) (internal quotations omitted).

25       The Ford Plaintiffs' claims depend upon the premise that Ford broke the law by failing to

26   prevent third-party access to the CAN bus units of all "current and former owners and/or lessees of .

27   . . Ford Vehicles . . . equipped with computerized components that are connected via a controller

28   area network to an integrated cell phone or Class 1 or Class 2 master Bluetooth device."  (FAC ¶ 9.)

17

In fact, Ford would have violated the law had it *not* provided the access that the Ford Plaintiffs are now trying to claim is actionable. Because Ford has a duty under federal and state law to allow third-party access to vehicles' CAN bus units, Plaintiffs' claims are preempted. *See, e.g.,* CAL. CODE REGS. tit. 13, § 1968.9; MASS. GEN. LAWS ch. 93K, § 2 (2013); *Geier*, 529 U.S. at 884.

## A.   The Clean Air Act Amendments Of 1990 Require Ford To Permit Access To Vehicles' CAN Bus Units

The House Energy and Commerce Committee approved amendments to Clean Air Act legislation ("1990 Amendments") that require all 1994 and later vehicles to be equipped with computer systems that monitor and control nearly every emissions-related function (*i.e.*, what is now the CAN bus). 40 C.F.R. § 86.094 *et seq.* As currently implemented, the 1990 Amendments and implementing regulations not only require access to the CAN bus, they also require car companies to make *all* emissions-related information available over websites that are accessible to third parties, and to also make their emissions-related diagnostic tools available *to all*. *Id.* In point of fact, all information that is made available either directly or indirectly to an authorized dealer must be made available to third parties (including, but is not limited to, service manuals, technical service bulletins, recall service information, data stream information, bi-directional control information and training information). 40 C.F.R. §86.094-38(g)(1). "Emission-related information" is defined broadly to include (but is not limited to): (1) information "regarding any system, component or part of a vehicle that controls emissions and any system, components and/or parts associated with the powertrain system, including, but not limited to, the fuel system and ignition system"; (2) information "for any system, component or part that is likely to impact emissions, such as transmission systems"; and (3) "[a]ny other information specified by the Administrator to be relevant for the diagnosis and repair of an emission failure … ." 40 C.F.R. § 86.094-38(g)(2)(i)-(iii). Most of the foregoing information is stored in a vehicle's CAN bus system.

## B.   State Law Also Requires Ford To Permit CAN Bus Access

Likewise, state laws also require that Ford give third parties access not only to vehicles' CAN bus systems, but also all training, service and diagnostic tools and information related thereto. For example, under California law, "[m]otor vehicle manufacturers .. shall make available for

purchase to all covered persons,[14] a general description of each OBD system used in 1996 and subsequent model year passenger cars … which shall include," *inter alia*: (1) a description of the operation of each monitor; (2) a listing of typical OBD diagnostic trouble codes associated with each monitor; and (3) a description of the typical enabling conditions for each monitor to execute during vehicle or engine operation. CAL. CODE REGS. tit. 13, § 1968.9(e)(1), (e)(2) The law of Massachusetts is equally clear: "each manufacturer of motor vehicles sold in the commonwealth shall make available for purchase by owners and independent repair facilities *all diagnostic repair tools* incorporating the same diagnostic, repair and wireless capabilities that such manufacturer makes available to dealers." MASS. GEN. LAWS ch. 93K, § 2 (2013) (emphasis supplied). Ford cannot be held liable under state tort, warranty, and consumer protection statutes for complying with state and federal laws requiring broad CAN-bus access.[15] *See, e.g.,* CAL. CODE REGS. tit. 13, § 1968.9; MASS. GEN. LAWS ch. 93K, § 2 (2013). Because the Ford Plaintiffs' claims depend on the Court finding as a threshold matter Ford's legally-required conduct to be wrongful, the Ford Plaintiffs' claims fail as a matter of law. *Geier*, 529 U.S. at 884.

## CONCLUSION

For the reasons set forth herein, Ford respectfully requests the Court dismiss the claims against Ford. Ford respectfully requests such other, further relief the Court deems appropriate.

---

[14] A "covered person" includes "any person" who is engaged in the business of service or repair of passenger cars … ." CAL. CODE REGS. tit. 13, § 1968 (d)(4).
[15] To be clear, Ford is not asserting that California or Washington law applies to the Ford Plaintiffs' claims, only that California and Washington law, among other states, require Ford to allow third-party access to vehicles' CAN bus systems.

Date:   August 28, 2015

Respectfully Submitted,

By: /s/ *Livia M. Kiser*

**SIDLEY AUSTIN LLP**

MICHAEL L. MALLOW (SBN 188745)
mmallow@sidley.com
RACHEL A. STRAUS (SBN 268836)
rstraus@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California  90013
Telephone: 213.896.6000
Facsimile: 213.896.6600

LIVIA M. KISER (SBN 285411)
lkiser@sidley.com
J. SIMONE JONES (*pro hac vice* to be filed)
simone.jones@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois  60603
Telephone: 312.853.7000
Facsimile: 312.853.7036

1

## <u>CERTIFICATE OF SERVICE VIA CM/ECF SYSTEM</u>

2

    The undersigned certifies that on **August 28, 2015**, a true and correct copy of the following
3  document was electronically filed and served on all counsel of record who are deemed to have
   consented to electronic service via the Court's CM-ECF system:

4  **NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT;
   MEMORANDUM OF POINTS AND AUTHORITIES**

5

    Pursuant to CM/ECF system, registration as a CM/ECF user constitutes consent to electronic
6  service through the Court's transmission facilities.  Any other counsel of record will be served by
   electronic mail and U.S. mail.

7

8                                                       _/s/_***Livia M. Kiser***_

9                                                       *Counsel for Defendant*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28